Lawrence Lessig
Anthony T. Falzone (SBN 190845)
David S. Olson (SBN 231675)
STANFORD LAW SCHOOL CENTER FOR
INTERNET AND SOCIETY
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-0517
Facsimile: (650) 723-4426
E-mail: falzone@stanford.edu

Mark A. Lemley (SBN 155830)
Matthew M. Werdegar (SBN 200470)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, California 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
E-mail: mwerdegar@kvn.com

Bernard A. Burk (SBN 118083)
Robert Spoo (*pro hac vice*)
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN, PC
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: (415) 434-1600
Facsimile: (415) 217-5910
E-mail: bburk@howardrice.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| CAROL LOEB SHLOSS, | CASE NO. CV 06-3718 (JW) (HRL) |
|---|---|
| Plaintiff, | |
| v. | **DECLARATION OF DAVID PIERCE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| SEAN SWEENEY, in his capacity as trustee of the Estate of James Joyce, and THE ESTATE OF JAMES JOYCE | Date: January 22, 2007<br>Time: 9:00 a.m. |
| Defendants. | Judge: Hon. James Ware |

DECLARATION OF DAVID PIERCE

-1-

1   I, DAVID PIERCE, declare as follows:

2   1. I am Professor of English at the University College of Ripon and York St. John, in York, England. I make this declaration in support of Plaintiff Carol Loeb Shloss's Opposition to the Defendants' Motion to Dismiss. I have personal, firsthand knowledge of the following facts, and if called as a witness, I could and would testify to them.

3   2. I am a literature scholar with particular expertise in modern Irish authors, including James Joyce. I have published numerous articles and reviews on these subjects in academic journals, and I am the author of several books on James Joyce, William Butler Yeats, and other literary subjects. My books include *James Joyce's Ireland* (Yale University Press, 1992) and *Joyce and Company* (Continuum, 2006).

4   3. I am also editor of *Irish Writing in the Twentieth Century: A Reader* (Cork University Press, 2001), an anthology running to more than a thousand pages of text and annotations (hereafter, the "*Reader*"). In the months before the scheduled publication of that volume (September 2000), my publisher and I sought permission of the James Joyce Estate to print extracts from Joyce's major works. The Joyce extracts were to account for approximately 2% of the content of the *Reader*, and permission fees would have to be paid to many other authors and estates besides the Joyce Estate. In response to our requests, Mr. Stephen James Joyce insisted on a permission fee of £7,000 British sterling, even though it was explained to him that this would be a large percentage of the permissions budget set aside for the *Reader* by Cork University Press (the "Press"), an academic press with limited resources. Mr. Joyce was adamant. He later raised the fee to £7,500.

5   4. Mr. Joyce sent me two letter faxes during the period prior to the scheduled publication of the *Reader*. In the first of these, dated June 20, 2000, he stated, among other things, that the Press had not replied to a letter he had addressed to it in May 2000, adding, "So be it. The thing about life is that if you live long enough the leopard will always show his spots and the pigeons usually come home to roost." These remarks and others in the letter made me greatly concerned that Mr. Joyce and the Joyce Estate would take legal action against me, the Press, or both of us. A true and correct copy of Mr. Joyce's June 20, 2000 letter fax is attached hereto as Exhibit 1. This document has been

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

DECLARATION OF DAVID PIERCE
-1-

1  kept as a regular practice in my files in the course my regularly conducted work as a scholar and
2  author.

3      5.    Mr. Joyce's second letter fax to me was sent on July 10, 2000. In it, he informed me
4  that he was refusing permission to reproduce any extracts from James Joyce's writings in my
5  *Reader*. He also stated that copyright in all of Joyce's writings would last in the European
6  Economic Community (EEC) until the end of 2011, and that the Joyce Estate owned this copyright.
7  Mr. Joyce's letter made me, once again, extremely worried that legal action would be taken against
8  me, the Press, or both of us. A true and correct copy of Mr. Joyce's July 10, 200 letter fax is
9  attached hereto as Exhibit 2. This document has been kept as a regular practice in my files in the
10 course my regularly conducted work as a scholar and author.

11     6.    I was made even more fearful of legal reprisal when Mr. Joyce unexpectedly phoned me
12 at my home in York on August 24, 2000. He spoke menacingly to me, accused me, falsely, of being
13 the author of an article he disliked, and inquired about my plans for the *Reader*. I told him that
14 deletions of some Joyce material had been made and that the book had gone to press, but I would not
15 discuss the contents of the volume with him.

16     7.    The next day, August 25, 2000, the Joyce Estate's solicitors in Dublin faxed a letter to
17 the Press threatening legal action concerning the *Reader*. On September 11, 2000, the Joyce
18 Estate's solicitors filed suit against the Press for injunctive relief to halt release of the *Reader*. In a
19 Judgment dated October 9, 2000, the Irish High Court granted an injunction. A true and correct
20 copy of that Judgment, obtained from the British and Irish Legal Information website (found at
21 http://www.bailii.org/ie/cases/IEHC/2000/70.html), is attached hereto as Exhibit 3.

22     8.    As a result of the injunction, the *Reader* was published, after considerable delay, with
23 the Joyce extracts literally shorn from the volume by the Press and a cardboard notice tipped in
24 stating, "Pages 323-346 have been removed due to a dispute in relation to copyright." I was
25 devastated by the mutilation of my *Reader*. I will never get over it entirely.

26     9.    In June 2003, I attended a James Joyce conference hosted by the University of Tulsa in
27 Tulsa, Oklahoma. There I met Professor Carol Loeb Shloss, who was scheduled to give a plenary
28 address on her biography of Lucia Joyce, then still to be issued by Farrar, Straus & Giroux.

DECLARATION OF DAVID PIERCE
-2-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

10. As she described to me how vehemently and persistently the Joyce Estate had expressed its opposition to her book about Lucia Joyce, I saw how fearful and distraught she was. I have never seen anyone in academic life so utterly alarmed as I did when I spoke with Carol at the Tulsa conference. I understood exactly her predicament because I had been through something similar myself.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 10th day of December, 2006, at York, England.

_____
DAVID PIERCE