# EXHIBIT 3




[Home] [Databases] [World Law] [Search] [Copyright] [Privacy] [Disclaimers] [Feedback]

# High Court of Ireland Decisions

You are here:   BAILII >> Databases >> High Court of Ireland Decisions >> [2000] IEHC 70

[Database Home Page] [Database Search] [Database Case Name Search] [Recent Cases] [Noteup] [Download RTF] [Help]

---

## Sweeney v. National University of Ireland Cork t/a Cork University Press [2000] IEHC 70; [2001] 2 IR 6; [2001] 1 ILRM 310 (9th October, 2000)

### THE HIGH COURT

**No.** 10497P/2000
**BETWEEN**

**SEAN SWEENEY**

**PLAINTIFF**

**AND**

**NATIONAL UNIVERSITY OF IRELAND CORK TRADING AS CORK UNIVERSITY PRESS**
**DEFENDANT**

**JUDGMENT of T.C. Smyth J. delivered the 9th day of October 2000**

1. The Plaintiff is the Trustee of the Estate of James Joyce. The Defendant, is a constituent college of the National University of Ireland and trades as Cork University Press. The Defendant is minded to put into the market an anthology entitled "Irish Writing in the Twentieth Century: A Reader" (hereinafter referred to as "the Anthology"). Edited by David Pierce, Department of English, University College of Ripon and York, St. John. The Defendant which is the publisher has a publishing officer, one Sara Wilbourne. The Cork University Press is a non profit making publishing house, publishing non academic texts with charitable status as part of the National University of Ireland, Cork. It was intended that the Anthology should contain extracts from a number of works by James Joyce.

2. The Estate of James Joyce is the owner of the copyright in the works of James Joyce, and in particular, the work known as "Ulysses" by James Joyce, and all drafts of Ulysses. The chain of title which establishes the Plaintiff's entitlement to sue to protect the works, and in particular the copyright in the works of James Joyce is set out in paragraphs (10) and (11) of the Plaintiffs affidavit sworn on 9th September 2000. The sole beneficiary of the Estate of James Joyce is his grandson Stephen James Joyce. The trustees and beneficiary perceive the role of the Estate to be the guardian of the literary heritage James Joyce entrusted to it. The Estate is sought to preserve and protect the spirit, letter and integrity of his works. The Plaintiff considers he has the responsibility of the literary works of James Joyce vested in the Estate.

3. By letter dated 11th April 2000 Sara Wilbourne wrote to Stephen James Joyce requesting permission for the inclusion of a number of pieces from James Joyce's works in the Anthology then proposed. The letter indicates the editions which the Defendant then proposed using, and that she would be happy to send Mr. Joyce proofs, if permission was granted. Specifically the letter states:-

*"The text is mainly for student use and will be priced at £25 to suit that market, with the option of a hardback edition in the United States. We require world English language rights, and our combined print run will not exceed 10,000 copies."*
**(emphasis added)**

4. The reasonable inference to be drawn from this letter is that the consent of Mr. Stephen James Joyce was required prior to publication and that the copy right was in the Estate. Mr. Joyce replied by letter dated 22nd April 2000 indicating that permission would be forthcoming on certain conditions and a licence fee of £7,000 Sterling, in respect of which he stated:-

*"- It's take it or leave it,
- We are not prepared to argue or haggle over the amount of this fee".*

5. A further letter from Mr. Joyce dated 12th May was largely to the same effect, but expressly stipulating that, as regards Ulysses, the version of the proposed 1922 original edition to by used. The letter concludes by stating that:-

*"If we could agree on sources, that is editions from which extracts and the story are to be reproduced, we will let you know the Estate's other requirements which will not cause you any problems."*

6. The response to these letters came from Mr. Pierce by letter dated 16th June 2000 enquiring if the fee could be reduced otherwise the number of extracts might have to be cut. There was an unequivocal refusal by Mr. Joyce in a letter of 20th June 2000. The Defendant's response is a faxed letter of 22nd June 2000 in which Miss Wilbourne states that *"the fees you have quoted are extraordinarily high and we will not pay them."* A counter offer was proposed and the letter concludes:-

