Maria K. Nelson (State Bar No. 155,608)
mknelson@jonesday.com
Anna E. Raimer (State Bar No. 234,794)
aeraimer@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Attorneys for Defendants
SEÁN SWEENEY AND THE ESTATE OF JAMES JOYCE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL LOEB SHLOSS,<br><br>Plaintiff,<br><br>v.<br><br>SEÁN SWEENEY, in his capacity as trustee of the Estate of James Joyce, and THE ESTATE OF JAMES JOYCE,<br><br>Defendants. | Case No. CV 06-3718 JW HRLx<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE TO STRIKE, CAROL LOEB SHLOSS'S AMENDED COMPLAINT**<br><br>Date: **January 22, 2007**<br>Time: **9:00 a.m.**<br>Judge: **The Honorable James Ware** |

LAI-2840193v4

Case No. CV 06-3718 JW HRL
DEFS.' REPLY TO OPP. TO MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. STATEMENT OF MATERIAL FACTS ............................................................................ 2

    A. James Joyce Scholarship Is Alive and Well ............................................................... 2

    B. Shloss's Book Is Not a Work of Scholarship, and the Website Does Not Contribute to Scholarship ........................................................................................... 3

    C. Individuals Are Entitled to Destroy Their Own Correspondence ............................. 3

    D. No Papers Were Improperly Removed from the National Library of Ireland ......... 4

    E. The 2006 Website Contains Materials Not Excised from Shloss's Book ................. 4

III. DISCUSSION ....................................................................................................................... 5

    A. Shloss Failed to Prove She Had a Reasonable Apprehension of Suit by Defendants for Copyright Infringement When the Complaint Was Filed ................ 5

        1. The Correspondence Used in Support of the Opposition Does Not Show an Actual Controversy Exists ............................................................. 5

        2. General Warnings and Requests for Privacy May Not Form the Basis of Reasonable Apprehension in a Copyright Infringement Suit ................... 7

        3. Any Apprehension Experienced by Shloss Was Not "Reasonable." .......... 8

        4. Other Litigation in which the Defendants Have Been Involved Could Not Give Rise to a Reasonable Apprehension of Suit ................................ 10

        5. Defendants' Covenant Not to Sue Covers the Controversy ...................... 10

    B. This Court Should Use Its Discretion and Dismiss this Academic Debate ............ 11

    C. In the Alternative, the Motion to Strike Is Proper and Should Be Granted ........... 11

        1. Shloss's Affirmative Defenses Are Insufficient and Should Be Stricken ......................................................................................................... 11

        2. The Validity of the Copyright in the 1922 Ulysses Is Immaterial ............ 13

        3. Allegations in the Amended Complaint Are Legally Insufficient, Impertinent and Scandalous and Should Be Stricken .................................. 14

    D. Attorneys' Fees Should be Granted to Defendants Who Have Been Forced to Unnecessarily Defend Against this Lawsuit ......................................................... 14

IV. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page

### Cases

*Aetna Life Ins. Co. v. Haworth,*
   300 U.S. 227 (1937) ............................................................................................................ 11

*Assessment Techs of WI, LLC v. WIREdata, Inc.,*
   350 F.3d 640 (7th Cir. 2003) .............................................................................................. 12

*Britesmile, Inc. v. Discus Dental, Inc.,*
   2005 U.S. Dist. LEXIS 30855 (N.D. Cal. 2005) ............................................................. 7, 8

*Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health & Human Servs.,*
   532 U.S. 598 (2001) ............................................................................................................ 14

*Campbell v. Acuff-Rose Music, Inc.,*
   114 S.Ct. 1164 (1994) .......................................................................................................... 7

*City of Rialto v. Department of Defense,*
   2004 U.S. Dist. LEXIS 27122 (C.D. Cal. 2004) ............................................................... 13

*Corcoran v. Columbia Broad. Sys.,*
   121 F.2d 575 (9th Cir. 1941) .............................................................................................. 15

*Dunn Computer Corp. v. Loudcloud, Inc.,*
   133 F. Supp. 2d 823 (E.D. Va. 2001) ................................................................................ 10

*Elvis Presley Enterprises, Inc. v. Passport Video,*
   349 F.3d 622, 626 (9th Cir. 2003) ....................................................................................... 9

*Field Container Co., L.P. v. Somerville Packaging Corp.,*
   842 F.Supp. 338 (N.D. Ill. 1994) ......................................................................................... 8

*Fogerty v. Fantasy, Inc.,*
   510 U.S. 517, 114 S.Ct. 1023 (1994) ................................................................................ 15

*Keene Corp. v. Cass,*
   908 F.2d 293 (8th Cir. 1990) .............................................................................................. 15

*K-Lath v. Davis Wire Corp.,*
   15 F. Supp. 2d 952 (C.D. Cal. 1998) ................................................................................... 7

*Maljack Prods. Inc. v. Palisades Entm't,*
   36 U.S.P.Q.2d 1281 (C.D. Cal. 1995) ............................................................................... 15

*Maljack Prods., Inc. v. Goodtimes Home Video Corp.,*
   81 F.3d 881 (9th Cir. 1996) ................................................................................................ 15

*Mattel v. Walking Mountain Productions,*
   353 F.3d 792 (9th Cir. 2003) .............................................................................................. 15

*Morse v. Weingarten,*
   777 F. Supp. 312 (S.D.N.Y. 1991) .................................................................................... 13

