1  Maria K. Nelson (State Bar No. 155608)
   mknelson@jonesday.com
2  Anna E. Raimer (State Bar No. 234794)
   aeraimer@jonesday.com
3  JONES DAY
   555 South Flower Street, Fiftieth Floor
4  Los Angeles, CA 90071-2300
   Telephone:  (213) 489-3939
5  Facsimile:   (213) 243-2539

6  Attorneys for Defendants
   SEAN SWEENEY, IN HIS CAPACITY AS TRUSTEE
7  OF THE ESTATE OF JAMES JOYCE, AND THE
   ESTATE OF JAMES JOYCE

8

9                UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11

12  CAROL LOEB SHLOSS,                  Case No. C 06 3718 JW HRL

13         Plaintiff,                   DECLARATION OF SAM SLOTE
                                        IN SUPPORT OF DEFENDANTS'
14     v.                               REPLY REGARDING ITS MOTION
                                        TO DISMISS
15  SEAN SWEENEY, in his capacity as
    trustee of the Estate of James Joyce, and   Date: January 22, 2007
16  THE ESTATE OF JAMES JOYCE,          Time: 9:00 a.m.
                                        Judge: Hon. James Ware
17         Defendants.

LAI-2838191v1

Declaration of Sam Slote C 06 3718 JW HRL

Dockets.Justia.com

I, Sam Slote, do hereby declare:

1.   I am a scholar of James Joyce and have worked in the field for sixteen years. I recently accepted an appointment as Lecturer in James Joyce Studies and Critical Theory at Trinity College, Dublin, effective January 8, 2007. I make this declaration in support of Sean Sweeney, in his capacity as Trustee of the Estate of James Joyce, as well as The Estate of James Joyce ("Defendants"), in the litigation brought against them by Carol Loeb Shloss. Except as otherwise stated, I have personal and first-hand knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently thereto.

2.   I have read that portion of The Declaration of Carol Loeb Shloss in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss in which she describes an encounter with me at a social function in June 2003, during the Joyce Conference in Tulsa, Oklahoma. I disagree with Ms. Shloss' description of that encounter, and I make this declaration to set forth my understanding of what happened during that conversation as well as its context.

3.   I have no recollection of ever telling Ms. Shloss that I intended to serve as an expert witness against her. I was certainly never asked to do so by Stephen James Joyce or anyone else connected with the Estate of James Joyce; nor did I ever discuss any possible litigation against Ms. Shloss with anyone connected with the Estate of James Joyce. In fact, I first heard of this when I was interviewed by D.T. Max for *The New Yorker* magazine in May 2006 when he asked me if I ever intended to serve as an expert witness against Ms. Shloss. At the time, the question struck me as odd and I responded, "Of course not."

4.   Prior to the Tulsa conference, the only communication I had with Mr. Joyce in reference to Ms. Shloss was to confirm that she was giving a talk at that conference. He never gave me any instructions or suggestions to do any act on his behalf and he never instructed me to report on Ms. Shloss or her paper.

5.  Because I had been engaged previously by the Estate to serve as an expert witness in their legal action against Danis Rose in 2001, I did not want Ms. Shloss to feel uncomfortable about my presence at the Tulsa conference (the fact that she had issues with the Estate was common knowledge among Joyce scholars at this time). Therefore, I felt it might be beneficial to be honest with her about my past involvement in the Rose trial. Consequently, at the social function Ms. Shloss references in her declaration, I told Ms. Shloss about my role in the Rose trial and that at some point after the conference Mr. Joyce would probably ask me about her paper. My purpose in doing so was not to alarm or threaten her; rather, it was what I intended to be a good faith gesture of full disclosure. Upon my telling her this, Ms. Shloss became quite agitated and accused me of being a "spy" for the Estate and refused to let me clarify the matter further. I believe her reaction and her characterization of our conversation in her declaration reflect a misunderstanding of what I tried to convey during our conversation. In other to allay her concerns, after Ms. Shloss refused to discuss the matter further with me, I asked Robert Spoo, who was present at the social function, to relay to her that I would not attend her paper, which I believe he did. I indeed did not attend the paper and avoided finding out anything about it. After the conference, the only conversation I recall with Mr. Joyce regarding Ms. Shloss was to tell him that I did not attend her paper.

6.  Other than this present statement, and the conversations with Mr. Joyce referenced above in ¶¶ 4-5, I do not recall any other involvement with the Estate of James Joyce in connection with Carol Loeb Shloss.

1
2
3   I declare under penalty of perjury under the laws of the United States of America that the
4   foregoing is true and correct.
5
    Executed in New York, New York this 22nd day of December, 2006.
6
7
8
9
10                                          By: /s/ Sam Slote
                                                Sam Slote
11
12
...
28