1  Maria K. Nelson (State Bar No. 155, 608)
   mknelson@jonesday.com
2  Anna E. Raimer (State Bar No. 234, 794)
   aeraimer@jonesday.com
3  Antionette D. Dozier (State Bar No. 244, 437)
   adozier@jonesday.com
4  JONES DAY
   555 South Flower Street
5  Fiftieth Floor
   Los Angeles, CA  90071-2300
6  Telephone:    (213) 489-3939
   Facsimile:    (213) 243-2539
7
   Attorneys for Defendants
8  SEÁN SWEENEY AND THE ESTATE OF JAMES
   JOYCE
9

10                UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| CAROL LOEB SHLOSS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SEÁN SWEENEY, in his capacity as trustee of the Estate of James Joyce, and THE ESTATE OF JAMES JOYCE,<br><br>　　　　Defendants. | Case No. CV 06-3718 JW HRLx<br><br>**DECLARATION OF ANTIONETTE D. DOZIER IN SUPPORT OF DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE, CAROL LOEB SHLOSS'S AMENDED COMPLAINT**<br><br>Date:　January 22, 2007<br>Time:　9:00 a.m.<br>Judge:　The Honorable James Ware |

LAI-2840531v1

declaration of antionette d. dozier
CV 06-3718 JW HRLx

1  I, Antionette D. Dozier, hereby declare that:

2      1.    I am an attorney at the law firm of Jones Day, counsel for Defendants Seán Sweeney and the Estate of James Joyce (hereinafter "Defendants"), and I have personal knowledge of the facts stated herein.

    2.    Attached hereto as <u>Exhibit A</u> are true and correct copies of pages from the websites of journals devoted to James Joyce scholarship. I located information on these journals on January 8, 2007. I found information on *The James Joyce Broadsheet* at http://www.leeds.ac.uk/english/staff/pages/staffindex.php?file=jjbroad; *The James Joyce Literary Supplement* at http://www.as.miami.edu/english/jjls/; *European Joyce Studies* at http://www.rodopi.nl/senj.asp?SerieId=JOYCE; *James Joyce Quarterly* at http://www.utulsa.edu/jjq/; *Joyce Studies Annual* at http://www.utexas.edu/utpress/journals/jjsa.html; *Genetic Joyce Studies* at http://www.antwerpjamesjoycecenter.com/GJS/; and *Hypermedia Joyce Studies* at http://hjs.ff.cuni.cz/main/hjs.php?page=about. The journal *A "Finnegans Wake" Circular* did not have a website, but it is a publication that is successor to *A Wake Newslitter* and mentioned on many websites, including http://www.joycefoundation.ch/.

    3.    Attached hereto as <u>Exhibit B</u> is a list of over 300 works published about James Joyce and/or his writings in 2004-2006.

    4.    Attached hereto as <u>Exhibit C</u> is a true and correct copy of book reviews on Carol Loeb Shloss's book *Lucia Joyce: To Dance in the Wake*. I located these reviews on January 4, 2007. I found "*Private dancer. James Joyce's troubled daughter spent much of her life in institutions. Carol Loeb Schloss brings Lucia Joyce back from the margins with a new biography;*" "*The Bratty Bystander. Lucia Joyce was a Failed Writer, Dancer, and Artist—so Why Does a New Biography Make Her Out to be a Genius?;*" "*A Mania For Insects;*" and the following Letters to the Editor: *Lucia Joyce and Finnegans Wake, Carol Loeb Shloss, Roland Littlewood* at http://www.arlindo-correia.com/140504.html, "*Lucia Joyce. To Dance in the Wake. Tragic Muse and Wild Beauty: The Story of James Joyce's Only Daughter"r* at http://www.cercles.com/review/r22/schloss.htm. I found the following newspaper reviews:

1  "*Lucia Joyce: To Dance in the Wake. Lucia Joyce: Girl, Interrupted Reexamining The Life of a
2  Troubled Artist*" in THE BOSTON GLOBE, "*Tell him I'm a Crossword Puzzle James Joyce's
3  Daughter Lucia was a Racy 1920s Dancer, But Her Life Ended Sadly and Madly*" in THE
4  FINANCIAL TIMES (London England), "*A Hundred Not Out*" in THE TIMES (London),
5  "*Private Dancer: James Joyce's Troubled Daughter, Lucia, Spent Much of Her Life in
6  Institutions. A New Biography Brings Her Back From the Margins*" in THE OBSERVER,
7  "*Inside a Family Affair*" in THE WEEKEND AUSTRALIAN, "*Portrait of a Daughter as a Lost
8  Cause*" in THE LOS ANGELES TIMES, "*The Bratty Bystander*" in SLATE MAGAZINE.

   5.   Attached hereto as <u>Exhibit D</u> is a true and correct copy of the Stanford Law School website. I located this blog on January 8, 2007 at http://cyberlaw.stanford.edu/case/shloss-v-estate-of-joyce.

   6.   Attached hereto as <u>Exhibit E</u> is a true and correct copy of the decision of *Epsom & St. Helier University Hospitals NHS Trust* (Case ref: FS50071069) issued by United Kingdom's Information Commissioner's Office on October 23, 2006. I located the decision on January 7, 2007 at http://www.ico.gov.uk/tools_and_resources/decision_notices/2006_10.aspx. In *Epsom*, a mother asked the Commissioner to review Epsom & St. Helier University Hospital's ("Epsom") denial of her request, made under the Freedom of Information Act ("the FOIA"), for her daughter's medical records. Epsom argued the records were exempt from disclosure under Section 41 of the FOIA. Section 41 of the Act applies to information obtained from third parties whose disclosure would constitute an actionable breach of trust. The Information Commissioner considered whether the duty of confidence owed by doctor to patient can survive the death of the individual to whom the duty is owed.

   7.   The Commissioner assessed two legal arguments in favor of finding the duty of confidence owed to patients survive the death of the individual to whom the duty is owed and thus, the deceased person's medical records are exempt from production under the FOIA. The first argument was that medical records are exempt from production under Section 41 of the Act on "principle." The "principle" argument is that a breach of confidence would affect the conscience of the person disclosing the information. Epsom argued that where the disclosure

could be said to be unconscionable, it may be restrained by the Court even where it would not damage the confider. The Commissioner found this argument to be reasonable, particularly so because disclosure under the FOIA is to the world at large. The second argument was that there is no legal "authority" that would support a ruling that medical records are not exempt from disclosure under Section 41 of the FOIA. The Commissioner found no binding authority against finding that a deceased person's medical records are exempt from production under Section 41 of the FOIA. Consequently, the Commissioner concluded that the duty of confidence attaching to medical records survives the death of the person to whom the records relate. Accordingly, medical records are exempt from production under the Section 41 of the FOIA, and any breach of the deceased's confidence would be actionable by the deceased's estate. Moreover, the Commissioner specifically noted that a duty of confidence is created by the very nature of the doctor/patient relationship, which is supported by the oath that doctors take guaranteeing to protect doctor/patient confidentiality.

1 |     I declare under penalty of perjury that the foregoing is true and correct. Executed on this 8th day of January 2007 at Los Angeles, California.

Dated: January 8, 2007

JONES DAY

By: /s/ Antionette D. Dozier
    Antionette D. Dozier

Counsel for Defendants
SEÁN SWEENEY AND THE ESTATE OF
JAMES JOYCE