# EXHIBIT E

Dockets.Justia.com

Reference: FS50071069



# Freedom of Information Act 2000 (Section 50)

## Decision Notice

### Date 23 October 2006

**Public Authority:** Epsom & St. Helier University Hospitals NHS Trust
**Address:** St. Helier Hospital
Wrythe Lane
Carshalton
Surrey
SM5 1AA

## Summary

The decision concerns a request made for records held by an NHS Trust relating to an individual, now deceased. The request was refused on the grounds that a duty of confidence was owed to the deceased and that this would still be actionable, therefore the information was exempt under section 41 of the Act. After requesting a copy of the withheld information and a further explanation of the refusal, the Commissioner concluded that the section 41 exemption was valid. In addition, some of the requested information was subject to legal professional privilege and was therefore exempt under section 42. However, the Commissioner also concluded that the Trust had not fully complied with section 17 of the Act when refusing the original request.

## The Commissioner's Role

1. The Commissioner's duty is to decide whether a request for information made to a public authority has been dealt with in accordance with the requirements of Part 1 of the Freedom of Information Act 2000 ('the Act'). This Notice sets out his decision.

## The Request

2. On 10 March 2005, the complainant made the following information request to the Epsom & St. Helier University Hospitals NHS Trust (the "Trust"):

   "I wish you to let me have all information concerning my daughter […] who died in Epsom Hospital on [date]. I would also like copies of her health records together with any other details that you hold concerning my daughter."

3. The Trust refused the request on 24 March 2005. While acknowledging it held some information covered by the request, the Trust stated that the information

1

Reference: FS50071069



was confidential. In view of this, the Trust cited an exemption under section 41 of the Act, as disclosure of the information would constitute an actionable breach of confidence.

4.　　As the refusal notice was issued by the Chief Executive of the Trust, the complainant was not offered the opportunity to go through the Trust's internal review procedures. In view of this, the complainant contacted the Commissioner to ask for a review of the decision to refuse her request.

**The Investigation**

**Scope of the case**

5.　　On 11 April 2005 the complainant contacted the Commissioner to complain about the way her request for information had been handled. The complainant specifically asked the Commissioner to consider whether the refusal was appropriate.

6.　　Although the complainant did not raise the point, the Commissioner has also considered whether the Trust breached section 17 of the Act when issuing the refusal notice by failing to provide details of the Trust's internal review procedures nor an explanation that the review was not appropriate in this case.

7.　　During the course of the investigation, the complainant also raised other issues that are not addressed in this Notice because they are not relevant to the requirements of Part 1 of the Act.

**Chronology**

8.　　The Commissioner contacted the Trust on 29 April 2005, following a telephone call to the Trust of the same date, asking for a further explanation as to the reasons for applying the exemption and questioning whether the refusal notice of 24 March 2005 had complied with section 17 of the Act. The letter also asked for whether the Trust have any policies concerning access to records of deceased persons and, if so, what these are. The Commissioner also asked the Trust to supply a copy of the withheld information to establish its nature.

9.　　In a letter dated 3 May 2005, the Trust responded, stating that the information they held relating to the request was voluminous and that instead of copying all the files it had sent relevant extracts. The Trust went on to restate that the information request made by the complainant was not treated as an FOI request under the Act. This step had been taken because the Trust had dealt with previous requests from the complainant prior to the introduction of the Act and she had been advised that the Trust was legally obliged to withhold the information. The Trust, during the telephone call of 29 April 2005, had previously provided assurances that it knew of its obligations under section 17 of the Act and would ensure that any future refusal notices would comply with this section

2

Reference: FS50071069



10. The Trust confirmed that it has a Health Records Policy in place and that this refers to the circumstances in which access can be granted to the records of deceased persons. The complainant did not fall into any of the categories of person to whom the information could be released. Further, the Access to Health Records Act 1990 bound the Trust to disclose documents in certain situations, but the complainant was not covered by the relevant provisions.

11. Following review of the sample of withheld information and a number of internal discussions about the issues raised in the case, the Commissioner wrote to the Trust on 17 August 2005 for some further information as to who the personal representative of the deceased is.

