# Exhibit A

E-FILED on   1/3/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANDISK CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>AUDIO MPEG, INC., U.S. PHILIPS CORPORATION, FRANCE TELECOM, TELEDIFFUSION DE FRANCE S.A., and INSTITUT FUR RUNDERFUNKTECHNIK, GMBH,<br><br>Defendants. | No. C-06-02655 RMW<br><br>ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY<br><br>[Re Docket Nos. 24, 37] |

Defendants move to dismiss plaintiff SanDisk Corporation's ("SanDisk") complaint for declaratory judgment of non-infringement as to nine United States patents which defendant Audio MPEG, Inc. ("Audio MPEG") licenses (the "patents-in-suit") for lack of subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Defendants Audio MPEG, Telediffusion de France S.A. ("TDR"), and Institut Fur Runderfunktechnik, GmbH ("IRT") also move to dismiss for lack of personal jurisdiction. Plaintiff filed opposition to defendants' motion and, additionally, filed a motion for administrative relief seeking expedited discovery on jurisdictional issues in the event the court dismisses the action. Defendants oppose plaintiff's motion for expedited discovery. The court has read the moving and responding papers and considered the

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655 RMW
SPT

- 3 -

arguments of counsel. For the reasons set forth below, the court GRANTS defendants' motion to dismiss and DENIES plaintiff's motion for expedited discovery.

## I. BACKGROUND

Audio MPEG manages and maintains a portfolio of United States patents that relate to digital audio compression technology and, specifically, the encoding and decoding of audio files using MPEG Audio standards. This portfolio includes the nine patents-in-suit in the present action: United States Patent Nos. 4,972,484 ("the '484 patent"), 5,481,643 ("the '643 patent"), 5,544,247 ("the '247 patent"), 5,610,985 ("the '985 patent"), 5,740,317 ("the '317 patent"), 5,878,080 ("the '080 patent"), 5,960,037 ("the '037 patent"), 5,991,715 ("the '715 patent"), and 6,023,490 ("the '490 patent"). In addition, the portfolio includes four other United States patents not included in this action. Audio MPEG submits that these four patents are essential to implementing the MPEG Audio Layer 3 ("MP3") standard: United States Patent Nos. 5,214,678 ("the '678 patent"), 5,323,396 ("the '396 patent"), 5,777,992 ("the '992 patent"), and 5,539,829 ("the '829 patent") (together, "the MP3 essential patents").[1] SanDisk alleges that the nine patents-in-suit also relate to MP3 players and the MPEG-1 standard. First Amended Complaint ("FAC") ¶ 12.

The digital audio compression technology licensed by Audio MPEG is owned by U.S. Philips Corporation, IRT, and a research group formed from defendants TDF and France Telecom, who jointly developed the technology leading to the formation of the MPEG Audio standards. The International Standards Organization ("ISO") adopted this technology as ISO/IEC 11172-3. *Id.* ¶ 12. The patent owners granted Audio MPEG the exclusive right to license the United States patents for this technology. *See id.* ¶ 9.

SanDisk designs, develops, manufactures, and markets flash storage card products and is the second largest seller of MP3 players in the United States. MP3 files are electronic music files that have been encoded to reduce the size of the file without sacrificing sound quality. SanDisk alleges

---

[1] These four patents are the subject of Audio MPEG's infringement suit against SanDisk in the Eastern District of Virginia. They were initially included in plaintiff's complaint, but omitted after the court inquired of SanDisk why the present action would not be duplicative of the action before the Eastern District of Virginia. The court refers to these four patents as the "MP3 essential patents" for the sake of convenience only, and does not render an opinion that these are in fact the patents essential to implementing the MP3 standard.

