1  Lawrence Lessig
   Anthony T. Falzone (SBN 190845)
2  David S. Olson (SBN 231675)
   STANFORD LAW SCHOOL CENTER FOR
3  INTERNET AND SOCIETY
   559 Nathan Abbott Way
4  Stanford, California  94305-8610
   Telephone:  (650) 724-0517
5  Facsimile:  (650) 723-4426
   E-mail:     falzone@stanford.edu

6  Mark A. Lemley (SBN 155830)
   Matthew M. Werdegar (SBN 200470)
7  KEKER & VAN NEST LLP
   710 Sansome Street
8  San Francisco, California  94111
   Telephone:  (415) 391-5400
9  Facsimile:  (415) 397-7188
   E-mail:     mwerdegar@kvn.com
10
   Bernard A. Burk (SBN 118083)
11 Robert Spoo (*pro hac vice*)
   HOWARD RICE NEMEROVSKI CANADY
12 FALK & RABKIN, PC
   Three Embarcadero Center, 7th Floor
13 San Francisco, California  94111-4024
   Telephone: (415) 434-1600
14 Facsimile:  (415) 217-5910
   E-mail:     bburk@howardrice.com

15 Attorneys for Plaintiff

16
17                     **UNITED STATES DISTRICT COURT**
18                     **NORTHERN DISTRICT OF CALIFORNIA**
19                               **SAN JOSE DIVISION**
20

| | |
|---|---|
| 21  CAROL LOEB SHLOSS, | CASE NO. CV 06-3718 (JW) (HRL) |
| 22        Plaintiff, | **PLAINTIFF'S RESPONSE TO** |
| 23     v. | **DEFENDANTS' OBJECTIONS AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS** |
| 24 | |
| 25  SEÁN SWEENEY, in his capacity as trustee of the Estate of James Joyce, and THE ESTATE OF | Date:   January 31, 2007<br>Time:   9:00 a.m.<br>Judge:  Hon. James Ware |
| 26  JAMES JOYCE, | |
| 27        Defendants. | |
| 28 | |

PLAINTIFF'S RESPONSE TO DEFENDANTS' EVIDENTIARY OBJECTIONS    CV 06-3718 JW HRL

Dockets.Justia.com

1   Plaintiff Carol Loeb Shloss ("Shloss") respectfully submits this response to Seán
2   Sweeney and the Estate of James Joyce's ("Defendants") Objections And Motion To Strike
3   Portions Of The Declaration Of Carol Loeb Shloss, Portions Of The Declaration Of David S.
4   Olson, Exhibits A, P, R And T To The Declaration Of Carol Loeb Shloss, And Exhibits 2, 3, 4
5   And 5 To The Declaration of Robert Spoo (hereafter, collectively, "Objections").
6   Defendants' objections to Shloss's evidence ignore that much of the evidence that
7   Shloss submitted was not submitted for the truth of the matter asserted, but rather was submitted
8   to show Shloss's knowledge of threats of enforcement and actual enforcement of the Estate's
9   copyrights, and her corresponding reasonable apprehension. As such, the evidence is properly
10  admissible.
11  The briefing and evidence offered related to Defendants' Motion to Dismiss were
12  submitted under the Ninth Circuit's reasonable apprehension of suit test. After briefing on the
13  motion concluded, the Supreme Court decided *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct.
14  764, 549 U.S. ____ (January 9, 2007). In *MedImmune*, the Supreme Court stated that a
15  declaratory relief plaintiff need not show "reasonable-apprehension-of-suit" (*Id*. at n. 11), but
16  rather that for jurisdiction to exist, a plaintiff must merely demonstrate that "the facts alleged,
17  under all the circumstances, show that there is a substantial controversy, between parties having
18  adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a
19  declaratory judgment." *Id*. (internal citations omitted).
20  Thus, although Shloss's evidence of the Estate's threats and her reasonable
21  apprehension is sufficient to show jurisdiction for a declaratory judgment action, under
22  MedImmune a lesser showing of a real controversy between the parties that is ready for
23  judgment is all that is required for jurisdiction. Shloss's evidence of the Estate's threats and
24  actions with regard to its copyrights is also relevant to show that Shloss meets this lower bar.
25  Defendants' other evidentiary objections are also meritless, as is discussed below.
26  Shloss addresses below each of Defendants' evidentiary challenges in paragraphs
27  corresponding to those in the Objections.
28

