Lawrence Lessig
Anthony T. Falzone (SBN 190845)
David S. Olson (SBN 231675)
STANFORD LAW SCHOOL CENTER FOR
INTERNET AND SOCIETY
559 Nathan Abbott Way
Stanford, California  94305-8610
Telephone:  (650) 724-0517
Facsimile:  (650) 723-4426
E-mail:      falzone@stanford.edu

Mark A. Lemley (SBN 155830)
Matthew M. Werdegar (SBN 200470)
Dorothy McLaughlin (SBN 229453)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, California  94111
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188
E-mail:      mwerdegar@kvn.com

Bernard A. Burk (SBN 118083)
Robert Spoo (*pro hac vice*)
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN, P.C.
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone: (415) 434-1600
Facsimile:  (415) 217-5910
E-mail:      bburk@howardrice.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| CAROL LOEB SHLOSS,<br><br>        Plaintiff,<br><br>        v.<br><br>SEÁN SWEENEY, in his capacity as trustee of the Estate of James Joyce, and THE ESTATE OF JAMES JOYCE,<br><br>        Defendants. | CASE NO. CV 06-3718 (JW) (HRL)<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      May 21, 2007<br>Time:     9:00 a.m.<br>Judge:    Hon. James Ware |

W03 402600523/1382189/v1

Dockets.Justia.com

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    BACKGROUND ............................................................................................3

       A.     The Estate's Fifteen-Year Campaign Of Obstruction, Threats
              And Intimidation Against Professor Shloss And Her Publisher.......................3

       B.     The Estate's History of Threats Against Joyce Scholars....................................5

       C.     The Electronic Supplement And The Initiation Of This Lawsuit.......................6

       D.     The Estate's Motion To Dismiss........................................................................7

       E.     Settlement ...........................................................................................................8

       F.     Dismissal ............................................................................................................9

II.    ARGUMENT .................................................................................................9

       A.     Shloss is Entitled to Both Costs and Attorney's Fees Under § 505 of the
              Copyright Act.....................................................................................................9

       B.     Shloss Is Eligible for Fees Because She Meets Both Prongs of the
              "Prevailing Party" Test ...................................................................................10

              1.     Shloss is the "Prevailing Party" Because the Settlement Agreement
                     Affected a Material Alteration in the Parties' Legal Relationship .......10

              2.     Shloss is the "Prevailing Party" Because the Settlement Agreement Is
                     Court Enforceable .................................................................................11

       C.     The Court Should Award Fees To Shloss Because A Fee Award
              Substantially Furthers The Policy Of The Copyright Act ...............................12

              1.     Shloss's Complete Success Heavily Favors Awarding
                     Shloss's Attorney's Fees......................................................................14

              2.     Defendants' Unreasonable or Frivolous Arguments Heavily Favor
                     Awarding Shloss Attorney's Fees.........................................................14

              3.     Defendants' Improper Motivation Weighs Heavily in Favor
                     of Awarding Shloss's Attorney's Fees .................................................16

4.      The Need to Advance Considerations of Compensation
        and Deterrence Strongly Favors Awarding Attorney's Fees ...............18

    D.    Awarding Attorney's Fees to Shloss Promotes the
          Purpose of the Copyright Act ..........................................................................19

IV.   CONCLUSION..............................................................................................................21

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Barrios v. Cal. Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002) ......................11

*Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003).......................................................................17

*Brinn v. Tidewater Transport District Commission*, 242 F.3d 227 (4th Cir. 2001) ..........10

*Buckhannon Board and Care Home, Inc. v. W. Va. Department of Health and Human Resources*, 532 U.S. 598 (2001)......................................................................10, 11

*Carbonell v. INS*, 429 F.3d 894 (9th Cir. 2005) ...........................................9, 10, 11, 12, 14

*Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996)..........................................12, 13, 19

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 ...............................................................12, 13, 19

*Garcia-Goyco v. Law Environmental Consultants, Inc.*, 428 F.3d 14 (1st Cir. 2005) ......................................................................................................................16

*In re Hunt*, 238 F.3d 1098 (9th Cir. 2001).........................................................................10

*Labotest, Inc. v. Bonta*, 297 F.3d 892 (9th Cir. 2002) .......................................................12

*Matthews v. Freedman*, 157 F.3d 25 (1st Cir. 1998) (citing *Fogerty*, 510 U.S. at 526-27).......................................................................................................................16

*New Era Publ'ns International v. Henry Holt & Co.*, 695 F. Supp. 1493 (S.D.N.Y. 1988) *aff'd*, 873 F.2d 576 (2d Cir. 1989)....................................................17

*Quinto v. Legal Times of Wash., Inc.*, 511 F. Supp. 579 (D.D.C. 1981) ...........................10

*Richard S. v. Department of Develop. Serv. of Cal.*, 317 F.3d 1080 (9th Cir. 2003) ...............................................................................11, 12

*Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir. 1966)............17

*Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869 (9th Cir. 2005)..........................................................................................................13

*Wall Data, Inc. v. Los Angeles County Sheriff's Department*, 447 F.3d 769 (9th Cir. 2006) ..............................................................................................................13, 14

## FEDERAL STATUTES AND RULES

17 U.S.C. § 505.........................................................................................................10, 12

FRCP 54(d) ..................................................................................................................10

1

## **<u>NOTICE OF MOTION</u>**

2        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on May 21, 2007 at 9:00 a.m., or as soon thereafter

4   as the matter may be heard, in Courtroom 8, 4th Floor of the above-entitled Court located at 280

5   South 1st Street, San Jose, CA, 95113, the Honorable James Ware presiding, Plaintiff Carol

6   Loeb Shloss ("Shloss") will and hereby does move this Court, pursuant to Rule 54(d) of the

7   Federal Rules of Civil Procedure and 17 U.S.C. § 505, for an Order awarding costs and attorneys

8   fees in an amount to be determined according to proof.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1  **I.    INTRODUCTION**

2              Plaintiff Carol Loeb Shloss ("Shloss") filed this lawsuit in response to a fifteen-

3  year campaign of threats and intimidation from the Estate of James Joyce (the "Estate"), and its

4  trustee Stephen James Joyce ("Joyce").  The subject of these threats was Shloss's scholarly

5  biography of Lucia Joyce, the daughter of James Joyce, one of the twentieth century's most

6  important authors.  The stated purpose of these threats was to prevent Professor Shloss from

7  publishing any material to which Joyce or the Estate held copyrights, in any amount, any context,

8  or any form, as part of that biography.  And Shloss is not the only person that the Estate has

9  attempted to silence.  It has threatened suit over the use of eighteen words of Joyce's work in a

10 choral production when displeased with the resulting product, and forced another author to

11 remove an epilogue from a book that discussed Lucia Joyce and her institutionalization.  The

12 result of this conduct has been to hamper not only Shloss's work, but that of many Joyce scholars

13 as well.

