# EXHIBIT O

Dockets.Justia.com

1

2

3

4

5

6

7

8

9

10             IN THE UNITED STATES DISTRICT COURT

11        FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                SAN JOSE DIVISION

13 Carol L. Shloss,                  NO. C 06-03718 JW

14          Plaintiff,          **ORDER DENYING DEFENDANTS'**
                         **MOTION TO DISMISS AND GRANTING**

15    v.                     **IN PART DEFENDANTS' MOTION TO**
                         **STRIKE**

16 Seán Sweeney, et al.,

17         Defendants.
                                /

18                 **I.  INTRODUCTION**

19      Plaintiff Carol Loeb Shloss ("Plaintiff") brings this action for a declaratory judgment and

20 injunctive relief pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. and 28 U.S.C. §

21 2201.  Plaintiff seeks a declaratory judgment that the use of certain written works in an electronic

22 supplement to her book, if published, will not infringe any copyrights controlled or owned by the

23 Estate of James Joyce ("Estate") and Seán Sweeney, in his capacity as the trustee of the Estate

24 (collectively, "Defendants").

25      Presently before the Court is Defendants' Motion to Dismiss, or in the Alternative, to Strike.

26 The Court conducted a hearing on January 31, 2007.  Based on the papers submitted to date and the

27

28

United States District Court

For the Northern District of California

1    oral arguments of counsel, the Court DENIES Defendants' Motion to Dismiss and GRANTS in part

2    Defendants' Motion to Strike.[1]

3                                    **II.  BACKGROUND**

4            Plaintiff alleges as follows:

5            Plaintiff is the author of the book <u>Lucia Joyce: To Dance in the Wake</u>, a work about

6    Lucia Joyce and the creative impact of Lucia's relationship with her father, the Irish

7    expatriate author James Joyce, on James Joyce's literary works.  (Amended Complaint for

8    Declaratory Judgment and Injunctive Relief ¶ 6, hereafter, "FAC," Docket Item No. 14.)

9    Between 1988 and 2003, she conducted research on the book throughout the United States

10   and Europe and wrote her manuscript.  (FAC ¶¶ 27-44.)  The work "describes the

11   extraordinary influence that James Joyce's daughter Lucia exercised on her father's emotions

12   and work and challenges Lucia's conventional portrayal as a troublesome blight on the Joyce

13   family."  (FAC ¶ 45.)

14           Defendants became aware of Plaintiff's research on Lucia Joyce around 1994.  (FAC

15   ¶ 47.)  Defendants did not contact Plaintiff to discuss her work.  <u>Id.</u>  When Plaintiff contacted

16   Stephen Joyce to request help on her book, he responded with a "definitive no" in 1996.

17   (FAC ¶ 49.)  He purported specifically to prohibit Plaintiff from using letters or papers

18   written by Lucia Joyce.  <u>Id.</u>  At one point in Plaintiff's communications with Stephen Joyce,

19   he granted her permission to use James Joyce's published poem <u>A Flower Given to My</u>

20   <u>Daughter</u>.  (FAC ¶ 51.)  However, he later rescinded that permission, so long as Plaintiff

21   intended to use certain other materials concerning the life of Lucia Joyce.  <u>Id.</u>  Defendants

22

23

24           [1]  Defendants filed Objections And Motion To Strike Portions Of The Declaration of Carol
25   Loeb Shloss, Portions of the Declaration of David S. Olson, Exhibits A, P, R And T to the
     Declaration of Carol Loeb Shloss, and Exhibits 2, 3, 4 and 5 to the Declaration of Robert Spoo.  (<u>See</u>
26   Docket Item No. 46.)  Since the Court does not rely on any of the portions of the declarations of
     Carol Shloss, David Olson, or Robert Spoo to which Defendants object, the Court DENIES
27   Defendants' Motion to Strike as moot.

28                                              2

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1   took other unspecified direct or indirect steps to interfere with Plaintiff's research.  (FAC ¶

2   52.)

3        In August 2002, Stephen Joyce wrote to Plaintiff to inform her that Defendants'

4   position had not changed from its expression in previous letters.  (FAC ¶ 53.)  He then

5   "add[ed] a few 'things' you are not authorized to do and/or use."  Id.  He informed Plaintiff

6   that she was forbidden from using any of Lucia Joyce's medical files and records.  Id.  He

7   also informed Plaintiff that she was forbidden from using any materials created by Lucia

8   Joyce.  Id.  He threatened Plaintiff by referring to the Estate's recent copyright litigation,

9   stating, "Over the past few years we have proven that we are willing to take any necessary

10  action to back and enforce what we legitimately believe in."  Id.

11       On November 4, 2002, Stephen Joyce called Farrar, Straus & Giroux ("Publisher"),

12  the publisher for Plaintiff's book.  (FAC ¶ 54.)  He informed the Publisher that he had heard

13  about the book, was opposed to any publication, and had never lost a lawsuit.  Id.  The same

14  day, he sent a letter to Jonathon Galassi ("Galassi"), the Publisher's President, to the same

15  effect.  (FAC ¶ 55.)

