

1   Maria K. Nelson (State Bar No. 155,608)
     mknelson@jonesday.com
2   Anna E. Raimer (State Bar No. 234,794)
     aeraimer@jonesday.com
3   Antionette D. Dozier (State Bar No. 244,437)
     adozier@jonesday.com
4   JONES DAY
     555 South Flower Street
5   Fiftieth Floor
     Los Angeles, CA 90071-2300
6   Telephone:    (213) 489-3939
     Facsimile:    (213) 243-2539
7

8   Attorneys for Defendants
     SEÁN SWEENEY AND THE ESTATE OF JAMES
     JOYCE
9

10                 UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13   **CAROL LOEB SHLOSS,** | **Case No. CV 06-3718 JW (HRLx)** |
| 14        **Plaintiff,** | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS** |
| 15      **v.** | |
| 16   **SEÁN SWEENEY, in his capacity as trustee of the Estate of James Joyce, and** | |
| 17   **THE ESTATE OF JAMES JOYCE,** | **Date:**      **June 4, 2007** <br> **Time:**      **9:00 a.m.** |
| 18        **Defendants.** | **Judge:**    **Hon. James Ware** |

19

20

21

22

23

24

25

26

27

28

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND .................................................................................................. 2

III.   ARGUMENT ....................................................................................................... 4

    A.     SHLOSS'S FAILURE TO FOLLOW THE RULES OF THIS COURT
    WARRANTS DENIAL OF HER MOTION ................................................. 5

    B.     SHLOSS IS NOT ENTITLED TO FEES BECAUSE DEFENDANTS ARE
    THE "PREVAILING PARTY" IN THIS ACTION ....................................... 6

        1.     Defendants Are the "Prevailing Party" Based on Shloss's Dismissal
        of this Action.................................................................................... 7

        2.     Defendants Are the "Prevailing Party" Under the Test Outlined by
        Shloss ............................................................................................... 8

            (a)     Shloss Did Not Win on the Merits of her Claims ........................... 9

            (b)     The Relief Did Not Alter the Parties' Legal Relationship
            Because Defendants Did Not Modify Any Behavior.................. 10

            (c)     The Relief Provided in the Settlement Agreement Does Not
            Provide Direct Benefits to Shloss ................................................ 12

    C.     AN AWARD OF ATTORNEYS' FEES WOULD THWART THE
    PURPOSE OF THE COPYRIGHT ACT ............................................. 13

        1.     Any Success Shloss May Claim as a Result of the Settlement
        Agreement Is De Minimis. .............................................................. 13

        2.     Shloss's Request for Attorneys' Fees Should Be Denied Because
        Defendants' Claims Were Neither Frivolous Nor Unreasonable.............. 15

        3.     No Improper Motivation Can Be Attributed to Defendants...................... 17

        4.     Denying an Award of Attorneys' Fees to Shloss Furthers the Policy
        of the Copyright Act........................................................................ 19

    D.     THE COURT SHOULD USE ITS DISCRETION AND DENY SHLOSS'S
    MOTION FOR ATTORNEYS' FEES ................................................. 21

    E.     IN THE ALTERNATIVE, THE DISMISSAL OF THIS ACTION
    SHOULD BE VACATED ................................................................. 23

IV.    CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Applied Innovations, Inc. v. Regents of the Univ. of Minn.,*
876 F.2d 626 (8th Cir. 1989)...............................................................................17

*Barrios v. Cal. Interscholastic Fed'n,*
227 F.3d 1128 (9th Cir. 2002)...............................................................9, 22, 23

*Blanch v. Koons,*
2007 WL 1365324, at *2 (S.D.N.Y. May 9, 2007).........................................16

*Bourne Co. v. Walt Disney Co.,*
1994 WL 263482, at *2 (S.D.N.Y. 1994) ........................................................17

*Bridgeport Music, Inc. v. London Music, U.K.,*
345 F.Supp.2d 836 (M.D. Tenn. 2004) ............................................................22

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.,*
532 U.S. 598 (2001) ...........................................................................................22

*Callie v. Near,*
829 F.2d 888 (9th Cir. 1987)..............................................................................23

*Carbonell v. INS,*
429 F.3d 894 (9th Cir. 2005)..............................................................................12

*Chicano Police Officer's Ass'n v. Stover,*
624 F.2d 127 (10th Cir. 1980).............................................................................8

*Claiborne v. Wisdom,*
414 F.3d 715 (7th Cir. 2005)..............................................................................11

*Corcoran v. Columbia Broad. Sys.,*
121 F.2d 575 (9th Cir. 1941)................................................................................7

*Farrar v. Hobby,*
506 U.S. 103 (1992) .............................................................................................9

*Fischer v. SJB-P.D. Inc.,*
214 F.3d 1115 (9th Cir. 2000)............................................................................12

*Florentine Art Studio, Inc. v. Vedet K. Corp.,*
891 F.Supp. 532 (C.D. Cal. 1995) .....................................................................12

*Fogerty v. Fantasy, Inc.,*
510 U.S. 517 (1994)......................................................................................15, 21

*Gram v. Bank of Louisiana,*
691 F.2d 728 (5th Cir. 1982)................................................................................8

*Jackson v. Axton,*
25 F.3d 884 (9th Cir. 1994)................................................................................13

*Jacobsen v. Katzzer,*
2006 U.S. Dist. LEXIS 79030, at *25 (N.D. Cal. Oct. 20, 2006)......................6

*Maljack Prods., Inc. v. Palisades Entm't,*
1995 WL 779154, at *1 (C.D. Cal. 1995)...........................................................7

*Martinez v. Wilson,*
32 F.3d 1415 (9th Cir. 1994)..........................................................................9, 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Matthew Bender & Co., Inc. v. West Publ'g Co.*,
   240 F.3d 116 (2d. Cir. 2001)..................................................................... 18

*MedImmune, Inc. v. Genentech, Inc.*,
   127 S. Ct. 764 (2007) ......................................................................... 1, 21

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ............................................................................. 15

*Ninox Television Ltd. v. Fox Entm't Group, Inc.*,
   2006 WL 1643300, at *2 (S.D.N.Y. 2006) ................................................... 7

*Paramount Pictures Corp. v. RePlay TV, Inc.*,
   298 F.Supp.2d 921 (C.D. Cal. 2004) ......................................................... 8

*Parents of Student W v. Puyallup Sch. Dist.*,
   31 F.3d 1489 (9th Cir. 1994).................................................................... 14

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   2005 WL 2007932, at *2 (N.D. Cal. 2005).......................................... passim

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
   378 F.3d 1396 (Fed. Cir. 2004).................................................................. 7

*Richard S. v. Dept. of Developmental Servs.*,
   317 F.3d 1080 (9th Cir. 2003)............................................................... 9, 22

*Richardson v. Continental Grain Co.*,
   336 F.3d 1103 (9th Cir. 2003)............................................................ 12, 13

*Schwarz v. Folloder*,
   767 F.2d 125 (5th Cir. 1985).................................................................... 7

*Semtek Int'l, Inc. v. Lockheed Martin Corp.*,
   531 U.S. 497 (2001) ................................................................................ 7

*Stephen W. Boney, Inc. v. Boney Servs., Inc.*,
   127 F.3d 821 (9th Cir. 1997).................................................................... 15

*Stewart v. Prof'l Computer Ctrs., Inc.*,
   148 F.3d 937 (8th Cir. 1998).................................................................... 23

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
   489 U.S. 782 (1989) ....................................................................... 8, 9, 13

*Warner Bros. Inc. v. Dae Rim Trading*,
   877 F.2d 1120 (2nd Cir. 1989).................................................................. 7

*Webcaster Alliance, Inc. v. Recording Indus. Ass'n of Am., Inc.*,
   2004 U.S. Dist. LEXIS 11993, at *20-21 (N.D. Cal. 2004) ........................... 18

