# EXHIBIT E

Dockets.Justia.com

```
 7      CAROL LOEB SHLOSS,              )

                                        )

 8                      Plaintiff,      )

                                        )   No. C 06-03718
JW

 9              versus                  )

                                        )   January 31,
2007

10      SEAN SWEENEY, et al.,           )

                        Defendant.      )

11      _____)


12


13                  TRANSCRIPT OF PROCEEDINGS

                BEFORE THE HONORABLE JAMES WARE

14                UNITED STATES DISTRICT JUDGE


15


16      A-P-P-E-A-R-A-N-C-E-S:


17      For the Plaintiff:      Stanford Law School
Center

                                for Internet and Society

18                              By: ANTHONY T. FALZONE

                                    DAVID S. OLSON
```

19                                   Crown Quadrangle

                                     559 Nathan Abbott Way

20                                   Stanford, CA 94305-8610


21      For the Defendants:          Jones Day

                                     By: MARIA K. NELSON

22                                       ANNA E. RAIMER

                                     555 South Flower Street

23                                   5th Floor

                                     Los Angeles, CA 90071

24

        Court Reporter:             Georgina Galvan Colin

25                                   License No. 10723


1


                    GEORGINA GALVAN COLIN, CSR 10723


        1       San Jose, California               January 31,
2007


        2                           P-R-O-C-E-E-D-I-N-G-S

3          THE CLERK:  Calling case 06-03718, Carol

4       Loeb Shloss versus Sean Sweeney, et al, on for

5       defendant's motion to dismiss.  Fifteen minutes

6       each side.

7             Counsel, please step forward and state

8       your appearances.

9             MR. FALZONE:  Anthony Falzone for

10      Professor Carol Shloss.

11            MR. OLSON:  David Olson for Professor

12      Carol Shloss.

13            MS. NELSON:  Your Honor, Maria Nelson for

14      the estate of James Joyce.  With me is my associate

15      Anna Raimer, and the defendant Sean Sweeney.

16            MR. FALZONE:  Your Honor, I have with me

17      the plaintiff, Professor Carol Shloss.

18            THE COURT:  Good morning.  Good morning

19      all; welcome.

20            Very well, this is your motion,

21      Ms. Nelson, to dismiss.

22          MS. NELSON:  That is correct, your
Honor.

23          THE COURT:  Do you want to, you can

24      submit it on the papers or make an argument if
you

25      wish.


2

GEORGINA GALVAN COLIN, CSR 10723


1          MS. NELSON:  I'm happy to make an

2       argument, your Honor.

3          First, I would like to clarify a few

4       points.  The Estate, despite the fact that
Stephen

5       Joyce is not a party to the Estate, the Estate

6       certainly takes this proceeding very seriously.

7       And Mr. Joyce is not ignoring the proceeding. He

8       does consider these proceedings to be binding on

9       the Estate.  The Estate is not covenanted to sue
on

10      the materials that Ms. Shloss added to the
website

11      after the initial complaint was filed.  There are

12      good reasons for that.  There was considerable

13      material that was added months after the

14    proceedings were started, but that does not mean

15    that there is a complaint on those materials

16    waiting in the wings either from the Estate or
from

17    Stephen Joyce. There is not. Neither the Estate
nor

18    its trustees, either one of them, have any
present

19    intention of suing Ms. Shloss over those 2006

20    materials.

21    The Estate did covenant not to sue on
the

22    original materials that were presented to it in

23    2005.  That was actually a very practical
decision.

24    That doesn't mean that the Estate considers those

25    materials to be a fair use, it just means that
they

3

GEORGINA GALVAN COLIN, CSR 10723

1    don't consider them to be worth fighting over.
As

2    the declaration of Anna Raimer makes very clear,

3    the Estate's position is that the materials that

4    Shloss added to the website in 2005 are only
making

5       a very incremental difference over what was in
the

6       book.

7              THE COURT:  Now, you started in the

8       middle and I appreciate with all this paper it's

9       fair to start in the middle, but let me back up.

10             MS. NELSON:  Okay.

11             THE COURT:  Because I understand the

12      thrust of your argument, the Court should dismiss

13      because there is no case or controversy because
the

14      Estate or anyone who would speak on behalf of the

15      Estate is willing to release and give a covenant

16      not to sue to the plaintiff for the material
which

17      she plans to publish, is that a correct
statement?

18             MS. NELSON:  Only partially.

19             THE COURT:  All right.

20             MS. NELSON:  At this point, your Honor,

21      backing up, there was an original complaint and

22      then later on an amended complaint.

23             THE COURT:  So what difference does
that

24      make?

