# EXHIBIT A

Dockets.Justia.com

1  Lawrence Lessig
   Anthony T. Falzone (SBN 190845)
2  David S. Olson (SBN 231675)
   STANFORD LAW SCHOOL CENTER FOR
3  INTERNET AND SOCIETY
   559 Nathan Abbott Way
4  Stanford, California  94305-8610
   Telephone:  (650) 724-0517
5  Facsimile:  (650) 723-4426
   E-mail:      falzone@stanford.edu

6
   Mark A. Lemley (SBN 155830)
7  Matthew M. Werdegar (SBN 200470)
   Dorothy McLaughlin (SBN 229453)
8  KEKER & VAN NEST LLP
   710 Sansome Street
9  San Francisco, California  94111
   Telephone:  (415) 391-5400
10 Facsimile:  (415) 397-7188
   E-mail:      mwerdegar@kvn.com

11 Bernard A. Burk (SBN 118083)
   Robert Spoo (*pro hac vice*)
12 HOWARD RICE NEMEROVSKI CANADY
   FALK & RABKIN, P.C.
13 Three Embarcadero Center, 7th Floor
   San Francisco, California  94111-4024
14 Telephone: (415) 434-1600
   Facsimile:  (415) 217-5910
15 E-mail:      bburk@howardrice.com

16 Attorneys for Plaintiff

17               UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19                    SAN JOSE DIVISION

20

21 CAROL LOEB SHLOSS,                    CASE NO. CV 06-3718 (JW) (HRL)

22          Plaintiff,
                                         **NOTICE OF MOTION AND MOTION**
23       v.                              **FOR AWARD OF ATTORNEYS' FEES**
                                         **AND COSTS; MEMORANDUM OF**
24                                       **POINTS AND AUTHORITIES IN**
                                         **SUPPORT**
25 SEÁN SWEENEY, in his capacity as trustee of
   the Estate of James Joyce, and THE ESTATE OF   Date:      May 21, 2007
26 JAMES JOYCE,                          Time:      9:00 a.m.
                                         Judge:     Hon. James Ware
27          Defendants.

28

W03 402600523/1382189/v1

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

# TABLE OF CONTENTS

I.  INTRODUCTION .......................................................................................1

II. BACKGROUND .........................................................................................3

    A.  The Estate's Fifteen-Year Campaign Of Obstruction, Threats
And Intimidation Against Professor Shloss And Her Publisher .......................3

    B.  The Estate's History of Threats Against Joyce Scholars ...................................5

    C.  The Electronic Supplement And The Initiation Of This Lawsuit.......................6

    D.  The Estate's Motion To Dismiss.........................................................................7

    E.  Settlement ............................................................................................................8

    F.  Dismissal .............................................................................................................9

II. ARGUMENT ...............................................................................................9

    A.  Shloss is Entitled to Both Costs and Attorney's Fees Under § 505 of the
Copyright Act......................................................................................................9

    B.  Shloss Is Eligible for Fees Because She Meets Both Prongs of the
"Prevailing Party" Test .....................................................................................10

        1.  Shloss is the "Prevailing Party" Because the Settlement Agreement
Affected a Material Alteration in the Parties' Legal Relationship .......10

        2.  Shloss is the "Prevailing Party" Because the Settlement Agreement Is
Court Enforceable ................................................................................11

    C.  The Court Should Award Fees To Shloss Because A Fee Award
Substantially Furthers The Policy Of The Copyright Act ................................12

        1.  Shloss's Complete Success Heavily Favors Awarding
Shloss's Attorney's Fees.......................................................................14

        2.  Defendants' Unreasonable or Frivolous Arguments Heavily Favor
Awarding Shloss Attorney's Fees.........................................................14

        3.  Defendants' Improper Motivation Weighs Heavily in Favor
of Awarding Shloss's Attorney's Fees .................................................16

        4.     The Need to Advance Considerations of Compensation
and Deterrence Strongly Favors Awarding Attorney's Fees ...............18

   D.    Awarding Attorney's Fees to Shloss Promotes the
Purpose of the Copyright Act ...........................................................................19

IV.   CONCLUSION ..........................................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barrios v. Cal. Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002) .....................11

*Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003).......................................................................17

*Brinn v. Tidewater Transport District Commission*, 242 F.3d 227 (4th Cir. 2001) ..........10

*Buckhannon Board and Care Home, Inc. v. W. Va. Department of Health and Human Resources*, 532 U.S. 598 (2001)...........................................................10, 11

*Carbonell v. INS*, 429 F.3d 894 (9th Cir. 2005) ..........................................9, 10, 11, 12, 14

*Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996)..........................................12, 13, 19

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 ..................................................................12, 13, 19

*Garcia-Goyco v. Law Environmental Consultants, Inc.*, 428 F.3d 14 (1st Cir. 2005) ..............................................................................................................16

*In re Hunt*, 238 F.3d 1098 (9th Cir. 2001).........................................................................10

*Labotest, Inc. v. Bonta*, 297 F.3d 892 (9th Cir. 2002) .......................................................12

*Matthews v. Freedman*, 157 F.3d 25 (1st Cir. 1998) (citing *Fogerty*, 510 U.S. at 526-27)......................................................................................................................16

*New Era Publ'ns International v. Henry Holt & Co.*, 695 F. Supp. 1493 (S.D.N.Y. 1988) *aff'd*, 873 F.2d 576 (2d Cir. 1989)....................................................17

*Quinto v. Legal Times of Wash., Inc.*, 511 F. Supp. 579 (D.D.C. 1981) ..........................10

*Richard S. v. Department of Develop. Serv. of Cal.*, 317 F.3d 1080 (9th Cir. 2003) ..............................................................................11, 12

*Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir. 1966)............17

*Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869 (9th Cir. 2005)................................................................................................................13

*Wall Data, Inc. v. Los Angeles County Sheriff's Department*, 447 F.3d 769 (9th Cir. 2006) .............................................................................................................13, 14

## FEDERAL STATUTES AND RULES

17 U.S.C. § 505 ..........................................................................................................10, 12

FRCP 54(d) ...................................................................................................................10

1    **NOTICE OF MOTION**

2           TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3           PLEASE TAKE NOTICE that on May 21, 2007 at 9:00 a.m., or as soon thereafter

4    as the matter may be heard, in Courtroom 8, 4th Floor of the above-entitled Court located at 280

5    South 1st Street, San Jose, CA, 95113, the Honorable James Ware presiding, Plaintiff Carol

6    Loeb Shloss ("Shloss") will and hereby does move this Court, pursuant to Rule 54(d) of the

7    Federal Rules of Civil Procedure and 17 U.S.C. § 505, for an Order awarding costs and attorneys

8    fees in an amount to be determined according to proof.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W03 402600523/1382189/v1

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

# I.    INTRODUCTION

Plaintiff Carol Loeb Shloss ("Shloss") filed this lawsuit in response to a fifteen-year campaign of threats and intimidation from the Estate of James Joyce (the "Estate"), and its trustee Stephen James Joyce ("Joyce").  The subject of these threats was Shloss's scholarly biography of Lucia Joyce, the daughter of James Joyce, one of the twentieth century's most important authors.  The stated purpose of these threats was to prevent Professor Shloss from publishing any material to which Joyce or the Estate held copyrights, in any amount, any context, or any form, as part of that biography.  And Shloss is not the only person that the Estate has attempted to silence.  It has threatened suit over the use of eighteen words of Joyce's work in a choral production when displeased with the resulting product, and forced another author to remove an epilogue from a book that discussed Lucia Joyce and her institutionalization.  The result of this conduct has been to hamper not only Shloss's work, but that of many Joyce scholars as well.