*"If you decide to persist with your original figure we will be not be seeking permission from you to use the extracts."*

7. Mr. Joyce's response to that letter was of the same date and to say that:-

*'permission is refused to include any James Joyce in this volume unless our financial terms are accepted'.*

8. Mr. Joyce followed this up by a letter of the 27th June indicating that the Estate's fee had now gone up to £7500 sterling in any event because of the actions of third parties in engaging in unauthorised *"exploitation of my grandfather and his image"*. Mr. Joyce also wrote a letter dated 10th July 2000 reiterating his refusal of permission and specifically drew the attention of the Defendant to the fact that all of James Joyce's work is covered by copyright throughout the European Union until 2011. Mr. Joyce's letter to this effect is addressed to both Miss Wilbourne and Mr. Pierce.

9. The Defendant it appears then considered that their aspirations might find realisation by pursuing another route. One Danis Rose a Joycean Scholar, had edited some work of James Joyce and in particular Ulysses, which was published by McMillan Publishing Limited (hereinafter referred to as McMillan) under the Picador imprint, this book is entitled "James Joyce Ulysses A Reader's Edition" edited by Danis Rose. It was published in 1997. It was and is for some two years or more past or thereabouts freely available in bookstores throughout Ireland. Lilliput Press Limited in Ireland published a text identical to that of McMillan in or about the year 1997. Neither the publication of McMillan or Lilliput Press Limited were proceeded against before publication and Lilliput Press Limited not at all. The Plaintiff says that in the case of the McMillan publication, the book was for sale to the public before

they became aware of the publication. Notwithstanding the fact that proceedings concerning both breach of copyright and passing off the works of James Joyce have been taken by the Plaintiff against both McMillan and Danis Rose in England, Danis Rose has given his consent to the Defendant for the use of his edition of Ulysses; and when asked, McMillan effectively informed the Defendant of the dispute between the Joyce Estate and Danis Rose and McMillan but indicated it would not object to the Defendant's use of the text it had published as expressly edited by Danis Rose. The proceedings in England are not settled but an offer to settle on terms has been disclosed; those proceedings are pending and await hearing.

10. On or about 24th August Mr. Joyce learned as a result of an enquiry by him of David Pierce that he ( Mr. Pierce) had just completed editing the Anthology. On the day following the Plaintiffs Solicitors wrote seeking confirmation that no extracts from the works of James Joyce had been included in the proposed Anthology and that no such exploitation of the works of James Joyce would be made without first obtaining the permission of the Estate. Because the Plaintiff believed that the Anthology was with the printers an urgent response was sought by the Plaintiff's Solicitors.

11. The response of the Defendant, through its Solicitors was that certain writings were out of copyright, and that copyright was only revived for those works which were in copyright in a European member state as of 1st July 1995, and that certain Joyce works were not the subject to copyright on that date. The letter also stated that " *only excerpts which were not the subject of copyright or from the Readers Edition will be included in the Anthology* ." As no unequivocal assurance, such as was sought by the Plaintiffs and his Solicitors letters of 6th and 8th September 2000 was forthcoming, and did not elicit the undertakings sought, proceedings issued on 11th September 2000 and an interim injunction was sought and obtained on that date restraining the Defendant its servants or agents from:

1. Infringing the Plaintiffs copyright in the work known as "Ulysses" by James Joyce or any other work by James Joyce in which the Plaintiff has copyright.
2. From passing off or attempting to pass off or causing, assisting or enabling others to pass off a work not being a work of or authorised by James Joyce or his Estate as and for such a work whether by the use in relation thereto of the name James Joyce or the title of Ulysses or otherwise howsoever.