*New Era Publ'ns Int'l v. Henry Holt & Co.,*
   695 F. Supp. 1493 (S.D.N.Y. 1988) .................................................................................. 12

*Paramount Pictures Corp. v. ReplayTV,*
   298 F. Supp. 2d 921 (C.D. Cal. 2004) ............................................................................... 11

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,*
   57 F.3d 1051 (Fed. Cir. 1995) .............................................................................................. 8

## TABLE OF AUTHORITIES
(continued)

Page

*Purex Corp., Ltd. v. General Foods Corp.*,
  318 F. Supp. 322 (C.D. Cal. 1970) .................................................................................... 11

*QAD, Inc. v. ALN Associates, Inc.*,
  770 F. Supp. 1261 (N.D. Ill. 1991) ..................................................................................... 12

*Shoom, Inc. v. Electronic Imaging Sys. of Am., Inc.*,
  2006 U.S. Dist. LEXIS 35494 (N.D. Cal. 2006) .................................................................. 7

*Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*,
  363 F.3d 1361 (Fed. Cir. 2004) ......................................................................................... 8, 9

*Skydive Arizona, Inc. v. Quattrochi*,
  2006 U.S. Dist. LEXIS 63299 (D. Ariz. 2006) .................................................................. 13

*Solenoid Devices, Inc. v. Ledex, Inc.*,
  375 F.2d 444 (9th Cir. 1967) ................................................................................................ 6

*State of California v. United States*,
  512 F. Supp. 36 (N.D. Cal. 1981) ...................................................................................... 13

*Wailua Associates v. Aetna Casualty and Surety Co*,
  183 F.R.D. 550 (D.Haw. 1998) ........................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(f) ................................................................................................................ 11

- iii -

Case No. CV 06-3718 JW HRL
DEFS.' REPLY TO OPP. TO MOTION TO DISMISS

I. **INTRODUCTION**

In her Opposition to Defendants' Motion to Dismiss, Carol Loeb Shloss ("Shloss") claims that Seán Sweeney and the Estate of James Joyce (hereinafter "Defendants"), as well as Stephen James Joyce ("Joyce"), directed a "campaign of obstruction" against her to prevent publication of a biography on Lucia Joyce. The evidence does not support such an assertion. Shloss did in fact write a book about Lucia Joyce, and no lawsuit was filed by the Defendants. After the book was published, Shloss decided to publish a website containing material that her publishers cut from her book because she wanted to make the book "better." Shloss provided a copy of this website to Defendants and invited them to take action. They did not. Instead, Shloss filed this suit. Defendants' response was to covenant not to sue, thus ending any possible case or controversy.

Shloss added materials to her website after the litigation was filed – with no explanation as to what the materials are, or why they were added only after the fact – claiming them to be covered by the Amended Complaint. However, contrary to Shloss's assertion, the Amended Complaint does not reflect the revision or directly reference the additional materials. (Shloss Opposition to Motion to Dismiss ("Opp.") p. 17; Olson Decl. Ex. C.) Neither were the materials ever presented to Defendants before Shloss filed this suit. Therefore, it is impossible for them to be the source of a reasonable apprehension of a lawsuit. Shloss would have this Court believe that general assertions about broad categories of materials constitute threats of litigation. A fair use analysis, however, can only be made on a case-by-case basis, looking at specific materials and how they are used. Shloss's claim that general statements made in 2002 gave rise to an objectively reasonable apprehension of a lawsuit as to specific materials she added to her website and revealed to Defendants only four years later, *after* she filed suit, is just plain wrong.

Shloss's baseless allegations obscure these basic facts. Moreover, her version of events is unconvincing. The letters submitted as proof of the "reasonableness" of Shloss's apprehension contain generalized warnings, requests for privacy, statements of copyright ownership and an acknowledgement of what Shloss could do without objection – not threats of litigation. The words that Shloss employs to support a finding that an actual controversy exists demonstrate two things: (1) that Joyce refused to assist Shloss in writing a book on private family matters, and (2)

Joyce's belief that a book written by Shloss would be full of careless errors that would destroy the integrity, spirit and letter of works in which he owns the copyright. These cannot constitute the basis of an objectively reasonable apprehension that Defendants would sue for copyright infringement on the additional specific materials Shloss now wants to put on her revised website.

Shloss's Amended Complaint, therefore, must be dismissed. In the alternative, Defendants respectfully request that Shloss's allegations of copyright misuse and unclean hands, as well as her request for a declaration that the 1922 *Ulysses* is in the public domain, be dismissed because they are legally and/or factually insufficient, and striking them will streamline this case.

## II.  STATEMENT OF MATERIAL FACTS

In her Opposition, Shloss puts forward a number of myths. Many of her allegations are exaggerated or demonstrably false. When her fabrications are unraveled, as detailed below, there can be no finding that Shloss had an objectively reasonable apprehension of being subject to litigation over the Additional Materials on her 2006 Website.

### A.  James Joyce Scholarship Is Alive and Well.

Throughout the Amended Complaint and Opposition, Shloss intimates that Defendants' conduct hinders scholarship regarding James Joyce. However, scholars continue to write about James Joyce and his works on a regular basis, and this scholarship takes place without any objection by or interference from the Defendants. By way of example, many journals currently published are specifically devoted to Joyce scholarship, including *James Joyce Broadsheet, James Joyce Literary Supplement, A Finnegans Wake Circular, European Joyce Studies, James Joyce Quarterly, Genetic Joyce Studies, Hypermedia Joyce Studies* and *Joyce Studies Annual*. (Dozier Decl. at ¶ 2.) Defendants have filed no lawsuits in connection with these publications.