12. The Trust responded on 1 September 2005 providing the identity of the deceased's personal representative and next of kin.

13. Further internal discussions followed and the Commissioner contacted the Trust by telephone on 3 November to ascertain the exact nature of the information it held in relation to the information request.

14. On 8 November 2005, the Trust responded in writing and stated that it held a legal file relating to the deceased as well as her healthcare records.

15. Despite the information provided by the Trust up to that point, the Commissioner felt it necessary to see a full copy of the withheld information in order to take a final decision as to the validity of the exemption applied by the Trust. In a letter dated 6 December 2005, the Commissioner therefore repeated his request for a copy of the exempt information.

16. The Trust repeated its concerns about copying a large volume of information early in January 2006 and both parties entered into a discussion as to the most effective way for the Commissioner to view the information. Eventually, it was decided that the best course of action was for the Trust to supply the information to the Commissioner, but that an extension of time would be provided to the Trust in which to supply the information.

17. Subsequently, the Trust wrote to the Commissioner on 17 February 2006 enclosing a copy of the exempt information, namely a legal file relating to a claim against the Trust arising out of the death of the deceased and the healthcare records. The Trust also supplied a copy of the 'complaints file' which contained correspondence between the complainant and the Trust over the course of a number of years. However, upon reviewing this particular file, it appeared that the complainant already has much, if not all, of the information in this file. In addition, the file does not appear to be covered by the original information request of 10 March 2005, so the Commissioner has not considered this particular file any further.

18. At this point, the Trust also informed the Commissioner that it also held the deceased's maternity records. The Trust felt that this was not the information the complainant was seeking access to as the previous correspondence prior to the Act had focussed on the deceased's medical records relating to her death. The

3

Reference: FS50071069



Commissioner believes that the maternity records would be covered by the scope of the complainants request, but sees this file to be analogous to the health records which he has already viewed. As a result, if the exemption applied by the Trust is valid, it would also apply to the maternity file.

## Analysis

### Procedural matters

19. The Commissioner considered whether the refusal notice issued by the Trust on 24 March 2005 complied with Section 17 of the Act.

20. Section 17(7) states:

    "A notice under subsection (1), (3) or (5) must–
    (a)    contain particulars of any procedure provided by the public authority for dealing with complaints about the handling of requests for information or state that the authority does not provide such a procedure, and
    (b)    contain particulars of the right conferred by section 50.

21. The refusal notice issued by the Trust neither contained details of the Trust's internal review procedures nor an explanation that the review was not appropriate in this case.

22. The refusal notice also did not contain the contact details of the Commissioner.

### Exemption

23. In considering whether the exemption is valid, the Commissioner has taken into account that the Act is designed to be applicant blind and that disclosure should be considered in the widest sense, that is to the public at large. In view of this, the Commissioner has not taken into account the unique circumstances of the complainant. If the information were to be disclosed it would in principle be available to any member of the public.

24. When examining the arguments in favour of disclosure of the information requested and the maintenance of the exemption, the Commissioner has taken into account evidence gathered from a number of sources. Particular heed has been paid to the arguments put forward by both the complainant and the Trust, as well as advice provided during internal discussions and legal advice.

### Section 41

25. The Commissioner considered whether the Trust was correct to apply the exemption under section 41 of the Act. Section 41 applies to information obtained from a third party whose disclosure would constitute an actionable

4

Reference: FS50071069



breach of confidence. This exemption is 'absolute' and therefore not subject to the public interest test.

26.  The investigation established that the requested information was indeed obtained from third parties, that is the deceased herself and medical staff

27.  He is satisfied, moreover, that medical records have the necessary quality of confidence required to sustain an action for breach of confidence. When patients submit to treatment from doctors and other medical professionals whether this be in surgeries, hospitals or other institutions, they do so with the expectation that that information would not be disclosed to third parties without their consent. In other words, he is satisfied that an obligation of confidence is created by the very nature of the doctor / patient relationship and the duty is therefore implicit. This is further supported by the oath which doctors take guaranteeing to protect doctor / patient confidentiality.

28.  The Commissioner has gone on to consider whether the duty of confidence can survive the death of the individual to whom the duty is owed. The argument is considered on the basis of both principle and authority.