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655 RMW
SPT                                                                 2

1  that Audio MPEG has indicated that it is willing only to license its entire pool of patents relating to
2  MP3 or MPEG-1; otherwise it would not license any of the patents. *Id.* ¶ 13. The patent pool
3  includes the four MP3 essential patents and the nine patents-in-suit in the present action. *Id.*
4        According to the FAC, in July 2005 customs authorities in the Netherlands seized MP3
5  players made by SanDisk for allegedly infringing the European counterparts to the patents-in-suit.
6  *Id.* ¶ 22. Thereafter defendants and Audio MPEG's parent company, S.I.Sv.El. S.p.A. ("Sisvel")
7  allegedly filed an action accusing SanDisk's products of infringing certain foreign patents to which
8  Sisvel holds the exclusive right to license. *Id.* ¶ 23.
9        On August 11, 2005 Sisvel sent a letter to SanDisk notifying SanDisk that the distribution
10 and sale of its products implement MPEG Audio technology and providing information regarding
11 Audio MPEG's licensing program and royalty rates (the "August 11, 2005 Notice"). Decl. of
12 Benjamin Hofilena Supp. Pl.'s Opp. Defs.' Mot. Dismiss ("Hofilena Decl.") ¶ 11; Ex. O; Decl. of
13 Gen. Richard I. Neal Supp. Def.'s Mot. Dismiss ("Neal Decl."), Ex. 1. The letter noted that the
14 technology of encoding and/or decoding MPEG Audio layer 1, 2 or 3 files are covered by at least
15 several patents in various countries including United States Patent Nos. '678, '396, and '992. *Id.* at 3.
16       In January 2006, at the Consumer Electronics Show, "people who identified themselves as
17 representatives from Sisvel and Audio MPEG" approached SanDisk's booth and allegedly accused
18 SanDisk's MP3 products of infringing their patents. FAC ¶ 24; Decl. of Don Kadish Supp. Pl.'s
19 Opp. Defs.' Mot. Dismiss ("Kadish Decl.") ¶¶ 5-8. These representatives from Sisvel and Audio
20 MPEG demanded that SanDisk stop displaying and demonstrating the infringing products. *Id.* ¶ 6.
21 They also stated that "they had filed claims against SanDisk for infringing their intellectual property
22 and further stated that SanDisk knew that they had done that." *Id.* These statements were made so
23 that they were audible to persons nearby. Ultimately, legal counsel for the Consumer Electronics
24 Show indicated to SanDisk that representatives from Sisvel and Audio MPEG had asked her to "stop
25 SanDisk from offering to sell MP3 products in violation of their 'IP rights.'" *Id.* ¶ 8.
26       On April 13, 2006 Audio MPEG sued SanDisk in the Eastern District of Virginia for patent
27 infringement of the four MP3 essential patents. *Audio MPEG v. SanDisk Corporation*, Civil Action
28 No. 06-00209 WDK (E.D. Va.). In that suit, Audio MPEG did not allege that SanDisk infringed any

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655 RMW
SPT     3

of the nine patents that are the subject of the present suit. In April 2006 Sisvel filed two additional patent actions against SanDisk in Germany. *Id.* ¶ 25.

On April 19, 2006 SanDisk filed the present action against Audio MPEG seeking declaratory judgment as to the nine current patents-in-suit and the four MP3 essential patents that are the subject of Audio MPEG's infringement action in the Eastern District of Virginia. SanDisk subsequently amended its complaint to remove the four MP3 essential patents. SanDisk asserts that declaratory judgment is appropriate because, based on its allegations, it "is under reasonable apprehension of a lawsuit by Audio MPEG asserting the patents in suit, patents which are not currently at issue in the [Eastern District of Virginia] action." *Id.* ¶ 14.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

An action under the Declaratory Judgment Act must meet Article III's requirements of "an actual controversy." *See Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1331 (Fed. Cir. 2005). "Generally, the presence of an actual controversy, within the meaning of the Act, depends on whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Even if there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has substantial discretion to decline that jurisdiction." *Id.* (quotation marks and citations omitted).

When seeking to have a patent declared invalid or not infringed, a declaratory judgment plaintiff must prove "both (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit" imminently; "and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity." *Id.* at 1332-33. This test "is objective and is applied to the facts existing when the complaint is filed. Its first prong looks to defendant's conduct; its second to that of plaintiff." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). The inquiry is "inherently fact-specific"

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655 RMW
SPT                                                        4

and a court "must evaluate the totality of the circumstances." *Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379-80 (Fed. Cir. 2004).