1.    Alleging speculativeness and lack of relevance and personal knowledge, Defendants challenge Shloss's statement in paragraph 6 of her Declaration that "[a]gainst [Lucia Joyce's] will and the will of James Joyce, her mother, Nora, and her brother, Giorgio, committed Lucia [Joyce] to a mental hospital when she was 25 . . . ." First, the Estate's objections to even background facts such as the ones in this and other statements in the declarations supporting Shloss's opposition to Defendants Motion shows the Estate's continuing effort to use legal means to censor scholarly work. The facts of Lucia's life are not at issue in this lawsuit. What is at issue is Shloss's ability to quote from copyrighted materials controlled by the Estate in giving a scholarly account of Lucia's life and her influence on *Finnegans Wake* and *Ulysses*.

Second, while the Estate would like to prevent Shloss from writing about anything she does not have direct and personal evidence of, its attempt cannot succeed. Shloss's statement comports with Federal Rule of Evidence 602 (hereafter, "FRE") because the statement is based upon her personal knowledge and experience of a subject that she has studied deeply for many years. The plaintiff in this case is a serious, professional scholar, and her lawsuit is based directly upon her scholarship and the actions that Defendants have taken to threaten and stifle that scholarship. Paragraph 2-3 and 11-20 of her Declaration detail Shloss's many years of research into the lives of James and Lucia Joyce based upon her review of archival materials and scholarly accounts. Shloss has therefore introduced evidence "sufficient to support a finding that the witness has personal knowledge of the matter." FRE 602.

Shloss's personal knowledge may be based on what she has learned from her study of Lucia and the Joyce family.

> All perception is inferential, and most knowledge social . . . . Knowledge acquired through others may still be personal knowledge within the meaning of Fed. R. Evid. 602 , rather than hearsay, which is the repetition of a statement made by someone else-a statement offered on the authority of the out-of-court declarant and not vouched for as to truth by the actual witness. Such a statement is different from a statement of personal knowledge merely based, as most knowledge is based, on information obtained from other people.

*Afga-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1524 (7th Cir. 1989).

1         Third, Shloss's statement is not speculative. Rather, it is based upon her research
2 and is consistent with conclusions arrived at by other major scholars. For example, Richard
3 Ellmann, the noted biographer of James Joyce, documented nearly fifty years ago Joyce's
4 anguished reluctance to see Lucia committed at the age of 24 or 25 to "the impersonality of
5 mental homes." *James Joyce* 669 (Oxford Univ. Press, 1959; reprint 1977).
6         Finally, Shloss's statement about Lucia's mental health and her father's resistance
7 to her institutionalization provides relevant background to significant issues before the Court.
8 These include: (1) Defendants' repeated insistence in this case and elsewhere that the lives of
9 Lucia and James Joyce are "private" and that Defendants are protecting this privacy by policing
10 the copyrights in James's and Lucia's letters and other writings; and (2) Shloss's reasonable fear
11 that her attempts to document the life of Lucia will be met with copyright litigation by
12 Defendants purporting to protect "family privacy." The Court is entitled to be made familiar
13 with the relevant historical and biographical issues that form the backdrop of Shloss's scholarly
14 efforts to recover Lucia's life and Defendants' opposition to those efforts.
15         2.     Alleging speculativeness and lack of relevance and personal knowledge,
16 Defendants challenge Shloss's statement in paragraph 7 of her Declaration that "[p]eople have
17 destroyed documents about Lucia Joyce for over sixty years, apparently due in large part to the
18 stigma that previous generations attached to young women who had suffered emotional trauma."
19 First, the statement comports with FRE 602 for the reasons given above in paragraph 1.
20         Second, Shloss's statement is not speculative. Rather, it is corroborated by
21 evidence that Defendants themselves have submitted to the Court. For example, in support of
22 their Reply, Defendants have offered the Declaration of Edward Beckett, attaching a 1985 letter
23 by Samuel Beckett to Joyce Estate Trustee and beneficiary Stephen James Joyce which confirms
24 that Mr. Joyce sought permission to destroy correspondence between Samuel Beckett and Lucia
25 Joyce. *See also* Declaration of Carol Loeb Shloss, ¶8 & Ex. A (detailing Stephen James Joyce's
26 announcement in 1988 that he had destroyed Lucia-related materials). Defendants have further
27 corroborated Shloss's statement by submitting the Declaration of Patricia Donlon, which
28 concedes that Stephen James Joyce was allowed by the National Library of Ireland to remove