14             In response to these threats and fear of litigation, Shloss and her publisher each

15 cut substantial amounts of material from the book.  Accordingly, the published biography lacked

16 many of the primary sources on which its conclusions were based.  Following publication of her

17 book, Shloss created a website (the "Electronic Supplement") that contained the deleted material.

18 Its purpose was to present the full story that her book was meant to tell—unaffected by the cuts

19 undertaken in response to the Estate's threats.  The Estate resumed its confrontational stance and

20 again warned her that the Electronic Supplement was an infringement of its copyrights.

21             Shloss filed this lawsuit to vindicate her right to publish the Electronic

22 Supplement.  Accordingly, she asked the Court to declare her right to publish the Electronic

23 Supplement in the United States free of liability for copyright infringement based on Fair Use,

24 and various affirmative defenses to copyright infringement.  The Estate first tried to dodge the

25 merits of this dispute by suggesting there was no proper case or controversy for the Court to

26 decide.  After this Court held that Shloss's lawsuit presented a proper case or controversy, the

27 Estate gave up.  In a settlement agreement enforceable by the Court and incorporated into the

28 Court's order of dismissal, the Estate covenanted not to sue Shloss for copyright infringement

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1    based on her publication of the Electronic Supplement in the United States, whether on the

2    Internet or in print.  Shloss gave up nothing in the Settlement Agreement; she merely agreed to

3    dismiss the suit once she was given everything she wanted.  Accordingly, Shloss won exactly

4    what she set out to obtain:  the right to publish her Electronic Supplement free from liability for

5    copyright infringement.  Having obtained the relief she sought in this lawsuit, Shloss is the

6    prevailing party in this litigation.  That entitles her to costs, and makes her eligible for attorneys'

7    fees under the Copyright Act.

8          There is good reason to award fees here.  Joyce and the Estate maintained a

9    legally untenable position for years.  According to them, Shloss was not permitted to use literally

10   anything James or Lucia Joyce ever wrote, drew or painted—no matter the nature, context, form

11   or amount.  When it was explained that fair use protected Shloss's right to use the materials in

12   this context, Joyce and the Estate dismissed Fair Use as "wishful thinking."  But once confronted

13   with a proper legal dispute that tested the validity of their assertions, Joyce and the Estate

14   abandoned the fight.  This revealed that their decades of threats were empty, designed not to

15   articulate defensible principles, but simply to scare and intimidate.

16         Although it is clear that Joyce and the Estate had no intention of defending the

17   position that they had staked out, their surrender did not come quickly or cheaply.  It occurred

18   nine months into the case, and only after significant amounts of time had been spent on the

19   matter by both sides.  Joyce and the Estate could have agreed to Shloss's right to publish the

20   Electronic Supplement upon the initiation of this lawsuit, or even the filing of the Amended

21   Complaint, and saved everyone a lot of effort and expense.  Instead, they tried to avoid the

22   consequences of their actions by filing a motion to dismiss that failed to acknowledge the threats

23   they made, or the fact that the covenant not to sue on which the motion was premised plainly did

24   not cover the whole dispute framed by the pleadings.

25         The covenant that Defendants have now provided in the context of a settlement

26   covers the whole dispute and then some; it give Shloss relief *broader* than she sought in her

27   complaints.  Whereas Shloss's complaints against Joyce and the Estate sought to establish her

28   right to publish the Electronic Supplement on the Internet free from liability for copyright

1    infringement, the Estate's covenant not to sue insulates Shloss from liability whether she

2    publishes the Electronic Supplement on the Internet, or in printed form.

3        While this lawsuit did not result in a judgment on the merits, it established

4    Shloss's right to publish material that Joyce and the Estate tried to suppress for years with

5    baseless threats of copyright enforcement, which we now know were empty.  By standing up to

6    these threats and vindicating her right to publish the material at issue free from copyright

7    liability, Shloss's lawsuits furthered the purposes of not just the Copyright Act, but scholarship

8    and free speech itself.  The Court should award Shloss costs and reasonable attorneys' fees in an

9    amount according to proof.

10   **II.    BACKGROUND**

11       The settlement of this lawsuit, and the Estate's agreement to let Shloss publish

12   material central to her biography of Lucia Joyce, marks the end of a story that dates back nearly

13   twenty years.  It is a story marked by the Defendants'' attempts to intimidate a scholar, interfere

14   with her work, and ultimately suppress it.

15
          **A.    The Estate's Fifteen-Year Campaign Of Obstruction, Threats**
16        **And Intimidation Against Professor Shloss And Her Publisher**

17       Shloss began researching her biography about Lucia Joyce in 1988.  Olson Decl.,

18   Ex. A, ¶ 11. [Dec. 15, 2006 Shloss Decl.]  In connection with that work, Shloss traveled the

19   world to learn about and document the life of Lucia, including her early dancing career, history

20   of mental health treatment and her unacknowledged contributions to her father's literary works.

21   *Id.* ¶¶ 11-20.

22       The Estate tried to thwart her work from the beginning.  When Shloss traveled to

23   the University of Buffalo in New York in 1994 to consult the James Joyce papers in the Special

24   Collections at the Lockwood Memorial Library, she learned that the Library's Director had

25   already been contacted by "intermediaries" from the Joyce Estate, who warned that Shloss

26   should not be permitted access to the Library's Joyce materials.  *See* Olson Decl., Ex. B at 8.

27   [Dec. 15, 2006 Spoo Decl., Ex. 4]

28

1    This was not the first time that Joyce and the Estate had interfered with

2 scholarship. Stephen James Joyce had previously objected to an epilogue in fellow Joyce scholar

3 Brenda Maddox's biography of Nora Joyce, James Joyce's wife, because it described the time

4 Lucia spent in a mental asylum. Olson Decl., Ex. B at 2. [Spoo Decl., Ex 4] Upon learning of

5 the epilogue, Joyce withdrew all permission previously granted unless Maddox removed the

6 epilogue. Maddox was only able to obtain the copyright permissions she needed from the Estate

7 by agreeing that neither she nor her descendants would ever publish the epilogue, and that she

8 would not criticize Joyce or the Estate. *See id.*

9    After Shloss contacted Joyce about her book, Joyce announced his opposition to it

10 in no uncertain terms. In a March 31, 1996 letter, Joyce told Shloss that his "response regarding

11 helping and working with [her] on a book about Lucia is straightforward and unequivocal: it is a

12 definite <u>NO</u>." Olson Decl., Ex. C. [Dec. 15, 2006 Shloss Decl., Ex. C] (emphasis in original).