16       On November 5, 2002, Stephen Joyce again wrote to Galassi.  (FAC ¶ 56.)  Joyce

17  claimed that as of March 31, 2002, he was the "sole beneficiary owner" of James Joyce's

18  rights and the sole owner of the rights to Lucia Joyce's works.  Id.  He claimed that Plaintiff

19  did not have permission to use letters written by Harriet Shaw Weaver, Paul Léon, and Maria

20  Jolas.  Id.  Defendants do not own the copyrights to these letters.  Id.  On November 6, 2002,

21  Leon Friedman ("Friedman"), the Publisher's attorney, wrote to Stephen Joyce, informing

22  him that the Publisher believed Plaintiff's work to be protected by the fair use doctrine of

23  copyright law.  (FAC ¶ 57.)

24       On November 21, 2002, Stephen Joyce wrote to Friedman, stating that Friedman

25  "should be aware of the fact that over the past decade the Estate's 'record', in legal terms, is

26  crystal clear and we have proven on a number of occasions that we are prepared to put our

27

28                                              3

money where our mouth is." (FAC ¶ 58.) Stephen Joyce further wrote that the Publisher's fair use claim "sounds like a bad joke or wishful thinking" and told Friedman to "kindly bear in mind that there are more than one way [sic] to skin a cat." Id. He asserted that Lucia Joyce's medical records should be off limits. (FAC ¶ 59.) In response to Friedman's previous assertion that copyright law permits a researcher to make unauthorized use of "information" contained in copyrighted material, Stephen Joyce replied that such "'material' was copyrighted in order to protect the author's rights as well as those who inherit them..." Id.

On December 31, 2002, Stephen Joyce again wrote to Friedman: "As I indicated in my earlier letter, there are more ways than one to skin a cat!  This is already proving to be true since certain pigeons from California are coming home to roost with very ruffled feathers." (FAC ¶ 60.) Friedman responded on January 2, 2003, informing Stephen Joyce that no further correspondence was necessary; since it was clear that Stephen Joyce would not grant permission to use any copyrighted material, the Publisher would rely on fair use in publishing the book. (FAC ¶ 63.)

On January 23, 2003, the Publisher wrote to Plaintiff, describing the edits that it thought necessary to avoid a suit from Defendants, including all unpublished writings of James Joyce and Lucia Joyce. (FAC ¶ 64.) Plaintiff voiced concerns to the Publisher that "the proposed cuts eliminate[d] almost all of the evidence in the book," undermined the book's "scholarly integrity," and excluded the evidence it took her twelve years to assemble. (FAC ¶ 65.) Ultimately, more than thirty pages were cut from a manuscript of four hundred pages. (FAC ¶ 66.) The book was published in edited form in December 2003. Id. Many reviews, including those appearing in the New York Times, the New Yorker, and the San Francisco Chronicle, remarked on Plaintiff's lack of documentary support for her theories. (FAC ¶¶ 67-70.)

United States District Court

For the Northern District of California

1         In 2005, Plaintiff created an electronic supplement to her book ("Electronic

2    Supplement"), which she placed on a website ("Website").  (FAC ¶ 71.)  The website is

3    presently password protected and is not available to the public.  Id.  Plaintiff plans to provide

4    the Electronic Supplement as a resource to scholars, researchers, and the general public who

5    have United States Internet Protocol ("IP") addresses.  Id.  The Electronic Supplement will

6    contain material that the Publisher removed from the book as a result of Defendants' threats,

7    material that Plaintiff removed for fear of attracting Defendants' negative attention, and other

8    material related to Plaintiff's analysis of her research.  Id.

9         On March 9, 2005, Plaintiff's counsel wrote to Defendants to describe the planned

10   Electronic Supplement.  (FAC ¶ 79.)  The letter explained Plaintiff's belief that the

11   copyrighted material in the Electronic Supplement was protected by the fair use doctrine and

12   thus did not require Defendants' permission.  Id.  Plaintiff's counsel nonetheless offered

13   Defendants the opportunity to review the material before its publication.  Id.  From April to

14   December 2005, Plaintiff's counsel and Defendants exchanged letters.  (FAC ¶¶ 80-84.)

15   Defendants' responses reiterated the Estate's denial of permission for Plaintiff to use its

16   copyrighted materials and "reserve[d] all rights if [Plaintiff] persevere[d] with her proposed

17   activities."  Id.  Based on Defendants' numerous threats, Plaintiff fears "that Defendants will

18   sue if she makes the Electronic Supplement on the Website publicly available in its present

19   form."  (FAC ¶ 85.)

20        Plaintiff filed this lawsuit in June 2006 alleging four causes of action: (1) Count 1, for a

21   declaratory judgment that the Electronic Supplement does not infringe any of Defendants'

22   copyrights; (2) Count 2, for a declaratory judgment that Plaintiff's use of Defendants' copyrighted

23   material in her planned Electronic Supplement is presumptively fair use; (3) Count 3, for a

24   declaratory judgment that Defendants have misused their copyrights; and (4) Count 4, for a

25   declaratory judgment that Defendants' unclean hands prohibit enforcement of their copyright against

26

27

28                             5

United States District Court

For the Northern District of California

1  Plaintiff.  Presently before the Court is Defendants' Motion to Dismiss, or in the Alternative, to

2  Strike.

3  ### III.  STANDARDS

4  **A.**     **Subject Matter Jurisdiction**

5      A federal court has limited subject matter jurisdiction.  The court must dismiss any case

6  outside of its subject matter jurisdiction.  A defendant may move to dismiss a claim for lack of

7  subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Once challenged,

8  the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists.  Tosco Corp. v.