*Zenith Ins. Co. v. Breslaw*,
   108 F.3d 205 (9th Cir. 1997)................................................................ 5, 7

## STATUTES

17 U.S.C. § 505 ........................................................................................ 7

## OTHER

Carol Loeb Shloss, *Lucia Joyce: To Dance in the Wake* (Picador 2003) ................. 3, 19

1

**TABLE OF AUTHORITIES**
(continued)

2
Page

3
### <u>RULES</u>

4
Civ. L. R. 54-6(a) ..................................................................................................... 5

5
Civ. L. R. 54-6(b) ................................................................................................. 5, 6

6
Fed. R. Civ. P. § 60(b) .......................................................................................... 23

Fed. R. Civ. P. § 60(b)(6) ...................................................................................... 23

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## I.    **INTRODUCTION**

3        With the support and urging of the Court, this case settled on March 16, 2007.  Plaintiff

4   Carol Loeb Shloss ("Shloss") dismissed her declaratory-judgment claims with prejudice, and

5   Defendants voluntarily granted a limited covenant not to sue.  Now Shloss wants attorneys' fees

6   on top of that.  The Court should deny that request and put this case to a fitting and final end, for

7   the following reasons:

8        •    Shloss failed to follow the rules of this Court by meeting and conferring with

9   Defendants' counsel regarding this motion for fees, which appears to have been a calculated

10  strategy to finalize the settlement without addressing this issue.

11       •    Shloss, who had to dismiss all of her claims with prejudice, is not the prevailing

12  party in this case—Defendants are.

13       •    Defendants' consistent position in this declaratory-judgment case was that there

14  was no justiciable case or controversy because Defendants were not threatening Shloss with a

15  lawsuit—yet Defendants were hauled into court anyway.

16       •    The minimal covenant not to sue granted by Defendants—even if it were viewed

17  as making Shloss into a "prevailing party" under 17 U.S.C. § 505—is so *de minimis* that it should

18  not be used to support an award of fees.  That covenant simply promises to forbear suing Shloss

19  over the use of a limited number of quotations—a suit that Defendants consistently maintained

20  was not imminently likely to happen in any event.

21       •    Defendants' legal positions here were substantial, certainly non-frivolous, and

22  were not improperly motivated.

23       •    Addressing the underlying contentions in Shloss's fee motion would in essence

24  open up all of the settled claims to relitigation.

25       •    [Awarding fees in this case would create an unfortunate incentive for filing

26  copyright declaratory-judgment suits, which have already been made easier by the Supreme

27  Court's recent decision in *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007).]

28

1   Shloss is essentially asking the Court to punish Defendants for acceding to the Court's

2   suggestion of a settlement in this case. That would be a regrettable result. The Court should deny

3   Shloss's fee motion and end this case once and for all.

4   ## II.    BACKGROUND

5       As has been described in detail in the documents previously filed with this Court, Shloss

6   wrote a book about James Joyce's daughter Lucia Joyce ("Shloss's Book"), and then created an

7   electronic supplement of a few pages of material that she and her publisher allegedly cut from the

8   book (the "Electronic Supplement"). The Defendants did not file a copyright infringement suit

9   against Shloss following the publication of Shloss's Book that contained copyrighted material

10  from the works of James Joyce and Lucia Joyce (the "Joyce Copyrights") – the same material that

11  Shloss alleges Defendants prohibited her from using. Nor did Defendants file a counterclaim for

12  copyright infringement as to the Electronic Supplement in their Answer to Shloss's Amended

13  Complaint. Instead, Defendants covenanted not to sue Shloss in connection with the publication

14  of the Electronic Supplement. It is Shloss who has instigated this action before the Court, and

15  thus, in no uncertain terms can Shloss be considered a successful "defendant" of copyright claims

16  that is eligible for attorneys' fees.

17      To justify a claim for attorneys' fees, Shloss continues to harp on an alleged "fifteen-year

18  campaign of threats and intimidation" by Defendants, but such a "campaign" is clearly

19  unsupported by a handful of letters and various unsubstantiated accusations. Defendants are

20  tasked with the difficult job of maintaining the literary estate of one of the greatest writers of the

21  twentieth century, and there is no time for or benefit in waging a personal campaign against

22  Shloss. Defendants made the decision to settle this matter in part due to this reason – Shloss is

23  not worth any further financial or mental expense.

24      Furthermore, Shloss and her publisher did not cut "substantial amounts of material from

25  the book" based on any threats from Defendants. In a comparison of the amount of material on

26  the original Electronic Supplement and the size of Shloss's Book, only approximately 1-2% of the

27  book was allegedly cut.[1] In addition, such cuts, per Shloss's own editor, were to make the book

28  ---

[1] The amount of material on Shloss's original Electronic Supplement, the Electronic
Supplement that allegedly shows where certain material was cut from Shloss's Book, represents

"better."[2] [Shloss Decl. in Supp. of Opp. to Mtn. to Dismiss, Ex. K.]  No representative of the

Estate, including Stephen James Joyce, ever saw the book before it was printed, and therefore no

representative could have made a fair use opinion to Shloss or her publisher.  Such a fair use

opinion was clearly drawn by Shloss's publisher, and perhaps Shloss's complaints about the lack

of success of her book should be redirected to her publisher's attention rather than laying blame

on the Defendants.

Shloss also complains that it is Defendants who have caused an increase in time and

expense in this case, while it is clear the opposite is true.  After Defendants agreed to covenant

not to sue on Shloss's original Electronic Supplement, it was Shloss who filed an Amended

Complaint allegedly to cover additional material she was forced to cut – over four months after

her original Complaint was filed.[3]  This additional material was added to Shloss's Electronic

Supplement despite Shloss's Book having been completed for several years so that any "cut"

material could have and should have been included in the original Complaint.  Further,

Defendants could not have covenanted on the material after the filing of the Amended Complaint

because it was not until after the Defendants' Motion to Dismiss was filed that Shloss finally

committed that her Electronic Supplement was complete and would not be expanded without

leave of the Court.  Shloss did not provide this declaration until six months after the original

Complaint was filed.  And, it would not have been prudent for Defendants to have immediately

provided a covenant on the new material without such material first being analyzed by a Joyce

scholar.

---

(continued...)

approximately 5-7 pages of material.  [See Reply Motion to Dismiss, p. 3; Olson Decl. in Support of Opposition to Motion to Dismiss, Ex. A.]  Shloss's Book is 460 pages in length, excluding the Notes and Bibliography sections.  See Carol Loeb Shloss, Lucia Joyce: To Dance in the Wake (Picador 2003).  The amount of allegedly cut material is therefore less than 2% of Shloss's Book.

[2] According to Shloss: "There are several irreconcilable differences between me and Farrar, Straus right now.  The first is simply that I don't want my book stripped of the quoted material.  Elisabeth says two things about these deletions.  The first is obviously about needing to stay within the bounds of Fair Use.  The second is that she thinks the book is better with this second editing."  See 2/6/03 Email from Shloss to Tina Bennett, Shloss Decl., Ex. K.

[3] As noted at the hearing on Defendants' Motion to Dismiss, an oral covenant not to sue on the original Electronic Supplement was provided to Shloss prior to her filing an Amended Complaint.  See Transcript of Hearing on Motion to Dismiss, Nelson Decl., Ex. A, 29:18-23.

1    Defendants are confident that Shloss's use of certain Joyce Copyrights on the Electronic

2   Supplement would not have survived a fair use analysis and that her declaratory judgment claims

3   would have been dismissed on summary judgment.  But, as Defendants have repeated throughout

4   this action, the issues at stake in this matter are not worth the continued financial and mental

5   attention by Defendants.  In this litigation, there has been no determination on the merits of

6   Shloss's case, especially no finding that the Defendants' position has been "legally untenable,"

7   and there is thus no reason to award attorneys' fees here.  As shown by the various cases cited by

8   Shloss in which Defendants have reached favorable judgments and settlements, Defendants

9   clearly have a legally tenable position and "articulate defensible principles" – when, of course,

10   they believe that an issue is worth fighting about.