25             MS. NELSON:  The difference that that

4

GEORGINA GALVAN COLIN, CSR 10723

1       makes is that in 2005 materials, certain materials

2       were presented to the Estate that Ms. Shloss

3       represented she wanted to publish on a website.

4       Those where the basis of the original declaratory

5       judgment action that Ms. Shloss brought in June of

6       2006.  After Ms. Shloss brought that original

7       complaint she then, through her attorneys,

8       approached me and said that she wanted to add

9       substantial additional materials to that website.

10          The Estate indicated that they had no

11      problem with the original materials, the 2005

12      materials that Ms. Shloss presented to the Estate,

13      and were willing to covenant not to sue on those

14      materials, and that representation was made before

15      the amended complaint was filed.  Nevertheless, the

16      amended complaint was filed allegedly to cover the

17       additional materials that Ms. Shloss wanted to
add

18       after the complaint, after the original complaint

19       was filed.  So right now --

20              THE COURT:  Well, our rules permit,
rule

21       15 permits her to amend her complaint without

22       leave.  And your motion is directed, or has to be

23       directed to the operative pleading, which is the

24       amended complaint.

25              MS. NELSON:  That's correct.


5


                    GEORGINA GALVAN COLIN, CSR 10723



1               THE COURT:  So what I have to consider
is

2        whether or not your motion is well made in view
of

3        what is alleged in the amended complaint.  And
your

4        argument, if it is to hold force, has to be there

5        is no case or controversy because the defendants

6        are willing to give a release and a covenant not
to

7        sue on all of the materials that are covered by
the

8        amended complaint, isn't that true?

9            MS. NELSON:  The argument is that the,

10       there is no case or controversy over the materials

11       that were added to the lawsuit after the original

12       complaint was filed, there could not be any

13       reasonable apprehension of lawsuit because those

14       materials were never presented to the Estate in the

15       first place before the lawsuit, and any kind of

16       reasonable apprehension would have been diminished

17       by the Estate's willingness to covenant not to sue

18       on the additional materials.

19            THE COURT:  Well, see the problem that I

20       have is that I've got to read the amended

21       complaint, and the amended complaint goes all the

22       way back to the research and the effort to put the

23       material that we're now talking about in a website,

24       perhaps in a published book in the first place.

25       And that the threats that are alleged, I don't know

6

GEORGINA GALVAN COLIN, CSR 10723

1       if any of this is true but the threats that are

2       alleged caused this material to be altered first
by

3       the publisher being unwilling to allow it to be

4       published and then secondly by being put on a

5       restricted website.  All of that was done in

6       relationship to what is alleged to be threats to

7       assert copyright infringement and privacy claims

8       with respect to that material.

9               And so what I have to judge is whether
or

10      not there is a case or controversy over that
entire

11      operation because it could be that the
plaintiff's

12      real desire here is to publish the material in
the

13      original form in its unabridged fashion in a book

14      rather than to put it in two different places and

15      trying to get people to put them together, and
that

16      the question is is there a case or controversy
with

17      respect to her belief that if she had done that
she

18    would have been subject to a claim.  That's the

19    case that I believe I have before me.  Now you have

20    to correct me if you think I misstated that.

21         MS. NELSON:  Well, we do not believe that

22    there is any case or controversy because whatever

23    case or controversy there would have been was

24    mooted by the covenant not to sue on the materials

25    that were presented to the Estate in 2005.


7


GEORGINA GALVAN COLIN, CSR 10723


1         THE COURT:  But even as you say that to

2    me, what you're saying is it was not a full

3    covenant, I don't understand how -- what you're

4    saying is that part of the controversy might be

5    gone but the full controversy has not, and therefor

6    the Court should not take jurisdiction over the

7    part that, over which there is no controversy.  But

8    it's all one thing to me.  I don't know how I could

9    compartmentalize the case that way.  There is no

10          effective way to do it.

11              MS. NELSON:  Your Honor, there has to be

12          an active case or controversy during the entire

13          period from the beginning of the lawsuit in 2006.

14          There was no case or controversy.

15              THE COURT:  Well, what's your case

16          authority for that?  You see, that's the

17          proposition I haven't quite gotten a handle of.  In

18          other words, by allowing an amended complaint it

19          seems to me that what you're saying is that by the

20          time of the amended complaint a case or controversy

21          has arisen, that I can't consider anything that was

22          released prior to that.  What is your authority for

23          that?