In response to these threats and fear of litigation, Shloss and her publisher each cut substantial amounts of material from the book.  Accordingly, the published biography lacked many of the primary sources on which its conclusions were based.  Following publication of her book, Shloss created a website (the "Electronic Supplement") that contained the deleted material.  Its purpose was to present the full story that her book was meant to tell—unaffected by the cuts undertaken in response to the Estate's threats.  The Estate resumed its confrontational stance and again warned her that the Electronic Supplement was an infringement of its copyrights.

Shloss filed this lawsuit to vindicate her right to publish the Electronic Supplement.  Accordingly, she asked the Court to declare her right to publish the Electronic Supplement in the United States free of liability for copyright infringement based on Fair Use, and various affirmative defenses to copyright infringement.  The Estate first tried to dodge the merits of this dispute by suggesting there was no proper case or controversy for the Court to decide.  After this Court held that Shloss's lawsuit presented a proper case or controversy, the Estate gave up.  In a settlement agreement enforceable by the Court and incorporated into the Court's order of dismissal, the Estate covenanted not to sue Shloss for copyright infringement

1    based on her publication of the Electronic Supplement in the United States, whether on the

2    Internet or in print.  Shloss gave up nothing in the Settlement Agreement; she merely agreed to

3    dismiss the suit once she was given everything she wanted.  Accordingly, Shloss won exactly

4    what she set out to obtain:  the right to publish her Electronic Supplement free from liability for

5    copyright infringement.  Having obtained the relief she sought in this lawsuit, Shloss is the

6    prevailing party in this litigation.  That entitles her to costs, and makes her eligible for attorneys'

7    fees under the Copyright Act.

8          There is good reason to award fees here.  Joyce and the Estate maintained a

9    legally untenable position for years.  According to them, Shloss was not permitted to use literally

10   anything James or Lucia Joyce ever wrote, drew or painted—no matter the nature, context, form

11   or amount.  When it was explained that fair use protected Shloss's right to use the materials in

12   this context, Joyce and the Estate dismissed Fair Use as "wishful thinking."  But once confronted

13   with a proper legal dispute that tested the validity of their assertions, Joyce and the Estate

14   abandoned the fight.  This revealed that their decades of threats were empty, designed not to

15   articulate defensible principles, but simply to scare and intimidate.

16         Although it is clear that Joyce and the Estate had no intention of defending the

17   position that they had staked out, their surrender did not come quickly or cheaply.  It occurred

18   nine months into the case, and only after significant amounts of time had been spent on the

19   matter by both sides.  Joyce and the Estate could have agreed to Shloss's right to publish the

20   Electronic Supplement upon the initiation of this lawsuit, or even the filing of the Amended

21   Complaint, and saved everyone a lot of effort and expense.  Instead, they tried to avoid the

22   consequences of their actions by filing a motion to dismiss that failed to acknowledge the threats

23   they made, or the fact that the covenant not to sue on which the motion was premised plainly did

24   not cover the whole dispute framed by the pleadings.

25         The covenant that Defendants have now provided in the context of a settlement

26   covers the whole dispute and then some; it give Shloss relief *broader* than she sought in her

27   complaints.  Whereas Shloss's complaints against Joyce and the Estate sought to establish her

28   right to publish the Electronic Supplement on the Internet free from liability for copyright

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1  infringement, the Estate's covenant not to sue insulates Shloss from liability whether she

2  publishes the Electronic Supplement on the Internet, or in printed form.

3       While this lawsuit did not result in a judgment on the merits, it established

4  Shloss's right to publish material that Joyce and the Estate tried to suppress for years with

5  baseless threats of copyright enforcement, which we now know were empty.  By standing up to

6  these threats and vindicating her right to publish the material at issue free from copyright

7  liability, Shloss's lawsuits furthered the purposes of not just the Copyright Act, but scholarship

8  and free speech itself.  The Court should award Shloss costs and reasonable attorneys' fees in an

9  amount according to proof.

10  **II.   BACKGROUND**

11       The settlement of this lawsuit, and the Estate's agreement to let Shloss publish

12  material central to her biography of Lucia Joyce, marks the end of a story that dates back nearly

13  twenty years.  It is a story marked by the Defendants'' attempts to intimidate a scholar, interfere

14  with her work, and ultimately suppress it.

15         **A.   The Estate's Fifteen-Year Campaign Of Obstruction, Threats**

16           **And Intimidation Against Professor Shloss And Her Publisher**

17       Shloss began researching her biography about Lucia Joyce in 1988.  Olson Decl.,

18  Ex. A, ¶ 11. [Dec. 15, 2006 Shloss Decl.]  In connection with that work, Shloss traveled the

19  world to learn about and document the life of Lucia, including her early dancing career, history

20  of mental health treatment and her unacknowledged contributions to her father's literary works.

21  *Id.* ¶¶ 11-20.

22       The Estate tried to thwart her work from the beginning.  When Shloss traveled to

23  the University of Buffalo in New York in 1994 to consult the James Joyce papers in the Special

24  Collections at the Lockwood Memorial Library, she learned that the Library's Director had

25  already been contacted by "intermediaries" from the Joyce Estate, who warned that Shloss

26  should not be permitted access to the Library's Joyce materials.  *See* Olson Decl., Ex. B at 8.

27  [Dec. 15, 2006 Spoo Decl., Ex. 4]

28

1       This was not the first time that Joyce and the Estate had interfered with

2  scholarship.  Stephen James Joyce had previously objected to an epilogue in fellow Joyce scholar

3  Brenda Maddox's biography of Nora Joyce, James Joyce's wife, because it described the time

4  Lucia spent in a mental asylum.  Olson Decl., Ex. B at 2. [Spoo Decl., Ex 4]  Upon learning of

5  the epilogue, Joyce withdrew all permission previously granted unless Maddox removed the

6  epilogue.  Maddox was only able to obtain the copyright  permissions she needed from the Estate

7  by agreeing that neither she nor her descendants would ever publish the epilogue, and that she

8  would not criticize Joyce or the Estate.  *See id.*

9       After Shloss contacted Joyce about her book, Joyce announced his opposition to it

10  in no uncertain terms.  In a March 31, 1996 letter, Joyce told Shloss that his "response regarding

11  helping and working with [her] on a book about Lucia is straightforward and unequivocal: it is a

12  definite <u>NO</u>."  Olson Decl., Ex. C. [Dec. 15, 2006 Shloss Decl., Ex. C] (emphasis in original).