12. The extracts in the Anthology of the work of James Joyce are confined to extracts from Ulysses and is a discrete section from p 323 to p 346 and there is one reference in the index at p 1344, there may or may not be other references or cross references in the Anthology, which have not been brought to my attention and which time did not permit me to check for myself. It is clearly stated in the Anthology that the extracts are from the Danis Rose edition of Ulysses by James Joyce, both in the text and index. Each excerpt is preceded by a short note of introduction prepared, it would seem, by Mr. David Pierce.

13. The Defendants defence in substance is that it acquired the right to publish certain exerpts from the Danis Rose edition of Ulysses from Danis Rose via his licensee. The Defendant pleads and relies upon Regulation 14(2) of the European Communities (Term of Protection of Copyright) Regulations, 1995 (hereinafter referred to the as the Regulations) and submits that it is not liable to the Plaintiff, which it regards as "the alleged owner of the revived copyright in Ulysses" that it has a complete and *bona fide* defence to the copyright claim in this action.

14. The Defendant also contends that in any event it is entitled under statute to publish portions of the text of Ulysses insofar as they do not constitute a substantial part of the work. This is a matter of fact and degree that can only be established a full hearing of the action. The Defendant further contends that it is entitled to reproduce portion of the text of Ulysses for the purposes of private study and research, or criticism and review, if the exerpts are accompanied by an acknowledgement of James Joyce's authorship of the work Ulysses.

15. The foregoing is a very brief résumé of the facts, assertions, opinions and contentions contained in no less than some thirteen Affidavits filed in this suit to date. The omission to record all points of view and the sworn statements that are the Affidavits is not to fail to recognise that there are several matters of fact and points of law that call for resolution upon a full hearing of the action.

16. It is very properly conceded by Mr. Gallagher for the Defendant that there is a serious issue to be tried; but that an injunction ought not be granted for a number of reasons:-

1. Damages are an adequate remedy.
2. That the Defendant's application for a permit or license to Stephen James Joyce in the first instance is not to be construed as an admission that the Estate was the only source from which a permit could be obtained.
3. That the Plaintiff's title to sue was open to question.
4. That the Danis Rose licence/permit was a valid subsisting entitlement of copyright independent and separate form any right(s) of the Plaintiff or the Estate of James Joyce.
5. The Defendant had spent some £92,000 in producing the Anthology and had orders of some £104,000 and as the Anthology was aimed at the student market it was imperative to have the book launched and available at the beginning of the academic year.
6. That the balance of convenience favoured the *status quo* which is that the Anthology is completely printed and the only inhibition to sale is the Interim Injunction of 11th September 2000.

Mr. Gallagher in his very detailed succinct submissions relied on the several matters contained in the Affidavits and in particular the averments in paragraph (38) to (48) in the Affidavit of Sara Wilbourne, sworn in 19th September 2000 under the heading 'Damage to the Estate'.
7. That the applications for interim and interlocutory relief are vexatious and oppressive in particular having regard to the fact that both McMillan and Lilliput Press Limited have not been pursued over several years since publication of the Danis Rose edition which has been in circulation since 1997.
8. That the real gravamen of the Plaintiff is related to the passing off action and that this has been met by clear and unambiguous statement in the introduction to the extracts in the Anthology and that there can be no confusion that it is the Danis Rose edition of Joyce's Ulysses that is being used.

17. The Plaintiffs contentions were put very firmly and concisely by Mr. Donal O'Donnell as follows:-

1. Copyright is a legal right which unlike some other legal rights cannot be compulsorily acquired. In this regard reliance placed on the views of Keane J. (as he then was) in **Photographic Performance Limited -v- Cody** [1994] 2ILRN241 *at 247* to the following effect *:-*
*"The right of the creator of a literary, dramatic, musical or artistic work not to have his or her creation stolen or plagiarised is a right of private property within the meaning of Articles 40.3.2° and 43.1 of the Constitution, as is the similar right of a person who has employed his or her technical skills and/or capital in the sound recording of a musical work. As such, they can hardly be abolished in their entirety, although it was doubtless within the competence of the Oireachtas to regulate their exercise in the interests of the common good. In addition and even in the absence of any statutory machinery, it is the duty of the organs of the State, including the Courts, to ensure, as best they may, that these rights are protected from unjust attack and, in the case of injustice done vindicated."*