In the last three years (2004-2006), over 300 works, including books, theses, dissertations, videos, songs and other pieces, were published about James Joyce and/or his writings. (Dozier Decl. at ¶ 3.) Defendants did not sue over any of these works. Given that at least 100 pieces related to James Joyce are published each year, Shloss's ability to point to only a few cases in the last ten years in which the Defendants successfully litigated their copyright interests (Opp. p. 8), clearly disproves that any reasonable apprehension could be based on these cases.

B. **Shloss's Book Is Not a Work of Scholarship, and the Website Does Not Contribute to Scholarship.**

Shloss provides us with an interesting theory: "There is no doubt scholarship suffered as a result of excising a substantial portion of Shloss's primary sources." (Opp. p. 9.) Shloss thereby implies that her faction on Lucia Joyce should be categorized as part of the notable scholarship on James Joyce that is published each year. However, Shloss's book is a biography of Lucia Joyce, not James Joyce. Lucia Joyce was not in the public eye; by Shloss's own accounts, she actually withdrew from the limelight. Shloss herself made Lucia the subject of public scrutiny. Moreover, Shloss's book makes numerous, unsubstantiated claims about Lucia, including that Lucia was, in fact, misdiagnosed. (Raimer Decl. ¶ 73) This extraordinary assertion is despite the fact that Shloss never met Lucia Joyce and, although Shloss may claim to be an "academic," her accomplishments do not include a medical or psychology degree. It is understandable that Stephen Joyce had no interest in helping Shloss "re-psychoanalyze" his unfortunate aunt and, indeed, felt strongly about the endeavor.

Moreover, the "excised" material contained in the 2005 Website adds no further support to the conjectures on the life of Lucia Joyce contained in Shloss's book, but instead is largely repetitive of what already was published.[1] (Raimer Decl. at ¶¶ 4-73.) Publication of the material in the 2005 Website, therefore, would not have saved Shloss's book from the criticism, contained in numerous reviews, that it was full of suppositions and imaginations. (Dozier Decl. at ¶ 4.) If the 5-7 pages of material on the 2005 Website truly contain the "primary sources for much of [the] scholarship" that Shloss was allegedly forced to delete (Opp. p. 1), then reviewers were quite accurate that Shloss's book is "more like an exercise in wish fulfillment than a biography." (Shloss Decl., Ex. M, p. 11.) In fact, according to her editor, the deletions made her work better, not worse. Shloss herself acknowledged that the cuts were made by her editor in part to make the book more readable. (Shloss Decl., Ex. K.)

C. **Individuals Are Entitled to Destroy Their Own Correspondence.**

---

[1] It is curious that Shloss continues to assert that thirty pages of material were cut from her 400-page manuscript (*See, e.g.,* Opp. p. 9), when the material on the 2005 Website would only constitute approximately 5-7 pages of a book.

1    Shloss declares that the destruction of documents from Lucia Joyce by Stephen Joyce is a
2    direct attempt to impede her work and that of others in the Joyce industry. However, Joyce has
3    every right to destroy correspondence that was written to him or by him. Joyce also was given
4    explicit instructions by Samuel Beckett to destroy correspondence Mr. Beckett wrote to Lucia.
5    (Beckett Decl., Ex. A; Shloss Decl., Ex. A.) While Shloss does not approve, it is neither her right
6    nor her business to tell others what they should do with their personal correspondence.

### D. No Papers Were Improperly Removed from the National Library of Ireland.

Shloss has repeatedly alleged that Stephen Joyce improperly removed documents from the National Library of Ireland despite having no personal knowledge of the facts. (Opp. 4.) In fact, Stephen and Solange Joyce received express authorization from the National Library of Ireland and the then-Irish Government to remove certain documents, which authorization was consistent with the wishes of Paul Léon, the donor of the papers in question. (Donlon Decl. at ¶¶ 5-8.) Thus, Shloss's false allegation that such removal was improper is simply another attempt to sully Joyce's reputation and should be stricken from the Amended Complaint.

### E. The 2006 Website Contains Materials Not Excised from Shloss's Book.

Shloss claims that her 2005 Website was complete and definite at the time of suit. (Opp. p. 2, Olson Decl. at ¶ 3.) She also claims that her 2006 Website is finished and complete now. (Olson Decl. at ¶ 6) Both cannot be true. By its very definition, a work that is "complete and definite" is not supplemented, and Shloss makes no attempt to explain why the 2005 Website was supplemented if it was "complete and definite." It is apparent, however, that the Additional Material was never included in the manuscript for the book in the first place.

The material on the 2005 Website that was allegedly omitted from the book by her publishers is linked to the point in the book at which the material would have been located. (Shloss Decl. at ¶ 50; Olson Decl., Ex. A.) The book was published in 2003 so all the material, which Shloss claims to constitute the "primary sources for much of her scholarship," was known and could have been included on the website when this lawsuit was filed. In contrast, the supplemental material included on the 2006 Website is not linked to any part of the book. (Olson Decl., Ex. B.) If the website had truly been revised to "add additional materials that had been cut

from her manuscript" (Opp. p. 11), then such revisions could and should have been made prior to filing the Complaint, and Shloss should be able to point to the page from which the supplementary material was cut. She does not.