29.  The argument of principle is that the breach of confidence would affect the conscience of the defendant. Where the disclosure of such information could be said to be unconscionable, it may be restrained by the Court even where it would not damage the confider. The Commissioner finds the argument of principle to be a reasonable one, particularly given the fact that the disclosure under the Act is disclosure to the world at large.

30.  Having considered the argument of principle, the Commissioner has examined the argument of authority. While this may be less powerful than the argument of principle, there would appear to be no binding authority against the argument of principle. In view of this, the Commissioner is satisfied that the duty of confidence attached to medical / health records can survive the death of the person to whom the records relate.

31.  After reaching this view, it is therefore necessary to establish who would be able to bring the action in the event that the duty of confidence were breached. The Commissioner has sought advice and considered this point at length.

32.  While again there would appear to be no binding authority on this point, the Commissioner has reached the view that an action could be brought by the personal representatives of the deceased, namely the executors or administrators of the estate. It would be unlikely that surviving relatives other than the deceased's personal representatives would be able to bring an action based on a breach of the duty of confidence. The Trust has supplied the name of the deceased's personal representative to the Commissioner and has explained that he has explicitly stated his wish for all information about the deceased to remain confidential.

33.  Finally in relation to this exemption, the Commissioner has considered whether the breach is 'actionable'. He considers this to be the case, though it is unlikely



that damages could be awarded for a breach of the duty of confidence to the deceased, as there is no obvious financial loss. Instead, any action would most likely be in the form of an injunction to prevent publication of the information requested.

34. In view of the above, the Commissioner considers that the exemption applies to the deceased's medical records and, at the least, to chunks of the legal file as this contains excerpts from, references to and summaries of the health records. However, the Commissioner has gone on to consider whether an exemption under section 42 would have been more appropriate to the information contained within the legal file.

<u>Section 42</u>

35. The exemption under section 42 of the Act applies to information which would be covered by the concept of legal professional privilege ("LPP") where this privilege could be maintained in legal proceedings. In determining whether this exemption applies, the Commissioner has taken into account the decision of the Information Tribunal in case EA/2005/0023 *Bellamy v the Information Commissioner and the DTI* ("Bellamy").

36. Having reviewed the file, the Commissioner is satisfied that LPP is attached to the requested information.

37. The information contained within the file was provided to the Trust by legally-qualified persons and expert witnesses and was gathered to defend a claim brought against the trust relating to the death of the deceased. The file also therefore contains correspondence with the claimant's solicitors. In other words, the information was compiled for the purpose of preparing for litigation.

38. The Commissioner is therefore satisfied that litigation privilege would apply to the information contained within this file and that this has at no point been waived. As previously stated in the section 41 analysis, the claimant has explicitly expressed his wish that all information relating to the deceased remains confidential. This supports the Commissioner's view that the Trust has not waived LPP in respect of the documents contained within the legal file.

39. After establishing that LPP applies to the information in question, the Commissioner has gone on to consider whether the public interest in maintaining the exemption outweighs the public interest in disclosure of the requested information.

Public interest – in favour of disclosure

40. The Commissioner accepts that there is a strong public interest in disclosing information where to do so would help determine whether public authorities are acting appropriately. If the reasons behind the for the decision to defend the claim brought against the Trust were made public, this would better enable the public to assess whether the Trust were right to take this action and spend time

6

Reference: FS50071069



public money initially disputing an action which was ultimately settled by the parties.

41.    It is also in the public interest to disclose information where this would help further the understanding of issues of the day. In this case, disclosing the requested information in the legal file would allow the public a greater comprehension of the legal issues which can arise out of the treatment of patients. It may assist in helping establish whether public authorities are adequately prepared to meet these challenges.

42.    As the legal file contains some information about the treatment of a patient, the disclosure of the file may help increase the public's awareness of the diagnosis and treatment of illness. It is certainly in the public interest to know that these techniques are sufficient to meet the needs of patients and, if they are not, to know how they are deficient.