"The declaratory judgment plaintiff carries the burden of proving the existence of facts underlying his allegations of the existence of an actual controversy." *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) (Rich, J.) (quotation marks omitted); *see also St. Paul Mercury Indem. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938) ("It is the plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation.") (citations omitted). Unlike on a motion to dismiss under Rule 12(b)(6), the district court when ruling on a motion to dismiss under Rule 12(b)(1) need not accept the pleadings as true. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). "[O]nly uncontroverted factual allegations" must be taken as true, while "[a]ll other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." *Id.* at 1583-84.

The facts giving rise to jurisdiction over a declaratory judgment action "should be found in the complaint." *Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 576 n.8 (Fed. Cir. 1986). Here, SanDisk's FAC alleges the following in support of subject matter jurisdiction: (1) Audio MPEG filed a complaint in the Eastern District of Virginia alleging patent infringement of the four MP3 essential patents, FAC ¶ 9, (2) Audio MPEG represents on its website that it has patents other than the four MP3 essential patents that relate to MP3 players and the MPEG-1 standard, *id.* ¶ 12, and (3) Audio MPEG has indicated that it is willing only to license its entire patent pool relating to MP3 or MPEG-1 and, when SanDisk refused to take a license, Audio MPEG filed the infringement action in the Eastern District of Virginia, *id.* ¶ 13.

The fact that Audio MPEG describes on its website that patents in its patent portfolio, other than the four MP3 essential patents, relate to MP3 players or the MPEG-1 standard does not give rise to an objectively reasonable apprehension of suit by Audio MPEG against SanDisk in April 2006 as to the nine patents-in-suit. According to SanDisk, Audio MPEG describes itself as a "patent management and licensing company" on its website. Hofilena Decl. ¶ 3. However, SanDisk has not

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655 RMW
SPT                5

tendered sufficient facts to support that Audio MPEG's website was directed at SanDisk or represented a threat of imminent suit against SanDisk as to the nine patents-in-suit. *Cf. BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 981 (Fed. Cir. 1993) (holding that "the existence of a patent held by a competitor is insufficient basis for a declaratory action to invalidate a patent").

SanDisk alleges that Audio MPEG is willing only to license its entire patent pool to SanDisk, or nothing at all. SanDisk points to the August 11, 2005 Notice from Sisvel. SanDisk argues that this notice contains "broad accusations of infringement," pointing out that it stated "*[a]ll products using MPEG compression technology need a patent license from [Sisvel] and Audio MPEG*." Pl.'s Opp. Defs.' Mot. Dismiss at 10:10-11 (emphasis in original). SanDisk emphasizes that the letter broadly accused all products, and generally referred to the terms "patent license" and "patent infringement liability." *Id.* at 10:12-15. SanDisk argues that the wording of the letter coupled with "defendants' litigious reputation made it objectively reasonable for SanDisk to fear litigation." This litigious reputation is confirmed, argues SanDisk, because Audio MPEG thereafter "did file multiple suits against SanDisk, in the Netherlands, in Germany and in the Eastern District of Virginia." *Id.* at 10:17-19. In addition, Audio MPEG has made clear that its patents cover a broad range of products, including MP3 players, that use MP3 and MPEG-1 technology. Finally, SanDisk points to the incident at the Consumer Electronics Show where representatives of Sisvel and Audio MPEG approached the SanDisk booth, openly accused its products of infringement, and demanded that SanDisk stop demonstrating and displaying its infringing products. *Id.* at 10:26-11:2. SanDisk submits that the totality of these circumstances support that it has an objectively reasonable apprehension that there would be further litigation on defendants' other patents, including the patents-in-suit here, when it filed the present action. *See id.* at 23-25.

"[A] letter threatening an infringement suit unless the alleged infringer ceases the offending activity satisfies the first prong of the justiciability test." *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1482 (Fed. Cir. 1998). Here, however, the factual record is insufficient to support that Sisvel's August 11, 2005 notice of infringement to SanDisk threatened infringement of the nine patents-in-suit. The letter specifically lists three United States patents that may be infringed, all of which are included in the four MP3 essential patents asserted in Audio MPEG's subsequent