1  Joyce-related documents from the NLI's Paul Léon Collection. Nothing in Donlon's Declaration
2  is inconsistent with paragraph 9 of Shloss's Declaration, and Donlon does not deny that the
3  papers pertained to Lucia Joyce.
4         In addition, Shloss's statement that destruction of Lucia-related documents has
5  been "due in large part to the stigma that previous generations attached to young women who
6  had suffered emotional trauma" is neither speculative nor controversial. Defendants have stated
7  numerous times in this litigation that it is their intention to protect the "much abused and invaded
8  privacy" of Lucia and her family. Declaration of Seán Sweeney In Support Of Defendants'
9  Motion To Dismiss, ¶4; *see also* Motion To Dismiss at 3. In addition, Exhibit C to the
10 Declaration of Antoinette D. Dozier In Support Of Defendants' Reply an Exhibit C contains at
11 page 84 the statement of scholar Brenda Maddox, the biographer of Nora Joyce (Lucia's
12 mother), that "the original text of my biography of Nora Joyce had an Epilogue devoted to Lucia
13 and her illness, but . . . this had to be deleted at the request of the Joyce Estate." It is absurd for
14 Defendants to attack Shloss's statement as speculative when they themselves have submitted
15 evidence indicating that Lucia's mental health has been central to their efforts to prevent her
16 "private" life from being discussed in published scholarship.
17        Finally, Shloss's statement about destruction of documents concerning Lucia
18 provides relevant background to significant issues before the Court. These include: (1) the
19 historical importance of Shloss's project of recovering the life of Lucia Joyce and the difficulties
20 that project has encountered in terms of destroyed or missing documents; (2) Defendants'
21 demonstrated determination to take all measures, including destruction of historical documents
22 and aggressive enforcement of copyrights in documents they are unable to destroy, to protect the
23 purported "privacy" of Lucia and James Joyce; and (3) Shloss's reasonable fear that her attempts
24 to document the life of Lucia will be met with copyright litigation by Defendants purporting to
25 protect "family privacy."
26        3.    Alleging speculativeness and lack of relevance and personal knowledge,
27 Defendants challenge Shloss's phrase in paragraph 7 of her Declaration, "[b]ecause James Joyce
28

1    wrote about Lucia in various creative and imaginative ways in *Finnegans Wake* . . .." First, the

2    statement comports with FRE 602 for the reasons given above in paragraph 1.

3         Second, one of the central theses of Shloss's book, *Lucia Joyce: To Dance in the*

4    *Wake* (Farrar Straus & Giroux, 2003), is that James Joyce incorporated aspects of his family life,

5    including his observations of his daughter, in *Finnegans Wake*. It is ludicrous to seek to exclude

6    a scholar-critic's interpretive statement about a work of fiction as if it were a witness's attempt in

7    a personal injury action to testify to an auto collision she had never actually observed. This is

8    like arguing that an experienced critic of Renaissance drama could not credibly testify that

9    Shylock in *The Merchant of Venice* is based on Shakespeare's awareness of the treatment of

10    Jewish moneylenders in the sixteenth century, because the critic had never spoken with

11    Shakespeare and Shakespeare had left no signed statement about his intentions in creating

12    Shylock. That Joyce incorporated aspects and experiences of Lucia into *Finnegans Wake* has

13    long been acknowledged in Joyce criticism. *See, e.g.*, Ellmann, *James Joyce* at 660, 692

14    (quoting portions of *Finnegans Wake* as they reflect Lucia's consultations with Karl Jung and

15    other psychiatrists).