13 Furthermore, Joyce added that "you do not have our approval/permission to 'use' *any* letters or

14 papers by or from Lucia. . . . [or] our authorization to use *any* letters from my grandfather to

15 anybody which deal with her." *Id.* (emphasis added). Joyce wrote to Shloss again on April 19,

16 1996. In this letter, he derided what he termed the "Joycean industry" with which he associated

17 Shloss, and reiterated that "[o]n Lucia's dancing career we have nothing to say." Olson Decl.,

18 Ex. D. [Dec 15, 2006 Shloss Decl., Ex. E]

19    Shloss continued her work in the face of Joyce's opposition. In 2001, she signed

20 a contract with the publishing house Farrar Straus & Giroux ("FSG") to publish her book, now

21 titled *Lucia Joyce: To Dance In The Wake*. Olson Decl., Ex. A ¶ 25. [Dec. 15, 2006 Shloss

22 Decl.] Upon learning that Shloss's book would soon be published, Joyce issued a series of

23 threats to Shloss and her publisher that spanned nearly three years. *See generally* Olson Decl.,

24 Ex. A ¶¶ 21-44. [Dec 15, 2006 Shloss Decl.] For example, Joyce:

25    • Declared that he would not permit Shloss or her publisher "to use any quotations
26    from anything" that Lucia Joyce "ever wrote, drew or painted. Olson Decl., Ex.
       E. [Dec 15, 2006 Friedman Decl., Ex. 5]

27    • Announced that he was opposed to the publication of any Lucia-related material,
       and he had "never lost a lawsuit." Olson Decl., Ex. F. [Dec. 15, 2006 Shloss
28    Decl., Ex. I]

- Advised Shloss's publisher that "over the past decade **the James Joyce Estate's 'record', in legal terms, is crystal clear and we have proven on a number of occasions that we are prepared to put our money where our mouth is**" and that publication of any Lucia-related material would be "*à vos risques et périls*"—**at your risk and peril**. Olson Decl., Ex. G. [Dec. 11, 2006 Friedman Decl., Ex. 2] (emphasis added)

- Expanded his claims to include sole  "copyright, to anything and everything that James, Nora . . . , Giorgio (George), Lucia, Helen (Kastor Fleischman) Joyce and myself ever wrote, drew, painted and/or recorded. Olson Decl., Ex. H. [Dec. 11, 2006 Friedman Decl., Ex. 6]

- Announced that the law "will uphold our intellectual property rights." Olson Dec., Ex. H. [Dec. 11, 2006 Friedman Decl., Ex. 6]

- Dismissed fair use analysis as "a bad joke" and "wishful thinking." Olson Decl., Ex. G. [Dec. 11, 2006 Friedman Decl., Ex. 2]

These threats and the many others that Joyce issued had their intended effect. Shloss's publisher ultimately required Shloss to cut numerous pages of Lucia-related material from her 400-page manuscript over her objection and to her great dismay. [1]  Olson Decl., Ex. A ¶¶ 45-46. [Dec. 15, 2006 Shloss Decl.]  This was in addition to material that Shloss had herself deleted for fear of being sued by the Joyce Estate.  In her view, the book she had spent fifteen years on was being gutted.

### B.    The Estate's History of Threats Against Joyce Scholars

Shloss was not the only target of Joyce's animosity during the period she was researching and writing about Lucia Joyce.  Joyce's threats and lawsuits against other scholars are well-known in the Joyce community, as is detailed in Shloss's Opposition to the Motion to Dismiss at 4, 8-9.  A couple of examples among many are:

- Stephen James Joyce vehemently objected to an epilogue in Joyce scholar Brenda Maddox's biography of Nora Joyce, James Joyce's wife, because it described the time Lucia spent in a mental asylum.  *See* Olson Decl., Ex. B at 34. [Spoo Dec., Ex. 4] Fearing legal action, Maddox removed the section even though copies of the book had already been printed.  *See id.*; Olson Decl., Ex. U. at p. 84 [January 8, 2007 Dozier Decl., Ex. C]

---

[1]    The full range of threats that Joyce and the Estate issued are detailed in Shloss's opposition to the Estate's motion to dismiss her complaint.  *See* Olson Decl., Ex A ¶¶ 21-58. [Dec 15, 2006 Shloss Decl.]

1 • In 2000, threats by Joyce stopped an Irish composer from using only eighteen
2 words from *Finnegans Wake*, a novel thousands of words long, in his choral
piece. Despite the nominal use, Joyce stated that he simply did not like the music
3 and thus deemed even eighteen words too much. *See* Olson Decl., Ex. J. [Spoo
Dec., Ex. 5.]

4  **C.    The Electronic Supplement And The Initiation Of This**
5    **Lawsuit**

6    Unwilling to compromise her academic and scholarly integrity, Shloss was

7 determined to tell the whole story of Lucia Joyce. To tell that story—as it existed before FSG's

8 cuts—Shloss created a Website that contained the material FSG had required her to cut, which

9 was ready to be published as of March 2005. Olson Decl., Ex. A ¶ 49. [Dec. 15, 2006 Shloss

10 Decl.] Once Shloss notified the Estate of her plans, Joyce and the Estate resumed their

11 confrontational stance. They declared that publication of the Lucia-related materials would be an

12 "unwarranted infringement of the Estate's copyright" and "request[ed] in the strongest possible

13 terms that [the Estate's] legal rights on this issue be respected." *Id.* (emphasis added). In

14 addition, they cautioned Shloss that the Estate "reserves all its rights if your client perseveres

15 with her proposed activities." *Id.*

16    Accordingly, Shloss' dilemma remained. She could choose to not publish her

17 Electronic Supplement and leave the full story of Lucia, which she had worked fifteen years to

18 assemble, to be lost for all time, or she could risk the possibility of suit and financial ruin by

19 publishing the excised material on the Electronic Supplement she had created. In order to avoid

20 this dilemma and forestall potential damages, Shloss filed this suit for declaratory relief on June

21 12, 2006. In her complaint, Shloss sought a declaration that her Electronic Supplement did not

22 infringe Defendants' copyrights and an injunction barring Defendants' from asserting their

23 copyrights against her in connection with publication of the Electronic Supplement on the

24 internet. Olson Decl., Ex. K, [Complaint Against Joyce Estate]

25    Following the initiation of this suit, Shloss revised her Website once to add

26 additional materials that she had cut from her manuscript. Olson Decl., Ex. A ¶ 49. [Dec. 11,

27 2006 Shloss Decl.] This revision was completed and ready to be published in September 2006.

28 *See id.* Shloss then filed an Amended Complaint on October 25, 2006, to reflect the revised

1   Website and put it at issue in her pleadings.  *See id.*  After Shloss learned that Stephen James

2   Joyce asserted personal ownership of some of the copyrights in issue, she initiated a second suit

3   against him based upon nearly identical factual allegations. Olson Decl., Ex. L. [Complaint

4   against Stephen Joyce]

5          Both the Amended Complaint in this action, and the additional complaint against

6   Stephen Joyce, ask for the same basic relief sought in the original complaint filed in this action—

7   an injunction barring Defendants' from asserting their copyrights against Shloss in connection

8   with the publication of the Electronic Supplement.