9  Communities for a Better Environment, 236 F.3d 495, 499 (9th Cir. 2001).  When considering a

10  defendant's motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the pleadings,

11  but rather, may review extrinsic evidence to resolve any factual disputes which affect jurisdiction.

12  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).  When considering a challenge to

13  subject matter jurisdiction, the court also need not presume the truth of the plaintiff's allegations.

14  White, 227 F.3d at 1242.

15  **B.**     **Failure to State a Claim On Which Relief Can Be Granted**

16      A complaint may be dismissed for failure to state a claim upon which relief can be granted.

17  Fed. R. Civ. P. 12(b)(6).  A claim may be dismissed as a matter of law for "(1) lack of a cognizable

18  legal theory or (2) insufficient facts under a cognizable legal theory."  Robertson v. Dean Witter

19  Reynolds Co., 749 F.2d 530, 534 (9th Cir. 1984).  "A complaint should not be dismissed for failure

20  to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support

21  of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The

22  court "must presume all factual allegations of the complaint to be true and draw all reasonable

23  inferences in favor of the non-moving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th

24  Cir. 1987).  In determining the propriety of a Fed. R. Civ. P. 12(b)(6) dismissal, a court may not look

25  beyond the complaint.  Schneider v. California Dept. of Corrections, 151 F.3d 1194, 1197 (9th Cir.

26  1998) ("The focus of any Rule 12(b)(6) dismissal . . . is the complaint.")  A court may dismiss a case

27

28

without leave to amend if the plaintiff is unable to cure the defect by amendment.  Lopez v. Smith, 203 F.2d 1122, 1129 (9th Cir. 2000).

## C.     Motion to Strike

Upon the motion of a party before responding to a pleading, a court may order stricken from the pleading any insufficient defense or redundant, immaterial, impertinent, or scandalous material. Fed. R. Civ. P. 12(f).

## IV.  DISCUSSION

## A.     Motion to Dismiss

### 1.     Subject Matter Jurisdiction

Plaintiff bases the Court's subject matter jurisdiction on the Declaratory Judgment Act.  A federal district court has jurisdiction to render a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, if an "actual controversy" exists.  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937).  The "actual controversy" requirement under the Declaratory Judgment Act is coextensive with the "case or controversy" requirement of Article III of the United States Constitution.  Id.  The Act, then, permits suit "once the adverse positions [of the parties] have crystallized and the conflict of interests is real and immediate."  Societe de Conditionnement en Aluminum v. Hunter Engineering Co., 655 F.2d 938, 943 (9th Cir. 1981) (internal quotations omitted).  For a copyright action in the Ninth Circuit, a declaratory judgment plaintiff must (1) demonstrate a "real and reasonable" apprehension that she will be subject to liability if she continues to manufacture her product that (2) the defendant caused by its actions.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555-56 (9th Cir. 1990).  A court applies these principles "with a flexibility that is oriented to the reasonable perceptions of the plaintiff."  Chesebrough-Ponds, Inc. v. Faberge, Inc., 666 F.2d 393, 396 (9th Cir. 1982).

Defendants contend that (1) Plaintiff has not proved that she had a reasonable apprehension of being subject to liability for copyright infringement at the time she filed her complaint; (2) their covenant not to sue eliminates any possible reasonable apprehension of liability; and (3) any ruling

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  by the Court would be an advisory opinion, as Plaintiff has not yet published her electronic

2  supplement.  (Notice of Motion and Motion of Defendants Seán Sweeney and the Estate of James

3  Joyce to Dismiss, or in the Alternative to Strike, Carol Loeb Shloss's Amended Complaint at 10-13,

4  hereafter, "Motion," Docket Item No. 21.)

5      Plaintiff contends that (1) the Estate's threats and other conduct were sufficient to create a

6  reasonable apprehension of suit; (2) she undertook sufficient preparatory activity because her

7  website was ready to be published at all relevant times; and (3) the Estate's covenant not to sue over

8  portions of the website at issue does not moot the entire controversy.  (Plaintiff's Opposition to

9  Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Strike at 12-

10  18, hereafter, "Opposition," Docket Item No. 32.)