11   ## III.    ARGUMENT

12    By settling this matter and filing a dismissal with prejudice, Shloss has forever given up

13   her claims for a declaratory judgment that her use of certain material constitutes fair use, that

14   Defendants' past actions amount to unclean hands and copyright misuse, and that James Joyce's

15   work *Ulysses* is in the public domain.  These issues, rather than whether Shloss could reprint

16   certain material that has already been published in her book, were the substance of Shloss's

17   lawsuit.[4]  The dismissal of these causes of actions represents a significant victory to Defendants

18   and confers prevailing party status on Defendants.

19   ――――――――――――――

20   [4] The day Shloss filed suit against Defendants, Shloss's counsel David Olson stated on his blog:

21    Today we filed suit against the Estate of James Joyce on behalf of
     Stanford English professor Carol Shloss.  In a nutshell, we ask for a

22    declaration that Professor Shloss is permitted under "fair use" to
     make use on her academic website of certain Joyce materials that

23    are copyrighted.  In addition, we argue that due to the Joyce Estate's
     history of misusing its copyrights, the Court should hold that the

24    Estate is barred from enforcing its copyrights against Professor
     Shloss.

25   *See* Nelson Decl., Ex. C.  The purpose of filing suit according to Shloss's counsel, then, was for a
     declaration that Shloss's use of the Joyce Copyrights was "fair use" and for a holding of

26   copyright misuse, not simply to allow Shloss to publish certain material.  Furthermore, on
     January 29, 2007, two days before the Court's hearing on Defendants' Motion to Dismiss, Shloss

27   and her attorneys gave a "talk" on the case, which was advertised as follows:

28    Come listen to Stanford English Professor Carol Loeb Shloss and
     some of her lawyers talk about suing the Estate of James Joyce for

LAI-2871417v1

- 4 -

1    Furthermore, each of the factors that this Court has previously evaluated to determine

2    whether an award of attorneys' fees is appropriate weighs against awarding attorneys' fees to

3    Shloss. Specifically, Defendants received the bulk of the success from the dismissal of this

4    action; Defendants have asserted neither unreasonable nor frivolous claims; Defendants have met

5    the objectives of the Copyright Act by diligently defending against Shloss's claims; and there is

6    no need for deterrence in this action. Moreover, Shloss has not properly filed this motion

7    pursuant to the Local Rules of this Court. Therefore, Shloss's request for an award of attorneys'

8    fees should be denied.

9    ## A.  SHLOSS'S FAILURE TO FOLLOW THE RULES OF THIS COURT WARRANTS DENIAL OF HER MOTION.

10

11    Shloss had every opportunity to discuss the issue of attorneys' fees with Defendants. In

12    fact, the Northern District of California specifically requires counsel to "meet and confer for the

13    purpose of resolving all disputed issues relating to attorney's fees before making a motion for

14    award of attorney's fees." Civ. L. R. 54-6(a). However, Shloss's counsel never raised this issue,

15    suggesting an intentional plan to coax Defendants into a settlement without truly finalizing this

16    matter. [Nelson Decl., ¶ 5.] Further, the insistence by Shloss's counsel that the terms of the

17    Settlement Agreement be incorporated into a Stipulated Judgment demonstrates that Shloss's

18    counsel planned to file this motion all along and warrants denying Shloss attorneys' fees. *Zenith*

19    *Ins. Co. v. Breslaw*, 108 F.3d 205, 207 (9th Cir. 1997) (recognizing that a denial of costs is

20    warranted where the "prevailing party" has engaged in "some impropriety during the course of

21    the litigation").

22    Shloss's counsel further failed to file the motion for attorneys' fees in the proper form,

23    which pursuant to Local Rule 54-6(b), requires declarations and affidavits containing the

24    following information:

25    _____

(continued…)

26
copyright misuse and to have material on her academic website
27    declared non-infringing fair use.

28    *See* Nelson Decl., Ex. D. Again, Shloss's description of the case emphasizes that the case was
about "fair use" and "copyright misuse," not obtaining the right to publish certain materials.

**(1)** A statement that counsel have met and conferred for the purpose of attempting to resolve any disputes with respect to the motion or a statement that no conference was held, with certification that the applying attorney made a good faith effort to arrange such a conference, setting forth the reason the conference was not held; and

**(2)** A statement of the services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained…; and

**(3)** A brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services.

Civ. L. R. 54-6(b).  *See also Jacobsen v. Katzzer*, 2006 U.S. Dist. LEXIS 79030, at *25 (N.D. Cal. Oct. 20, 2006) (noting that under Local Rule 54-6(b), "a motion for attorney's fees must be supported by a declaration containing, among other things, a statement of the services rendered together with a summary of the time spent by each person.").

Shloss's counsel could not attach a declaration asserting counsel had met and conferred on the motion or a good faith attempt was made to do so as Defendants' counsel was never contacted regarding this motion.  Shloss's counsel also failed to provide the other statements required under Local Rule 54-6(b).  In sum, this motion was improperly filed and improperly used as a final opportunity by Shloss to reair her grievances to this Court, despite Shloss feigning to finally resolve this matter through the settlement agreement and dismissal of this action.

**B.    SHLOSS IS NOT ENTITLED TO FEES BECAUSE DEFENDANTS ARE THE "PREVAILING PARTY" IN THIS ACTION.**

Shloss asks this Court to find that she is the prevailing party in this action because Defendants have formally stated that they will not file suit for copyright infringement against Shloss based on her publication of the Electronic Supplement.  However, as shown by Defendants' actions and statements thus far, Defendants never intended – and never did – file a copyright action against Shloss.  The true alteration in the legal relationship between the parties is that Shloss has given up all her claims against Defendants, making Defendants the prevailing party in this litigation.

1.    **<u>Defendants Are the "Prevailing Party" Based on Shloss's Dismissal of this Action.</u>**

The United States Copyright Act provides courts with the discretion to award attorney's fees to the "prevailing party" in a copyright action. 17 U.S.C. § 505.  When a plaintiff dismisses claims against a defendant, the defendant is generally deemed the prevailing party as to those claims.  *See Zenith Ins.*, 108 F.3d at 207 (determining "dismissal was sufficient to confer prevailing party status on the [ ] defendants for those claims"); *Corcoran v. Columbia Broad. Sys.*, 121 F.2d 575, 576 (9th Cir. 1941) (holding defendants are "prevailing parties" entitled to a fee award where they defended against a copyright action that was voluntarily dismissed by the plaintiff); *Maljack Prods., Inc. v. Palisades Entm't*, 1995 WL 779154, at *1 (C.D. Cal. 1995) (holding voluntary dismissal prior to ruling on motion to dismiss for lack of personal jurisdiction made defendant the prevailing party); *Warner Bros. Inc. v. Dae Rim Trading*, 877 F.2d 1120, 1126 (2nd Cir. 1989) (finding the withdrawal of copyright claims "in effect made the defendants the prevailing party on that issue.").  Thus, in the present action, <u>Defendants are clearly the prevailing party</u> as Shloss has dismissed all of her claims against Defendants with prejudice.