24              It seems to me that the reason amended

25          complaints are allowed is to allow people to bring

8

GEORGINA GALVAN COLIN, CSR 10723

1       to the Court their full case, so that the whole

2       thing can be adjudicated.  And it's, a plaintiff

3       can take a one dollar claim and turn it into a one

4       billion dollar claim in that amendment without

5       asking anybody's permission.  And I've got to judge

6       your motion based upon whether there is a belief of

7       threat of copyright, based upon the allegations of

8       the amended complaint.  I can't ignore it.

9              MS. NELSON:  Your Honor, that was covered

10      in our papers, and if you will give me a moment I

11      will look at the actual legal authority for that.

12      But certainly the Maryland Casualty case says that

13      there must be an immediate threat of harm, and

14      certainly when the Estate covenanted not to sue on

15      the original materials there was no immediate

16      threat of harm.

17             THE COURT:  Why -- while you're looking

18      for your authority, maybe I'll hear from your

19      opponent in the meantime.

20             MR. FALZONE:  Thank you, your Honor.  I

21          think the Court has already put its finger on what

22          I think is the critical issue here, both as to the

23          website and the controversy as a whole.  And I have

24          a demonstrative that I think captures that.

25                    The problem here is that the 2005 website

9

GEORGINA GALVAN COLIN, CSR 10723

1          contains part of the controversy and those are the

2          cuts the publisher made.  The 2006 additions add to

3          that material that Professor Shloss herself cut

4          from the manuscript out of fear of litigation and

5          due to threat of suit.  And your Honor is correct,

6          there is no doubt that the issue framed by the

7          amended complaint is the 2006 website.  And the

8          fact of the matter is the covenant simply does not

9          cover that controversy.  The covenant covers only

10          the 2005 website, and doesn't speak as to the 2006

11      website at all.

12              Now, there is also no doubt that the

13      material that was added in 2006 relates directly
to

14      the threats the Estate made here.  In the

15      correspondence the trustee of the Estate, Stephen

16      James Joyce, told Professor Shloss and her

17      publisher that they may not use anything that
James

18      Joyce ever wrote, or anything Lucia Joyce ever

19      wrote, drew, painted or recorded, and that's a

20      quote.  And if they did there would be

21      repercussions; the Estate has never lost in a

22      lawsuit; their legal record is crystal clear;
they

23      put their money where their mouth is.  And indeed

24      they have in four other litigations.  So the
nexus

25      between the two is inescapable.  They are both

10

GEORGINA GALVAN COLIN, CSR 10723

1      deletions from the original manuscript as your

2      Honor has already explained, and the 2006
additions

3          relate directly to the threats the Estate has made

4          here.  And whether you look at the 2005 website or

5          the expanded 2006 website in all events there is a

6          clear case or controversy here.

7                    THE COURT:  Well, let me see if I can

8          probe a little bit on the plaintiff's side.

9                    Do you acknowledge that what you received

10         with respect to the 2005 version of the website

11         satisfied the plaintiff that if that was the

12         material that was put in the public domain that

13         there would be no copyright or privacy claim?

14                    MR. FALZONE:  I believe the covenant not

15         to sue that the Estate has issued binds it and

16         forever prevents it from bringing an infringement

17         action based upon content of the 2005 website, yes.

18         And that would moot the controversy as to that

19         portion of the case that is before your Honor, but

20         certainly not the whole thing.

21                    THE COURT:  And was the, I don't recall

22      this from the background but was the covenant that

23      was received one which would have permitted the

24      2005 material to be incorporated in a published

25      work that put the two things together?

11

GEORGINA GALVAN COLIN, CSR 10723

1               MR. FALZONE:  In other words, you're

2       asking whether the covenant would apply to a future

3       book that incorporated the material?

4               THE COURT:  Yes.

5               MR. FALZONE:  In my view, it's unclear.

6       I would argue it would, but I think it's unclear on

7       the face of the covenant.

8               THE COURT:  It didn't say, it didn't say

9       the website printed versions, derivative works,

10      whatever?  I mean, I don't know that I have seen

11      the covenant itself.  I might have.  I just don't

12      recall.

13              MR. FALZONE:  Well, the covenant, quote

14        unquote, is not a separate document.  It's
actually

15        in the declaration of Mr. Sweeney.  I believe
it's

16        paragraph five or six.  And I have it here if
your

17        Honor --

18                THE COURT:  But what do we mean by

19        covenant; there was no contract?

20                MR. FALZONE:  No.  It was a unilateral

21        statement by Mr. Sweeney, the trustee, that the

22        Estate would not sue on the 2005 website.

23                THE COURT:  Are you satisfied that
that's

24        sufficient?