13  Furthermore, Joyce added that "you do not have our approval/permission to 'use' ***any*** letters or

14  papers by or from Lucia. . . . [or] our authorization to use ***any*** letters from my grandfather to

15  anybody which deal with her."  *Id.* (emphasis added).  Joyce wrote to Shloss again on April 19,

16  1996.  In this letter, he derided what he termed the "Joycean industry" with which he associated

17  Shloss, and reiterated that "[o]n Lucia's dancing career we have nothing to say."  Olson Decl.,

18  Ex. D. [Dec 15, 2006 Shloss Decl., Ex. E]

19       Shloss continued her work in the face of Joyce's opposition.  In 2001, she signed

20  a contract with the publishing house Farrar Straus & Giroux ("FSG") to publish her book, now

21  titled *Lucia Joyce:  To Dance In The Wake*.  Olson Decl., Ex. A ¶ 25. [Dec. 15, 2006 Shloss

22  Decl.]  Upon learning that Shloss's book would soon be published, Joyce issued a series of

23  threats to Shloss and her publisher that spanned nearly three years.  *See generally* Olson Decl.,

24  Ex. A ¶¶ 21-44. [Dec 15, 2006 Shloss Decl.]  For example, Joyce:

25      •    Declared that he would not permit Shloss or her publisher "to use any quotations
26             from anything" that Lucia Joyce "ever wrote, drew or painted.  Olson Decl., Ex.
             E. [Dec 15, 2006 Friedman Decl., Ex. 5]

27      •    Announced that he was opposed to the publication of any Lucia-related material,
28             and he had "never lost a lawsuit." Olson Decl., Ex. F. [Dec. 15, 2006 Shloss
             Decl., Ex. I]

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

- Advised Shloss's publisher that "over the past decade **the James Joyce Estate's 'record', in legal terms, is crystal clear and we have proven on a number of occasions that we are prepared to put our money where our mouth is**" and that publication of any Lucia-related material would be "*à vos risques et périls*"—**at your risk and peril**.  Olson Decl., Ex. G. [Dec. 11, 2006 Friedman Decl., Ex. 2] (emphasis added)

- Expanded his claims to include sole  "copyright, to anything and everything that James, Nora . . . , Giorgio (George), Lucia, Helen (Kastor Fleischman) Joyce and myself ever wrote, drew, painted and/or recorded. Olson Decl., Ex. H. [Dec. 11, 2006 Friedman Decl., Ex. 6]

- Announced that the law "will uphold our intellectual property rights."  Olson Dec., Ex. H. [Dec. 11, 2006 Friedman Decl., Ex. 6]

- Dismissed fair use analysis as "a bad joke" and "wishful thinking." Olson Decl., Ex. G. [Dec. 11, 2006 Friedman Decl., Ex. 2]

These threats and the many others that Joyce issued had their intended effect. Shloss's publisher ultimately required Shloss to cut numerous pages of Lucia-related material from her 400-page manuscript over her objection and to her great dismay. [1]  Olson Decl., Ex. A ¶¶ 45-46. [Dec. 15, 2006 Shloss Decl.]  This was in addition to material that Shloss had herself deleted for fear of being sued by the Joyce Estate.  In her view, the book she had spent fifteen years on was being gutted.

### B.    The Estate's History of Threats Against Joyce Scholars

Shloss was not the only target of Joyce's animosity during the period she was researching and writing about Lucia Joyce.  Joyce's threats and lawsuits against other scholars are well-known in the Joyce community, as is detailed in Shloss's Opposition to the Motion to Dismiss at 4, 8-9.  A couple of examples among many are:

- Stephen James Joyce vehemently objected to an epilogue in Joyce scholar Brenda Maddox's biography of Nora Joyce, James Joyce's wife, because it described the time Lucia spent in a mental asylum.  *See* Olson Decl., Ex. B at 34. [Spoo Dec., Ex. 4] Fearing legal action, Maddox removed the section even though copies of the book had already been printed.  *See id.*; Olson Decl., Ex. U. at p. 84 [January 8, 2007 Dozier Decl., Ex. C]

---

[1]      The full range of threats that Joyce and the Estate issued are detailed in Shloss's opposition to the Estate's motion to dismiss her complaint.  *See* Olson Decl., Ex. A ¶¶ 21-58. [Dec 15, 2006 Shloss Decl.]

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

- In 2000, threats by Joyce stopped an Irish composer from using only eighteen words from *Finnegans Wake*, a novel thousands of words long, in his choral piece. Despite the nominal use, Joyce stated that he simply did not like the music and thus deemed even eighteen words too much. *See* Olson Decl., Ex. J. [Spoo Dec., Ex. 5.]

**C.** **The Electronic Supplement And The Initiation Of This Lawsuit**

Unwilling to compromise her academic and scholarly integrity, Shloss was determined to tell the whole story of Lucia Joyce. To tell that story—as it existed before FSG's cuts—Shloss created a Website that contained the material FSG had required her to cut, which was ready to be published as of March 2005. Olson Decl., Ex. A ¶ 49. [Dec. 15, 2006 Shloss Decl.] Once Shloss notified the Estate of her plans, Joyce and the Estate resumed their confrontational stance. They declared that publication of the Lucia-related materials would be an "unwarranted infringement of the Estate's copyright" and "request[ed] in the strongest possible terms that [the Estate's] legal rights on this issue be respected." *Id.* (emphasis added). In addition, they cautioned Shloss that the Estate "reserves all its rights if your client perseveres with her proposed activities." *Id.*

Accordingly, Shloss' dilemma remained. She could choose to not publish her Electronic Supplement and leave the full story of Lucia, which she had worked fifteen years to assemble, to be lost for all time, or she could risk the possibility of suit and financial ruin by publishing the excised material on the Electronic Supplement she had created. In order to avoid this dilemma and forestall potential damages, Shloss filed this suit for declaratory relief on June 12, 2006. In her complaint, Shloss sought a declaration that her Electronic Supplement did not infringe Defendants' copyrights and an injunction barring Defendants' from asserting their copyrights against her in connection with publication of the Electronic Supplement on the internet. Olson Decl., Ex. K, [Complaint Against Joyce Estate]

Following the initiation of this suit, Shloss revised her Website once to add additional materials that she had cut from her manuscript. Olson Decl., Ex. A ¶ 49. [Dec. 11, 2006 Shloss Decl.] This revision was completed and ready to be published in September 2006. *See id.* Shloss then filed an Amended Complaint on October 25, 2006, to reflect the revised

1  Website and put it at issue in her pleadings.  *See id.*  After Shloss learned that Stephen James

2  Joyce asserted personal ownership of some of the copyrights in issue, she initiated a second suit

3  against him based upon nearly identical factual allegations. Olson Decl., Ex. L. [Complaint

4  against Stephen Joyce]

5          Both the Amended Complaint in this action, and the additional complaint against

6  Stephen Joyce, ask for the same basic relief sought in the original complaint filed in this action—

7  an injunction barring Defendants' from asserting their copyrights against Shloss in connection

8  with the publication of the Electronic Supplement.