2. Damages are not an adequate remedy: further in the matter of a passing off action reliance is placed on a dictum of Costello J., in **Michelstownn Co-operative Agricultural Society Limited -v- Golden Vale Food Products** (unreported 12/12/1985) to the effect that ,
*"it is axiomatic that in most passing off actions damages are an inadequate remedy for a successful Plaintiff and I think it is clear that Plaintiffs must suffer some disadvantage which could not be compensated for in damages if an injunction is now refused".*

3. An Injunction on the hearing of the action will be of no real use or effect if publication and sale of the Anthology proceed, for at that stage the right of the Plaintiff will have been breached: the Plaintiff ought not by circumstances be forced to accept damages when it has a right that it is unwilling to relinquish and trade for damages.

4. The Defendant by seeking permission in April 2000 acknowledged the right of the Plaintiff to the copyright in Ulysses by James Joyce.

5. That whatever right, Danis Rose may have, and the Plaintiff denies that he or McMillan have any right, such is a derivative entitlement and does not give legal sanction to the use by the Defendant of the work of James Joyce and that the integrity of the work though largely referable to the language used is not so confined.

6. The terms of SI 158 of 1995, the Regulations, arise form the implementation at national level of Council Directive 93/98 EEC of 29th October 1993 harmonising the term of protection of copyright and certain related rights. Mr. O'Donnell drew particular attention to paragraphs 5, 11, 26 and 27 of the Directive, as well as to Articles 10(1) and (2) and Article 13(1): Paragraph 26 in the preamble provides as follows:-

*"(26) Whereas Member States should remain free to adopt provisions on the interpretation adaptation and further execution of contracts on the exploitation of protected works and that other subject matter which were concluded before the extension of the term of protection resulting from this Directive."*
**(emphasis added)**

7. Section 2 of the Intellectual Property (Miscellaneous Provisions) Act 1998 amends by substitution Section 26 of the Copyright Act 1963 and provides that:-

*"26-(1) In any action brought by virtue of this Part of this Act the presumptions set out in subsections (2) to (7) of this section shall apply.*

*(2) (a) Copyright shall be presumed to subsist in a work unless the contrary is proved."*

18. The proceedings *inter alia* seek a declaration under Section 8 of the Act of 1963 aforesaid.

8. That the balance of convenience favoured the Plaintiff because arguments about the *status quo* are those which existed prior to action brought. The Plaintiff contends that the unequivocal refusal by the Plaintiff by letter dated 10th July together with the fax message of 28th July 2000 from McMillan and the letter of 28th August 2000 from the Plaintiffs Solicitors were all more than sufficient warning to desist from the course of action undertaken by the Defendant. The Plaintiff says the Defendant undertook a known risk and if, as seems clear proceeded to increase its commitment of funds it must accept the known possible consequences.

19. The work Ulysses was first published in 1922. James Joyce died on the 13th of January 1941. Copyright in the text of the 1922 edition of Ulysses and all other editions and other works published before James Joyce died expired on 1st January 1992, i.e. 50 years after the end of the year in which he died (S8(4) Copyright Act 1963). With effect from 1st July 1995 all the copyrights which expired were revived by virtue of the European Communities (were revived by virtue of the Regulations which extended copyright protection to the life of the author plus 70 years.

20. Article 14 of the Regulations provides that any person who before the 29th October 1993 undertook the exploitation of the literary work or made preparations of a substantial nature to exploit such a work at a time when such work was not protected ( shall not be liable ) to the owner of the copyright as revived.