If the website was "complete and definite at the time of suit" (Opp. p. 2), then the supplemental material is unnecessary, and Defendants' covenant not to sue ends this controversy. If the supplemental material is necessary to this controversy, it was not asserted at the time this suit was filed, and therefore an actual case or controversy has not existed at all stages of this litigation as required by law. Either way, the suit must be dismissed.

## III. DISCUSSION

For this lawsuit to proceed, Shloss as the declaratory plaintiff must have proven the existence of a case or controversy by a preponderance of the evidence. However, no actual controversy exists because Shloss was not prepared to publish the website in its present form at the time the Complaint was filed, and Shloss failed to prove Defendants' conduct created a reasonable apprehension that she would face a lawsuit should her website be published.

### A. Shloss Failed to Prove She Had a Reasonable Apprehension of Suit by Defendants for Copyright Infringement When the Complaint Was Filed.

At the time the Complaint was filed in June 2006, Shloss did not have a sufficient basis to believe that Defendants would file a suit for copyright infringement based on her use of the material on the 2005 Website. The correspondence cited does not have the language or immediacy necessary to show apprehension of suit. Further, an apprehension of suit must be objectively reasonable. Shloss instead has shown that she is the *only* person who believed that she would be subject to a lawsuit by Defendants.

#### 1. The Correspondence Used in Support of the Opposition Does Not Show an Actual Controversy Exists.

Shloss paints a picture of her fear before publishing her book on Lucia Joyce because of the "threats" by Joyce directed to Shloss and her publishers. However, reading Stephen Joyce's letters in their entirety, rather than the quotes cited by Shloss out of context, paints a different picture. Joyce objected to Shloss's plan for a book about Lucia Joyce because it is an invasion of privacy. A request to respect privacy is not a threat of litigation. Joyce clearly and repeatedly stated that his goal has never been to censor anyone but to protect family privacy **and** defend the

1   integrity, spirit and letter of James Joyce's writings. (*See, e.g.*, Shloss Decl., Ex. C & Ex. G.)
2   The theme of Joyce's correspondence regarding Shloss's book on Lucia is self-evident – Shloss is
3   sloppy and will write a bad book, and Joyce has no intention of helping her to do so.[2] (Shloss
4   Decl., Ex. C; Friedman Decl., Ex. 3 & Ex. 5.)

5          The letters directed to Shloss's publisher Farrar, Straus & Giroux ("FSG") are similarly
6   taken out of context.[3] In the November 2002 letters to Mr. Galassi, Joyce makes no threats, but
7   simply states his disagreement with their concept of fair use and points out that he is the owner of
8   the relevant copyrights. (Shloss Decl., Ex. I & Ex. J; Galassi Decl., Ex. 1 & Ex. 2.) Nothing in
9   these letters could form an apprehension of suit. *See Solenoid Devices, Inc. v. Ledex, Inc.*, 375
10  F.2d 444, 445 (9th Cir. 1967) ("The banter between parties, short of a threat to file a suit or
11  harassing or threatening to harass the trade (the purchasers of the devices) goes far to undercut the
12  requisites of an actual controversy.")

13         Further, Shloss continually quotes a phrase from correspondence to Leon Friedman,
14  counsel for FSG, that "there are more ways than one to skin a cat." (Friedman Decl., Ex. 3.)
15  However, when the remainder of the letter is read, it is evident that the phrase does not insinuate
16  litigation because Joyce goes on to say that this was "already proving to be true" in November
17  2002, before the book was published.[4] *Id.* The letter then discusses how another book published
18  by FSG was "a pretty dismal book," which Joyce suggested would be the result of the publication
19  of Shloss's book on Lucia. *Id.* As Joyce predicted, the pigeons from California did come "home
20  to roost with very ruffled feathers." Shloss suffered the consequence that her conjectural faction
21  on Lucia was, understandably, poorly reviewed. *Id.*

22         In addition, the correspondence (or Shloss's twist – the "threats") sent to Stanford's

---

[2] For example, Shloss's carelessness is shown when Joyce must correct her claim to have had tea at his home in "Ivry" when Shloss actually visited Joyce and his wife, Solange, at their home in Paris on the Rue de Civry. (Shloss Decl., Ex. D & Ex. E.)

[3] Though Shloss attaches the correspondence to her declaration, she provides no evidence that she was actually privy to the contents of these letters prior to filing suit. Also, none of the allegations made in the letters were directed to her but relate specifically to the publication of her book – not material on her website.

[4] Similarly, Shloss suggests that Joyce's reference to "repercussions" refers to litigation. However, following the statement regarding repercussions, Joyce states: "This is not a threat but a statement of fact…More often than not Ms. Shloss simply does not know what she is doing and confuses one thing with another…I would respect that in view of the type of person we are dealing with, any book Ms. Shloss writes will be sprinkled with this type as well as other mistakes." (Friedman Decl., Ex. 5.) Thus, when read in context of the entire letter, the "repercussions" Joyce alludes to involve a poorly written, factually inaccurate book.

1 Provost, John Etchemendy, by Joyce was a direct result of Joyce first having received
2 correspondence from Shloss's counsel on Stanford stationary. (*See* Shloss Decl. at ¶¶ 53, 55.)
3 Though Shloss's counsel tried to tempt Defendants into filing suit in connection with the 2005
4 Website, Defendants did not take the bait. Legal battles are costly and time-consuming, and
5 Defendants choose which ones are worth fighting. Instead, Joyce wrote to Mr. Etchemendy to
6 advise him of the situation with Shloss, to state surprise that Stanford was involved in the matter
7 and to opine that the deployment of Stanford Law School's resources against the Estate was
8 "inappropriate and unprofessional." (Etchemendy Decl., Ex. A.) When Mr. Etchemendy replied
9 that Stanford was not a party to the representation of Shloss nor involved in her effort to publish
10 the website, no further correspondence was sent to him by Joyce. (Etchemendy Decl., Ex. B.)