Public interest – in favour of maintaining the exemption

43.    However, the Commissioner also acknowledges that there is a strong public interest in protecting the established principle of confidentiality in communications between lawyers and their clients, a view previously supported by the Information Tribunal. In Bellamy (para. 35), the Tribunal stated that "there is a strong element of public interest inbuilt into the privilege itself. At least equally strong counter-vailing considerations would need to be adduced to override that inbuilt public interest".

44.    There must be reasonable certainty relating to confidentiality and the disclosure of legal advice. Without this, the principle of confidentiality would be undermined and the quality of legal advice may not be as full and frank as it ought to be, if there were a risk that it would be disclosed in the future. This reflects the decision in Bellamy (para. 35) where the Tribunal observed "it is important that public authorities be allowed to conduct a free exchange of views as to their legal rights and obligations with those advising them without fear of intrusion, save in the most clear cut case…"

45.    It is vital that public authorities are able to obtain full and frank legal advice when involved in litigation. As such legal advice has to be fair, frank and reasoned, it is inevitable that it will highlight the strengths and weaknesses of any course of action, perhaps revealing flaws in the defence of a claim or highlighting a weakness in the pursuit of a claim. If legal advice obtained for the purposes of litigation were to be routinely disclosed, public authorities would potentially be in a weakened position in litigation compared to other persons not bound by the Act. English law considers "privilege [to be] equated with, if not elevated to, a fundamental right at least insofar as the administration of justice is concerned" (Bellamy, para. 8). Therefore, there must be a strong public interest in ensuring that LPP applies equally to all parties, so that they are on a level footing before, during and after litigation.

46.    The Commissioner is therefore satisfied that there is a strong public interest in maintaining the exemption under section 42 of the Act because the inherent

7

Reference: FS50071069



public interest in protecting the established convention of LPP is not countered by at least equally strong arguments in favour of disclosure. Potentially limiting the effectiveness of the current system of LPP outweighs the factors in favour of disclosure.

47.  The Commissioner recognises that the balance of the public interest may change over time. As more time elapses after the conclusion of the litigation, it may become more likely that this section of the information could be disclosed (insofar as it would not breach the duty of confidence owed to the deceased's medical records.

**The Decision**

48.  The Commissioner's decision is that the Trust dealt with the following elements of the request in accordance with the requirements of the Act:

     The exemption applied by the Trust under section 41 of the Act is valid. In addition, the Commissioner has also decided that an exemption under section 42 of the Act is also valid to some of the information.

49.  However, the Commissioner has also decided that the following elements of the request were not dealt with in accordance with the Act:

     By failing to include details of its internal review procedure or explaining that internal review was not appropriate in this case, and failing to include the details of the complainant's rights under section 50 of the Act, the Trust breached section 17(7) of the Act.

**Steps Required**

50.  The Commissioner requires no steps to be taken.

8

Reference: FS50071069



**Right of Appeal**

---

51.    Either party has the right to appeal against this Decision Notice to the Information
Tribunal. Information about the appeals process may be obtained from:

> Information Tribunal
> Arnhem House Support Centre
> PO Box 6987
> Leicester
> LE1 6ZX
>
> Tel:    0845 600 0877
> Fax:    0116 249 4253
> Email: informationtribunal@dca.gsi.gov.uk

Any Notice of Appeal should be served on the Tribunal within 28 calendar days of
the date on which this Decision Notice is served.

**Dated the 23rd day of October 2006**

**Signed …………………………………………..**

**Richard Thomas**
**Information Commissioner**

**Information Commissioner's Office**
**Wycliffe House**
**Water Lane**
**Wilmslow**
**Cheshire**
**SK9 5AF**

9

Reference: FS50071069



## Legal Annex

### Section 1

**1)**      "Any person making a request for information to a public authority is entitled –

        (a)    to be informed in writing by the public authority whether it holds information of the description specified in the request, and

        (b)    if that is the case, to have that information communicated to him."

**(2)**      Subsection (1) has effect subject to the following provisions of this section and to the provisions of sections 2, 9, 12 and 14.

**(3)**      Where a public authority –

        (a)    reasonably requires further information in order to identify and locate the information requested, and

        (b)    has informed the applicant of that requirement,

the authority is not obliged to comply with subsection (1) unless it is supplied with that further information.