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655 RMW
SPT    6

1  infringement suit in the Eastern District of Virginia. *See* Hofilena Decl., Ex. O at 2; Neal Decl., Ex.
2  1 at 2. The letter makes no specific assertion that any of the nine patents-in-suit here were being
3  infringed or that infringement action would be brought as to the nine patents-in-suit. SanDisk's
4  emphasis that the notice accused all of its MP3 products and made general references to the need for
5  a patent license is not adequate to show that there was an objectively reasonable apprehension of suit
6  as to the specific nine patents at issue.
7  Neither does SanDisk's general contentions that Audio MPEG is litigious, has a litigious
8  reputation, and has sued SanDisk in three European countries as well as in the Eastern District of
9  Virginia support that it has satisfied the first prong. Assuming Audio MPEG is litigious, the mere
10 fact that a company files suits to enforce its patents does not necessarily mean it will
11 indiscriminately assert infringement as to all of its patents. Here, Audio MPEG submits persuasive
12 evidence that this is not the case. Audio MPEG has entered into approximately 800 licenses of its
13 patent pool relating to the encoding/decoding compression technology. It has had to file suit in
14 several instances to enforce its patents. In those filed suits Audio MPEG asserted only the four MP3
15 essential patents. *See, e.g.*, Decl. of Ethan B. Andelman Supp. Defs.' Mot. Dismiss, Exs. C, D, E.
16 As to suit specifically against SanDisk, Audio MPEG has asserted only the four MP3 essential
17 patents in the Eastern District of Virginia action. SanDisk offers no facts that support that Audio
18 MPEG intends to assert any other patents, including the nine patents-in-suit here, against SanDisk,
19 let alone that such litigation is imminent. Although plaintiff contends that (1) Audio MPEG was
20 interested only in licensing its entire patent pool or nothing at all and, (2) the August 11, 2005
21 Notice was unclear as to the specific United States patents that Audio MPEG intends to assert
22 should SanDisk not take a license, [a] reasonable apprehension of suit created by a threat to bring an
23 infringement action "may dissipate because of, for example, changed circumstances." *Fina*, 141
24 F.3d at 1484. Audio MPEG's specific assertion of only the four MP3 essential patents, viewed in the
25 context of other suits it has brought to enforce its patents, does just that. Moreover, SanDisk does
26 not refute that the defendants generally license the patents-in-suit along with the four MP3 essential
27 patents.
28

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655
RMW
SPT                                          7

1    In addition, that multiple suits have been filed against SanDisk in Europe have little, if any, persuasive value in supporting SanDisk's burden to establish reasonable apprehension of suit as to the nine United States patents at issue here. SanDisk contends that customs agents in the Netherlands seized its products for infringing the "European counterparts" to the nine patents-in-suit here, *see* FAC ¶ 22, and that Sisvel filed suit in Europe against SanDisk shortly thereafter, *id.*, but offers no factual support that the patents asserted in Europe are in fact counterparts to the specific patents-in-suit. In any event, even if the patents are the counterparts, the assertion of foreign patents in infringement actions, without more, does not create a reasonable apprehension that the purported United States counterparts would be asserted imminently in the United States.

Finally, the descriptions of accusations of infringement made by representatives of defendants at the Consumer Electronics Show, does not support a reasonable apprehension of litigation as to the nine patents at issue. As an initial matter, the factual support does not make clear who from Audio MPEG and/or Sisvel purportedly made the accusations. *See West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1297 (Fed. Cir. 1992) (noting that there was no evidence the person who purportedly made the accusation of infringement was authorized to accuse plaintiff in holding there was no "reasonable apprehension of suit" sufficient to maintain a declaratory judgment action).[2] *Id.* Moreover, even if the representatives were authorized to make such accusations, they did not make accusations specific to the nine patents-in-suit, or even that defendants intend to assert their entire patent pool against SanDisk. As to litigation, the record indicates that the representatives informed the SanDisk personnel that Sisvel and Audio MPEG had *already* initiated infringement actions against SanDisk, not that they were going to sue SanDisk as to any particular patents.

On balance, the court finds that SanDisk's allegations of subject matter jurisdiction and tendered factual support, taken together and viewed in light of the totality of the circumstances set

---

[2] Although the Federal Circuit has not expressly held that threats of an infringement suit by a patentholder's employee who lacks actual or apparent authority to make such threats are always insufficient to create a reasonable apprehension of suit, other courts have. *See, e.g., Boler Co. v. Raydan Mfg., Inc.*, 415 F. Supp. 2d 896, 902 (N.D. Ill. 2006) ("[A] charge of infringement by an agent who lacks authority to make such a charge is insufficient to create an actual controversy.").