16         Finally, Shloss's statement about Joyce's use of Lucia in *Finnegans Wake* is

17    relevant to issues before the Court, including: (1) Shloss's need to quote from *Finnegans Wake*

18    on her Website for scholarly purposes; and (2) the ways in which James Joyce himself, contrary

19    to the contentions of his Estate, made his "private" life a part of his public writings.

20        4.      Alleging lack of personal knowledge, Defendants challenge Shloss's

21    statement in paragraph 29 of her Declaration that "Mr. [Stephen James] Joyce pointedly

22    informed Mr. [John] Glusman [of Farrar Straus & Giroux] that he wished FSG to know that he

23    had never lost a lawsuit. He also stated that he was sending FSG copies of all his

24    correspondence with me." The statement comports with FRE 602 because, as Shloss's

25    Declaration (¶¶ 29-30) and Exhibit H thereto make clear, she learned about Mr. Joyce's phone

26    call the same day in a detailed email sent to her by her editor at FSG, Elisabeth Sifton.

27    Defendants have not challenged the admissibility of that email or the admissions by Mr. Joyce

28    contained therein.

Moreover, the statements made by Mr. Joyce to Mr. Glusman are confirmed by a letter that Mr. Joyce wrote to Jonathan Galassi, President of FSG, the day of his conversation with Mr. Glusman. *See* Shloss Declaration, Exhibit I; Declaration of Jonathan Galassi Regarding Plaintiff's Opposition To Defendants' Motion To Dismiss, Ex. 1. Shloss has thus introduced evidence "sufficient to support a finding that the witness has personal knowledge of the matter." FRE 602.

5. Defendants challenge as a "legal conclusion" Shloss's phrase in paragraph 45 of her Declaration, "[d]espite the valid fair use defense of my book as it was originally written . . ." This lawsuit is centrally about Shloss's contention that her use of quoted materials in her biographical work on Lucia Joyce is a fair use, and Defendants' contrary contention. Shloss's expression of her conviction in this regard is not a "legal conclusion" and in no way prejudices Defendants.

6. Defendants challenge as a "legal conclusion" Shloss's statement in paragraph 52 of her Declaration that the 1922 Paris edition of *Ulysses* is "in the public domain in the United States." This lawsuit is also about Shloss's contention that her use of quoted material from that edition of *Ulysses* is non-actionable because that particular edition is in the U.S. public domain, and Defendants' contrary contention. Shloss's expression of her conviction in this regard is not a "legal conclusion" and in no way prejudices Defendants.

7. Alleging speculativeness and lack of relevance and personal knowledge, Defendants challenge Shloss's phrase in paragraph 52 of her Declaration, "[b]ecause [the fictional character Milly Bloom in *Ulysses*] was based in many ways on Joyce's daughter, Lucia . . ." First, the statement comports with FRE 602 for the reasons given above in paragraph 1. Second, the statement is not speculative for the reasons given above in paragraph 3.

Moreover, that Joyce incorporated aspects and experiences of his family into his characters in *Ulysses* has long been acknowledged in Joyce criticism. *See, e.g.*, Ellmann, *James Joyce* at 384-88 (discussing how Joyce built habits and interests of himself and his wife Nora into Leopold and Molly Bloom in *Ulysses*).

1      Finally, Shloss's statement about Joyce's use of Lucia in *Ulysses* is relevant to issues before the Court, including: (1) Shloss's need to quote from *Ulysses* on her Website for scholarly purposes; and (2) the ways in which James Joyce himself, contrary to the contentions of his Estate, made his "private" life a part of his public writings.