9          **D.      The Estate's Motion To Dismiss**

10          On November 17, 2006, the Estate moved to dismiss the Amended Complaint on

11   the grounds the Court lacked subject matter jurisdiction over this action.  In that motion, the

12   Estate ignored its years of threats, contending that Shloss had no reasonable apprehension of

13   being sued by the Estate.  Olson Decl., Ex. M. at III. B. 1. [Memorandum of Points & Authorities

14   in Support of Defendants' Motion to Dismiss (hereafter "MTD"]  In addition, the Estate

15   submitted with its moving papers a purported covenant not to sue Shloss in connection with the

16   material that had been included on the Website as of November 2005.  Olson Decl., Ex. N at ¶ 7.

17   [Nov. 17, 2006 Sweeney Decl.]  That covenant, however, provided no relief as to material that

18   had been added in 2006, which comprised a substantial portion of the material put at issue by

19   Shloss's Amended Complaint.  Olson Decl., Ex. O at 11-12. [Order Denying Motion to Dismiss]

20   In addition to moving to dismiss Shloss's complaint, Defendants also moved to dismiss Shloss's

21   claim for copyright misuse as "improper on its face."  *Id* at 13.[2]

22          Following the hearing on the Estate's motion to dismiss, the Court ruled against

23   the Estate on all of these issues.  It held that Shloss had a "real and reasonable apprehension of

24   _____

25   [2]     Indeed, Defendants turned their motion into yet another vehicle for attacking Shloss, her
     book and even her counsel.  The Estate repeatedly chided Shloss's work as "faction" and claimed
26   repeatedly that it should not be considered "scholarship."  Olson Decl., Ex. M at 2, 6n.1 [MTD].
     The Estate likewise suggested the Electronic Supplement was nothing but a "pretext" so that
27   Shloss and her lawyers could "mak[e] new law."  *Id* at 3-4.  This Court disagreed, holding that
     "[t]his case is not a mere '"academic war" or a "hypothetical" case,' as Defendants state."  Olson
28   Decl., Ex. O at 13 [Order Denying Motion to Dismiss].

1    copyright liability" sufficient to create an actual controversy between the parties, and that

2    "Defendants' putative covenant not to sue based on the Electronic Supplement as it existed in

3    2005 is inadequate to moot the actual controversy between the parties." *Id* at 12.  As to

4    Defendants'' motion to dismiss the copyright misuse claim, the Court held that claim was

5    appropriate because "Defendants' alleged action significantly undermined the copyright policy

6    of 'promoting invention and creative expression.'"[3] *Id. at 16.*

7        **E.    Settlement**

8            Having proved unsuccessful in avoiding the merits of the dispute, the Estate

9    decided to abandon its years of threats and reversed its course.  On March 19, 2007, Joyce and

10   the Estate entered into a settlement agreement under which they covenanted "not to sue Shloss

11   for infringement of any copyrights resulting from Shloss's publication, ***in printed or electronic***

12   ***for***m, of the [Electronic] Supplement. . . . "  Olson Decl., Ex P, [Stip. Dismissal Order, Ex. 1]

13   This was more than Shloss had asked for:  Shloss's complaints had only asked for a declaration

14   of her right to publish ***electronically*** in the United States.[4]  In addition, the Estate agreed it would

15   provide documentation regarding Joyce's claim that he is the sole beneficial owner, and has

16   control over, all of Lucia Joyce's copyrights, and agreed to provide such documentation to third

17   parties should they question the ownership and control of those copyrights.  *Id.*

18           Accordingly, Shloss obtained relief ***broader*** than she originally sought in her

19   Complaints.  Shloss's complaints against Joyce and the Estate sought to establish her right to

20   publish the Electronic Supplement on the Internet free from liability for copyright infringement,

21   whereas as the Estate's covenant not to sue insulates Shloss from liability regardless of whether

22   she publishes on the Internet, ***or in printed form***.  In addition, she obtained important

23   _____

24   [3]       Defendants also moved the Court to strike other claims Shloss raised as affirmative
     defenses to copyright infringement, including copyright misuse, unclean hands, and that Ulysses

25   was in the public domain.  The Court ruled against defendants' on all of these issues, and struck
     only one paragraph, of the Complaint concerning the allegation that Stephen Joyce had papers

26   concerning Lucia Joyce removed from the National Library of Ireland.  *See* Olson Decl., Ex. O at
     16-19 [Order Denying Motion to Dismiss].

27   [4] Although the Estate covenanted not to sue as to print publication in addition to electronic
     publication, the Estate's covenant followed Shloss's Complaints and was limited to "publication

28   within the United States." *Id.*

1  information concerning the true ownership of Lucia's copyrights, which she had not demanded

2  in her complaints, but which is nonetheless valuable in determining the true extent of the Estate's

3  rights, and those of Stephen Joyce.

4  **F.    Dismissal**

5  On March 26, 2007, the parties submitted a proposed order of dismissal to the

6  Court, which incorporated the Settlement Agreement as an exhibit, and provided the Court with

7  jurisdiction to enforce the terms of the Settlement Agreement that the Order of Dismissal

8  incorporated.  Olson Decl., Ex. P [Dismissal Order]. The Court entered that Order on March 27,

9  2007, dismissing with prejudice Shloss's actions against the Estate and Stephen James Joyce.

10  *See id.*

11  Having obtained the relief she sought in her complaints and more through a

12  Court-enforced settlement agreement, Shloss now seeks costs and attorneys' fees as the

13  prevailing party in these actions.

14  **III.    ARGUMENT**

15  Shloss is both eligible for fees and entitled to them.  Shloss easily fits the

16  definition of a "prevailing party," making her eligible for an attorney's fee award.  Such an

17  award is within the Court's discretion.  No bad faith or frivolity need be found on the part of

18  Defendants for fees to be awarded to Shloss.  Instead, fees should be awarded if doing so furthers

19  the policy of the Copyright Act.  Because awarding fees to Shloss substantially furthers the

20  policy of the Copyright Act, and because Shloss's case meets the non-exclusive factors

21  enumerated by the Ninth Circuit for eligibility for fees, the Court should award fees in an amount

22  to be proven.

23  **A.    Shloss is Entitled to Both Costs and Attorney's Fees Under**
      **§ 505 of the Copyright Act.**

24

25  The Copyright Act departs from the general rule that requires litigants to pay their

26  own attorney's fees.  *See Carbonell v. INS*, 429 F.3d 894, 897-98 (9th Cir. 2005).  Instead, the

27  Copyright Act provides that "the court may . . . award a reasonable attorney's fee to the

28  prevailing party as part of the costs."  17 U.S.C. § 505.  Shloss is the "prevailing party" in these

matters, as defined by Supreme Court and Ninth Circuit precedents, and the equitable factors

1  strongly favor a fee award here.[5]  Accordingly, in addition to awarding Shloss costs under

2  Federal Rule of Civil Procedure 54(d) as the prevailing party, the Court should award Shloss her

3  reasonable attorneys' fees.