11      Plaintiff highlights several threats by the Estate that she contends were adequate to create a

12  reasonable apprehension of suit.  (Opposition at 12-13.)  First, Stephen Joyce purported in 1996 to

13  deny her permission to use Lucia Joyce's writings and letters written by James Joyce concerning

14  Lucia Joyce.  (Declaration of Carol Loeb Shloss in Support of Plaintiff's Opposition to Defendants'

15  Motion to Dismiss ¶ 21, Ex. C, hereafter, "Shloss Decl.," Docket Item No. 33; FAC ¶ 49.)  Second,

16  Stephen Joyce in 2002 reiterated his earlier denial of permission and further purported to prohibit

17  Plaintiff from using Lucia Joyce's medical records.  The letter stated that the Estate's recent

18  copyright litigation demonstrates that it was "willing to take any necessary action to back and

19  enforce" its view.  (FAC ¶ 53; Shloss Decl., Ex. G.)  Lastly, Stephen Joyce's letters to the Publisher

20  stated, *inter alia*, that (a) the Estate's "record in legal terms is crystal clear" and that it was "prepared

21  to put [its] money where [its] mouth is"; (b) the author and publisher would proceed at their own risk

22  and could face "repercussions" in publishing material concerning Lucia Joyce; (c) "there are more

23  ways than one to skin a cat"; and (d) the law "will uphold [its] intellectual property rights."  (Shloss

24  Decl. ¶ 30, Exs. H, I, J.)

25      Several Ninth Circuit cases have addressed the "reasonable apprehension" requirement in the

26  intellectual property context.  In the seminal case of <u>Societe de Conditionnement</u>, 655 F.2d 938 (9th

27

28                                                        8

United States District Court

For the Northern District of California

Cir. 1981), the plaintiff brought an action seeking declaratory relief that a patent was invalid.  The plaintiff and defendant were both manufacturers and sellers of metal working machinery.  Both plaintiff and defendant submitted proposals to a third party buyer who was interested in purchasing continuous roll casters.  Id. at 940.  Defendant's technical director contacted the buyer to state that plaintiff's equipment would infringe on defendant's soon-to-be-issued patent, and that defendant would take all legal action against the buyer if it ordered plaintiff's equipment.  The buyer requested a "hold harmless" or patent indemnification clause from plaintiff as a condition of the purchase.  One of defendant's vice-presidents apologized to the buyer for the "exchange of harsh words," but did not mention the patent litigation threat.  Defendant's technical director was not authorized to speak for the company concerning patent litigation, a decision that could have been made only by the board of directors.  Defendant had a policy not to sue its customers, was not aware that the threat had been made until plaintiff filed its lawsuit, and repudiated the threat immediately upon learning of it.  Shortly after the threatening phone call, plaintiff and the buyer signed an agreement with a "hold harmless" provision. Id. at 940-41.

To determine whether plaintiff's action for a declaratory judgment was proper, the Societe court held that a plaintiff's suit satisfies the "case or controversy" requirement where the plaintiff has a "real or reasonable apprehension" of being subject to liability for infringement.  Id. at 944.  The court did not expand on the "real or reasonable apprehension" standard, except to say that an "actual threat of litigation" by the putative rights-holder is not necessary for a case or controversy to exist.  Id.  A plaintiff engaged in the ongoing manufacture of the potentially infringing item need not make a showing of "real or reasonable apprehension" beyond the manufacture.  With respect to a plaintiff who has not yet begun preparations to manufacture the potentially infringing product, a court must guard against rendering an advisory opinion.  Id.

Applying this principle, the Societe court held that defendant's technical director's call to the third-party buyer established a prima facie case or controversy.  Regardless of when plaintiff actually learned about the call or whether the technical director was actually authorized to speak for

1   defendant[2], the plaintiff had a real and reasonable apprehension of liability for patent infringement.

2   It was irrelevant that defendant had purportedly repudiated the "threat" after the lawsuit was filed.

3   On the other hand, it was significant that defendant had not affirmatively agreed not to sue plaintiff

4   for infringement.  Since dismissal of the suit would leave plaintiff with the "Damoclean threat" of

5   litigation hanging over its head, the court found that the district court had subject matter jurisdiction

6   over the action for a declaratory judgment.  Id. at 945.

7          The Ninth Circuit applied these principles in the copyright infringement context in Hal

8   Roach Studios, Inc.  896 F.2d at 1542.  Hal Roach Studios's predecessor-in-interest had licensed

9   television rights to certain silent films to Feiner & Co.  Hal Roach Studios filed a complaint against

10  Feiner & Co., seeking *inter alia* a declaration that the licensing agreement would expire on a

11  particular date, and that Hal Roach Studios had valid copyrights to the films.  Id. at 1544-45.  Feiner

12  & Co. counterclaimed for a declaration, *inter alia*, that Hal Roach Studios lacked valid and

13  subsisting copyrights to the films that were the subject of the licensing agreement.  Id. at 1545.  The

14  Ninth Circuit found that there existed a justiciable controversy suitable for declaratory relief.  Id. at

15  1556.  The court underscored (1) Feiner & Co.'s allegation that it intended to continue its use of the

16  putatively copyrighted materials after license expiration; (2) a letter from Hal Roach Studios

17  informing Feiner & Co. that after its license expired, it "would have no rights of any kind or

18  character whatsoever" in the materials; (3) a statement in the same letter that Hal Roach Studios

19  "trusted" that rumors were false that Feiner & Co. would continue its use of the copyrighted

20  materials after the license expired; and that (4) Hal Roach Studios never affirmatively stated to

21  Feiner & Co. that it would not institute an infringement action.  Id.

22

23

24

25          [2]  The court found actual agency was irrelevant to the "case or controversy" determination,
26  but held that one of the elements in the determination of whether plaintiff had a reasonable
    apprehension of suit was "whether it was reasonable for a listener to assume that the speaker was
27  speaking for his company."  Id. at 945.