Furthermore, Shloss's dismissal of this action with prejudice resulted in a judgment on the merits in favor of Defendants, making them the prevailing party to the action.  *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (noting "'with prejudice' is an acceptable form of shorthand for 'an adjudication on the merits'") (citations omitted); *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004) (holding defendant "which had all claims against it dismissed with prejudice, is therefore a prevailing party"); *Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985) (holding "[b]ecause a dismissal with prejudice is tantamount to a judgment on the merits, the defendant in this case...is clearly the prevailing party and should ordinarily be entitled to costs"); *Ninox Television Ltd. v. Fox Entm't Group, Inc.*, 2006 WL 1643300, at *2 (S.D.N.Y. 2006) (holding defendant is the prevailing party and is entitled to attorney's fees where plaintiff's copyright claims were dismissed with prejudice following the parties' stipulation).  Shloss has not obtained any judicial relief as a result of the Settlement Agreement; rather, it is Defendants that have obtained judicial relief and a judgment

1   on the merits in their favor due to Shloss's dismissal of this action with prejudice.  The

2   Defendants, not Shloss, are therefore the prevailing party as a result of Shloss's dismissal of all of

3   her claims with prejudice.

4          Importantly, had the parties not reached a settlement of this action, the Defendants would

5   have simply filed a summary judgment motion with a covenant not to sue, and Shloss's case

6   would have been dismissed as moot.  *See, e.g., Paramount Pictures Corp. v. RePlay TV, Inc.*, 298

7   F.Supp.2d 921, 926-27 (C.D. Cal. 2004) (dismissing plaintiffs' declaratory judgment action

8   because there was no longer an actual controversy to adjudicate following the copyright owners'

9   covenant not to sue plaintiffs).  Pursuant to the case law cited above, such a dismissal would have

10  resulted in Defendants being deemed the prevailing party.  The Court should not now allow

11  Shloss to recover attorneys' fees that she could not have obtained had the Defendants not agreed

12  to settle the matter and instead filed a summary judgment motion with a covenant not to sue.

13  Such a ruling would result in a strong disincentive for any defendant to a copyright action to

14  attempt to settle litigation in good faith.

15                 **2.**     **Defendants Are the "Prevailing Party" Under the Test Outlined by**
                              **Shloss.**
16

17         According to Shloss, the question to ask in determining which party is a "prevailing party"

18  is "whether one party has forced the other party to do something it would otherwise not have to

19  do, or to refrain from doing something it could otherwise do." [Shloss Motion, p. 10.]  As

20  Defendants never sued, or even intended to sue, Shloss has not "forced" Defendants to do

21  anything.  Instead, Defendants settled this matter for nuisance value.[5]  Such an action could

22  hardly convey prevailing party status to Shloss.  *See Texas State Teachers Ass'n v. Garland*

23  *Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (citing *Chicano Police Officer's Ass'n v. Stover*, 624

24  F.2d 127, 131 (10th Cir. 1980) ("nuisance settlements, of course, should not give rise to a

25  'prevailing' plaintiff"); *Gram v. Bank of Louisiana*, 691 F.2d 728, 730 (5th Cir. 1982) (expressing

26  the caveat that "nuisance settlements should not give rise to fee awards.").

27  _____
             [5] As noted in the Settlement Agreement, the purpose of the Agreement was specifically
28  for "compromising disputed claims and avoiding the expense, inconvenience, and uncertainty of
    litigation." [Olson Decl., Ex. 1 of Ex. P, ¶ 10.]

1     Significantly, as noted in the cases cited by Shloss for the proposition that she is a

2 prevailing party, "prevailing party status is determined by inquiring whether plaintiffs' 'actual

3 relief on the merits of [their] claim materially alters the legal relationship between the parties by

4 modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Richard S. v.*

5 *Dept. of Developmental Servs.*, 317 F.3d 1080, 1087 (9th Cir. 2003) (quoting *Barrios v. Cal.*

6 *Interscholastic Fed'n*, 227 F.3d 1128, 1134 (9th Cir. 2002). Thus, a "plaintiff is a prevailing

7 party only when (1) it wins on the merits of its claim, (2) the relief received materially alters the

8 legal relationship between the parties by modifying the defendant's behavior, and (3) that relief

9 directly benefits the plaintiff." *Martinez v. Wilson*, 32 F.3d 1415, 1422 (9th Cir. 1994). Shloss

10 has not satisfied any of these factors and cannot be a prevailing party.

11                    **(a)    Shloss Did Not Win on the Merits of her Claims.**

12     First, Shloss obtained no relief on the merits of any of the claims asserted in any of her

13 Complaints. "[A] plaintiff 'prevails' when actual relief <u>on the merits of his claim</u> materially

14 alters the legal relationship between the parties...." *Richard S.,* 317 F.3d at 1086 (quoting

15 *Barrios*, 277 F.3d at 1134) (emphasis added); *see also Farrar v. Hobby*, 506 U.S. 103, 109 (1992)

16 ("Congress intended to permit the...award of counsel fees only when a party has prevailed on the

17 merits."); *Texas State Teachers Ass'n*, 489 U.S. at 792 (requiring "that a plaintiff receive at least

18 some relief on the merits of his claim before he can be said to prevail"). The merits of Shloss's

19 claims were not addressed by this Court or in the Settlement Agreement.

20     Shloss's lack of success in this action is demonstrated by the fact that she received <u>none</u> of

21 the relief requested in the "Prayer for Relief" in her Complaint. To illustrate, the following chart

22 directly quotes each of the measures of relief sought by Shloss in her original Complaint, which is

23 virtually identical to the relief sought in her following two Complaints, and states whether that

24 relief was obtained.  [*See* Olson Decl., Ex. K at p. 22-23, Ex. L at p. 23-24, Ex. T at p. 23-24.]

| Prayer for Relief from Shloss's Complaint | Obtained? |
|---|---|
| "1.  Declaring that under United States copyright law, Shloss's planned Electronic Supplement does not infringe any subsisting copyright owned by the Estate;" | No. |

| | |
|---|---|
| "2.  Declaring that Shloss's activities with respect to the planned Electronic Supplement are protected as fair use;" | No. |
| "3.  Declaring that Shloss's transformative academic work is presumptively fair use." | No. |
| "4.  Declaring that Defendants were not entitled under the circumstances to prevent Shloss from making use of the writings of Lucia Joyce or Lucia's medical records and files and other Lucia-related documents." | No. |
| "5.  Declaring that Defendants cannot assert copyright infringement within the United States of James Joyce's 1922 Paris first edition of *Ulysses*, because that particular edition is in the U.S. public domain;" | No. |
| "6.  Declaring that due to Defendants' copyright misuse they cannot assert copyrights they control against Shloss;" | No. |
| "7.  Enjoining the Estate and its Trustee Sweeney, along with its agents, attorneys, and assigns, from assertion of copyrights against Shloss regarding the materials on the Electronic Supplement on the proposed Website;" | No.[6] |
| "8.  Awarding Shloss her reasonable attorneys' fees and costs; and" | At issue. |
| "9.  Awarding such other relief as the Court deems just and proper." | No. |

In sum, none of the relief sought by Shloss in her Complaints was obtained through the settlement and dismissal of this action.

### (b)    The Relief Did Not Alter the Parties' Legal Relationship Because Defendants Did Not Modify Any Behavior.

A "material alteration in the legal relationship between the parties" is required for a party to be deemed a prevailing party, but Defendants disagree with Shloss as to the "material

---

[6] No conduct of Defendants was enjoined by this Court; however, Defendants did voluntarily covenant not to sue Shloss in connection with the publication of specific quotes from certain works used in a specific context.

1    alteration" of the parties' relationship. [Shloss Motion, p. 10.] Shloss claims that "the parties'

2    legal relationship has changed drastically" because "defendants have forever given up the right to

3    enforce the copyrights that were the premise of their threats against Shloss." [Shloss Motion,

4    p. 11.] Yet, by agreeing to allow Shloss to use the limited quotes in the Electronic Supplement,

5    defendants have not given up any enforcement rights as to the "copyrights that were the premise

6    of their threats against Shloss" because, according to Shloss, Defendants prohibited her from

7    using "literally anything James or Lucia Joyce ever wrote, drew or painted." [Shloss Motion,

8    p. 2.; *see also* Transcript of Hearing on Motion to Dismiss, Nelson Decl., Ex. A, 10:14-20, in

9    which Shloss's counsel states, "In the correspondence the trustee of the Estate, Stephen James

10    Joyce, told Professor Shloss and her publisher that they may not use anything that James Joyce

11    ever wrote, or anything Lucia Joyce ever wrote, drew, painted or recorded, and that's a quote."]