25                MR. FALZONE:  I worry that it's not in

12

                    GEORGINA GALVAN COLIN, CSR 10723

1        fact, your Honor.  And I think that in order do
it,

2        in order to properly do away with this case we

3        would need two things; we would need a covenant

4        that clearly and unequivocally applies to the

5        controversy framed by the amended complaint,
issued

6          in such a way that it is clearly binding on the

7          Estate in the future.  We have neither of those

8          things here.

9                    THE COURT:  Counsel, did you find your

10         reference that you wanted me to consider?

11                   MS. NELSON:  Yes, your Honor.  It's

12         Preiser v. Newkirk, 422 U.S. 395 at 410.  It's

13         discussed at page nine of our opening papers.

14                   THE COURT:  And you want to highlight
for

15         me what -- your opening papers?

16                   MS. NELSON:  Yes.  That's our motion to

17         strike.  I'm sorry, excuse me, our motion to

18         dismiss.  Page nine.

19                   That case stands for the fact that an

20         actual controversy must exist at the time the

21         complaint is filed and be in existence at all

22         stages of review by the Court.

23                   And in this instance, your Honor, there

24         has not been a controversy at all stages of
review

25         by this Court.  Any controversy that there might


13


                    GEORGINA GALVAN COLIN, CSR 10723

1      arguably have been, and of course we do not believe

2      there was a controversy in the first place, but in

3      any event, any controversy there arguably would

4      have been would have been mooted by the clear,

5      clear and clearly expressed intention of the Estate

6      that it had no intention to sue over those 2005

7      website materials.

8              THE COURT:  And that was given before the

9      complaint, the original complaint?

10             MS. NELSON:  That was given -- the, the

11     covenant not to sue was given before the amended

12     complaint.

13             THE COURT:  But not before the original

14     complaint?

15             MS. NELSON:  Not before the original

16     complaint.

17             THE COURT:  But at the time of the

18     original complaint the plaintiff had reason to have

19     apprehension of being sued.

20          MS. NELSON:  No, your Honor, it did
not.

21      And the reason for that is, again, we don't
believe

22      that any of the correspondence by Stephen Joyce

23      could be considered threats.  And, again, this is

24      covered thoroughly in our papers, but in fact we

25      don't believe that you can make threats over


14

GEORGINA GALVAN COLIN, CSR 10723


1      general bodies of information.  You can't divorce
a

2      fair use analysis from the specific materials --

3          THE COURT:  I misasked my question.

4          MS. NELSON:  Okay.

5          THE COURT:  At the time of the
complaint,

6      the plaintiff could not rely upon the covenant
not

7      to sue as a basis for any lack of apprehension,

8      because it hadn't been given?

9          MS. NELSON:  That is correct, your
Honor.

10          THE COURT:  So after that complaint,
when

11        that complaint was filed, at least as far as the

12        covenant is concerned, an actual controversy, if I

13        take everything in the complaint as true, did exist

14        at that time?

15              MS. NELSON:  Again, your Honor, we do not

16        believe that there was an actual controversy at

17        that time.  The Irish lawyers clearly --

18              THE COURT:  I said as to the covenant is

19        concerned.  I realize you don't believe.

20              MS. NELSON:  At least as the covenant is

21        concerned.

22              THE COURT:  You know, I read through the

23        complaint and this is a point in the case where I

24        have to accept the factual allegations as true, and

25        I do acknowledge that there are lots of allegations

15

GEORGINA GALVAN COLIN, CSR 10723

1        in this complaint which are upon information and

2          belief, but that's a permissible way to plead.
And

3          the statement is that with respect to a request

4          whether or not he would assist, defendant didn't

5          know, he specifically prohibited the plaintiff
from

6          using any letters, papers by or from Lucia Joyce,

7          and the allegation is notwithstanding he was not

8          legally entitled under the circumstances to
prevent

9          Shloss from making use of those writings.

10                There was reference, at least according

11         to the complaint, on page ten, line two,
referring

12         to recent copyright litigation that the Estate
had

13         engaged in.  So there is an implicit use of

14         copyright as a basis for the objection.  The next

15         day, on November 5, there was a letter written

16         claiming that the writer was the sole beneficial

17         owner of all James Joyce's rights and that he
runs

18         the Estate jointly with the trustee, claiming
that

19         he's the sole owner of the rights to Lucia
Joyce's

20         works; didn't have permission to use letters

21      written by various people.

22              It just seems to me that the allegation

23      is that there were public and private statements

24      asserting their ownership of copyrights entitling

25      him to protect and enforce these rights.  It seems


16

GEORGINA GALVAN COLIN, CSR 10723


1       to me that if your argument is that if these

2       allegations are true, it does not satisfy the

3       standard of reasonable apprehension of suit, I

4       disagree with you.  The stronger argument is the

5       one that you are making, that somehow the Estate

6       communicated that it had changed its position and

7       that now the author could proceed with publication

8       without fear of litigation.  And although that

9       might have happened in a conditional way, it didn't

10      happen sufficiently to satisfy the plaintiff in so

11      far as the allegations of the complaint are

12      concerned.