9          **D.      The Estate's Motion To Dismiss**

10          On November 17, 2006, the Estate moved to dismiss the Amended Complaint on

11  the grounds the Court lacked subject matter jurisdiction over this action.  In that motion, the

12  Estate ignored its years of threats, contending that Shloss had no reasonable apprehension of

13  being sued by the Estate.  Olson Decl., Ex. M. at III. B. 1. [Memorandum of Points & Authorities

14  in Support of Defendants' Motion to Dismiss (hereafter "MTD"]  In addition, the Estate

15  submitted with its moving papers a purported covenant not to sue Shloss in connection with the

16  material that had been included on the Website as of November 2005.  Olson Decl., Ex. N at ¶ 7.

17  [Nov. 17, 2006 Sweeney Decl.]  That covenant, however, provided no relief as to material that

18  had been added in 2006, which comprised a substantial portion of the material put at issue by

19  Shloss's Amended Complaint.  Olson Decl., Ex. O at 11-12. [Order Denying Motion to Dismiss]

20  In addition to moving to dismiss Shloss's complaint, Defendants also moved to dismiss Shloss's

21  claim for copyright misuse as "improper on its face."  *Id* at 13.[2]

22          Following the hearing on the Estate's motion to dismiss, the Court ruled against

23  the Estate on all of these issues.  It held that Shloss had a "real and reasonable apprehension of

---

24

25  [2]      Indeed, Defendants turned their motion into yet another vehicle for attacking Shloss, her
   book and even her counsel.  The Estate repeatedly chided Shloss's work as "faction" and claimed
26  repeatedly that it should not be considered "scholarship."  Olson Decl., Ex. M at 2, 6n.1 [MTD].
   The Estate likewise suggested the Electronic Supplement was nothing but a "pretext" so that
27  Shloss and her lawyers could "mak[e] new law."  *Id* at 3-4.  This Court disagreed, holding that
   "[t]his case is not a mere '"academic war" or a "hypothetical" case,' as Defendants state."  Olson
28  Decl., Ex. O at 13 [Order Denying Motion to Dismiss].

1 copyright liability" sufficient to create an actual controversy between the parties, and that

2 "Defendants' putative covenant not to sue based on the Electronic Supplement as it existed in

3 2005 is inadequate to moot the actual controversy between the parties."  *Id* at 12.  As to

4 Defendants'' motion to dismiss the copyright misuse claim, the Court held that claim was

5 appropriate because "Defendants' alleged action significantly undermined the copyright policy

6 of 'promoting invention and creative expression.'"[3] *Id. at 16.*

7     **E.**    **Settlement**

8     Having proved unsuccessful in avoiding the merits of the dispute, the Estate

9 decided to abandon its years of threats and reversed its course.  On March 19, 2007, Joyce and

10 the Estate entered into a settlement agreement under which they covenanted "not to sue Shloss

11 for infringement of any copyrights resulting from Shloss's publication, ***in printed or electronic***

12 ***for****m, of the [Electronic] Supplement. . . . "  Olson Decl., Ex P, [Stip. Dismissal Order, Ex. 1]

13 This was more than Shloss had asked for:  Shloss's complaints had only asked for a declaration

14 of her right to publish ***electronically*** in the United States.[4]  In addition, the Estate agreed it would

15 provide documentation regarding Joyce's claim that he is the sole beneficial owner, and has

16 control over, all of Lucia Joyce's copyrights, and agreed to provide such documentation to third

17 parties should they question the ownership and control of those copyrights.  *Id.*

18     Accordingly, Shloss obtained relief ***broader*** than she originally sought in her

19 Complaints.  Shloss's complaints against Joyce and the Estate sought to establish her right to

20 publish the Electronic Supplement on the Internet free from liability for copyright infringement,

21 whereas as the Estate's covenant not to sue insulates Shloss from liability regardless of whether

22 she publishes on the Internet, ***or in printed form***.  In addition, she obtained important

23 _____

24 [3]    Defendants also moved the Court to strike other claims Shloss raised as affirmative
defenses to copyright infringement, including copyright misuse, unclean hands, and that Ulysses

25 was in the public domain.  The Court ruled against defendants' on all of these issues, and struck
only one paragraph, of the Complaint concerning the allegation that Stephen Joyce had papers

26 concerning Lucia Joyce removed from the National Library of Ireland.  *See* Olson Decl., Ex. O at
16-19 [Order Denying Motion to Dismiss].

27 [4] Although the Estate covenanted not to sue as to print publication in addition to electronic
publication, the Estate's covenant followed Shloss's Complaints and was limited to "publication

28 within the United States."  *Id.*

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1   information concerning the true ownership of Lucia's copyrights, which she had not demanded

2   in her complaints, but which is nonetheless valuable in determining the true extent of the Estate's

3   rights, and those of Stephen Joyce.

4   **F.    Dismissal**

5          On March 26, 2007, the parties submitted a proposed order of dismissal to the

6   Court, which incorporated the Settlement Agreement as an exhibit, and provided the Court with

7   jurisdiction to enforce the terms of the Settlement Agreement that the Order of Dismissal

8   incorporated.  Olson Decl., Ex. P [Dismissal Order]. The Court entered that Order on March 27,

9   2007, dismissing with prejudice Shloss's actions against the Estate and Stephen James Joyce.

10  *See id.*

11         Having obtained the relief she sought in her complaints and more through a

12  Court-enforced settlement agreement, Shloss now seeks costs and attorneys' fees as the

13  prevailing party in these actions.

14  **III.    ARGUMENT**

15         Shloss is both eligible for fees and entitled to them.  Shloss easily fits the

16  definition of a "prevailing party," making her eligible for an attorney's fee award.  Such an

17  award is within the Court's discretion.  No bad faith or frivolity need be found on the part of

18  Defendants for fees to be awarded to Shloss.  Instead, fees should be awarded if doing so furthers

19  the policy of the Copyright Act.  Because awarding fees to Shloss substantially furthers the

20  policy of the Copyright Act, and because Shloss's case meets the non-exclusive factors

21  enumerated by the Ninth Circuit for eligibility for fees, the Court should award fees in an amount

22  to be proven.