21. Only in a full hearing of the action can the following points be properly determined:-

1. Did Danis Rose between 1st January 1992 when Ulysses was out of copyright and before 29th

October 1993 make preparations of a substantial nature (this must be a matter of fact and degree). Evidence that of Danis Rose did make preparations of a substantial nature (the Affidavit of Danis Rose sworn on 19/9/2000, in paragraph (3) and in paragraph (7) of Miss Wilbourne's Affidavit of 19/9/2000 are *prima facie* evidence which may or may not be bore out by the application of objective criteria upon a hearing.

2. Does Article 14(1) confer an express independent right capable of lawful assignment or does it merely provide immunity from suit to the person, who in the period unprotected by the original law of copyright, has:-
(i) Undertook the exploitation of a literary work, or
(ii) Made preparations of a substantial nature to exploit a literary work.
3. Is the revived copyright a statutory graft upon the original and if so has a precedence in law over whatever right or entitlement that Article 14(1) confers.
4. Is the consent of Danis Rose in the absence of objection by McMillan a right acquired under 14(1) and if so did it lie with Danis Rose or McMillan to assign such right outside the protected period.

22. These are only some of the many issues that require determination on full hearing.

23. The principles upon which injunctive relief can be granted were not disputed or that there existed a fair question to be tried. Both parties relied on and quoted from the Judgment of Laffoy J. in **Symonds Cider & English Wine Co. Ltd. -v- Showerings (Ireland) Ltd.** [1997] 1ILRN 481.

24. It seems to me that the governing principle is to first consider if the Plaintiff were to succeed in his claim for a permanent injunction at the trial whether an award of damages, for the loss he would have sustained before the trial as a result of the continuing acts of the Defendant, would be adequate compensation.

25. The nature of copyright is such that while the owner may voluntarily permit licence of consent to the use in whole or part of a protected work (for a fee or otherwise) it is a right that can not be wrested from the owner by a person even tendering the fee in full. The terms and conditions, if not agreed upon, cannot be imposed by the applicant proceeding in the face of objection and seeking to publish in whole or part a protected work in the hope or knowledge that it can pay a sum of money. The Courts cannot by failing to recognise and uphold the right condemn - most particularly at interlocutory stage when so many facts are in dispute, and points of law require determination - the owner of the right to be content until the hearing of the action to permit the breach of a right in respect of which there is a statutory presumption.

26. For the Defendant it was submitted that if an interlocutory injunction is granted it will most seriously frustrate and damage the enterprise undertaken. In my judgment the granting of an interlocutory injunction could not determine the final outcome of the whole proceedings. It may very well cause loss and damage to the Defendant. Both parties expressed to me their willingness and ability to meet a claim in damages by their respective undertakings.

27. The Defendant queried the nature and extent of the loss of the Plaintiff. This is stated in the original grounding Affidavit of the Plaintiff thus:-

*"...the Estate seeks to protect the integrity of the reputation of James Joyce as a major literary figure, and to protect the spirit, letter and integrity of his works. I say and believe that this matter is not simply about the amount of a licence fee for the use of a given set of extracts; it is more importantly about the source of the material for the extracts and the input the Estate would have in relation to the treatment of those sources. The Estate would not licence the use of extracts from the Danis Rose edition in any*

*circumstances, and regardless of any fee proffered, because it takes such fundamental issue with the manner in which James Joyce's great work Ulysses has been violated in that edition."*

28. In my opinion this alleged loss is not quantifiable or capable of being compensated by an award of damages. In coming to this view I am not unmindful of the reputation of the Defendant or its primary educational role. The fact that the book is intended not to make a loss and be profitable does not make it primary or sole purpose commercial. However in all the circumstances of the case the Plaintiff is entitled to succeed and have the relief sought by way of injunction and I order accordingly.

---

© 2000 Irish High Court

**BAILII:** Copyright Policy | Disclaimers | Privacy Policy | Feedback
URL: *http://www.bailii.org/ie/cases/IEHC/2000/70.html*