In sum, the language of the letters does not support Shloss's irrational fear of suit. Instead, Shloss's editor and others – the people who objectively evaluated Joyce's statements at the time they were made – concluded there was no real threat of litigation. Objective words of the copyright holder are controlling, not the subjective apprehensions of the plaintiff. *K-Lath v. Davis Wire Corp.*, 15 F. Supp. 2d 952, 962 (C.D. Cal. 1998) (noting "a subjective apprehension is insufficient without objective substance"). *See also Shoom, Inc. v. Electronic Imaging Sys. of Am., Inc.*, 2006 U.S. Dist. LEXIS 35494, at *14-22 (N.D. Cal. 2006) (dismissing a declaratory judgment action because the defendants' letter and subsequent emails contained vague language that did not directly threaten litigation or require urgent action by the recipient and therefore could not have created a reasonable apprehension of an infringement action).

    **2.    General Warnings and Requests for Privacy May Not Form the Basis of Reasonable Apprehension in a Copyright Infringement Suit.**

Shloss makes the unsupportable contention that the requests for privacy and warnings by Stephen Joyce – alleged to be "targeted at *any* publication of Lucia-related material" (Opp. p. 3) – could result in an apprehension of suit on a specific work. A fair use analysis must be made on a case-by-case basis, looking at the specific materials used. *Campbell v. Acuff-Rose Music, Inc.*, 114 S.Ct. 1164, 1170 (1994). Therefore, statements concerning general categories of materials are insufficient to create a reasonable apprehension. *See also Britesmile, Inc. v. Discus Dental, Inc.*, 2005 U.S. Dist. LEXIS 30855, at *11-13 (N.D. Cal. 2005) (holding no reasonable

apprehension of suit existed where cease and desist letters referred to eight patents, but did not specify which patent was infringed, and only three of the patents were the subject of the infringement suit).

Shloss is confusing statements regarding her book with statements regarding the material on the website[5], and then confuses the material on the 2005 Website, over which there is no controversy, with the Additional Material on the 2006 Website. As Shloss admits, "nearly all of the Estate's threats were issued before the creation and disclosure of the Website in any form." (Opp. p. 18.) The alleged "threats" (if they could be so interpreted) made in 2002 regarding general material that may or may not be included in a book on Lucia Joyce simply cannot form the requisite apprehension of facing liability for infringement of specific material that Shloss currently wants to publish on the 2006 Website. *Britesmile*, 2005 U.S. Dist. LEXIS 30855, at *11-13. In determining whether a plaintiff had reasonable apprehension of suit, it has been held that if significant changes are made to a product (and changing the medium in which the product is published is a significant change), only that version implicated as possibly infringing would be considered in evaluating reasonable apprehension of litigation. *See, e.g., Field Container Co., L.P. v. Somerville Packaging Corp.*, 842 F.Supp. 338, 342 (N.D. Ill. 1994).[6]

### 3.   Any Apprehension Experienced by Shloss Was Not "Reasonable."

The law requires that the requisite apprehension for an actual controversy be objectively reasonable. Yet, much of the support provided by Shloss to illustrate her apprehension of facing a suit for copyright infringement by Defendants involves her correspondence to others. (*See, e.g.,* Shloss Decl., Ex. F, Ex. K & Ex. L.) "The 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995). Shloss provides no evidence, in the form of responses to

---

[5] Shloss is not the proper party to provide support for many of the accusations asserted against Defendants, and such evidence is improper. For example, Shloss was not a party to the alleged conversation between Stephen Joyce and John Glusman, and cannot testify that such conversation occurred, how long it lasted or what was said. (Opp. p. 6; Shloss Decl. ¶¶ 29-30).
[6] Shloss mistakenly relies on the Federal Circuit case *Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.,* in support of the contention that the medium in which the material is published is irrelevant. In *Sierra*, the Court found that there were three distinct technologies at issue, and each had to be considered separately for jurisdictional purposes. 363 F.3d 1361, 1373 (Fed. Cir. 2004). Similarly, the 2006 Website must be considered separately.

her correspondence or otherwise, to show that other parties believed that she would be subject to an imminent copyright infringement suit. To the contrary, Shloss's publisher did not believe the Defendants or Stephen Joyce would file suit against her. (Shloss Decl., Ex. K.)

To support her unfounded apprehension of suit, Shloss also exaggerates events. For example, Shloss twists the facts regarding her conversation with Sam Slote by alleging that Mr. Slote informed her that "he would be testifying against her, too." (Opp. p. 9.) In reality, Mr. Slote disclosed his involvement in the Rose trial to Shloss as a good faith gesture, and never told her that he intended to serve as an expert witness against her. (Slote Decl. at ¶¶ 3, 5). Mr. Slote was never asked to act in such a capacity by Joyce or Defendants, nor did he even have any discussions with them regarding possible litigation against Shloss. (Slote Decl. at ¶¶ 3, 4, 6).