**(4)**      The information –

        (a)    in respect of which the applicant is to be informed under subsection (1)(a), or

        (b)    which is to be communicated under subsection (1)(b),

is the information in question held at the time when the request is received, except that account may be taken of any amendment or deletion made between that time and the time when the information is to be communicated under subsection (1)(b), being an amendment or deletion that would have been made regardless of the receipt of the request.

**(5)**      A public authority is to be taken to have complied with subsection (1)(a) in relation to any information if it has communicated the information to the applicant in accordance with subsection (1)(b).

**(6)**      In this Act, the duty of a public authority to comply with subsection (1)(a) is referred to as the "duty to confirm or deny"."

### Section 17

**(1)**      A public authority which, in relation to any request for information, is to any extent relying on a claim that any provision of Part II relating to the duty to confirm or deny is relevant to the request or on a claim that information is exempt information must, within the time for complying with section 1(1), give the applicant a notice which –

Reference: FS50071069



(a) states that fact,

(b) specifies the exemption in question, and

(c) states (if that would not otherwise be apparent) why the exemption applies.

**(2)**    Where –

    (a)    in relation to any request for information, a public authority is, as respects any information, relying on a claim –

        (i)    that any provision of Part II which relates to the duty to confirm or deny and is not specified in section 2(3) is relevant to the request, or

        (ii)    that the information is exempt information only by virtue of a provision not specified in section 2(3), and

    (b)    at the time when the notice under subsection (1) is given to the applicant, the public authority (or, in a case falling within section 66(3) or (4), the responsible authority) has not yet reached a decision as to the application of subsection (1)(b) or (2)(b) of section 2,

the notice under subsection (1) must indicate that no decision as to the application of that provision has yet been reached and must contain an estimate of the date by which the authority expects that such a decision will have been reached.

**(3)**    A public authority which, in relation to any request for information, is to any extent relying on a claim that subsection (1)(b) or (2)(b) of section 2 applies must, either in the notice under subsection (1) or in a separate notice given within such time as is reasonable in the circumstances, state the reasons for claiming –

    (a)    that, in all the circumstances of the case, the public interest in maintaining the exclusion of the duty to confirm or deny outweighs the public interest in disclosing whether the authority holds the information, or

    (b)    that, in all the circumstances of the case, the public interest in maintaining the exemption outweighs the public interest in disclosing the information.

**(4)**    A public authority is not obliged to make a statement under subsection (1)(c) or (3) if, or to the extent that, the statement would involve the disclosure of information which would itself be exempt information.

**(5)**    A public authority which, in relation to any request for information, is relying on a claim that section 12 or 14 applies must, within the time for complying with section 1(1), give the applicant a notice stating that fact.

**(6)**    Subsection (5) does not apply where-

11



(a)    the public authority is relying on a claim that section 14 applies,

(b)    the authority has given the applicant a notice, in relation to a previous request for information, stating that it is relying on such a claim, and

(c)    it would in all the circumstances be unreasonable to expect the authority to serve a further notice under subsection (5) in relation to the current request.

**(7)**    A notice under subsection (1), (3) or (5) must-

(a)    contain particulars of any procedure provided by the public authority for dealing with complaints about the handling of requests for information or state that the authority does not provide such a procedure, and

(b)    contain particulars of the right conferred by section 50.


**Section 41**

**(1)**    Information is exempt information if –

(a)    it was obtained by the public authority from any other person (including another public authority), and

(b)    the disclosure of the information to the public (otherwise than under this Act) by the public authority holding it would constitute a breach of confidence actionable by that or any other person.

**(2)**    The duty to confirm or deny does not arise if, or to the extent that, the confirmation or denial that would have to be given to comply with section 1(1)(a) would (apart from this Act) constitute an actionable breach of confidence.


**Section 42**

**(1)**    Information in respect of which a claim to legal professional privilege or, in Scotland, to confidentiality of communications could be maintained in legal proceedings is exempt information.

**(2)**    The duty to confirm or deny does not arise if, or to the extent that, compliance with section 1(1)(a) would involve the disclosure of any information (whether or not already recorded) in respect of which such a claim could be maintained in legal proceedings.