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655 RMW
SPT                                                    8

forth in the factual record, does not satisfy its burden of establishing that it had an objectively reasonable apprehension of suit as to the nine patents-in-suit at the time it filed the present action. Plaintiff, thus, fails to establish the first prong supporting that declaratory judgment is warranted. Accordingly, the court dismisses the action for lack of subject matter jurisdiction. Because the court finds that subject matter jurisdiction is lacking, it does not reach defendants' additional arguments that there is no personal jurisdiction over defendants Audio MPEG, IRT, and TDF in this forum and that plaintiff's claims are compulsory counterclaims in the Eastern District of Virginia action.

**B.   Plaintiff's Motion for Expedited Discovery**

Plaintiff moves for expedited discovery "in connection with the personal jurisdiction issues, and to a very limited extent the subject matter jurisdiction issues" raised in defendants' motion. Because the court dismisses the action without reaching the personal jurisdiction issues, the court denies without prejudice plaintiff's request for expedited discovery as to personal jurisdiction issues. As to expedited discovery of subject matter jurisdiction issues, plaintiff makes only one request. Plaintiff seeks for defendants to produce: "All documents constituting or otherwise relating to assurances by any defendants to SanDisk that it would not be sued on any defendants' so-called 'non-essential' patents." SanDisk's [Proposed] First Set of Requests for Production of Documents to Defendants Audio MPEG, TDF, and IRT at 4:21-23; *see also* Pl.'s Mot. Expedited Discovery at 5:19 (noting that plaintiff seeks to make only one request related to subject matter jurisdiction discovery).

Plaintiff cites no legal authority that subject matter jurisdictional discovery in a declaratory judgment action should be allowed where the court has concluded that plaintiff has failed to establish subject matter jurisdiction. As noted above, plaintiff bears the burden of establishing that declaratory judgment is warranted. In *BP Chemicals Ltd.*, 4 F.3d at 978, the district court held a evidentiary hearing to ascertain whether facts supported an apprehension of litigation, which might provide some support for plaintiff's position. In addition, some courts have permitted additional discovery regarding diversity of citizenship. *See, e.g., Majd-Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984) (noting as to discovery on diversity of citizenship that "[a]lthough the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction."). In any

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655 RMW
SPT        9

1  event, here, plaintiff's request related to additional discovery of subject matter jurisdiction matters
2  does not raise a genuine issue whether subject matter jurisdiction exists in this case. The issue is
3  whether the totality of the circumstances have created an objectively reasonably apprehension of
4  imminent suit on SanDisk's part as to the nine patents-in-suit when it filed the present action seeking
5  declaratory judgment of non-infringement in April 2006. Documents showing that defendants made
6  assurances to SanDisk that it would not sue on the nine patents-in-suit would just strengthen
7  defendants' showing. The absence of such documents would not weigh in favor or against either
8  side. Moreover, as defendants point out, such documents, if any, should already be in SanDisk's
9  possession. Therefore, plaintiff's motion for expedited discovery on the issue of subject matter
10 jurisdiction is denied.

### III. ORDER

For the foregoing reasons, the court GRANTS defendants' motion to dismiss and DENIES plaintiff's motion for expedited discovery.

DATED:    1/3/07

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655 RMW
SPT

10

- 12 -

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Peter P. Chen | pchen@mwe.com |
| Matthew F. Weil | mweil@mwe.com |
| Christopher Duane Bright | cbright@mwe.com |
| John Alexander Lee | jlee@mwe.com |
| Holly A. House | hhouse@mdbe.com |
| Gregory L. Lippetz | gregory.lippetz@bingham.com |
| Brian C. Rocca | brian.rocca@bingham.com |

**Counsel for Defendants:**

Ethan B. Andelman       andelmane@howrey.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   1/3/07                               SPT
                                         **Chambers of Judge Whyte**

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR EXPEDITED DISCOVERY—No. C-06-02655 RMW
SPT
11