      8.      Alleging lack of personal knowledge, Defendants challenge Shloss's statement in paragraph 55 of her Declaration that Stephen James Joyce "decided he would attack me by threatening my employer, Stanford University, as well." Shloss has introduced a letter written by Mr. Joyce to John Etchemendy, Provost of Stanford University. *See* Declaration of John Etchemendy In Support Of Plaintiff's Opposition To Defendants' Motion To Dismiss, Ex. A. In that letter, Mr. Joyce expressed hostility to Shloss's Website project, stated that her book on Lucia "exploits" the Joyce family and invades its privacy, asserted that her publisher, FSG, had deleted material from the book "out of concern for copyright litigation," called Shloss's efforts "inappropriate and unprofessional," and concluded by informing Stanford's Provost that the Estate "takes this matter very seriously." When a university provost receives a letter of this type from a hostile copyright holder, the targeted professor is entitled to conclude that she is being attacked through her employer. Mr. Joyce's letter shows that Shloss has introduced evidence "sufficient to support a finding that the witness has personal knowledge of the matter." FRE 602.

      9.      Alleging speculativeness and lack of personal knowledge, Defendants challenge Shloss's statement in paragraph 65 of her Declaration regarding the Joyce Estate's opposition to the original epilogue of Brenda Maddox's book, *Nora: The Real Life of Molly Bloom* (Houghton Mifflin, 1988). First, the statement comports with FRE 602 because it has been common knowledge for years that the Joyce Estate required Brenda Maddox to delete the epilogue because it discussed Lucia Joyce and her mental health. *See Afga-Gevaert, A.G.*, 879 F.2d at 1524 ("Knowledge acquired through others may still be personal knowledge within the meaning of Fed. R. Evid. 602 . . . ."). This widely-known fact was reported at least as early as 1988 in the *New York Times*. *See* Shloss Declaration, Ex. A.

1    In addition, Exhibit C to the Declaration of Antoinette D. Dozier In Support Of Defendants' Reply an Exhibit C contains at page 84 the statement of Brenda Maddox that "the original text of my biography of Nora Joyce had an Epilogue devoted to Lucia and her illness, but . . . this had to be deleted at the request of the Joyce Estate." It is absurd for Defendants to attack Shloss's statement as speculative when they themselves have submitted evidence establishing the same facts. Shloss has thus introduced evidence "sufficient to support a finding that the witness has personal knowledge of the matter." FRE 602.

10.    Alleging impermissibility under FRE 408, Defendants challenge the statement in paragraph 7 of David S. Olson's Declaration In Support Of Plaintiff's Opposition To Defendants' Motion To Dismiss that settlement discussions broke down because the Joyce Estate "continued to demand the removal of particular material to which it objected." FRE 408 makes clear that it "does not require exclusion when the evidence is offered for another purpose [apart from liability for or invalidity of the claim or its amount]." Here, the purpose is to rebut Defendants' contention that there is no actual controversy with respect to the Joyce and Lucia material that Shloss has included on her Website and that Shloss has no reasonable apprehension of being sued over that material. *See* Motion To Dismiss at 8-13. A position taken during settlement discussions offered to rebut the contention of the one who took the position is admissible. *Couchenor v. Cameron Savings & Loan, F.A.*, 160 F.3d 1187, 1190 (8th Cir 1998) (letter containing settlement offer and party's statement regarding her plans to retire was admissible to rebut testimony that the party had no plans to retire).

11.    Alleging hearsay, Defendants challenge statements contained in Exhibit A to Shloss's Declaration. Exhibit A, a *New York Times* article containing statements concerning the Joyce Estate's hostility toward scholarship and Stephen James Joyce's destruction of Lucia-related documents, is not hearsay, because the statements are not offered for the truth of the matters asserted, but rather for their effect on Shloss's state of mind—her reasonable apprehension of being sued by the Estate—which Defendants have challenged in their Motion to Dismiss. *See* Plaintiff's Opposition at 4, 24.