4  **B.    Shloss Is Eligible for Fees Because She Meets Both Prongs of
        the "Prevailing Party" Test**

5

6  **1.    Shloss is the "Prevailing Party" Because the Settlement
          Agreement Affected a Material Alteration in the
          Parties' Legal Relationship**

7  "Prevailing party" is a term of art that is used in numerous federal statutes

8  authorizing awards of attorney's fees.  *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of*

9  *Health and Human Resources*, 532 U.S. 598, 602-03 (2001).  The Ninth Circuit has

10 characterized the test for "prevailing party" as a two-pronged test.  The first prong "requires a

11 material alteration in the legal relationship between the parties."  *See, e.g., Carbonell*, 429 F.3d

12 at 899.  The question is not whether a litigant succeeded in obtaining a judgment on the merits;

13 rather, the question is whether one party has forced the other party to do something it would

14 otherwise not have to do, or to refrain from doing something it could otherwise do.  *See id.* at

15 899-900 (plaintiff who sought stay of deportation was "prevailing party" where Court did not

16 adjudicate merits but did enter order incorporating stipulation staying deportation).  Put another

17 way, a party meets the first prong of this test where he achieves "much of the relief he sought" in

18 his complaint.  *Id.* at 900.

19 Here, the Settlement Agreement between the parties provides Shloss with the

20 relief that she requested, and more.  In her complaints, Shloss sought an injunction barring Joyce

21 and the Estate from suing her for copyright infringement in regard to her publication of the

22 _____

23 [5]  That Shloss was represented by pro bono counsel is of no matter where the statutory source for
    the fee award "does not distinguish between pro bono representation and fee-generating

24 representation," and the policies underlying the statute would be served by an award of fees.  In
    re Hunt, 238 F.3d 1098, 1104 n.7 (9th Cir. 2001).  "[C]ourts have consistently held that entities

25 providing pro bono representation may receive attorney's fees where appropriate, even though
    they did not expect payment from the client . . . ."  Brinn v. Tidewater Transp. Dist. Comm'n,

26 242 F.3d 227, 234-35 (4th Cir. 2001).  Analogously, attorney's fees have been awarded to a
    prevailing pro se copyright plaintiff, even though the plaintiff did not incur any obligation to pay

27 attorneys, where "[a]n award of attorney's fees [would] help[] to ensure that all litigants have
    equal access to the courts to vindicate their statutory rights."  Quinto v. Legal Times of Wash.,

28 Inc., 511 F. Supp. 579, 581 (D.D.C. 1981).

1  Electronic Supplement in the United States in electronic form.  Under the terms of the Settlement

2  Agreement, Joyce and the Estate are forever foreclosed from suing Shloss for copyright

3  infringement in regard to her publication of the Electronic Supplement in the United States,

4  whether in electronic or printed form.  Shloss gave up nothing in return.  She neither paid the

5  Estate nor did she agree to limit her conduct in any way.  Accordingly, the parties' legal

6  relationship has changed drastically:  defendants have forever given up the right to enforce the

7  copyrights that were the premise of their threats against Shloss, and Shloss is no longer subject to

8  the suit she feared and sought to enjoin.  The fact that Shloss did not obtain a judgment on the

9  merits is irrelevant.  *See Carbonnell*, 429 F.3d at 899.  So too is the fact that Defendants' did not

10  admit liability.  *Buckhannon*, 532 U.S. at 604 (recognizing there is no need for "an admission of

11  liability by the defendant" to make a plaintiff a "prevailing party").

12  **2.     Shloss is the "Prevailing Party" Because the Settlement
         Agreement Is Court Enforceable**

13

14  The second prong of the "prevailing party" test "requires that the material

15  alteration in the relationship between the parties be stamped with some 'judicial imprimatur.'"

16  *Carbonell*, 429 F.3d at 900.  To achieve this judicial imprimatur, it is enough if the parties

16  "enter[] into a legally enforceable settlement agreement."  *Id.* at 899 (citing cases); *see also*

17  *Barrios v. Cal. Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002) ("[u]nder

18  applicable Ninth Circuit law, a plaintiff 'prevails' when he or she enters into a legally

19  enforceable settlement agreement against the defendant"); *Richard S. v. Dept. of Develop. Serv.*

20  *of Cal.*, 317 F.3d 1080, 1086 (9th Cir. 2003) ("Because we find that there is a legally enforceable

21  settlement agreement between the parties to this case, the district court erred when it denied

22  plaintiffs attorney's fees and costs.").

23  The Order of Dismissal in this case provides the required "judicial imprimatur" by

24  acknowledging and approving the Settlement Agreement, as well as by explicitly giving this

25  Court enforcement jurisdiction.  The stipulated Dismissal Order states:

26           The parties stipulate that the above-captioned actions shall be
         dismissed with prejudice pursuant and subject to the Settlement
27           Agreement attached to this Order as Exhibit 1, and that the Court
         shall retain jurisdiction for purposes of enforcing the terms of the
28           Settlement Agreement.  The Court acknowledges and approves the

1          Settlement Agreement, dismisses these actions with prejudice, and
2          retains jurisdiction to enforce the Settlement Agreement.

3  Olson Decl., Ex. P.

4        This Dismissal Order is very similar to the order upon which the court granted

5  plaintiffs' fees in *Richard S. v. Dept. of Develop. Serv. of Cal.*, 317 F.3d at 1084-85. There the

6  dismissal order stated that plaintiffs' claims were "dismissed with prejudice pursuant to a written

7  executed Settlement Agreement between the parties, a copy of which has been previously filed

8  with this Court . . . ." *Id.* at 1085. The court in *Richard S.* held that this was enough to establish

9  "sufficient judicial oversight to justify an award of attorneys' fees and costs". *Id.*, at 1087.

10       Likewise, because the Court dismissed Shloss's cases pursuant to a Court-

11  recognized settlement agreement enforceable against Defendants, and maintained jurisdiction

12  over the Settlement Agreement for purposes of enforcement, Shloss is a "prevailing party" and

13  thus eligible for attorney's fees under 17 U.S.C. § 505. *Carbonell*, 429 F.3d at 901 ("when a

14  court incorporates the terms of a voluntary agreement into an order, that order is stamped with

15  sufficient 'judicial imprimatur' for the litigant to qualify as a prevailing party for the purpose of

16  awarding attorney's fees. "); *see also Labotest, Inc. v. Bonta*, 297 F.3d 892, 893 (9th Cir. 2002) (a

17  litigant "who succeeds in obtaining a court order incorporating an agreement that includes relief

18  the plaintiff sought in the lawsuit is not a mere catalyst—he is a prevailing party for attorney's

19  fees purposes").