28                                                        10

United States District Court

For the Northern District of California

1    Applying the principles of <u>Societe</u> and <u>Hal Roach Studios</u> to this case, the Court finds that

2  Plaintiff has a real and reasonable apprehension of copyright liability that Defendants caused by

3  their

4

5  actions.[3]  First, Defendants repeatedly wrote to Plaintiff and her Publisher,[4] purportedly denying

6  Plaintiff permission to use materials that she planned to include in her book and reiterating the clear,

7  if implicit, threats of litigation previously described.  These communications occurred regularly over

8  a period of nine years, from 1996 to 2005, and easily left Plaintiff with a reasonable apprehension of

9  copyright liability when she filed this suit in 2006.[5]

10    Second, Defendants propose a covenant not to sue based on the Electronic Supplement as it

11  existed in 2005.  A court should dismiss an intellectual property suit for a declaratory judgment as

12  moot when the defendant releases the plaintiff from all liability based on plaintiff's allegedly

13  infringing activities (for instance, pursuant to a settlement agreement.)  <u>See, e.g.</u> <u>Gator.Com Corp. v.</u>

14  <u>L.L. Bean, Inc.</u>, 398 F.3d 1125, 1130-31 (9th Cir. 2005).  On the other hand, when a defendant

15  represents to a court that it will not sue the plaintiff for *some* of the potentially infringing activities

16  in which the plaintiff is engaged, the plaintiff retains a reasonable apprehension of suit as to the

17

18    ───────────────

19    [3]  Most of Plaintiff's allegations concern Stephen Joyce's conduct, although she has not
    named Stephen Joyce as a defendant.  Plaintiff has, however, alleged that Stephen Joyce has

20  repeatedly represented that he is an agent of the Estate.  (FAC ¶ 88.)  As explained in <u>Societe</u>,
    whether or not Stephen Joyce is actually an agent of the Estate is irrelevant to a determination of

21  whether the Court has subject matter jurisdiction over this declaratory judgment action.  Rather, the
    question is whether Plaintiff could reasonably have believed that Stephen Joyce was speaking on

22  behalf of the Estate.  The Court finds that Plaintiff has provided ample, uncontroverted allegations to
    support this belief.

23    [4]  Although the Publisher is not a plaintiff in this action, the Publisher provided Plaintiff with
    copies of the above-described communications with Defendants.  (Shloss Decl. ¶¶ 30-37.)

24  Accordingly, these communications are relevant to the Court's determination of whether Plaintiff
    could reasonably have maintained an apprehension of suit.

25
    [5]  Since the Court finds that Plaintiff had a reasonable apprehension of suit based solely on

26  Defendants' communications with the Publisher and Plaintiff, the Court need not consider the
    relevance of Plaintiff's allegations concerning Defendants' suits against other parties to her

27  "reasonable apprehension" of suit.  (Motion at 11; Opposition at 15-16.)

28                                     11

United States District Court

For the Northern District of California

1     remaining potentially infringing activities.  <u>Sierra Applied Sciences, Inc. v. Advanced Energy

2     Indus., Inc.</u>, 363 F.3d 1361, 1375 (Fed. Cir. 2004).  Since Plaintiff filed suit, she has undisputedly

3     amended her Electronic Supplement once and has amended her complaint to reflect the change.

4     (Motion at 12; Opposition at 17.)  Thus, if the Court dismissed this action, Defendants could sue

5     Plaintiff on the first day on which her website in its current form was made available to the public,

6     notwithstanding their covenant not to sue.  The Court finds that Defendants' putative covenant not to

7     sue based on the Electronic Supplement as it existed in 2005 is inadequate to moot the actual

8     controversy between the parties.

9         Third, the Court may rule in this case without rendering an advisory opinion.  (<u>See</u> Motion at

10    12.)  A plaintiff does not have to begin distribution of the potentially infringing product in order to

11    have a controversy ripe for declaratory judgment adjudication, so long as the plaintiff has completed

12    all preparatory work.  <u>See</u> <u>Cardtoons, L.C. v. Major League Baseball Players Ass'n</u>, 95 F.3d 959,

13    966 (10th Cir. 1996) (trademark).  In other words, the plaintiff "must establish that the product

14    presented to the court is the same product which will be produced if a declaration of

15    noninfringement is obtained."  <u>Sierra</u>, 363 F.3d at 1378.  Here, Plaintiff has represented to the Court

16    under penalty of perjury that the contents of the Electronic Supplement on the Website will not

17    change again absent the Court's explicit leave to amend the Website.  (Shloss Decl. ¶ 49; <u>see also</u>

18    Opposition at 17.)  Based on Plaintiff's representation, the Court finds that the copyright controversy

19    between the parties over the Electronic Supplement is sufficiently definite to proceed.