12    Other than the few pages of quotes of Joyce Copyrights on the Electronic Supplement on

13    which Defendants have covenanted not to sue, the Settlement Agreement does not give Shloss

14    rights to use any other Joyce Copyrights, including "anything James or Lucia Joyce ever wrote,

15    drew or painted." Furthermore, the Settlement Agreement does not acknowledge that such use by

16    Shloss constitutes fair use, which Shloss asked this Court to declare, but only that Defendants will

17    not file a copyright infringement as to the specific material contained in the Electronic

18    Supplement if used in the manner specified. [Olson Decl., Ex. 1 at Ex. P, ¶ 2(a), in which

19    Defendants only agree "not to sue Shloss for infringement of any copyrights resulting from

20    Shloss's publication, in either electronic or printed form, of the Supplement attached hereto as

21    Exhibit A."] If Shloss changes the Electronic Supplement, Defendants can sue. The true

22    "material alteration" in this action is that Shloss has dismissed her claims against Defendants and

23    forever given up the right to assert claims against Defendants based on the facts alleged in her

24    Complaint. *See Claiborne v. Wisdom*, 414 F.3d 715, 719 (7th Cir. 2005) (holding dismissal with

25    prejudice "effects a material alteration of her legal relationship with the other parties, because it

26    terminates any claims she may have had against them arising out of this set of operative facts.")

27    Furthermore, Defendants have not modified their conduct in any manner as a result of the

28    settlement and dismissal of this action. In contrast, in case law in which attorneys' fees were

1    awarded, the behavior of the relevant defendants changed as a direct result of an agreement with

2    the plaintiff. For example, in *Carbonell v. INS*, 429 F.3d 894 (9th Cir. 2005), cited by Shloss,

3    Defendant, the INS, had taken steps to deport the plaintiff, including securing travel documents

4    for deportation, and then stipulated to a say of deportation. The INS therefore changed its

5    behavior based on the settlement agreement. *See also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115,

6    1118 (9th Cir. 2000) (holding attorneys' fees appropriate in ADA case where restaurant was

7    forced to print, publish and post a new nondiscrimination policy, which were actions it would not

8    have taken absent the parties' agreement). As Defendants never sued Shloss for copyright

9    infringement and never intended to do so, there has been no change or modification in

10   Defendants' conduct by virtue of the Settlement Agreement, and Shloss cannot be deemed a

11   prevailing party. *See Richardson v. Continental Grain Co.*, 336 F.3d 1103, 1106 (9th Cir. 2003)

12   (noting that to prevail for purposes of such fee-shifting statutes, "[s]ucceeding on an issue alone is

13   insufficient; even obtaining declaratory judgment will not result in the award of fees, unless it

14   causes the defendant's behavior to change for the benefit of the plaintiff.")

15       On the other hand, Defendants forced Shloss to modify her behavior by foregoing her

16   claims for a declaratory judgment that her use of certain Joyce Copyrights was fair use, that

17   Defendants' actions constituted copyright misuse and unclean hands, and that *Ulysses* is in the

18   public domain. By causing Shloss to abandon these claims – and thereby "refrain from doing

19   something [she] could otherwise do" – Defendant achieved all they wanted to accomplish in

20   defending this action, which makes them the prevailing party (even under Shloss's definition).

21   *See Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F.Supp. 532, 541 (C.D. Cal. 1995) (holding

22   defendants in copyright action were the prevailing party because they "clearly succeeded in a

23   substantial part of this litigation, and achieved substantially all the benefits they hoped to achieve

24   in defending the suit.").

25           **(c)    The Relief Provided in the Settlement Agreement Does Not
              Provide Direct Benefits to Shloss.**
26

27       The only relief provided to Shloss through the Settlement Agreement is the indirect

28   benefit that the agreement may be "pleaded as a complete defense to, and may be used as a basis

1   for an injunction against, the bringing of any claim related to the publication of the

2   Supplement…." [Olson Decl., Ex. 1 at Ex. P, ¶ 2(c).] <u>Because Defendants have not sued Shloss</u>

3   <u>for copyright infringement, she has not yet gained anything by the Settlement Agreement.</u>  Thus,

4   "[t]here was no actual relief here, only the possibility of future relief," which warrants a denial of

5   an attorneys' fee award. *Richardson*, 336 F.3d at 1106 (rejecting claim for attorneys' fees).  *See*

6   *also Martinez*, 32 F.3d at 1415 (concluding plaintiff was not prevailing party because "the

7   behavior enjoined was not occurring at the time the injunction issued, nor was there any imminent

8   threat of its occurrence.")  Conversely, Defendants have obtained a significant, direct benefit

9   from Shloss's dismissal of this action because they are no longer required to defend against

10  Shloss's claims

11          Shloss has not satisfied any of the foregoing factors, all of which are required to confer

12  prevailing party status on a plaintiff.  Rather, based on this prevailing party test, it is Defendants

13  that are the prevailing party in this action.

14          **C.      AN AWARD OF ATTORNEYS' FEES WOULD THWART THE PURPOSE**
             **OF THE COPYRIGHT ACT.**
15

16          This Court has noted that a decision to award attorneys' fees must be supported by

17  "analyzing facts such as 'the degree of success obtained, frivolousness, motivation, objective

18  unreasonableness of both the legal and the factual arguments, the need to advance considerations

19  of compensation and deterrence, and the purpose of the Copyright Act itself.'"  *Perfect 10, Inc. v.*

20  *Visa Int'l Serv. Ass'n*, 2005 WL 2007932, at *2 (N.D. Cal. 2005) (quoting *Jackson v. Axton*, 25

21  F.3d 884, 890 (9th Cir. 1994)).  Each of these factors, evaluated below, weighs heavily in favor of

22  denying Shloss's motion for attorneys' fees.

23          **1.      <u>Any Success Shloss May Claim as a Result of the Settlement</u>**
                     **<u>Agreement Is *De Minimis*</u>.**
24

25          First, even assuming Shloss is the prevailing party, the little success obtained by Shloss in

26  this action favors denying an award of attorneys' fees.  The results Shloss obtained by virtue of

27  the Settlement Agreement were at the most *de minimis*, and at least equivalent to her situation had

28  no suit ever been filed.  *Texas State Teachers Ass'n*, 489 U.S. at 792 (noting denial of attorney's

1   fees is appropriate "where the plaintiff's success on a legal claim can be characterized as purely

2   technical or *de minimis*"); *see also Parents of Student W v. Puyallup Sch. Dist.*, 31 F.3d 1489,

3   1498 (9th Cir. 1994) (upholding denial of attorneys' fees where none of the relief requested in

4   plaintiff's complaint was granted).  As repeatedly stated in their Motion to Dismiss and before

5   this Court, Defendants did not intend to sue and, in fact, did not sue Shloss for copyright

6   infringement based the Electronic Supplement.  Thus, obtaining an agreement that can be pleaded

7   as a defense to any copyright infringement suit that could be filed by the Defendants in

8   connection with the Electronic Supplement in the future, if and when Shloss publishes the

9   Electronic Supplement, is no real victory.

10          Shloss further claims that she received "broader relief" than that originally sought because

11  Defendants agreed to provide documentation regarding Stephen Joyce's claim that he was the

12  owner of Lucia Joyce's copyrights.  It is unclear why such agreement would represent any sort of

13  success when this information was declared by the Defendants in their Motion to Dismiss and

14  associated affidavits, as well as in the letters written by Stephen Joyce.  [*See, i.e.,* 7/22/03 Letter

15  from Stephen Joyce to Leon Friedman, Olson Decl., Ex. H, stating "Let me point out and stress, if

16  need be, that the James Joyce Estate and myself as the sole beneficiary owner hold any and all

17  rights, including copyright, to anything and everything that James, Nora Barnacle, Giorgio

18  (George), Lucia, Helen (Kastor, Fleischman) Joyce and myself ever wrote, drew painted and/or

19  recorded, etc."]  Proof of copyright ownership in Lucia's works was also provided to Shloss well

20  before the settlement, and such information would have been provided to Shloss by Defendants

21  during discovery.