13              If they are true, she remained in fear

14      that she had to walk a very thin line because of

15      these copyright issues and could not freely publish

16      the result of her research.  And when the limited

17      release was offered she then put together what I

18      thought, from the allegations, were materials she

19      already had.  This wasn't something new that she

20      went out to gather.  It was simply expanding the

21      materials that were online to include materials

22      which she had self-censored out of fear.  And then

23      when that material was presented there wasn't then

24      a covenant given saying okay, that's all you got,

25      then you can go ahead.


17

GEORGINA GALVAN COLIN, CSR 10723


1       And it seems to me a simple solution to

2       this, if there is a desire to resolve the case,

3       which I sense, and that is to negotiate such a

4       covenant.  But if you are unwilling to give it,

5       that creates a controversy.

6       MS. NELSON:  Your Honor, certainly

7       negotiating a covenant is something that the Estate

8       has considered.  And you know, quite frankly,

9       having a substantial amount of new materials dumped

10      into this lawsuit after the Estate had very clearly

11      indicated it had absolutely no interest in

12      litigation, it doesn't seem that the Estate should

13      have to give that covenant.  That doesn't mean it

14      won't.

15              THE COURT:  Oh, I'm not enforcing it.

16      All I'm saying is this is a motion to dismiss the

17      case, and if you want to, if there is no, you don't

18      desire litigation over this, there are ways to

19      resolve it short of getting the Court involved.  I

20      do have some concerns because of the mixture of

21      copyright and privacy issues that I haven't quite

22      sorted out but I figure that will happen in the

23      course of litigation.  And so it is my

24      predisposition, and nothing in this argument has

25      changed it, to deny the motion to dismiss for lack

18

GEORGINA GALVAN COLIN, CSR 10723

1    of subject matter jurisdiction on the grounds that

2    there's no case or controversy.

3    There may be circumstances under which

4    after you get involved might raise affirmative

5    defenses, and one of the ways that I will know

6    whether or not there is a case or controversy is

7    whether or not in your response you file a counter

8    claim for copyright infringement with respect to

9    the site.  If you don't, that might help me to say

10    somebody ought to move for summary judgment.

11    MS. NELSON:  Understood, your Honor.  And

12    just a couple of points, we would appeal to your

13    Honor's discretion also to dismiss this case.  This

14    is a case, as you can see from Shloss's declaration

15    as of February 6, 2003, Mr. Lessig was already

16    involved, they were already considering a

17    declaratory judgment action, and we would submit

18      that this is a case that never needed to be
filed.

19      That this is something that Mr. Lessig and

20      Ms. Shloss have deliberately sought.   And so it

21      really is not an appropriate case to be before
this

22      court, which we have been telling the other side

23      all along.

24              THE COURT:  Well, I don't, I would not

25      exercise my discretion in response to that


19


                  GEORGINA GALVAN COLIN, CSR 10723



1      statement.  I have to accept the allegations of
the

2      complaint as true.  And it sounds to me like what
I

3      have before me is a scholar who started out doing

4      the work and only became advised by lawyers after

5      the work got to be controversial, and that's a
wise

6      thing to do.  There is no criticism that I should

7      issue against the lawyers or Dr. Shloss with

8      respect to how they conducted themselves, nor of

9      the Estate quite frankly.  If there is a belief

10      that this material does indeed infringe on

11      copyright issues, it's right to have asserted
that,

12      to have put the case properly before some neutral

13      person to get that resolved.  And so as far as
I'm

14      concerned everybody is in the right place right

15      now.

16              MS. NELSON:  Your Honor, we would

17      certainly direct your attention to the Estate's

18      motion to strike the various affirmative
defenses,

19      in particular copyright misuse, and the 1922

20      Ulysses status as being in the public domain.  It

21      is the Estate's position and firm belief that
this

22      case is really not about the website at all, but
it

23      is really a pretext to get discovery, broad

24      discovery against the Estate and a bunch, in

25      actions that the Estate, that quite frankly

20

GEORGINA GALVAN COLIN, CSR 10723

1       Professor Shloss does not approve of.  And that

2        certainly would very much complicate the issues
in

3        the case.  And do not go to the very specifics of

4        what the actual controversy may be, which is the

5        status of the materials on the website as they
are

6        used.

7                THE COURT:  Thank you for raising that,

8        because I had a concern about that.  Let me speak

9        with your opponent about that.