23     **A.    Shloss is Entitled to Both Costs and Attorney's Fees Under
           § 505 of the Copyright Act.**
24
25         The Copyright Act departs from the general rule that requires litigants to pay their

    own attorney's fees.  *See Carbonell v. INS*, 429 F.3d 894, 897-98 (9th Cir. 2005).  Instead, the
26
    Copyright Act provides that "the court may . . . award a reasonable attorney's fee to the
27
    prevailing party as part of the costs."  17 U.S.C. § 505.  Shloss is the "prevailing party" in these
28
    matters, as defined by Supreme Court and Ninth Circuit precedents, and the equitable factors

1    strongly favor a fee award here.[5]  Accordingly, in addition to awarding Shloss costs under

2    Federal Rule of Civil Procedure 54(d) as the prevailing party, the Court should award Shloss her

3    reasonable attorneys' fees.

4    **B.    Shloss Is Eligible for Fees Because She Meets Both Prongs of
             the "Prevailing Party" Test**

5
     **1.    Shloss is the "Prevailing Party" Because the Settlement
6            Agreement Affected a Material Alteration in the
             Parties' Legal Relationship**
7
8            "Prevailing party" is a term of art that is used in numerous federal statutes

     authorizing awards of attorney's fees. *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of*
9
     *Health and Human Resources*, 532 U.S. 598, 602-03 (2001).  The Ninth Circuit has
10
     characterized the test for "prevailing party" as a two-pronged test.  The first prong "requires a
11
     material alteration in the legal relationship between the parties." *See, e.g., Carbonell*, 429 F.3d
12
     at 899.  The question is not whether a litigant succeeded in obtaining a judgment on the merits;
13
     rather, the question is whether one party has forced the other party to do something it would
14
     otherwise not have to do, or to refrain from doing something it could otherwise do. *See id.* at
15
     899-900 (plaintiff who sought stay of deportation was "prevailing party" where Court did not
16
     adjudicate merits but did enter order incorporating stipulation staying deportation).  Put another
17
     way, a party meets the first prong of this test where he achieves "much of the relief he sought" in
18
     his complaint. *Id.* at 900.
19
             Here, the Settlement Agreement between the parties provides Shloss with the
20
     relief that she requested, and more.  In her complaints, Shloss sought an injunction barring Joyce
21
     and the Estate from suing her for copyright infringement in regard to her publication of the
22    _____

23   [5]  That Shloss was represented by pro bono counsel is of no matter where the statutory source for
     the fee award "does not distinguish between pro bono representation and fee-generating
24   representation," and the policies underlying the statute would be served by an award of fees.  In
     re Hunt, 238 F.3d 1098, 1104 n.7 (9th Cir. 2001).  "[C]ourts have consistently held that entities
25   providing pro bono representation may receive attorney's fees where appropriate, even though
     they did not expect payment from the client . . . ."  Brinn v. Tidewater Transp. Dist. Comm'n,
26   242 F.3d 227, 234-35 (4th Cir. 2001).  Analogously, attorney's fees have been awarded to a
     prevailing pro se copyright plaintiff, even though the plaintiff did not incur any obligation to pay
27   attorneys, where "[a]n award of attorney's fees [would] help[] to ensure that all litigants have
     equal access to the courts to vindicate their statutory rights."  Quinto v. Legal Times of Wash.,
28   Inc., 511 F. Supp. 579, 581 (D.D.C. 1981).

1    Electronic Supplement in the United States in electronic form.  Under the terms of the Settlement

2    Agreement, Joyce and the Estate are forever foreclosed from suing Shloss for copyright

3    infringement in regard to her publication of the Electronic Supplement in the United States,

4    whether in electronic or printed form.  Shloss gave up nothing in return.  She neither paid the

5    Estate nor did she agree to limit her conduct in any way.  Accordingly, the parties' legal

6    relationship has changed drastically:  defendants have forever given up the right to enforce the

7    copyrights that were the premise of their threats against Shloss, and Shloss is no longer subject to

8    the suit she feared and sought to enjoin.  The fact that Shloss did not obtain a judgment on the

9    merits is irrelevant.  *See Carbonell*, 429 F.3d at 899.  So too is the fact that Defendants' did not

10   admit liability.  *Buckhannon*, 532 U.S. at 604 (recognizing there is no need for "an admission of

11   liability by the defendant" to make a plaintiff a "prevailing party").

12          **2.      Shloss is the "Prevailing Party" Because the Settlement
                     Agreement Is Court Enforceable**

13          The second prong of the "prevailing party" test "requires that the material

14   alteration in the relationship between the parties be stamped with some 'judicial imprimatur.'"

15   *Carbonell*, 429 F.3d at 900.  To achieve this judicial imprimatur, it is enough if the parties

16   "enter[] into a legally enforceable settlement agreement."  *Id.* at 899 (citing cases); *see also*

17   *Barrios v. Cal. Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002) ("[u]nder

18   applicable Ninth Circuit law, a plaintiff 'prevails' when he or she enters into a legally

19   enforceable settlement agreement against the defendant"); *Richard S. v. Dept. of Develop. Serv.*

20   *of Cal.*, 317 F.3d 1080, 1086 (9th Cir. 2003) ("Because we find that there is a legally enforceable

21   settlement agreement between the parties to this case, the district court erred when it denied

22   plaintiffs attorney's fees and costs.").

23          The Order of Dismissal in this case provides the required "judicial imprimatur" by

24   acknowledging and approving the Settlement Agreement, as well as by explicitly giving this

25   Court enforcement jurisdiction.  The stipulated Dismissal Order states:

26          The parties stipulate that the above-captioned actions shall be
             dismissed with prejudice pursuant and subject to the Settlement
27          Agreement attached to this Order as Exhibit 1, and that the Court
             shall retain jurisdiction for purposes of enforcing the terms of the
28          Settlement Agreement.  The Court acknowledges and approves the

1           Settlement Agreement, dismisses these actions with prejudice, and retains jurisdiction to enforce the Settlement Agreement.

2

3   Olson Decl., Ex. P.

4         This Dismissal Order is very similar to the order upon which the court granted

5 plaintiffs' fees in *Richard S. v. Dept. of Develop. Serv. of Cal.*, 317 F.3d at 1084-85. There the

6 dismissal order stated that plaintiffs' claims were "dismissed with prejudice pursuant to a written

7 executed Settlement Agreement between the parties, a copy of which has been previously filed

8 with this Court . . . ." *Id.* at 1085. The court in *Richard S.* held that this was enough to establish

9 "sufficient judicial oversight to justify an award of attorneys' fees and costs". *Id.*, at 1087.