If Shloss did harbor an unreasonable apprehension of suit in connection with her book, the fact that no copyright infringement suit was filed by Defendants after it was published should have alleviated her fears. Significantly, Shloss's book included quotes from much of the material that Shloss now claims Joyce threatened to "take any necessary action" to protect, including quotes from letters and manuscripts written by Lucia Joyce, letters written by James Joyce that concern Lucia, and writings by Joyce's parents, Giorgio (George) and Helen Kastor Joyce. (Raimer Decl. at ¶ 2.) However, no action was ever taken by Defendants or Joyce.

Moreover, Shloss admits that she changed her website only *after* she filed the Complaint. (Olson Decl. at ¶ 4) Shloss could not have had a reasonable apprehension of litigation when filing her Amended Complaint as she never presented the Additional Materials on the 2006 Website to Defendants before filing suit. Jurisdiction over the Additional Materials must be assessed separately from the 2005 Website. *See Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*, F.3d 1361 at 1373. Defendants could not have accused the 2006 Website until they saw it and could assess whether Shloss's use was fair. *Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F.3d 622, 626 (9th Cir. 2003) ("There was no way for Plaintiffs to assess whether Passport's use would be fair until they saw the final product."). Even after seeing the revised version, Defendants have done nothing to create an apprehension of suit. *See, e.g., Field Container*, 842 F.Supp. at 342 (holding letter advising declaratory plaintiff of patent rights in

1  original version of product would not be considered in determining whether plaintiff had
2  reasonable apprehension of suit by owner of patents as to modified version of the product).
3    Defendants experienced prejudice in the time and cost associated with evaluating the 2006
4  Website and comparing the supplementary material with the relevant copyrighted works. For
5  example, significant cost was incurred in evaluating Shloss's use of Lucia Joyce's "My Dreams"
6  on the 2006 Website. Almost half of this manuscript was quoted on the 2006 Website, and the
7  quoted material was riddled with errors. (Raimer Decl. at ¶ 3.) Shloss's inability to transcribe a
8  journal with accuracy further testifies to her sloppiness as a "scholar," and illustrates why Joyce
9  was unwilling to assist Shloss with her endeavors.

### 4. Other Litigation in which the Defendants Have Been Involved Could Not Give Rise to a Reasonable Apprehension of Suit.

Shloss provides this Court with examples of other lawsuits in which the Defendants have asserted their rights *and won*.[7] Unless Shloss believed that her work also infringed the copyrights held by the Defendants, these lawsuits should not have concerned her. These few cases, in which Shloss was not involved, cannot give rise to a reasonable apprehension of suit, especially where those previous suits related to different material than that allegedly cut from Shloss's book. *See, e.g., Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823 (E.D. Va. 2001) (finding conduct by the defendant not directed at plaintiff will not form the basis of a case or controversy). It is obvious from the small number of lawsuits brought by Defendants, and their record of success, that Defendants' battles have been carefully chosen.

### 5. Defendants' Covenant Not to Sue Covers the Controversy.

Shloss states that the purpose of her website is to provide a resource so the public can view material cut from her book. (Shloss Decl. at ¶ 49.) Defendants have covenanted not to sue Shloss on the 2005 Website. As discussed above, the supplemental material on the 2006 Website was not included in Shloss's book. Thus, Defendants' covenant resolves the present controversy by allowing Shloss to publish all the material deleted from the book by her publishers.

Any apprehension that Shloss could possibly claim to suffer dissipated when the Estate

---

[7] Shloss also provides this Court with the declaration of Mr. Pierce, who the High Court of Ireland deemed to infringe Defendants' copyrights in the works of James Joyce. It is unclear why Shloss has attached this declaration as this evidence only shows that Defendants have asserted legitimate copyright claims and have been successful in those cases they have chosen to pursue.

1  covenanted not to sue her on the 2005 Website. Shloss's reasonable apprehension of suit must be
2  based on new facts. *Paramount Pictures Corp. v. ReplayTV*, 298 F. Supp. 2d 921, 926-27 (C.D.
3  Cal. 2004) (finding new facts needed to substantiate claim or controversy where subsequent
4  events ended the original controversy and copyright holder covenanted not to sue).

### B. This Court Should Use Its Discretion and Dismiss this Academic Debate.

The Opposition asserts that the "central controversy here is whether the Website identified in Shloss's Amended Complaint infringes the Estate's copyrights, and whether the Estate can use those copyrights to suppress scholarship." (Opp. p. 2.) This statement makes clear that Shloss and her attorneys are improperly waging an academic debate in this Court. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) ("A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.")

Shloss argues that it would be improper for the Court to dismiss this case because she would be faced with the same dilemma in which she started – to publish her website and face possible damages or "stand silenced." Shloss, of course, ignores the fact that she can publish the 2005 Website, which includes all the material that Shloss claims was deleted from her book, and be subject to no liability based on Defendants' covenant not to sue.

### C. In the Alternative, the Motion to Strike Is Proper and Should Be Granted.

The Amended Complaint includes insufficient defenses and matters that are redundant, immaterial, impertinent and scandalous, which material may be stricken. Fed. R. Civ. P. 12(f).

#### 1. Shloss's Affirmative Defenses Are Insufficient and Should Be Stricken.

The causes of action for copyright misuse and unclean hands should be stricken from the Amended Complaint because the allegations used by Shloss to support these claims have been disproved by Defendants. Further, these defenses are invalid as a matter of law in the present case, so the determination of this motion to strike these defenses "should be made now, in order to avoid the needless expenditures of time and money in litigating" these issues. *Purex Corp., Ltd. v. General Foods Corp.*, 318 F. Supp. 322, 323 (C.D. Cal. 1970).