12. Alleging hearsay, Defendants challenge statements contained in Exhibit P to Shloss's Declaration. Exhibit P, containing articles from the *Irish Times* and other news sources discussing Defendants' lawsuit against Cork University Press, is not hearsay, because the statements are not offered for the truth of the matters asserted, but rather for their effect on Shloss's state of mind—her reasonable apprehension of being sued by the Estate—which Defendants have challenged in their Motion to Dismiss. *See* Shloss Declaration, ¶59; Plaintiff's Opposition at 8-9.

13. Alleging hearsay, Defendants challenge statements contained in Exhibit R to Shloss's Declaration. Exhibit R, containing articles from the *London Independent* and other news sources discussing Defendants' litigation against the sponsors of an Internet reading of *Ulysses*, is not hearsay, because the statements are not offered for the truth of the matters asserted, but rather for their effect on Shloss's state of mind—her reasonable apprehension of being sued by the Estate—which Defendants have challenged in their Motion to Dismiss. *See* Shloss Declaration, ¶61; Plaintiff's Opposition at 8-9.

14. Alleging hearsay, Defendants challenge statements contained in Exhibit T to Shloss's Declaration. Exhibit R, containing articles from the *London Times: Ireland* and other news sources discussing Defendants' threats of litigation to third parties, is not hearsay, because the statements are not offered for the truth of the matters asserted, but rather for their effect on Shloss's state of mind—her reasonable apprehension of being sued by the Estate—which Defendants have challenged in their Motion to Dismiss. *See* Shloss Declaration, ¶64.

15. Alleging hearsay, Defendants challenge statements contained in Exhibit 2 to the Declaration of Robert Spoo In Support Of Plaintiff's Opposition To Defendants' Motion To Dismiss. Exhibit 2, containing an article from the *Sunday Independent* discussing Defendants' litigation against the sponsors of an Internet reading of *Ulysses*, is not hearsay, because the statements are not offered for the truth of the matters asserted, but rather for their effect on Shloss's state of mind—her reasonable apprehension of being sued by the Estate—which Defendants have challenged in their Motion to Dismiss. *See* Shloss Declaration, ¶61; Plaintiff's Opposition at 8-9.

1  16. Alleging hearsay, Defendants challenge statements contained in Exhibit 3 to the Spoo Declaration. Exhibit 3, containing an article from the *London Independent* discussing Defendants' litigation against the sponsors of an Internet reading of *Ulysses*, is not hearsay, because the statements are not offered for the truth of the matters asserted, but rather for their effect on Shloss's state of mind—her reasonable apprehension of being sued by the Estate—which Defendants have challenged in their Motion to Dismiss. *See* Shloss Declaration, ¶61; Plaintiff's Opposition at 8-9.

17. Alleging hearsay, Defendants challenge statements contained in Exhibit 4 to the Spoo Declaration. Exhibit 4, containing an article from the *New Yorker* discussing Stephen James Joyce's aggressive hostility toward Joyce scholarship and the lawsuits and threats of lawsuits by Defendants, is not hearsay, because the statements are not offered for the truth of the matters asserted, but rather for their effect on Shloss's state of mind—her ongoing reasonable apprehension of being sued by the Estate even after the filing of her original complaint in this matter—which Defendants have challenged in their Motion to Dismiss.

18. Alleging hearsay, Defendants challenge statements contained in Exhibit 5 to the Spoo Declaration. Exhibit 5, containing an article from the *Irish Times* discussing Defendants' opposition to various creative projects involving use of quotations from James Joyce's writings, is not hearsay, because the statements are not offered for the truth of the matters asserted, but rather for their effect on Shloss's state of mind—her reasonable apprehension of being sued by the Estate—which Defendants have challenged in their Motion to Dismiss. *See* Plaintiff's Opposition at 8-9.

1  For the reasons offered above, Shloss respectfully requests that the Court overrule
2  all of Defendants' objections to Shloss's evidence and deny Defendants' Motion to Strike in its
3  entirety.

DATED:  January 29, 2007

STANFORD LAW SCHOOL
CENTER FOR INTERNET AND SOCIETY

By: _____/s/_____
Anthony T. Falzone
Attorneys for Plaintiff
CAROL LOEB SHLOSS