20     **C.**    **The Court Should Award Fees To Shloss Because A Fee Award**
              **Substantially Furthers The Policy Of The Copyright Act**

21       Attorney's fees should be awarded where, as here, the award furthers the purpose

22  of the Copyright Act. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) ("attorney's fee

23  awards to prevailing defendants are within the district court's discretion if they further the

24  purposes of the Copyright Act and are evenhandedly applied."); *Fogerty v. Fantasy, Inc.*, 510

25  U.S. 517, 534 n. 19. The Ninth Circuit has held culpability is not required in order to award fees

26  against a party. *Fantasy, Inc., v. Fogerty*, 94 F.3d at 558. While "there is no precise rule or

27  formula" for awarding attorney's fees under the Copyright Act, this Court should exercise its

28

1    discretion in light of the considerations identified by the Supreme Court and the Ninth Circuit.

2    *Id.* at 557; *Fogerty v. Fantasy*, 510 U.S. at 534.  These considerations include

3          the Copyright Act's primary objective, "***to encourage the production of***
4          ***original literary, artistic, and musical expression*** for the good of the
             public," . . . the need ***to encourage defendants who seek to advance a***
5          ***variety of meritorious copyright defenses*** . . . to litigate them to the same
             extent that plaintiffs are encouraged to litigate meritorious claims of
6          infringement, and the fact that ***a successful defense of a copyright***
             ***infringement action may further the policies of the Copyright Act*** every
7          bit as much as a successful prosecution of an infringement claim by the
             holder of a copyright.

8
9    *Fantasy, Inc. v. Fogerty*, 94 F.3d at 557-58 (internal quotations and citations to *Fogerty v.*
     *Fantasy*, 510 U.S. 517, omitted).

10
11          In addition, the Ninth Circuit has held that a district court "may consider (but is
     not limited to) five factors in making an attorneys' fees determination pursuant to § 505."

12   *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869 (9th Cir. 2005);
13   *see also Wall Data, Inc. v. Los Angeles County Sheriff's Department*, 447 F.3d 769, 787 (9th Cir.
14   2006).  These factors are (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4)
15   reasonableness of losing party's legal and factual arguments, and (5) the need to advance
16   considerations of compensation and deterrence."  *Wall Data*, 447 F.3d at 787.

17          These factors, however, are "not exclusive and need not all be met."  *Fantasy,*
18   *Inc. v. Fogerty*, 94 F.3d at 558.  Rather, the Ninth Circuit requires a district court to remember
19   that "an award of attorney's fees to a prevailing defendant that furthers the underlying purposes
20   of the Copyright Act is reposed in the sound discretion of the district courts, and that such
21   discretion is not cabined by a requirement of culpability on the part of the losing party."
22   *Fantasy, Inc. v. Fogerty*, 94 F.3d at 555.  In this case, Shloss's victory both "furthers the
23   underlying purposes of the Copyright Act" and meets the non-exclusive factors set out in *Wall*
24   *Data*.

25

26

27

28

1    **1.    Shloss's Complete Success Heavily Favors Awarding**
**Shloss's Attorney's Fees**

2        The first factor, degree of success obtained, favors Shloss distinctly.  She was

3    completely victorious in her attempt to preclude Defendants from blocking publication of her

4    Electronic Supplement.  Not only did Defendants covenant not to sue as to her Electronic

5    Supplement, they went further and covenanted not to sue as to publication of the Electronic

6    Supplement in printed form—something Shloss did not even seek in her complaints.  The

7    Defendants also agreed to provide confidential documents purportedly showing their control of

8    certain Joyce family copyrights, another item that was not demanded in Shloss's complaints.

9    Shloss gave nothing in exchange for this—she did not pay money and she did not agree to limit

10    her conduct.  The only thing Shloss agreed to do was to dismiss the suit once she had been given

11    everything she wanted.  Olson Decl., Ex. P. [Stipulated Dismissal Order, Ex. 1][6] Thus, the fact

12    that Shloss obtained what she requested in her suit weighs completely in her favor.  *See, e.g.,*

13    *Carbonell*, 429 F.3d at 900.[7]

14    **2.    Defendants' Unreasonable or Frivolous Arguments**
**Heavily Favor Awarding Shloss Attorney's Fees**

15        Shloss should be awarded her attorney's fees because Defendants have taken

16    positions ranging from unreasonable to frivolous throughout the course of their dispute with

17    Shloss.  Because several of the Estate's arguments can be classified as either unreasonable or

18    even frivolous, factors 2 (frivolousness) and 4 (unreasonableness) of the *Wall Data* factors are

19    analyzed together in this section.

20        Defendants have repeatedly denied any right to fair use, any right to use material

21    about Lucia Joyce, even though the material resides in public archives, and the right for Shloss to

22    ───────────────

23    [6] To the extent that the Estate might argue that Shloss achieved less than complete success, the
only limitation to which Shloss agreed is immaterial because it involves a bonus item that Shloss

24    never sought in her complaints.  In addition to a total covenant not to sue, the Estate provided
Shloss with a Letter allegedly detailing ownership in Lucia's copyrights.  Shloss agreed that she

25    would only use the letter to show Defendants' copyright ownership claims.  Olson Decl., Ex. P ¶
[Stipulated Dismissal Order, Ex. 1].

26    [7] As is discussed, *supra*, it would be erroneous to hold that Shloss did not achieve success merely
because the Court never ruled on the legal bases for her claims.  *See, e.g., Carbonell*, 429 F.3d at

27    899-900.  The fact of the matter is that the sum of what Shloss demanded in her Complaint was
the legal right to publish her Electronic Supplement.  Defendants' covenant gives Shloss that

28    legal right, and more.

1    quote any Joyce or Joyce family work, no matter how *de minimis*, scholarly, or transformative

2    the use of the quotation.  As is detailed in the Background Section, *supra*, Defendants maintained

3    legally untenable positions for years.  According to Defendants, Shloss was not permitted to use

4    anything James or Lucia Joyce ever wrote, drew or painted—no matter the nature, context, form

5    or amount.  Defendants simply refused to acknowledge the existence of the fair use doctrine.

6    Indeed, they dismissed it as "wishful thinking."  Olson Decl., Ex. G [Dec. 11, 2006 Friedman

7    Decl., Ex. 2].

8              These arguments range from unreasonable to frivolous.  And indeed, once it was

9    clear to Defendants that there arguments would be addressed by the Court on the merits, they

10    completely abandoned their arguments by covenanting not to sue as to the entirety of Shloss's

11    Electronic Supplement.  Defendants' conduct reveals that their decade of threats were empty,

12    designed not to articulate defensible principles, but simply to scare and intimidate.