20         Since Plaintiff has a real and reasonable apprehension of copyright liability, the Court finds

21    that this action satisfies the "case or controversy" requirement for a declaratory judgment.  The

22    Court has subject matter jurisdiction over Plaintiff's First Cause of Action for a declaratory judgment

23    of copyright noninfringement.[6]

24

25         [6] Plaintiff's Second, Third, and Fourth Causes of Action are for fair use, copyright misuse,
and Defendants' unclean hands, respectively.  Defendants contend that each of these three causes of

26    action must be dismissed because a declaratory judgment cannot lie as to the validity of affirmative
defenses that may or may not be raised in the future.  (Motion at 13.)  Defendants cite <u>Calderon v.</u>

27    <u>Ashmus</u>, 523 U.S. 740, 747 (1998), in which the Supreme Court held that a party may not use a

28    12

United States District Court

For the Northern District of California

**2.      Discretionary Refusal to Hear Case**

Defendants contend that even if the Court finds that an actual controversy exists, it should exercise its discretion to decline jurisdiction because (1) Defendants will not sue Plaintiff for copyright infringement based on the Electronic Supplement as it existed in 2005 and (2) the Electronic Supplement was not finished when the Complaint was filed and has still not been published.  (Motion at 14-15.)

Due to the nonobligatory nature of the declaratory judgment remedy, a district court may stay or dismiss an action seeking a declaratory judgment before or after trial.  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288 (1995).

This case is not a mere "'academic' war" or a "'hypothetical' case," as Defendants state. (Motion at 14.)  Rather, notwithstanding Defendants' representation to the Court that they will not sue Plaintiff for the material contained in the 2005 Electronic Supplement, an actual controversy exists between the parties as to the Additional Material added to the Electronic Supplement prior to Plaintiff's filing her Amended Complaint.  Also, Plaintiff has represented to the Court that the Electronic Supplement is in final form and will not change without the Court's leave, if at all.  There is no requirement that a plaintiff in a copyright liability declaratory judgment case "publish" her work before bringing suit.  <u>See</u> <u>State of Texas v. West Pub. Co.</u>, 882 F.2d 171, 175 (5th Cir. 1989).

The Court declines to exercise its discretion not to hear this action.

**3.      Copyright Misuse**

Defendants move to dismiss Plaintiff's Third Cause of Action for copyright misuse on the ground that it is facially improper, because the defense of copyright misuse can only be applied

---

declaratory judgment to gain a litigation advantage by obtaining an advance ruling on an affirmative defense.  Since the Court has subject matter jurisdiction over Plaintiff's First Cause of Action, her primary count for noninfringement of copyright, Defendants' contention is moot.

13

United States District Court

For the Northern District of California

1   when a copyright owner commits antitrust violations or forms unduly restrictive copyright licensing

2   agreements.[7] (Motion at 13-14.)

3       The defense of copyright misuse prevents a copyright holder that has misused its copyright

4   from enforcing the copyright in a court of equity. Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970,

5   978 (4th Cir. 1990). The copyright misuse doctrine is a recent development in copyright law, and

6   derives from the defense of patent misuse. Id. at 975-77. The Fourth Circuit was the first circuit to

7   adopt the copyright misuse defense in Lasercomb, and the Ninth Circuit followed Lasercomb in

8   Practice Mgmt. Info. Corp. v. Am. Med. Ass'n, 121 F.3d 516 (9th Cir. 1997).

9       Copyright misuse does not invalidate a copyright, but precludes its enforcement during the

10   period of misuse. Practice Mgmt., 121 F.3d at 520. The plaintiff may bring suit to enforce its rights

11   against infringers once plaintiff ceases its misuse. Lasercomb, 911 F.2d at 979, n. 22. Accordingly,

12   the doctrine does not prevent plaintiff from ultimately recovering for acts of infringement that occur

13   during the period of misuse. In re Napster, 191 F. Supp. 2d 1087, 1108 (N.D. Cal. 2002); Arista

14   Records, Inc. v. Flea World, Inc., 356 F. Supp. 2d 411 (D. Nj. 2005); MGM Studios, Inc. v.

15   Grokster, Ltd., 454 F. Supp. 2d 966, 995 (C.D. Cal. 2006).

16       The Ninth Circuit has not defined the contours of the copyright misuse defense, except to

17   require the party asserting the defense to establish that the "copyright is being used in a manner

18   violative of the public policy embodied in the grant of copyright." Lasercomb, 911 F.2d at 978;

19   Practice Mgmt., 121 F.3d at 521. The Ninth Circuit has held only that the party need not prove an

20   antitrust violation to prevail on a copyright misuse defense.[8] Id. Two district courts in this circuit,

21   however, have held that the defense applies broadly "if a copyright is leveraged to undermine the

22

23   _____

24      [7] The Court construes this contention to mean that Plaintiff has not alleged facts sufficient to state a copyright misuse defense, and evaluates the sufficiency of Plaintiff's allegations pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, the Court does not look beyond the

25   allegations of the Amended Complaint for its copyright misuse analysis.

26      [8] This is because a copyright, as a government-sanctioned limited monopoly, represents an exception to the general public policy against restraints of trade embodied in the antitrust laws.