22          As shown by the chart above, Shloss received none of the relief she sought in any of the

23  Complaints filed against Defendants or Stephen Joyce.  There was no declaration that the

24  Electronic Supplement did not infringe any copyrights owned by Defendants, no declaration that

25  use of Defendants' copyrighted material in the Electronic Supplement is protected as fair use, no

26  declaration that Shloss's "transformative academic work" is fair use, no declaration that

27  Defendants were not entitled to prevent Shloss from making use of Lucia Joyce's writings, no

28  declaration that James Joyce's *Ulysses* is in the public domain, no declaration that Defendants

1    cannot assert their copyrights due to any copyright misuse, no injunction that Defendants could

2    assert their copyrights against Shloss's use of materials on the Electronic Supplement (though

3    Defendants have voluntarily agreed not to sue for certain quotes used in a specific context), no

4    award of any relief from the Court, and, thus far, no award of attorneys' fees and costs. [*See*

5    Olson Decl., Ex. K at p. 23-24.] Thus, <u>Shloss received none of the relief she requested</u> by virtue

6    of filing her Complaints against Defendants and Stephen James Joyce.

7        The dismissal of this action is instead <u>a clear victory for Defendants</u>. Shloss has

8    dismissed with prejudice her claims for a declaratory judgment that her use of the Joyce

9    Copyrights on her Electronic Supplement constitutes fair use, that Defendants' past conduct

10   amounts to unclean hands and copyright misuse, and that James Joyce's work *Ulysses* is in the

11   public domain. This factor, thus, heavily weighs against an award of attorneys' fees to Shloss.

12   <center>**2.    <u>Shloss's Request for Attorneys' Fees Should Be Denied Because
Defendants' Claims Were Neither Frivolous Nor Unreasonable.</u>**</center>

13

14       Courts also take into account the objective unreasonableness and frivolousness of the

15   litigation in deciding whether an attorneys' fees award is appropriate, giving due consideration to

16   both the factual and legal components of the case. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-35

17   (1994). As noted by this Court and the United States Supreme Court, "a frivolous claim is one in

18   which the factual contention is 'clearly baseless,' such as factual claims that are 'fantastic or

19   delusional scenarios.'" *Perfect 10*, 2005 WL 2007932, at *4 (quoting *Neitzke v. Williams*, 490

20   U.S. 319, 325-28 (1989)). The Defendants' legal positions throughout this litigation were not

21   frivolous, were based on sound issues of law and fact, and were supported by good case law. *See*

22   *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997) (affirming the

23   denial of attorneys' fees to a prevailing party where the action was not frivolous and "raised

24   debatable issues of law and fact"). Further, there is no indication in the Court's Order on

25   Defendants' Motion to Dismiss that the Court found the motion to be frivolous. [*See* Olson Decl.,

26   Ex. O.] Nor did this Court indicate at the hearing that Defendants' assertions were frivolous or

27   unreasonable. [*See* Transcript of Hearing on Motion to Dismiss, Nelson Decl., Ex. A, 20:6-15, in

28   which this Court states, "There is no criticism that I should issue against the lawyers or Dr. Shloss

1  with respect to how they conducted themselves, nor of the Estate quite frankly. If there is a belief

2  that this material does indeed infringe on copyright issues, it's right to have asserted that, to have

3  put the case properly before some neutral person to get that resolved. And so as far as I'm

4  concerned everybody is in the right place right now."]

5      Defendants had no communications with Shloss in the six months prior to the filing of her

6  Complaint on June 12, 2006, and could reasonably conclude that a covenant not to sue covering

7  the materials originally prompting the suit would be sufficient to vitiate any apprehension of suit

8  Shloss may have had. Further, following Shloss's amendment of the Electronic Supplement,

9  Defendants never directed any "threats" regarding the use of this material to Shloss or her

10  counsel. Nor would Defendants make "threats" of infringement as there was no point in

11  undertaking a fair use analysis of the revised Electronic Supplement until Shloss filed her

12  Amended Complaint on October 25, 2006, which allegedly covered additional materials in the

13  Electronic Supplement. Defendants' Motion to Dismiss was therefore appropriate, and sound

14  case law and facts were provided to support their position. *See Blanch v. Koons*, 2007 WL

15  1365324, at *2 (S.D.N.Y. May 9, 2007) (dismissing defendants' claim for attorneys' fees even

16  where summary judgment was granted in defendants' favor that use of plaintiff's photograph was

17  fair use as suit was not facially frivolous, plaintiff's motivation was reasonable and there was no

18  need to deter such suits).

19      Moreover, none of the three Complaints filed by Shloss – the original Complaint against

20  Defendants, the Amended Complaint against Defendants, or the Complaint against Stephen James

21  Joyce – ever identified what materials Shloss wanted to use or in what context she proposed to

22  use such materials. And, Shloss's Electronic Supplement, by her own admission, was incomplete

23  until the litigation was well underway. Defendants had no assurance as to what materials Shloss

24  intended to include in the final version of her Electronic Supplement prior to filing their Motion

25  to Dismiss. Only at that time, in Shloss's declaration in support of her opposition to the Motion

26  to Dismiss, did Shloss commit to the Court under penalty of perjury that she would not alter the

27  Electronic Supplement without leave from the Court. As noted in Shloss's motion, this "pledge"

28  did not occur until December 15, 2006 – six months after Shloss first filed this action and only

1    after Defendants filed their Motion to Dismiss. Until then, Defendants had no concrete way to

2    hold Shloss to the use of specific materials in a specific and limited manner. Further, because

3    Shloss changed the materials she sought to publish midway through this action, it was necessary

4    for Defendants to obtain certainty as to what materials Shloss would publish, how such materials

5    would be used, and that the materials would undergo no further changes.

6        In addition, Defendants' claims in the action cannot be considered unreasonable because

7    cases with claims involving novel or complex issues do not warrant a finding of objective

8    unreasonableness. *See Applied Innovations, Inc. v. Regents of the Univ. of Minn.*, 876 F.2d 626,

9    638 (8th Cir. 1989) (upholding denial of attorney's fees to prevailing plaintiff where the copyright

10   case involved novel or complex questions which the defendant litigated vigorously and in good

11   faith); *Bourne Co. v. Walt Disney Co.*, 1994 WL 263482, at *2 (S.D.N.Y. 1994) (denying plaintiff

12   attorney's fees where the copyright case involved unsettled questions of fact and law). Here, the

13   issues presented by Shloss, such as copyright misuse and whether *Ulysses* is in the public domain,

14   meet the very definition of novel and complex issues, and the defense of such claims cannot be

15   deemed unreasonable.

16       The only unreasonable arguments made in the action were made by Shloss. Defendants

17   are confident that each of Shloss's claims for declaratory judgment would have been won by

18   Defendants on summary judgment had Defendants wanted to continue to spend significant sums

19   on this litigation as such claims have neither legal nor factual support. This factor, thus, again

20   weighs against an award of attorneys' fees to Shloss.