10               Counsel, if the plaintiff here were a

11       defendant in the lawsuit where the plaintiff

12       alleged an infringement of a copyright and the

13       plaintiff was alleging infringement didn't have a

14       copyright then an affirmative defense of misuse
of

15       the copyright would be appropriate.  What I have
is

16       a backwards action.  I have someone who's
actually

17       been threatened with a violation of copyright

18       filing a lawsuit as a declaratory judgment.

19               And I have, I kind of, we had a very

20       lively debate in chambers about this because it

21       seems to me that the copyright misuse issue can

22      only be raised if indeed there is an allegation
of

23      violation of copyright and an allegation of

24      violation of copyright is over materials that are

25      not properly protected by a copyright.  But in
this


21

GEORGINA GALVAN COLIN, CSR 10723


1      case I have a mixture of claims, of privacy
claims,

2      as well as copyright claims, and it's hard for me

3      at this stage to figure out whether or not the

4      allegation you shouldn't do this or you can't do

5      this is based on privacy grounds, which may or
may

6      not be legitimate, as opposed to copyright
grounds.

7              And so your opponent's comments did
speak

8      to that concern, namely this is sort of like

9      Dr. Shloss saying I'm going to publish this work,

10     you're going to say it's protected by a
copyright.

11     They haven't quite said that yet, but that's what

12     you're going to say, and I'd like a declaration
by

13       the Court now that if you say that that's not
true,

14       and it's sort of like I'm ahead of the game

15       already.  It seems to me that declaratory
judgment

16       actions do invite that kind of anticipation of a

17       claim, but until a claim is made, I'm not in the

18       position to declare it.

19            So what I hear is an application to

20       strike the copyright misuse allegations until an

21       assertion of copyright has been made against

22       materials that are protected and then it would be

23       appropriate to have a claim of copyright misuse,

24       but if it's in that early it's as though someone

25       has done something that they really haven't done.


22

GEORGINA GALVAN COLIN, CSR 10723


1       There is no controversy over that, because
they've

2       really not claimed copyright as to any materials

3       that are not copyrighted.  What's your response
to

4       that?

```
5              MR. FALZONE:  Well, let me respond to

6       that in several ways.  First of all, there is no

7       doubt that it is proper to plead copy, the

8       affirmative defense of copyright misuse in the

9       context of a complaint for declaratory judgment.

10      The Practice Management case in the Ninth Circuit

11      makes that clear, as does the Open Source Yoga

12      case.  Both those cases involve exactly that

13      posture.

14              Now your Honor is absolutely right,

15      copyright misuse is a defense to an infringement

16      claim.  But your Honor is also right in the

17      declaratory relief context the plaintiff is in
fact

18      permitted to plead the affirmative defenses to
the

19      infringement allegation that hangs out there and

20      needs to be clear.  That's exactly why it's
proper

21      to plead a fair use defense, which is also an

22      affirmative defense to a copyright infringement

23      claim, and it's likewise proper to plead
copyright

24      misuse.

25              Now copyright misuse applies not just
to
```

23

GEORGINA GALVAN COLIN, CSR 10723

1        a situation where a plaintiff doesn't have any

2        copyrights but a situation where a plaintiff has

3        copyrights and uses them in a way to extend the

4        protection in a manner that is contrary to the

5        public policy of copyright.

6                THE COURT:  Let me try this.  I hear

7        that, but an affirmative defense doesn't get you

8        any money.  Claiming copyright misuse sounds to
me

9        like the basis of a damages action.

10               MR. FALZONE:  I believe the way we
plead

11       it is for injunctive and declaratory relief.  To
be

12       honest with you, I don't recall whether we asked

13       for damages on that claim, but I don't believe we

14       do.

15               THE COURT:  All right.  So what you're

16       saying is leave it in because all that it is is

17       just a part and parcel to our effort to just get
a

18       declaration, but it sounds to me like it's

19          conditional.  If they claim copyright ultimately
as

20          to the materials that are not then you should

21          declare that they're not, and that's the part
that

22          I'm not comfortable with because at this point
they

23          could simply admit everything and I would be in a

24          position of having to declare something that no
one

25          has actually claimed.


24


                    GEORGINA GALVAN COLIN, CSR 10723



1                    MR. FALZONE:  Well, let me put it this

2          way, I think the request to strike the copyright

3          misuse defense is premature precisely because we

4          don't know if they're going to plead infringement

5          in their respect.  I think at this point the very

6          reason we're here properly on a declaratory

7          judgement action is because the threats and other

8          conduct here create a clear case or controversy
on

9          the infringement issue, and so it's entirely
proper

10          to plead any affirmative defense to that

11          infringement claim.