10         Likewise, because the Court dismissed Shloss's cases pursuant to a Court-

11 recognized settlement agreement enforceable against Defendants, and maintained jurisdiction

12 over the Settlement Agreement for purposes of enforcement, Shloss is a "prevailing party" and

13 thus eligible for attorney's fees under 17 U.S.C. § 505. *Carbonell*, 429 F.3d at 901 ("when a

14 court incorporates the terms of a voluntary agreement into an order, that order is stamped with

15 sufficient 'judicial imprimatur' for the litigant to qualify as a prevailing party for the purpose of

16 awarding attorney's fees. "); *see also Labotest, Inc. v. Bonta*, 297 F.3d 892, 893 (9th Cir. 2002) (a

17 litigant "who succeeds in obtaining a court order incorporating an agreement that includes relief

18 the plaintiff sought in the lawsuit is not a mere catalyst—he is a prevailing party for attorney's

19 fees purposes").

20     **C.**     **The Court Should Award Fees To Shloss Because A Fee Award Substantially Furthers The Policy Of The Copyright Act**

21         Attorney's fees should be awarded where, as here, the award furthers the purpose

22 of the Copyright Act. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) ("attorney's fee

23 awards to prevailing defendants are within the district court's discretion if they further the

24 purposes of the Copyright Act and are evenhandedly applied."); *Fogerty v. Fantasy, Inc.*, 510

25 U.S. 517, 534 n. 19. The Ninth Circuit has held culpability is not required in order to award fees

26 against a party. *Fantasy, Inc., v. Fogerty*, 94 F.3d at 558. While "there is no precise rule or

27 formula" for awarding attorney's fees under the Copyright Act, this Court should exercise its

28

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1    discretion in light of the considerations identified by the Supreme Court and the Ninth Circuit.

2    *Id.* at 557; *Fogerty v. Fantasy*, 510 U.S. at 534. These considerations include

3        the Copyright Act's primary objective, "***to encourage the production of***
4        ***original literary, artistic, and musical expression*** for the good of the
         public," . . . the need ***to encourage defendants who seek to advance a***
5        ***variety of meritorious copyright defenses*** . . . to litigate them to the same
         extent that plaintiffs are encouraged to litigate meritorious claims of
6        infringement, and the fact that ***a successful defense of a copyright***
         ***infringement action may further the policies of the Copyright Act*** every
7        bit as much as a successful prosecution of an infringement claim by the
         holder of a copyright.

8
9    *Fantasy, Inc. v. Fogerty*, 94 F.3d at 557-58 (internal quotations and citations to *Fogerty v.*
     *Fantasy*, 510 U.S. 517, omitted).

10
11           In addition, the Ninth Circuit has held that a district court "may consider (but is
     not limited to) five factors in making an attorneys' fees determination pursuant to § 505."
12
     *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869 (9th Cir. 2005);
13
     *see also Wall Data, Inc. v. Los Angeles County Sheriff's Department*, 447 F.3d 769, 787 (9th Cir.
14
     2006). These factors are (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4)
15
     reasonableness of losing party's legal and factual arguments, and (5) the need to advance
16
     considerations of compensation and deterrence." *Wall Data*, 447 F.3d at 787.
17
             These factors, however, are "not exclusive and need not all be met." *Fantasy,*
18
     *Inc. v. Fogerty*, 94 F.3d at 558. Rather, the Ninth Circuit requires a district court to remember
19
     that "an award of attorney's fees to a prevailing defendant that furthers the underlying purposes
20
     of the Copyright Act is reposed in the sound discretion of the district courts, and that such
21
     discretion is not cabined by a requirement of culpability on the part of the losing party."
22
     *Fantasy, Inc. v. Fogerty*, 94 F.3d at 555. In this case, Shloss's victory both "furthers the
23
     underlying purposes of the Copyright Act" and meets the non-exclusive factors set out in *Wall*
24
     *Data*.

25

26

27

28

**1.    Shloss's Complete Success Heavily Favors Awarding Shloss's Attorney's Fees**

The first factor, degree of success obtained, favors Shloss distinctly. She was completely victorious in her attempt to preclude Defendants from blocking publication of her Electronic Supplement. Not only did Defendants covenant not to sue as to her Electronic Supplement, they went further and covenanted not to sue as to publication of the Electronic Supplement in printed form—something Shloss did not even seek in her complaints. The Defendants also agreed to provide confidential documents purportedly showing their control of certain Joyce family copyrights, another item that was not demanded in Shloss's complaints. Shloss gave nothing in exchange for this—she did not pay money and she did not agree to limit her conduct. The only thing Shloss agreed to do was to dismiss the suit once she had been given everything she wanted. Olson Decl., Ex. P. [Stipulated Dismissal Order, Ex. 1][6] Thus, the fact that Shloss obtained what she requested in her suit weighs completely in her favor. *See, e.g., Carbonell*, 429 F.3d at 900.[7]

**2.    Defendants' Unreasonable or Frivolous Arguments Heavily Favor Awarding Shloss Attorney's Fees**

Shloss should be awarded her attorney's fees because Defendants have taken positions ranging from unreasonable to frivolous throughout the course of their dispute with Shloss. Because several of the Estate's arguments can be classified as either unreasonable or even frivolous, factors 2 (frivolousness) and 4 (unreasonableness) of the *Wall Data* factors are analyzed together in this section.

Defendants have repeatedly denied any right to fair use, any right to use material about Lucia Joyce, even though the material resides in public archives, and the right for Shloss to

---

[6] To the extent that the Estate might argue that Shloss achieved less than complete success, the only limitation to which Shloss agreed is immaterial because it involves a bonus item that Shloss never sought in her complaints. In addition to a total covenant not to sue, the Estate provided Shloss with a Letter allegedly detailing ownership in Lucia's copyrights. Shloss agreed that she would only use the letter to show Defendants' copyright ownership claims. Olson Decl., Ex. P ¶ [Stipulated Dismissal Order, Ex. 1].

[7] As is discussed, *supra*, it would be erroneous to hold that Shloss did not achieve success merely because the Court never ruled on the legal bases for her claims. *See, e.g., Carbonell*, 429 F.3d at 899-900. The fact of the matter is that the sum of what Shloss demanded in her Complaint was the legal right to publish her Electronic Supplement. Defendants' covenant gives Shloss that legal right, and more.

1  quote any Joyce or Joyce family work, no matter how *de minimis*, scholarly, or transformative

2  the use of the quotation.  As is detailed in the Background Section, *supra*, Defendants maintained

3  legally untenable positions for years.  According to Defendants, Shloss was not permitted to use

4  anything James or Lucia Joyce ever wrote, drew or painted—no matter the nature, context, form

5  or amount.  Defendants simply refused to acknowledge the existence of the fair use doctrine.

6  Indeed, they dismissed it as "wishful thinking."  Olson Decl., Ex. G [Dec. 11, 2006 Friedman

7  Decl., Ex. 2].

8        These arguments range from unreasonable to frivolous.  And indeed, once it was

9  clear to Defendants that there arguments would be addressed by the Court on the merits, they

10  completely abandoned their arguments by covenanting not to sue as to the entirety of Shloss's

11  Electronic Supplement.  Defendants' conduct reveals that their decade of threats were empty,

12  designed not to articulate defensible principles, but simply to scare and intimidate.