Shloss asks this Court to broadly apply the copyright misuse doctrine to any use "violative of public policy," though no court has yet done so under facts similar to the present case (as those

facts are skewed by Shloss). Shloss's counsel admits that with regard to a copyright misuse claim, it is "true that the Ninth Circuit has not addressed the issue outside the context of a restrictive license." (Dozier Decl. at ¶ 5.) Because Defendants have not committed any antitrust violations or entered any unduly restrictive license agreements, this claim is legally insufficient.[8]

Even if such a broad reading of the copyright misuse doctrine were proper, which it is not, Shloss's claim still fails. The copyright misuse claim is based on: 1) the "Estate's use of its copyright to protect privacy interests," and 2) its "attempt to exert control over material in which it plainly has no copyrights at all" (i.e., Lucia's medical records). (Opp. p. 21.) While Defendants have alleged that a priority of the Estate is to protect the privacy of the Joyce family, it has not stated that copyright interests are used for this purpose. Instead, as can be seen from the correspondence, Joyce's goals have been to protect family privacy (i.e., by not providing assistance with books on private family matters) ***and*** defend the integrity, spirit and letter of James Joyce's works. (*See, e.g.*, Shloss Decl., Ex. C & Ex. G.) Further, the privacy concerns in copyrighted material owned by Defendants or Joyce would be in connection with the Joyce family's unpublished letters, rather than the entirety of the material Shloss seeks to publish on her 2006 Website, including excerpts from published works.[9]

As the second basis for her copyright misuse affirmative defense, Shloss asserts that Defendants "purported to forbid" her to use Lucia Joyce's medical records. (Opp. p. 21.) Joyce's assertion was based on the understanding that medical records are not in the public domain and are protected by ethics and the Hippocratic Oath. (*See* Friedman Decl., Ex. 2.) This

---

[8] Other courts may have expanded the application of the copyright misuse doctrine outside of the antitrust context, unlike the Ninth Circuit, but only in cases in which the copyright owner has improperly filed suit for copyright infringement. *See, e.g., QAD, Inc. v. ALN Associates, Inc.*, 770 F. Supp. 1261 (N.D. Ill. 1991) (finding copyright misuse predicated on the public policy rationale of copyright law where the copyright holder incorrectly asserted to the Court that the material in question was original to the holder and used the misstatements to obtain an injunction and support a 3 year copyright infringement case); *Assessment Techs of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003) ("The argument for applying copyright misuse beyond the bounds of antitrust…is that for a copyright owner to use an infringement suit to obtain property protection…that copyright law clearly does not confer…is an abuse of process.")

[9] It is doubtful that the use of unpublished letters would stand up to a fair use argument. To quote from a case cited by Shloss, "If the protected document is highly personal, private and intimate, if the author has a strong personal interest in deferring publication, if the public interest in the contents is minimal and voyeuristic at best (as for example with confidential sorrowful letters of a private individual who is a subject of public concern only because of having been victimized by some terrible crime or misfortune), those might well be factors disfavoring a finding of fair use." *New Era Publ'ns Int'l v. Henry Holt & Co.*, 695 F. Supp. 1493, 1505 (S.D.N.Y. 1988).

understanding is further supported by recent decisions in the United Kingdom (where Lucia Joyce lived a large part of her life and where she died), which have held the duty of confidence attaching to medical records survives the death of the person to whom the records relate. (Dozier Decl. ¶¶ 6-7.) Nonetheless, these materials are not included on the 2006 Website and a claim based on their alleged misuse is irrelevant. *City of Rialto v. Department of Defense*, 2004 U.S. Dist. LEXIS 27122, at *34-*35 (C.D. Cal. 2004) (granting defendants' motion to strike plaintiffs' allegations because plaintiff cannot recover for injuries alleged). The copyright misuse claim has no legally or factually sufficient basis and should be stricken, along with the facts alleged in support.[10]

The unclean hands defense also must be dismissed. This claim is based on: 1) Defendants' incorrect claim that they were entitled to prevent Shloss from using Lucia's Joyce's writings and other materials, and 2) Defendants' "threats" against Shloss's employer and other unsupported interference with her work. (Am. Comp. at ¶¶ 138-140.) In fact, Defendants do own the copyright in Lucia's works, as Shloss acknowledges, and the correspondence to Shloss's employer at Stanford simply relays the factual situation without containing anything that could be interpreted as "threats." Shloss has provided no evidence to support this claim.

### 2. The Validity of the Copyright in the 1922 *Ulysses* Is Immaterial.

The claim that the 1922 version of *Ulysses* is in the public domain would unnecessarily complicate this litigation, and "where the motion may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken." *State of California v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981). Shloss's last minute addition of a number of *Ulysses* quotes and failure to show that the quotes were actually in her book prove that this issue is marginal (and merely the hobby of Shloss's counsel). Statements remote to the merits of the case may be stricken as immaterial and impertinent. *Morse v. Weingarten*, 777 F. Supp. 312 (S.D.N.Y. 1991) (granting

---

[10] The various allegations regarding third parties are especially improper as all references that do not relate to the relationship between the parties should be stricken. *Skydive Arizona, Inc. v. Quattrochi*, 2006 U.S. Dist. LEXIS 63299, *32-33 (D. Ariz. 2006) (granting defendants' motion to strike allegations that concerned defendants' conduct with third parties and businesses in other jurisdictions).

defendant's motion to strike references in the complaint to his criminal conviction and income because such references were immaterial). Thus, the allegations referring to *Ulysses* being in the public domain (as in ¶¶ 75, 109 and 111) should be stricken from the Amended Complaint.