13              But before abandoning the fight, Defendants attempted to persuade this Court to

14    dismiss Shloss's suit based on a premise that was demonstrably false.  Defendants argued that

15    the fact Shloss revised her Electronic Supplement once in 2006 demonstrated the suit was not

16    ripe because Shloss's Electronic Supplement was a "work in progress" and was not fixed.  The

17    Electronic Supplement was fixed and defendants knew it.  They had access to the finalized

18    Electronic Supplement in September 2006, two months before they moved to dismiss.  Olson

19    Decl., Ex. Q ¶6 [Dec. 15, 2006 Olson Decl.].  Defendants persisted in this frivolous argument

20    even though Shloss had pledged that the Electronic Supplement would not change without leave

21    to amend her complaint.  Olson Decl., Ex. A ¶ 49. [Dec. 15, 2006 Shloss Decl.]; Olson Decl., Ex.

22    R at 17 [Shloss's Opp. to Motion to Dismiss].

23              To make matters worse, Defendants based their motion to dismiss on a second

24    false premise.  Defendants contended that their covenant not to sue mooted the entire

25    controversy between the parties, despite the fact it plainly did not cover the entire Electronic

26    Supplement put at issue by the Amended Complaint against the Estate.  Specifically, Defendants

27    covenanted not to sue on the Electronic Supplement as it existed in 2005, but not as it existed in

28    2006, which was the version of the Electronic Supplement put at issue by Shloss's Amended

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1    Complaint.  See Olson Decl., Ex. O at 12 [Order Denying Motion to Dismiss].  This shortcoming

2    was not lost on Defendants.  When the Court noted it at oral argument, Defendants

3    acknowledged their covenant did not cover the entire Electronic Supplement.  Olson Decl., Ex. S

4    at 3:11-18 [Motion to Dismiss Oral Arg. Tr.].

5            In addition, Defendants have repeatedly misused their control of copyrights in an

6    effort to prevent the publication of materials and factual information about James Joyce and the

7    Joyce family over which Defendants have no rights or control.  Such conduct is considered

8    objectively unreasonable and is grounds for awarding fees to Shloss.  *See Matthews v.*

9    *Freedman*, 157 F.3d 25, 29 (1st Cir. 1998) (upholding fee award to defendant in case where

10   copyright plaintiff's arguments were reasonable, but amounted to attempt "to extend [plaintiff's]

11   copyright protection far beyond what is allowed by law.") (internal quotation omitted) (citing

12   *Fogerty*, 510 U.S. at 526-27); *see also Garcia-Goyco v. Law Environmental Consultants*, Inc.,

13   428 F.3d 14, 21 (1st Cir. 2005) (upholding fee award made in absence of frivolousness or bad

14   faith because plaintiffs' copyright claim was not, "sufficiently strong;" not reaching district

15   court's alternative ground for fees based on plaintiffs' misuse of copyrights).

16           Defendants also made gratuitous, *ad hominem* arguments that Shloss's lawsuit

17   was an "academic war" and a "hypothetical case," which the Court firmly rejected.  Olson Decl.,

18   Ex. O at 13 [Order Denying Motion to Dismiss].  The Court also rejected Defendants' position

19   that the *Ulysses* arguments should be stricken, finding that those arguments were "material to

20   Plaintiff's case."  *Id.* at 17.  Each of these arguments was objectively unreasonable and provides

21   further strong weight in favor of awarding attorney's fees to Shloss.

22           **3.    Defendants' Improper Motivation Weighs Heavily in**
             **Favor of Awarding Shloss's Attorney's Fees**
23
             The third factor, motivation of Defendants, also weighs heavily in favor of
24
     awarding Shloss fees.  Defendants betrayed improper motives throughout the course of their
25
     dispute with Shloss.  As is extensively detailed in Shloss's Amended Complaint, Defendants'
26
     sought to deny Shloss the right to quote from the copyrighted works it controlled in an
27
     illegitimate attempt to protect the privacy of the Joyce family. Olson Decl., Ex. T ¶¶ 62, 92-93.
28
     [Amended Complaint]

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1    Defendants made their motive quite plain repeatedly, and in writing.  For

2  instance, in a March 31, 1996 letter, Stephen Joyce told Shloss that his "response regarding

3  helping and working with [her] on a book about Lucia is straightforward and unequivocal: it is a

4  definite <u>NO</u>."  Olson Decl., Ex. C [Dec. 15, 2006 Shloss Dec., Ex. C] (emphasis in original).

5  Furthermore, Joyce added that "you do not have our approval/permission to 'use' ***any*** letters or

6  papers by or from Lucia. . . . [or] our authorization to use ***any*** letters from my grandfather to

7  anybody which deal with her." *Id.* (emphasis added).  The law is plain that copyright does not

8  give privacy rights.  The "protection of privacy is not a function of the copyright law." *Bond v.*

9  *Blum*, 317 F.3d 385, 395 (4th Cir. 2003); *see also Rosemont Enters., Inc. v. Random House, Inc.*

10  366 F.2d 303, 311 (2d Cir. 1966) (Lumbard, J., concurring) ("It has never been the purpose of

11  the copyright laws to restrict the dissemination of information about persons in the public eye

12  even though those concerned may not welcome the resulting publicity."); *New Era Publ'ns Int'l*

13  *v. Henry Holt & Co.*, 695 F. Supp. 1493, 1504-05 (S.D.N.Y. 1988) *aff'd*, 873 F.2d 576 (2d  Cir.

14  1989) ("It is universally recognized . . . that the protection of privacy is not the function of our

15  copyright law. . . . An individual who seeks to protect the privacy of the content of private letters

16  may do so by bringing suit under the right of privacy.").

17    Nevertheless, Defendants have made threats to other Joyce scholars for decades

18  Olson Decl., Ex. A ¶¶ 59-65 [Dec. 15, 2006 Shloss Decl.]. and to Shloss "regularly for nine

19  years" Olson Decl., Ex. O at 11 [Order Denying Motion to Dismiss], often with the alleged

20  purpose of protecting the privacy of deceased members of the Joyce family, and especially Lucia

21  Joyce.  Defendants' improperly-motivated use of their copyrights in attempts to protect

22  "privacy" has now been defeated by the Settlement Agreement and Order of Dismissal.  The

23  Settlement Agreement entirely and without qualification allows Shloss to do what Defendants

24  have improperly insisted for decades that "no one" could or should do—make use of Lucia

25  Joyce's writings to write about the Joyce family. There is good reason to award Shloss her

26  attorney's fees in defeating this improperly-motivated use of copyrights by Defendants.