27   Lasercomb, 911 F.2d at 977-78.

28                         14

1    Constitution's goal of promoting invention and creative expression."  Grokster, 454 F. Supp. 2d at

2    995; Napster, 191 F. Supp. 2d at 1108.  In other words, there must exist a nexus between the

3    copyright holder's actions and the public policy embedded in the grant of a copyright.  The Court

4    adopts this standard.

5            With respect to this claim, Plaintiff alleges as follows:

6            Stephen Joyce, as an agent of the Estate, made veiled threats of copyright litigation to

7    effect his underlying purpose of protecting the Joyce family's privacy.  (FAC ¶¶ 15, 53, 58,

8    60-62.)  Further, he purported to forbid her from using various materials concerning Lucia

9    Joyce, including her medical records and files, over which he did not have physical or legal

10   control.  In response to the Publisher's contention that copyright law allows a researcher the

11   right to make unauthorized use of 'information' contained in copyrighted material, Stephen

12   Joyce wrote that the material was copyrighted to protect the author's and heirs' rights.  (FAC

13   ¶¶ 15, 49, 53, 59.)  He refused Plaintiff permission to license copyrighted works so long as

14   she intended to use certain other materials bearing on Lucia Joyce's life, even though he did

15   not control the use of, or copyrights in, those latter works.  (FAC ¶ 51.)  He asserted to the

16   Publisher that Plaintiff did not have permission to use letters written by Harriet Shaw

17   Weaver, Paul Léon, and Maria Jolas, although he did not own or control the copyrights in

18   these works.  (FAC ¶ 56.)

19           In response to the threats made by Stephen Joyce, the Publisher excised significant

20   portions of the book to diminish the likelihood of being sued by the Estate.  (FAC ¶ 64.)  The

21   book's reviews consequently criticized Plaintiff's lack of documentary support.  (FAC ¶¶ 67-

22   70.)  Plaintiff's Electronic Supplement, which contains various scholarly analyses and

23   historic materials concerning James Joyce and Lucia Joyce, has not been published because

24   Defendants have asserted copyright ownership in all writings of James Joyce and Lucia

25   Joyce and have disapproved of the planned Electronic Supplement.  (FAC ¶¶ 72-84.)

26

27

28                                                    15

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

Plaintiff undertook to write a scholarly work on Lucia Joyce—the type of creativity that the copyright laws exist to facilitate. Defendants' alleged actions significantly undermined the copyright policy of "promoting invention and creative expression," as Plaintiff was allegedly intimidated from using (1) non-copyrightable fact works such as medical records and (2) works to which Defendants did not own or control copyrights, such as letters written by third parties. The Court finds that Plaintiff has sufficiently alleged a nexus between Defendants' actions and the Copyright Act's public policy of promoting creative expression to support a cause of action for copyright misuse.

The Court denies Defendants' motion to dismiss Plaintiff's Third Cause of Action for copyright misuse.

**B.      Motion to Strike**

Defendants contend that the Court should strike the following allegations in Plaintiff's Amended Complaint: (1) Plaintiff's request for a declaratory judgment that the 1922 Paris first edition of *Ulysses* is in the public domain; (2) Plaintiff's claim for copyright misuse—specifically her references to actions taken by Defendants with respect to third parties; (3) Plaintiff's claim for unclean hands; (4) Paragraph 26 of Plaintiff's Amended Complaint, a "diatribe that has no bearing on the facts of this case." (Motion at 16-19.)

**1.      *Ulysses***

Defendants contend, citing to a Yale Law Journal article written by one of Plaintiff's attorneys on James Joyce's *Ulysses*, that "the issue is a complex one . . . and [Plaintiff] provides no factual allegations that support her claim." (Motion at 16.) Defendants further contend, "Shloss, or her compatriots in this lawsuit, apparently have motives for tossing in this allegation other than Shloss's [sic] desire to publish her Electronic Supplement." (Motion at 18.)

A party may allege as an affirmative defense that the putative copyright holder does not own a valid copyright to the disputed material. Hal Roach Studios, 896 F.2d at 1553. A determination whether once-copyrighted material has fallen into the public domain is made according to the place and date of publication, under the 1909 and 1976 Copyright Acts. See 17 U.S.C. § 304. Here, the

16

1   revised edition of Plaintiff's website quotes from the 1922 Paris first edition of *Ulysses*.

2   (Declaration of David S. Olson in Support of Plaintiff's Opposition to Defendants' Motion to

3   Dismiss, Ex. B, Docket Item No. 39.)  A determination of the copyright status of this edition of

4   *Ulysses* is thus material to Plaintiff's case.[9]  The Court denies Defendants' motion to strike this

5   allegation.  (FAC ¶ 75, 109, 111.)