21              **3.    No Improper Motivation Can Be Attributed to Defendants.**

22       Shloss's allegations of improper motivation are premised on an alleged attempt to protect

23   Joyce family privacy through misuse of the Joyce Copyrights, but <u>no finding of copyright misuse</u>

24   <u>was made in this action</u>. As noted in Defendants Reply Motion to Dismiss, Defendants have

25   asserted that a priority of the Estate is to protect the privacy of the Joyce family, but Defendants

26   have not used copyright interests for this purpose. The defense of the Joyce Copyrights is entirely

27   separate from Defendants' claims of privacy, and Shloss has not provided any evidence to the

28   contrary. Instead, Shloss claims that Defendants' "motive" in using the Joyce Copyrights to

1   protect family privacy is "quite plain" from Stephen Joyce's unwillingness to help and work with

2   Shloss on a book about his aunt, Lucia Joyce. [Shloss Motion, p. 17.]  However, no individual is

3   required to help another with a project with which they disagree, and copyright law does not force

4   one to do so.  *See Matthew Bender & Co., Inc. v. West Publ'g Co.*, 240 F.3d 116, 125 (2d. Cir.

5   2001) (noting "party's good faith refusal to cooperate with a suspected infringer prior to the filing

6   of suit is not a proper ground for the award of attorneys' fees to the prevailing party in the

7   subsequent suit").

8          The Defendants' true motivation in rejecting requests to use copyrighted material, as

9   repeatedly stated in letters from Stephen James Joyce, is to defend the integrity, spirit and letter of

10  James Joyce's works[7] – a valid use of one's copyrights and proper motivation for denying such

11  use.  *Perfect 10*, 2005 WL 2007932, at *5 (stating "absent bad faith, the Court cannot

12  punish…copyright holders…for trying to protect their copyrights").  Permission to use the Joyce

13  Copyrights is refused when "scholars" fail to preserve the integrity of James Joyce's works by

14  committing multiple errors and omissions when quoting from James Joyce's works.[8]  Copyright

15  owners hold an absolute right to license, and the Defendants therefore have every right to reject a

16  request to license certain copyrights, knowing that they will not be used within the integrity, spirit

17  and letter of the copyrighted works.  *Webcaster Alliance, Inc. v. Recording Indus. Ass'n of Am.,*

18  *Inc.*, 2004 U.S. Dist. LEXIS 11993, at *20-21 (N.D. Cal. 2004) (dismissing claim of copyright

19  misuse and noting that even if defendants refused to license their copyrights, the law gave them

20  an absolute right to do so).

21

22  _____
        [7]  *See, i.e.*, 3/31/96 Letter from Stephen Joyce to Shloss, Olson Decl., Ex. C, noting "What
23  we are doing, and what we will continue to do , is to protect what remains of the much abused
    and invaded Joyce family privacy, alongside defending the integrity of James Joyce the writer,
24  the spirit and letter of what he wrote."

        [8]  *See, i.e.*, 5/22/03 Letter from Stephen Joyce to Leon Friedman, Olson Decl., Ex. E,
25  stating "More often than not Ms. Shloss simply  does not know what she is doing and confuses
    one thing with another.  The following example will serve to illustrate what I mean.  I herewith
26  enclose copy of her letter of 16 April 1996 to me which mentions a visit she made to our home
    some years before during which in the civilized, normal course of events my wife served tea. Our
27  home at the time was <u>not</u> in Ivry but in the XVIth arrondissement of Paris...!?  I would suspect
    that in view of the type of person we are dealing with any book Ms. Shloss writes will be
28  sprinkled with this type as well as other mistakes."

1    In addition, there is nothing wrong with protecting family privacy, especially for an

2    individual who was never in the "public eye" until Shloss put her there.  Privacy is linked to

3    human decency, which was ignored when Shloss made unsubstantiated allegations in her book

4    involving the Joyce family and incest, sexually transmitted diseases, abortion and drug abuse.

5    [*See* Carol Loeb Shloss, *Lucia Joyce:  To Dance in the Wake* 71-72, 193, 257, 275-76, 336, 340,

6    429-31, 435, 443-44 (2003).]  Not offering assistance with a project on one's family member

7    safeguards family privacy without implicating any copyright interests or misusing any copyrights.

8    Shloss also ignores her own improper motivation in filing suit, which, given the little

9    difference between the Electronic Supplement and Shloss's Book, was clearly not filed to

10   "vindicate" Shloss's right to publish the Electronic Supplement.  [*See* Nelson Decl., Ex. B.]

11   Therefore, this factor weighs against a determination that Shloss should be awarded attorneys'

12   fees.

### 4.    Denying an Award of Attorneys' Fees to Shloss Furthers the Policy of the Copyright Act.

15   In favor of her argument that attorneys' fees would advance considerations of

16   compensation and deterrence, Shloss again asserts a litany of misuse allegations against

17   Defendants, <u>none</u> of which have been proven in this case.  Rather, the copyright misuse claims

18   that support this argument would have been dismissed on summary judgment.  The copyright

19   misuse claim was not rejected at the motion to dismiss stage because, as noted by Shloss, this

20   Court found that Shloss's claims could withstand a motion to dismiss because she "was allegedly

21   intimidated from using (1) non-copyrightable fact works such as medical records and (2) works to

22   which Defendants did not own or control copyrights, such as letters by third parties."  [Shloss

23   Motion, p. 20.]  While the Court had to take Shloss's allegations as true for the purpose of the

24   Motion to Dismiss, such unsupportable allegations cannot be relied on for the present motion, and

25   many of the allegations are simply not true.  *See Perfect 10*, 2005 WL 2007932, at *2 (noting

26   "[w]hen courts grant attorney fees, they have to support their decisions by analyzing <u>facts</u>....")

27   (emphasis added).

28

1    As to point number 1, Defendants never used the Joyce Copyrights to prevent Shloss from

2    using non-copyrightable fact works.  As noted by Stephen Joyce, "Turning to my Aunt Lucia's

3    Medical Records these should not only be protected by our so-called democratic societies ethics

4    and common decency but more especially by the Hypocratic [sic] Oaths of the Medical

5    Institutions in which she was treated for decades prior to her death in December 1982." [*See*

6    11/21/02 Letter from Stephen Joyce to Leon Friedman, Olson Decl., Ex. G.] Thus, Defendants

7    believed that such information should be off limits due to medical ethics and common decency,

8    not based on any copyrights Defendants held.  Even if Shloss could prove any intimidation as to

9    the medical records, which she cannot, the medical records are not part of the allegedly "cut"

10   materials on the Electronic Supplement, and they are therefore irrelevant.

11       Further, with regard to point 2, the only third party letters to which Defendants asserted

12   copyright interests were those that were clearly written on behalf of James Joyce.  Regarding

13   third party letters, Stephen Joyce wrote, "…I would again point out that in view of Nonno's eye

14   problems he often asked other people to write letters for him dictating/instructing people what he

15   wanted to say in the letter which the person would then write for him." [*See* 5/22/03 Letter from

16   Stephen Joyce to Leon Friedman, Olson Decl., Ex. E.] Thus, Defendants only claimed copyright

17   rights in those letters that "Mr. Léon or anybody else was clearly writing for, on behalf of James

18   Joyce as an amanuensis." [*Id.*] Based on the aforementioned facts, it is clear that Shloss's

19   copyright misuse claim would not have survived summary judgment, and Shloss's unproven

20   allegations cannot support an attorneys' fees claim.