12                    Now, I agree with your Honor, if it
turns

13          out that the Estate comes back in its responsive

14          pleading and decides not to allege any copyright

15          infringement against Professor Shloss, there may
be

16          an occasion to then revisit the propriety of the

17          copyright misuse claim.  But right now Practice

18          Management and Open Source Yoga teaches us rather

19          that it is entirely proper to have the claim in
the

20          case right now.  And none of the grounds that
would

21          ordinarily apply to a motion to strike apply
here.

22          That's reserved for situations where a claim

23          clearly fails on the face of the complaint, sua

24          sovereign res judicata bars the action.  That's
not

25          the case here.


25


                    GEORGINA GALVAN COLIN, CSR 10723

1          What we have is perhaps a difficult
legal

2        issue, and maybe it remains unclear whether the

3        Estate will follow through and plead
infringement,

4        but the very reason we're here in a declaratory

5        judgment action is to dispel the threat of the

6        infringement claim that's been implied.  And so
it

7        is proper to plead any affirmative defense to
that

8        infringement claim at this point.

9              THE COURT:  Very well.  Well, I'll take

10       that under submission.  As I said, it was the

11       subject of some controversy as I was preparing
for

12       today's argument.

13             There was one other part that you asked

14       to strike, and I can't recall what that was.

15             MS. NELSON:  Yes.  The 1922 Ulysses

16       status.  But I do actually, your Honor, have a

17       couple of comments on the misuse.

18             THE COURT:  I'll come back to you.

19             What do you want to say with respect to

20       that?

21             MR. FALZONE:  As to the copyright
status

22      of Ulysses, there is no doubt that that allegation

23      is properly before the Court.  Professor Schloss

24      quotes from Ulysses on her website.  If Ulysses is

25      in a public domain there could be no infringement.

26

GEORGINA GALVAN COLIN, CSR 10723

1      So that is clearly relevant to this case.  There is

2      no grounds to strike that allegation.

3                      THE COURT:  Was there a threat that her

4      work infringed the copyright in Ulysses?

5                      MR. FALZONE:  In the correspondence?

6                      THE COURT:  Yes.

7                      MR. FALZONE:  Yeah, absolutely.  The

8      correspondence is clear that she has no permission

9      to use anything that James Joyce ever wrote.  And,

10      in fact, the correspondence literally says

11      everything he ever wrote, painted, drew or

12      recorded, so there's no doubt that that falls

13          squarely within the threats the Estate issued.

14                    THE COURT:  Very well.

15                    MR. FALZONE:  I do need to address two

16          other things to clarify the record.

17                    THE COURT:  What happened to my lights?

18          I've gone overtime so they stopped using them.

19                    What happens is I use this -- I built

20          this at home in my garage -- to control the

21          lawyers, because I lose track of time.  And, but
go

22          ahead.  Finish.

23                    MR. FALZONE:  This will be very brief.

24                    I have to correct what I heard to be a

25          substantial misstatement.  I heard Ms. Nelson


27


                    GEORGINA GALVAN COLIN, CSR 10723



1          suggest to your Honor that the covenant not to
sue

2          was issued to us before the amended complaint was

3          filed.  That is false.  The amended complaint was

4          filed in October of 2006.  We received the
covenant

5          in conjunction with the Estate's motion to
dismiss,

6       which was filed in November of 2006.  So the

7       covenant was not issued to us prior to the amended

8       complaint.  It was issued after.

9           THE COURT:  Well, actually, I was

10      inquiring whether it was issued prior to the

11      original complaint because I thought the thrust of

12      Ms. Nelson's argument was that that affected the

13      validity of the case as it was originally brought,

14      and affects the case as it continues to be

15      prosecuted.  But thank you for correcting that.

16           MR. FALZONE:  Well, perhaps I

17      misunderstood what she said.  And if I did I

18      apologize.

19           One either thing I do need to correct for

20      the record.  We've been talking a bit about the

21      reasonable apprehension test and I do just want to

22      point out for the record that the Supreme Court in

23      its recent decision in MedImmune versus Genentech

24      has now stated that the reasonable apprehension

25      test is too stringent here, so the test has been

28

GEORGINA GALVAN COLIN, CSR 10723


1    relaxed.  Now, I submit that we meet either test.

2    We meet the reasonable apprehension test; we meet

3    the MedImmune test.  But I do just want to note

4    that for the record.

5              THE COURT:  Well, we had another lively

6    debate about that, because it seems to me that
what

7    has happened is a lot of a patent context as I'm

8    coming to understand is being brought into the

9    copyright field and the test I will try and

10   articulate in my order is the one that the Court

11   adopts.  And at this point I have not found that

12   there is any lack of allegations that are true to

13   meet any standard for apprehension of suit

14   sufficient to create a case or controversy.