13        But before abandoning the fight, Defendants attempted to persuade this Court to

14  dismiss Shloss's suit based on a premise that was demonstrably false.  Defendants argued that

15  the fact Shloss revised her Electronic Supplement once in 2006 demonstrated the suit was not

16  ripe because Shloss's Electronic Supplement was a "work in progress" and was not fixed.  The

17  Electronic Supplement was fixed and defendants knew it.  They had access to the finalized

18  Electronic Supplement in September 2006, two months before they moved to dismiss.  Olson

19  Decl., Ex. Q ¶6 [Dec. 15, 2006 Olson Decl.].  Defendants persisted in this frivolous argument

20  even though Shloss had pledged that the Electronic Supplement would not change without leave

21  to amend her complaint.  Olson Decl., Ex. A ¶ 49. [Dec. 15, 2006 Shloss Decl.]; Olson Decl., Ex.

22  R at 17 [Shloss's Opp. to Motion to Dismiss].

23        To make matters worse, Defendants based their motion to dismiss on a second

24  false premise.  Defendants contended that their covenant not to sue mooted the entire

25  controversy between the parties, despite the fact it plainly did not cover the entire Electronic

26  Supplement put at issue by the Amended Complaint against the Estate.  Specifically, Defendants

27  covenanted not to sue on the Electronic Supplement as it existed in 2005, but not as it existed in

28  2006, which was the version of the Electronic Supplement put at issue by Shloss's Amended

1   Complaint. See Olson Decl., Ex. O at 12 [Order Denying Motion to Dismiss]. This shortcoming

2   was not lost on Defendants. When the Court noted it at oral argument, Defendants

3   acknowledged their covenant did not cover the entire Electronic Supplement. Olson Decl., Ex. S

4   at 3:11-18 [Motion to Dismiss Oral Arg. Tr.].

5           In addition, Defendants have repeatedly misused their control of copyrights in an

6   effort to prevent the publication of materials and factual information about James Joyce and the

7   Joyce family over which Defendants have no rights or control. Such conduct is considered

8   objectively unreasonable and is grounds for awarding fees to Shloss. *See Matthews v.*

9   *Freedman*, 157 F.3d 25, 29 (1st Cir. 1998) (upholding fee award to defendant in case where

10  copyright plaintiff's arguments were reasonable, but amounted to attempt "to extend [plaintiff's]

11  copyright protection far beyond what is allowed by law.") (internal quotation omitted) (citing

12  *Fogerty*, 510 U.S. at 526-27); *see also Garcia-Goyco v. Law Environmental Consultants*, Inc.,

13  428 F.3d 14, 21 (1st Cir. 2005) (upholding fee award made in absence of frivolousness or bad

14  faith because plaintiffs' copyright claim was not, "sufficiently strong;" not reaching district

15  court's alternative ground for fees based on plaintiffs' misuse of copyrights).

16          Defendants also made gratuitous, *ad hominem* arguments that Shloss's lawsuit

17  was an "academic war" and a "hypothetical case," which the Court firmly rejected. Olson Decl.,

18  Ex. O at 13 [Order Denying Motion to Dismiss]. The Court also rejected Defendants' position

19  that the *Ulysses* arguments should be stricken, finding that those arguments were "material to

20  Plaintiff's case." *Id.* at 17. Each of these arguments was objectively unreasonable and provides

21  further strong weight in favor of awarding attorney's fees to Shloss.

22          **3.      Defendants' Improper Motivation Weighs Heavily in
                    Favor of Awarding Shloss's Attorney's Fees**

23

24          The third factor, motivation of Defendants, also weighs heavily in favor of

    awarding Shloss fees. Defendants betrayed improper motives throughout the course of their

25  dispute with Shloss. As is extensively detailed in Shloss's Amended Complaint, Defendants'

26  sought to deny Shloss the right to quote from the copyrighted works it controlled in an

27  illegitimate attempt to protect the privacy of the Joyce family. Olson Decl., Ex. T ¶¶ 62, 92-93.

28  [Amended Complaint]

1    Defendants made their motive quite plain repeatedly, and in writing.  For

2  instance, in a March 31, 1996 letter, Stephen Joyce told Shloss that his "response regarding

3  helping and working with [her] on a book about Lucia is straightforward and unequivocal: it is a

4  definite <u>NO</u>."  Olson Decl., Ex. C [Dec. 15, 2006 Shloss Dec., Ex. C] (emphasis in original).

5  Furthermore, Joyce added that "you do not have our approval/permission to 'use' *any* letters or

6  papers by or from Lucia. . . . [or] our authorization to use *any* letters from my grandfather to

7  anybody which deal with her."  *Id.* (emphasis added).  The law is plain that copyright does not

8  give privacy rights.  The "protection of privacy is not a function of the copyright law." *Bond v.*

9  *Blum*, 317 F.3d 385, 395 (4th Cir. 2003); *see also Rosemont Enters., Inc. v. Random House, Inc.*

10  366 F.2d 303, 311 (2d Cir. 1966) (Lumbard, J., concurring) ("It has never been the purpose of

11  the copyright laws to restrict the dissemination of information about persons in the public eye

12  even though those concerned may not welcome the resulting publicity."); *New Era Publ'ns Int'l*

13  *v. Henry Holt & Co.*, 695 F. Supp. 1493, 1504-05 (S.D.N.Y. 1988) *aff'd*, 873 F.2d 576 (2d  Cir.

14  1989) ("It is universally recognized . . . that the protection of privacy is not the function of our

15  copyright law. . . . An individual who seeks to protect the privacy of the content of private letters

16  may do so by bringing suit under the right of privacy.").

17    Nevertheless, Defendants have made threats to other Joyce scholars for decades

18  Olson Decl., Ex. A ¶¶ 59-65 [Dec. 15, 2006 Shloss Decl.]. and to Shloss "regularly for nine

19  years" Olson Decl., Ex. O at 11 [Order Denying Motion to Dismiss], often with the alleged

20  purpose of protecting the privacy of deceased members of the Joyce family, and especially Lucia

21  Joyce.  Defendants' improperly-motivated use of their copyrights in attempts to protect

22  "privacy" has now been defeated by the Settlement Agreement and Order of Dismissal.  The

23  Settlement Agreement entirely and without qualification allows Shloss to do what Defendants

24  have improperly insisted for decades that "no one" could or should do—make use of Lucia

25  Joyce's writings to write about the Joyce family. There is good reason to award Shloss her

26  attorney's fees in defeating this improperly-motivated use of copyrights by Defendants.