### 3.  Allegations in the Amended Complaint Are Legally Insufficient, Impertinent and Scandalous and Should Be Stricken.

Shloss repeatedly makes unfounded allegations that Defendants have shown to be false. Shloss now admits that "Joyce and the Estate assert ownership of the copyrights in all written works of James Joyce and his daughter, Lucia Joyce," (Opp. p. 3.), so contrary allegations should be stricken. The allegations regarding the destruction of personal papers and removal of documents from the National Library of Ireland (¶¶ 26, 34) are also irrelevant and should be stricken. Shloss cannot assert a claim or recover for the destruction or removal of papers belonging to Defendants. Neither is there a connection between any destruction or removal of documents and Shloss's apprehension of suit, despite Shloss's allegations otherwise. (Opp. p. 24.)

Finally, according to the case cited by Shloss, *Wailua Associates v. Aetna Casualty and Surety Co*, 183 F.R.D. 550 (D.Haw. 1998), the repetitive nature of the claims does warrant the striking of certain material. Because one part of the allegations at issue in *Wailua* "simply repeats what was already alleged" and was thereby "unnecessary," the court found the allegations to be redundant and ordered them stricken. *Id.* at 556. Thus, here, ¶¶ 126-134, 138-140 of the Amended Complaint should be stricken as a pointless repetition of ¶¶ 87-105.

### D.  Attorneys' Fees Should be Granted to Defendants Who Have Been Forced to Unnecessarily Defend Against this Lawsuit.

Defendants have been dragged into this Court to defend against an unnecessary lawsuit filed by Shloss and her attorneys in an attempt to gain attention for themselves and their pet projects. The purpose of the Copyright Act supports rewarding Defendants for defending against the outrageous allegations made in the Amended Complaint. A dismissal of this action warrants the recovery of attorneys' fees and costs by Defendants.[11] *See Corcoran v. Columbia Broad.*

---

[11] The Supreme Court has construed the phrase "prevailing party" to mean "one who has been awarded some relief by the court." *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health & Human Servs.*, 532 U.S. 598, 603 (2001). By securing a dismissal of this case, Defendants avoid having to further appear and defend this matter, including participating in burdensome discovery, which would equate to a large judgment in terms of avoided attorneys' fees and expenses, and constitutes the requisite "some relief" that makes Defendants the "prevailing party." The Eighth Circuit case relied on by Shloss for the proposition that Defendants are not entitled to fees is completely inapplicable as it is civil rights case that dealt with attorneys' fees arising under 42 U.S.C. § 1988. *Keene Corp. v. Cass*, 908

1   *Sys.*, 121 F.2d 575, 576 (9th Cir. 1941) (finding copyright infringement defendant who "has been put to the expense of making an appearance and of obtaining an order for the clarification of the complaint" and is then voluntarily dismissed from the action is a "prevailing party" for purposes of an attorneys' fee award under 17 U.S.C. § 505); *Maljack Prods. Inc. v. Palisades Entm't*, 36 U.S.P.Q.2d 1281, 1292 (C.D. Cal. 1995) (same).

It is irrelevant whether Shloss's suit has promoted the purposes of the Copyright Act. The Ninth Circuit has determined that "under the Copyright Act, the question is whether a successful defense of the action furthered the purposes of the Act, not whether a fee award would do so." *Mattel v. Walking Mountain Productions*, 353 F.3d 792, 816 (9th Cir. 2003). Here, Defendants are forced to defend against an action by a plaintiff who had no reasonable apprehension of suit, and a successful defense of baseless claims warrants an award of attorneys' fees and costs.[12]

Shloss has not risked personal liability by filing this suit. She is represented by scores of attorneys acting *pro bono*, and admits that Stanford set up a legal fund on her behalf. This suit has earned Shloss free publicity for her book and herself. Defendants, in contrast, have been forced to expend significant amounts of time and money to fend off the objectively unreasonable factual and legal claims made against them for which they should be compensated. *See Maljack Prods., Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 889-90 (9th Cir. 1996) (upholding award of attorneys' fees incurred in defending factually unreasonable copyright claims).

## IV. CONCLUSION

Defendants respectfully request the Court to dismiss Shloss's Amended Complaint with prejudice and award attorneys' fees and costs, or grant Defendants' Motion to Strike.

Dated: January 8, 2007   Respectfully submitted,
JONES DAY
By: /s/
Maria K. Nelson
Counsel for Defendants Seán Sweeney And The Estate Of James Joyce

---

(continued...)
F.2d 293 (8th Cir. 1990). The Supreme Court has specifically noted that the policies underlying the requirements for attorneys' fees in civil rights cases are absent in copyright cases, and under the Copyright Act an award of attorneys' fees is left to the court's discretion. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 523, 114 S.Ct. 1023 (1994) (declining to follow civil rights analysis of attorney's fees given the policies of the Copyright Act and Civil Rights Acts are dissimilar).

[12] Shloss has not forced Defendants to "back down from" the use of the material on the 2005 Website. As noted *supra*, many of these same sources were quoted in Shloss's book, and Defendants did not file a copyright infringement suit against Shloss for such use.