27    Additionally, Defendants' Motion to Dismiss based only on a partial covenant

28  made plain that they wished to threaten copyright litigation and thereby chill speech, inquiry, and

1    scholarship about areas Defendants wish to declare "off limits" without ever having their legal

2    claims tested.  Defendants' improperly motivated attempt to avoid any testing of their threats

3    should be deterred by an award of attorney's fees to Shloss.

4          Finally, much of Defendants' Motion to Dismiss was explicitly directed at

5    discrediting Shloss's scholarship *qua* scholarship, so that Defendants' argument became a way

6    for Defendants to carry on their opposition to Shloss's work "by other means."  For instance,

7    Defendants argued that Shloss is not a scholar and that her book was not scholarship.  Olson

8    Decl., Ex. M at 2, 6 n 1 [MTD].  The Estate likewise suggested the Electronic Supplement was

9    nothing but a "pretext" so that Shloss and her lawyers could "mak[e] new law" (*Id.* at 3-4)—an

10   allegation that this Court soundly rejected.  Olson Decl., Ex. O at 13 [Order Denying Motion to

11   Dismiss]. Shloss should be awarded attorney's fees for having to respond to such an improperly-

12   motivated and elaborate Motion to Dismiss and numerous associated Declarations.

13          **4.    The Need to Advance Considerations of Compensation
                    and Deterrence Strongly Favors Awarding Attorney's**
14          **Fees**

15          The fifth factor, the need to advance considerations of compensation and

16   deterrence, weighs heavily in favor of awarding attorney's fees to Shloss.  Defendants have

17   misused their copyrights for years, have improperly sought to vindicate privacy interests by use

18   of copyrights, have sought to cut off inquiry into literary and historically significant events by

19   the misuse of their copyrights, have advanced frivolous and unreasonable legal and factual

20   arguments, and have done all of this through the extensive use of threats, all the while striving to

21   avoid having the legality of their threats determined.  Shloss won no money damages in this

22   declaratory judgment action.  Thus, the best way to deter Defendants' repeated and unrepentant

23   bad actions is to award attorney's fees to Shloss.

24          Moreover, Defendants' unreasonable threats have cost Shloss years of

25   aggravation and made her unable to cite the materials necessary to support her theses.  Shloss

26   will never recover the years of being threatened, nor can she be adequately compensated for the

27   damage to her scholarship from Defendants' overly-aggressive assertions of copyright.

28

1    The Estate can afford to pay Shloss' fees. It makes a significant income every

2    year from licensing the works to which it controls copyright, and so is far from an impecunious

3    party against whom a fee award would be unfair. Rather, the Estate has engaged in a long

4    history of misusing its copyrights so as to deter legitimate scholarship and inquiry, and has done

5    so at little cost to itself to date.

6    **D.    Awarding Attorney's Fees to Shloss Promotes the Purpose of the Copyright Act**

7    

8    "The primary objective of copyright is not to reward the labor of authors, but '[t]o

9    promote the Progress of Science and useful Arts. "To this end, copyright assures authors the

10   right to their original expression, but encourages others to build freely upon the ideas and

11   information conveyed by a work." *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499

12   U.S. 340, 349-350 (1991) (citations omitted). Indeed, "it is peculiarly important that the

13   boundaries of copyright law be demarcated as clearly as possible." *Fogarty v. Fantasy, Inc.*, 510

14   U.S. at 527. Accordingly, "defendants who seek to advance a variety of meritorious copyright

15   defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged

16   to litigate meritorious claims of infringement." *Id.* "Thus a successful defense of a copyright

17   infringement action may further the policies of the Copyright Act every bit as much as a

18   successful prosecution of an infringement claim by the holder of a copyright." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).

19   This is just such a case in which the successful defense (as a declaratory judgment

20   plaintiff) of Shloss's right to quote from Defendants' copyrighted works furthers the policies of

21   the Copyright Act. Shloss's success here is very similar to John Fogerty's success in *Fantasy,*

22   *Inc. v. Fogerty*, in which the court found that Fogerty's successful defense against copyright

23   claims "increased public exposure to a musical work that could, as a result, lead to further

24   creative pieces." *Fantasy, Inc. v. Fogerty*, 94 F.3d at 559. In this case, Shloss's success in

25   winning a covenant from Defendants against suing over their copyrighted material used in

26   Shloss's Electronic Supplement increases public exposure to her scholarly work, which could, as

27   a result, lead to further scholarly and creative pieces.

28   

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1    Moreover, encouraging suits such as Shloss's furthers the policy of the Copyright

2  Act, as this Court has already noted when denying Defendants' Motion to Strike Shloss's

3  Copyright Misuse Claim:

4    Plaintiff undertook to write a scholarly work on Lucia Joyce—*the type of creativity that the copyright laws exist to facilitate*.
5    Defendants' alleged actions significantly undermined the copyright policy of "promoting invention and creative expression," as
6    Plaintiff was allegedly intimidated from using (1) non-copyrightable fact works such as medical records and (2) works to
7    which Defendants did not own or control copyrights, such as letters written by third parties. The Court finds that Plaintiff has
8    sufficiently alleged a nexus between Defendants' actions and the Copyright Act's public policy of promoting creative expression to
9    support a cause of action for copyright misuse.

10    Finally, Shloss's victory over the Estate gives hope and encouragement to Joyce

11  scholars everywhere who have been threatened or intimidated by the Estate.[8]  This victory

12  furthers the policy of the Copyright Act by encouraging other scholars to make critical, scholarly

13  and transformative use of the important materials to which the Estate holds copyrights.  This

14  alone is reason to encourage actions such as Shloss' with an award of attorney's fees.

15

16

17

18

19

20

21

22

23

24
_____

25  [8] *See, e.g.*, Olson Decl., Ex. B at 4-5. [Dec. 15, 2006 Spoo Decl., Ex. 4] ("More than a dozen
26  Joyce scholars told me that what was once an area of exploration and discovery now resembles an embattled outpost of copyright law. . . . Although more than fifteen hundred letters and
27  dozens of manuscript drafts have been discovered since Stephen [Joyce] gained control of the estate, scholars told me that no new biographies of Joyce or his family are under way. . . .
28  Anyone who plans to study Joyce today has to wonder whether it will be worth the strain.")

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1    **IV.    CONCLUSION**

2            The Estate has insisted that, where copyrights are concerned, it "puts its money

3    where its mouth is."  Olson Decl., Ex. O at 8. [Order Denying Motion to Dismiss]  It should be

4    made to do so here.  The Court should grant Shloss's motion for an award of costs and attorneys'

5    fees, and award costs and reasonable attorneys' fees in an amount to be determined according to

6    proof.

7

8    DATED:  April 10, 2007

9                                                STANFORD LAW SCHOOL
                                                 CENTER FOR INTERNET AND SOCIETY
10

11                                               By: _____/s/_____
                                                            David S. Olson
12                                                        Attorneys for Plaintiff
                                                         CAROL LOEB SHLOSS
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28