### 2.  Copyright Misuse

7   Plaintiff's claim of the copyright misuse defense is proper.  (<u>See</u> Section IV(A)(2), *supra*.)  A

8   party may defend against copyright liability by asserting copyright misuse, even if she herself was

9   not injured by the misuse.  <u>Lasercomb</u>, 911 F.2d at 970.  Copyright misuse is only a valid defense

10  during the period in which the copyright holder is actively misusing its copyright.  Thus, even if (1)

11  Defendants never misused their copyrights vis-a-vis Plaintiff or (2) Defendants have ceased to

12  misuse their copyrights vis-a-vis Plaintiff, Plaintiff could still assert a copyright misuse defense

13  based on Defendants' actions vis-a-vis third parties.  The Court denies Defendants' motion to strike

14  the allegations supporting this claim.  (FAC ¶¶ 123-136.)

### 3.  Unclean Hands

16  Defendants contend that Plaintiff cannot maintain the defense of unclean hands because she

17  has no support for her allegation that Defendants "incorrectly claimed" to be legally entitled to

18  prevent Plaintiff from using the works of Lucia Joyce.  (Motion at 18.)

19  To prevail on an unclean hands defense, a defendant in a copyright infringement action must

20  demonstrate that (1) the plaintiff's conduct is inequitable and (2) the conduct relates to the subject

21  matter of its claims.  <u>Brother Records, Inc. v. Jardine</u>, 318 F.3d 900, 909 (9th Cir. 2003).

22  In this case, Plaintiff has alleged that Stephen Joyce, acting for Defendants, used Defendants'

23  copyrights to purport to prohibit Plaintiff from using, *inter alia*, noncopyrighted material and

24  copyrighted material in which Defendants did not own or possess interest in the copyrights.  (FAC

25

26      [9]  That Plaintiff or her counsel may have an *additional* motivation for including this
    allegation that has not been explicitly identified cannot provide a basis for Defendants' Motion to
27  Strike.

28                                                    17

United States District Court

For the Northern District of California

¶¶ 15, 49, 51, 53, 56, 59.) Based on these allegations, if Defendants had sued Plaintiff for copyright liability, she could have raised an unclean hands defense on the grounds that their conduct was inequitable and related to the subject matter of their copyright infringement claims. Accordingly, Plaintiff's present unclean hands defense is properly before the Court. The Court denies Defendants' motion to strike Plaintiff's unclean hands defense. (FAC ¶¶ 87-105, 137-141.)

### 4.    Paragraph 26

Defendants contend that Paragraph 26 of Plaintiff's Amended Complaint should be stricken because "the allegation that multiple, deceased persons destroyed letters of the Joyce family is immaterial to this litigation," and Plaintiff's allegations concerning Stephen Joyce's alleged removal of papers from the National Library of Ireland is impertinent and scandalous. (Motion at 19.) Plaintiff contends that Stephen Joyce's "destruction of Lucia's papers bears of Shloss's [sic] apprehension of suit because it demonstrates the lengths to which Joyce will go to thwart perceived invasions of privacy." (Opposition at 24.)

Plaintiff first alleges, "People have destroyed documents about Lucia Joyce for over sixty years, apparently due largely to the stigma that previous generations attached to young women who had suffered emotional trauma. As a result, little of the public record remains." (FAC ¶ 26.) Federal copyright law does not provide a remedy for individuals' destruction of their own private correspondence. As such, this allegation is irrelevant to a determination of the parties' copyright dispute.

Plaintiff next alleges (1) Stephen Joyce made a 1988 public announcement that he had destroyed all of his letters from Lucia as well as correspondence to Lucia from author Samuel Beckett and (2) Stephen Joyce's persuaded officials at the National Library of Ireland ("Library") in 1992 to allow him to remove Joyce family papers from a collection of Joyce materials that the Library was about to open to the public. (FAC ¶ 26.) For the above-stated reason, the first of these allegations is irrelevant to a determination of the parties' copyright dispute. With respect to the second, Plaintiff has not alleged that Stephen Joyce even referenced copyright law in persuading the

United States District Court

For the Northern District of California

1  Library to allow him to remove Joyce family papers.  If Stephen Joyce in fact removed papers from

2  the Library, this does not bear on the Court's determination, fifteen years later, that Plaintiff has a

3  reasonable apprehension of copyright liability for her proposed Electronic Supplement.  The Court

4  strikes Paragraph 26 of Plaintiff's Amended Complaint.

5  **V.  CONCLUSION**

6      The Court DENIES Defendants' Motion to Dismiss and GRANTS in part Defendants'

7  Motion to Strike.  Paragraph 26 is ordered stricken from Plaintiff's Amended Complaint.

8  Defendants need not answer Paragraph 26 of the Amended Complaint.

9

10  Dated:  February 9, 2007

11  JAMES WARE
United States District Judge

19

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Anthony T. Falzone anthony.falzone@stanford.edu
Bernard A. Burk bburk@howardrice.com
David S. Olson dolson@law.stanford.edu
Dorothy Rebecca McLaughlin dmclaughlin@kvn.com
Jennifer Stisa Granick JENNIFER@LAW.STANFORD.EDU
Maria K. Nelson mknelson@jonesday.com
Mark A. Lemley mlemley@kvn.com
Matthew Mickle Werdegar mmw@kvn.com

**Dated:  February 9, 2007**                    **Richard W. Wieking, Clerk**


                                                **By:   /s/ JW Chambers_____**
                                                     **Elizabeth Garcia**
                                                     **Courtroom Deputy**