21       Shloss's claims that this litigation has encouraged other scholars to make scholarly use of

22   the Joyce Copyrights similarly hold no water.  As noted in Defendants' Reply Motion to Dismiss,

23   in the last three years (2004-2006), over 300 works, including books, theses, dissertations, videos,

24   songs and other pieces, were published about James Joyce and/or his writings. [*See* Olson Decl.,

25   Ex. U, ¶ 3.] In addition, at least 4 biographies of James Joyce have been published in the last

26   3 years. [Nelson Decl., ¶ 3.] As to the hundreds of letters that have surfaced following the

27   publication of volumes of James Joyce's letters, Defendants have received no requests to publish

28

1   a compilation of letters in the last 30 years. [Nelson Decl., ¶ 4.] Thus, these assertions used to

2   support a furtherance of the policy of the Copyright Act are simply false or irrelevant.

3        In reality, it is Defendants' good faith and vigorous defense of the Joyce Copyrights in

4   this matter that further the purposes of the Copyright Act. *Perfect 10*, 2005 WL 2007932, at *5

5   (noting copyright owner's conduct met the objectives of the Copyright Act because copyright

6   owner was attempting to protect its copyrights, which is one of the objectives of the Copyright

7   Act). Therefore, all of the relevant factors noted by Shloss in her motion weigh against a finding

8   that Shloss should be awarded attorneys' fees in this action.

9   **D.    THE COURT SHOULD USE ITS DISCRETION AND DENY SHLOSS'S**
    **MOTION FOR ATTORNEYS' FEES.**
10

11       The decision to award attorneys' fees to the prevailing plaintiff or defendant pursuant to

12  the Copyright Act rests within the sound discretion of the court. *Fogerty*, 510 U.S. at 533. In

13  settling this matter by agreeing not to sue Shloss on the final version of the Electronic

14  Supplement, Defendants were doing exactly what this Court suggested they do – covenant not to

15  sue Shloss on the Electronic Supplement in the revised form if they did not intend to raise a

16  copyright infringement counterclaim. [*See* Transcript of Hearing on Motion to Dismiss, Nelson

17  Decl., Ex. A, 18:1-4, in which this Court states, "And it seems to me a simple solution to this, if

18  there is a desire to resolve the case, which I sense, and that is to negotiate such a covenant."]

19  Defendants also followed the Court's indication that such a covenant should include both the

20  printed and electronic form of the material. [*Id.* at 11:21-25, in which this Court states, "I don't

21  recall this from the background but was the covenant that was received one which would have

22  permitted the 2005 material to be incorporated in a published work that put the two things

23  together?"]

24       Defendants also request that the Court decline to award attorneys' fees to Shloss because

25  such a holding would create a regrettable incentive for plaintiffs to improperly file declaratory

26  judgment actions for copyright infringement, and the filing of such suits has already been made

27  easier by the Supreme Court's recent decision in *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct.

28  764 (2007). If a plaintiff may be awarded attorneys' fees when an action is settled for nuisance

1    value, there will likely be an increase in the number of unfounded copyright suits filed in this

2    jurisdiction. The avoidance of such suits is a sound policy reason for the Court to use its

3    discretion and deny any attorneys' fee award in this case.

4         Moreover, "a request for attorney's fees should not result in a second major litigation."

5    *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S.

6    598, 609 (2001). Here, a decision to award attorneys' fees to Shloss would require further

7    litigation and discovery of Shloss's underlying affirmative defenses to copyright infringement,

8    and Shloss represented to the Court that extensive discovery was still needed on the affirmative

9    defenses of copyright misuse and unclean hands. [Joint Case Management Statement, p. 4.] "[I]t

10   would be a significant drain on the Court's time to engage in what amounts to a ruling on the

11   merits in order to decide a fee request in a case that is already dismissed." *Bridgeport Music,*

12   *Inc. v. London Music, U.K.*, 345 F.Supp.2d 836, 842 (M.D. Tenn. 2004). This Court has never

13   addressed the merits of Shloss's declaratory judgment claims, and it would be a waste of judicial

14   resources to do so here.

15        Defendant also respectfully request that the Court use its discretion and deny the motion

16   for attorneys' fees because the Court has not retained jurisdiction over the attorneys' fees issue.

17   In the cases cited by Shloss, such as *Barrios*, the settlement agreement between the parties

18   provided that the issue of whether any party would be entitled to attorneys' fees and the amount

19   was expressly reserved for the Court to decide upon a party's motion. *Barrios*, 227 F.3d at 1133.

20   Similarly, in *Richard S.*, the parties stipulated that the court would retain jurisdiction to address

21   any unresolved issue of attorneys' fees and costs. *Richard S.*, 317 F.3d at 1087. The issue of

22   attorneys' fees is not addressed by the present Settlement Agreement, and therefore this Court has

23   not retained jurisdiction over the attorneys' fees issue.

24        In sum, Defendants have successfully defended against an action that accused them of

25   unclean hands and misusing copyrights, prevented Shloss's use of certain Joyce Copyrights from

26   being deemed "fair use," and averted a finding that *Ulysses* is in the public domain. After

27   expending significant sums to defend themselves and protect their copyright interests, there is no

28   justification for awarding Shloss attorneys' fees. To do so would be a perversion of the

1    Copyright Act and would discourage any copyright owner from settling claims against a

2    declaratory judgment plaintiff in good faith.  Defendants thus respectfully request that the Court

3    use its discretion and deny Shloss's motion for attorneys' fees and costs.

4            **E.**    **IN THE ALTERNATIVE, THE DISMISSAL OF THIS ACTION SHOULD BE VACATED.**

5

6         As an alternative to ruling on Shloss's motion for attorneys' fees, Defendants request the

7    Court vacate the dismissal entered in this action based on the Settlement Agreement.  According

8    to Federal Rule of Civil Procedure 60(b), "[o]n motion and upon such terms as are just, the court

9    may relieve a party or a party's legal representative from a final judgment, order, or proceeding

10    for…any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P.

11    § 60(b)(6).  Here, vacating the dismissal of the action is justified because Defendants understood

12    that all of Shloss's claims, including the claim made for attorneys' fees and costs, were being

13    dismissed as part of the settlement. *See, i.e., Barrios*, 227 F.3d at 1133 (noting prior judgment

14    entered by district court based on an executed settlement agreement was vacated because one

15    party would have been given an opportunity not contemplated by the parties during the settlement

16    negotiations).

17         For a settlement agreement to be valid and enforceable, there must be an agreement on the

18    material terms of the contract. *Callie v. Near*, 829 F.2d 888, 891 (9th Cir. 1987) ("The formation

19    of a settlement contract requires agreement on its material terms.").  A material term of the

20    Settlement Agreement was that the Actions would be dismissed with prejudice, and Shloss's

21    Actions against Defendants specifically included a request for attorneys' fees and costs as part of

22    the prayer for relief. [Olson Decl., Ex. 1 at Ex. P, ¶ 4.] As Shloss filed a motion for attorneys'

23    fees when Defendants believed any such claims had been relinquished, there was no meeting of

24    the minds between the parties as to a significant term of the settlement and a valid settlement

25    agreement was not formed between the parties. *See Stewart v. Prof'l Computer Ctrs., Inc.*, 148

26    F.3d 937, 940 (8th Cir. 1998) (vacating judgment where one party believed the settlement offer

27    included attorneys' fees and the other party interpreted the offer to permit her to seek attorneys'

28

1     fees following the settlement). Therefore, as an alternative to denying Shloss's motion for

2     attorneys' fees, Defendants respectfully request the dismissal entered by the Court be vacated.

3     **IV.    <u>CONCLUSION</u>**

4          Based on the foregoing, Defendants respectfully request the Court to deny Shloss's

5     Motion for Award of Attorneys' Fees and Costs, and declare Defendants to be the prevailing

6     parties.

7     Dated: May 14, 2007                Respectfully submitted,

8                                    Jones Day

9

10                                    By: _____ /s/ _____

11                                       Maria K. Nelson

12                                  Counsel for Defendants
                                      SEÁN SWEENEY AND THE ESTATE OF

13                                       JAMES JOYCE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28