15             Ms. Nelson, you want to have a final

16   word?

17             MS. NELSON:  Yes, your Honor.

18             First of all, the covenant not to sue,
it

19   is in my declaration that we had given an oral

20        indication to Mr. Falzone before the amended

21        complaint was filed.  So, right, there is nothing

22        written but certainly they did have that

23        indication.  Also to correct, there was no threat

24        against Ulysses or anything that James Joyce

25        himself ever wrote.  The threats, if there were

29

GEORGINA GALVAN COLIN, CSR 10723

1        such, were directed specifically to any

2        Lucia-related materials.  So certainly there were

3        no threats as to the 1922 Ulysses materials that

4        Ms. Shloss now seeks to put on her website, or

5        incidently to the Finnegans Wake noteman book

6        material that Ms. Shloss now seeks to put on her

7        website.

8               THE COURT:  Has there been any judicial

9        declaration with respect to whether or not the

10       Uylsses work is in the public domain?

11              MS. NELSON:  No, your Honor, there has

12       been none.  And, in fact, that in itself would be

13       an enormous undertaking to make that decision

14      because there are numerous issues of law, in
fact,

15      that would have to be decided.  And so, you know,

16      that in itself would be a full blown trial.

17          THE COURT:  And that's why you would
wish

18      it stricken from this case?

19          MS. NELSON:  Which is why we would wish

20      it stricken from this case.

21          And then with regard to the copyright

22      misuse issue, I did want to point out that even

23      taking the pleadings on their face, there is no

24      copyright misuse allegation that is viable there.

25      There is no remedy because of course their

30

GEORGINA GALVAN COLIN, CSR 10723

1      copyright misuse only lasts for as long as the

2      alleged misuse is in existence, and the most
recent

3      allegation is regarding actions that were
allegedly

4      taken by the Estate back in 2002.  And certainly

5      there is no allegation that rises to the level of

6      any recognized copyright misuse in any circuit,

7        Ninth Circuit or otherwise.

8              THE COURT:  Well, that might be more

9        appropriate for summary judgement but I have to

10       take the allegations of the complaint here as
true.

11       And the allegations are that the claim of
copyright

12       was being asserted against materials over which

13       there was no copyright protection.  Now, if
you're

14       correct, this is noticed pleading, I'm not sure

15       which works were being asserted and which were
not,

16       and so some of that needs to be done between the

17       parties to try and figure out precisely what was

18       being referred to and then perhaps later you
could

19       bring the matter back to the Court.

20             I appreciate the argument by both
sides.

21       The matter is now under submission.

22             MS. NELSON:  Thank you, your Honor.

23             THE COURT:  Just a moment, Counsel.

24             I'm reminded that you all submitted to

25       the Court a schedule with respect to events,

31

GEORGINA GALVAN COLIN, CSR 10723


1    anticipating that the case would proceed, and

2    ordinarily we would sit down and have a
conference

3    about that.  And what we've determined is we'll

4    decide the motion and then take the dates that
you

5    have given us and suggest a schedule for the next

6    conference in the case.

7          What we usually do is give you
deadlines

8    for completing your discovery and other matters,

9    and your schedule will work.  We may have to move

10   the dates, and so we'll address that in a

11   scheduling order following the order with respect

12   to the motions.

13          MS. NELSON:  Thank you, your Honor.

14          MR. FALZONE:  Thank you, your Honor.

15          (Whereupon, proceeding was concluded.)

16                  --oOo--

17

18

19

20

21

22

23

24

25

32

GEORGINA GALVAN COLIN, CSR 10723

1               CERTIFICATE OF REPORTER

2

3

4               I, Georgina Galvan Colin, Court Reporter

5       for the United States District Court for the

6       Northern District of California, 280 South First

7       Street, San Jose, California, do hereby certify:

8               That the foregoing transcript is a full,

9       true and correct transcript of the proceeding had

10      in Carol Loeb Shloss vs Sean Sweeney, et al., Case

11      Number C-06-03718 JW, dated January 31, 2007, that

12      I reported the same in stenotype to the best of
my

13      ability, and thereafter had the same transcribed
by

14      computer-aided transcription as herein appears.

15

16

17      Dated:

18

19                              (Certified hard copy to follow)

20      _____

        GEORGINA GALVAN COLIN, CSR
21      License Number 10723

22

23

24

25


33

                    GEORGINA GALVAN COLIN, CSR 10723

!SIG:45e4964c82921890649246!