27    Additionally, Defendants' Motion to Dismiss based only on a partial covenant

28  made plain that they wished to threaten copyright litigation and thereby chill speech, inquiry, and

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1   scholarship about areas Defendants wish to declare "off limits" without ever having their legal

2   claims tested. Defendants' improperly motivated attempt to avoid any testing of their threats

3   should be deterred by an award of attorney's fees to Shloss.

4            Finally, much of Defendants' Motion to Dismiss was explicitly directed at

5   discrediting Shloss's scholarship *qua* scholarship, so that Defendants' argument became a way

6   for Defendants to carry on their opposition to Shloss's work "by other means." For instance,

7   Defendants argued that Shloss is not a scholar and that her book was not scholarship. Olson

8   Decl., Ex. M at 2, 6 n 1 [MTD]. The Estate likewise suggested the Electronic Supplement was

9   nothing but a "pretext" so that Shloss and her lawyers could "mak[e] new law" (*Id.* at 3-4)—an

10  allegation that this Court soundly rejected. Olson Decl., Ex. O at 13 [Order Denying Motion to

11  Dismiss]. Shloss should be awarded attorney's fees for having to respond to such an improperly-

12  motivated and elaborate Motion to Dismiss and numerous associated Declarations.

13       **4.    The Need to Advance Considerations of Compensation
              and Deterrence Strongly Favors Awarding Attorney's**
14            **Fees**

15           The fifth factor, the need to advance considerations of compensation and

16  deterrence, weighs heavily in favor of awarding attorney's fees to Shloss. Defendants have

17  misused their copyrights for years, have improperly sought to vindicate privacy interests by use

18  of copyrights, have sought to cut off inquiry into literary and historically significant events by

19  the misuse of their copyrights, have advanced frivolous and unreasonable legal and factual

20  arguments, and have done all of this through the extensive use of threats, all the while striving to

21  avoid having the legality of their threats determined. Shloss won no money damages in this

22  declaratory judgment action. Thus, the best way to deter Defendants' repeated and unrepentant

23  bad actions is to award attorney's fees to Shloss.

24           Moreover, Defendants' unreasonable threats have cost Shloss years of

25  aggravation and made her unable to cite the materials necessary to support her theses. Shloss

26  will never recover the years of being threatened, nor can she be adequately compensated for the

27  damage to her scholarship from Defendants' overly-aggressive assertions of copyright.

28

1     The Estate can afford to pay Shloss' fees.  It makes a significant income every

2  year from licensing the works to which it controls copyright, and so is far from an impecunious

3  party against whom a fee award would be unfair.  Rather, the Estate has engaged in a long

4  history of misusing its copyrights so as to deter legitimate scholarship and inquiry, and has done

5  so at little cost to itself to date.

6     **D.     Awarding Attorney's Fees to Shloss Promotes the Purpose of
        the Copyright Act**

7

8     "The primary objective of copyright is not to reward the labor of authors, but '[t]o

   promote the Progress of Science and useful Arts.  "To this end, copyright assures authors the

9  right to their original expression, but encourages others to build freely upon the ideas and

10 information conveyed by a work." *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499

11 U.S. 340, 349-350 (1991) (citations omitted).  Indeed, "it is peculiarly important that the

12 boundaries of copyright law be demarcated as clearly as possible." *Fogarty v. Fantasy, Inc.,* 510

13 U.S. at 527. Accordingly, "defendants who seek to advance a variety of meritorious copyright

14 defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged

15 to litigate meritorious claims of infringement." *Id.*  "Thus a successful defense of a copyright

16 infringement action may further the policies of the Copyright Act every bit as much as a

17 successful prosecution of an infringement claim by the holder of a copyright." *Fogerty v.*

18 *Fantasy, Inc.,* 510 U.S. 517, 527 (1994).

19     This is just such a case in which the successful defense (as a declaratory judgment

20 plaintiff) of Shloss's right to quote from Defendants' copyrighted works furthers the policies of

21 the Copyright Act.  Shloss's success here is very similar to John Fogerty's success in *Fantasy,*

22 *Inc. v. Fogerty*, in which the court found that Fogerty's successful defense against copyright

23 claims "increased public exposure to a musical work that could, as a result, lead to further

24 creative pieces." *Fantasy, Inc. v. Fogerty*, 94 F.3d at 559.  In this case, Shloss's success in

25 winning a covenant from Defendants against suing over their copyrighted material used in

26 Shloss's Electronic Supplement increases public exposure to her scholarly work, which could, as

27 a result, lead to further scholarly and creative pieces.

28

1    Moreover, encouraging suits such as Shloss's furthers the policy of the Copyright

2 Act, as this Court has already noted when denying Defendants' Motion to Strike Shloss's

3 Copyright Misuse Claim:

> Plaintiff undertook to write a scholarly work on Lucia Joyce—***the type of creativity that the copyright laws exist to facilitate***. Defendants' alleged actions significantly undermined the copyright policy of "promoting invention and creative expression," as Plaintiff was allegedly intimidated from using (1) non-copyrightable fact works such as medical records and (2) works to which Defendants did not own or control copyrights, such as letters written by third parties. The Court finds that Plaintiff has sufficiently alleged a nexus between Defendants' actions and the Copyright Act's public policy of promoting creative expression to support a cause of action for copyright misuse.

10    Finally, Shloss's victory over the Estate gives hope and encouragement to Joyce

11 scholars everywhere who have been threatened or intimidated by the Estate.[8]  This victory

12 furthers the policy of the Copyright Act by encouraging other scholars to make critical, scholarly

13 and transformative use of the important materials to which the Estate holds copyrights.  This

14 alone is reason to encourage actions such as Shloss' with an award of attorney's fees.

[8] *See, e.g.*, Olson Decl., Ex. B at 4-5. [Dec. 15, 2006 Spoo Decl., Ex. 4] ("More than a dozen Joyce scholars told me that what was once an area of exploration and discovery now resembles an embattled outpost of copyright law. . . . Although more than fifteen hundred letters and dozens of manuscript drafts have been discovered since Stephen [Joyce] gained control of the estate, scholars told me that no new biographies of Joyce or his family are under way. . . . Anyone who plans to study Joyce today has to wonder whether it will be worth the strain.")

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1   **IV.    CONCLUSION**

2          The Estate has insisted that, where copyrights are concerned, it "puts its money

3   where its mouth is."  Olson Decl., Ex. O at 8. [Order Denying Motion to Dismiss]  It should be

4   made to do so here.  The Court should grant Shloss's motion for an award of costs and attorneys'

5   fees, and award costs and reasonable attorneys' fees in an amount to be determined according to

6   proof.

7

    DATED:  April 10, 2007
8

9                                          STANFORD LAW SCHOOL
                                           CENTER FOR INTERNET AND SOCIETY
10

11                                 By: _____/s/_____
                                              David S. Olson
12                                         Attorneys for Plaintiff
                                           CAROL LOEB SHLOSS
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW