# EXHIBIT C

Dockets.Justia.com

Lawrence Lessig
Anthony T. Falzone (SBN 190845)
David S. Olson (SBN 231675)
STANFORD LAW SCHOOL CENTER FOR
INTERNET AND SOCIETY
559 Nathan Abbott Way
Stanford, California  94305-8610
Telephone:  (650) 724-0517
Facsimile:  (650) 723-4426
E-mail:      falzone@stanford.edu

Mark A. Lemley (SBN 155830)
Matthew M. Werdegar (SBN 200470)
Dorothy McLaughlin (SBN 229453)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, California  94111
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188
E-mail:      mwerdegar@kvn.com

Bernard A. Burk (SBN 118083)
Robert Spoo (*pro hac vice*)
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN, P.C.
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone: (415) 434-1600
Facsimile:  (415) 217-5910
E-mail:      bburk@howardrice.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| CAROL LOEB SHLOSS,<br><br>Plaintiff,<br><br>v.<br><br>SEÁN SWEENEY, in his capacity as trustee of the Estate of James Joyce, and THE ESTATE OF JAMES JOYCE,<br><br>Defendants. | CASE NO. CV 06-3718 (JW) (HRL)<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Date:      June 4, 2007<br>Time:      9:00 a.m.<br>Judge:     Hon. James Ware |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................1

II.  ARGUMENT ..............................................................................................................2

   A.   Shloss Is The Prevailing Party ........................................................................2

   B.   An Award Of Attorneys' Fees To Shloss Would Further The Purpose
        Of The Copyright Act .....................................................................................5

        1.   Shloss's Success Favors Awarding Attorney's Fees .............................5

        2.   Defendants Have Taken Unreasonable And Frivolous Positions
             From The Beginning And Continue To Do So Now .............................6

        3.   Defendants' Motivation Was Improper ................................................8

        4.   The Need For Deterrence And Compensation Favors An Award
             Of Fees To Shloss ................................................................................9

        5.   Awarding Fees To Shloss Will Further The Purpose Of The
             Copyright Act.....................................................................................10

   C.   Shloss's Harmless Error In Failing To Meet And Confer Until
        Just After This Motion Was Filed Cannot Justify The Denial Of
        Shloss's Motion for Attorney's Fees .............................................................11

   D.   Defendants' Other Reasons For Denying Fees Have No Merit.......................13

   E.   There Is No Ground To Vacate The Dismissal Of This Action ......................13

III. CONCLUSION..........................................................................................................15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Barrios v. Cal. Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002) .......................3

*Carbonell v. I.N.S.*, 429 F.3d 894 (9th Cir. 2005) .......................................2, 3, 4

*Cashner v. Freedom Stores, Inc.*, 98 F.3d 572 (10th Cir. 1996) .......................................14

*Federal Sav. & Loan Insurance Corp. v. Ferrante*, 364 F.3d 1037
    (9th Cir. 2004)...............................................................................13

*Feist Public, Inc. v. Rural Telegraph Serv. Co.*, 499 U.S. 340 (1991) .............................10

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir.2000) .......................................4

*Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F. Supp. 532
    (C.D. Cal. 1995)...............................................................................4

*Gator.com Corp. v. L.L.Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005) .................................13

*Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097 (9th Cir. 2006) .......................14

*National Basketball Association v. SDC Basketball Club, Inc.*, 815 F.2d 562
    (9th Cir. 1987)...............................................................................4

*Parents of Student W v. Puyallup Sch. District*, 31 F.3d 1489
    (9th Cir. 1994)...............................................................................5, 6

*Richard S. v. Department of Devel. Serv. of St. of Cal.*, 317  F.3d 1080
    (9th Cir. 2003)...............................................................................2, 4

*Stewart v. Prof'l Computer Ctrs., Inc.*, 148 F.3d 937 (8th Cir. 1998) ...............................14

*Tex. State Teachers Association v. Garland Independent Sch. District*,
    489 U.S. 782 (1989)...............................................................................5, 6

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999) ...........................13

### STATE CASES

*Altamont Summit Apartments LLC v. Wolff Properties LLC*, 2002 WL 31971832
    (D. Or.)...............................................................................12

*Brant v. California Dairies, Inc.*, 4 Cal. 2d 128 (1935)..........................................................14

*Founding Members of the Newport Beach Country Club v. Newport Beach
   Country Club, Inc.*, 109 Cal. App. 4th 944 (2003) ......................................................14

*Jacobsen v. Katzer*, 2006 WL 3000473 (N.D. Cal) ..........................................................12

*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*, Cal.
   App. 4th 1042 (2001).......................................................................................14

*Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634 (1996)..............................................14

*Winet v. Price*, 4 Cal. App. 4th 1159 (1992)...................................................................14

## FEDERAL STATUTES

17 U.S.C. § 505...............................................................................................................4, 5

28 U.S.C. § 1927...............................................................................................................7

## RULES

Fed. R. Civ. Proc. 61........................................................................................................12

Fed. R. Civ. Proc. 60(b)(6) ..............................................................................................13

Rule 54-6(a)   .................................................................................................................11

Rule 54-6(b)   .................................................................................................................12

Rule 60(b)   ....................................................................................................................14

Rule 60(b)(6) .................................................................................................................14

## I.     INTRODUCTION

The point of the Declaratory Judgment Act is to allow litigants to get out from under a threat of suit and absolve themselves of the liability that might result.  Here, Professor Carol Shloss ("Shloss") has done just that.  Faced with a clear threat of an infringement suit should she publish the Electronic Supplement at issue in this case, she sued the Estate of James Joyce and its Trustees (collectively, "Defendants" or the "Estate") to establish her right to publish the Supplement on the Internet free of that threat and any resulting liability.  Indeed, she sought no damages, and the only injunctive relief Shloss sought was to enjoin defendants from bringing the infringement suit she feared.  Pursuant to the Settlement Agreement made enforceable by this Court and incorporated into its dismissal order, Defendants are prohibited from suing Shloss for the publication of the Supplement on the Internet or in print.  In short, Defendants gave Shloss by Court-endorsed contract the very rights she sought by her Complaint.

Defendants' capitulation makes Shloss eligible for attorneys' fees as the prevailing party under the controlling law.  For years, Defendants proceeded as if Shloss's fair use rights did not exist, calling them "wishful thinking" and a "joke," and threatening suit against both Shloss and her publisher.  When Shloss finally stood up to those threats, Defendants filed a thick stack of paper arguing that there was really no dispute at all.  When the Court rejected that contention and called upon Defendants to defend the position they had staked out, they backed down rather than challenge Shloss's rights.

The central issue before the Court is whether an award of fees to Shloss will promote the purposes of the Copyright Act.  Fair use is a critical component of the Copyright Act, and serves its most central purpose—to promote original works of authorship.  But it is often difficult and expensive to protect fair use rights, especially where, as here, the copyright holders have superior resources and use the mere threat of a costly and protracted dispute as a cudgel to extend their rights well beyond their proper metes and bounds.  In this case, Defendants acted for the express purpose of chilling free scholarly inquiry into and discussion about the literary and historical material entrusted to their care—a purpose deeply inimical to the statutory and public policies of free access and fair use that Professor Shloss vindicated here.  A

1  fee award to a successful proponent of fair use rights not only makes that vindication more

2  attainable, it reminds copyright holders they will be held accountable for this kind of

3  overreaching.  A fee award to Shloss would further the purposes of the Copyright in both of

4  these respects, and is therefore particularly appropriate here.

5  **II.    ARGUMENT**

6        **A.    Shloss Is The Prevailing Party**

7              There should be no dispute that Shloss is the "prevailing party" in this action.

8  The Estate concedes the test is whether the litigation resulted in a "material alteration of the legal

9  relationship of the parties" and the resolution of it carries with it a sufficient "judicial

10 imprimatur."  *E.g., Carbonell v. I.N.S.*, 429 F.3d 894, 898-901 (9th Cir. 2005); *see* Opp. at 9.

11 Shloss passes both prongs of that test with flying colors.

12             The only injunctive relief Shloss sought here was an injunction barring

13 Defendants from suing her for copyright infringement for publication of the Electronic

14 Supplement.  *See* Amended Complaint, Prayer ¶ 7 (seeking injunction barring defendants from

15 "assert[ing] copyrights against Shloss regarding the materials [in] the Electronic Supplement").

16 The Settlement Agreement bars the Estate from doing exactly that.  Settlement Agreement ¶ 2(a).

17 Accordingly, the Estate can no longer bring the infringement suit that Shloss feared and that was

18 the sole focus of the injunctive relief Shloss sought.  That Agreement was incorporated into the

19 Court's order of dismissal, which is itself a sufficient "judicial imprimatur" to make Shloss the

20 "prevailing party" here.  *E.g.*, *Carbonell*, 429 F.3d at 901; Memorandum of Points and

21 Authorities in Support of Motion for Award of Attorneys' Fees ("Fee Motion") at 11-12.

22             Unable to dispute this, the Estate suggests Shloss did not prevail because she

23 "obtained no relief on the merits of any of the claims [she] asserted."  Opp. at 9-10.  But whether

24 the Court reached the merits of Shloss's underlying defenses is beside the point, and that fact

25 could not be clearer from the controlling law.  In *Carbonell*, the Ninth Circuit expressly and

26 emphatically rejected the notion that a party must obtain a ruling on the merits of her claim to be

27 a "prevailing party" and explained that requirement is contrary to established Ninth Circuit law.

28 *See Carbonell,* 429 F.3d at 898-900 (citing *Richard S. v. Dept. of Devel. Serv. of St. of Cal.*, 317

1 F.3d 1080 (9th Cir. 2003) and *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th

2 Cir. 2002)). Indeed, the plaintiff in *Carbonell* was held to be a prevailing party despite the fact

3 the Court did not reach the merits of plaintiff's "underlying ineffective assistance [of counsel]

4 claim." *Carbonell*, 429 F.3d at 900. The Estate's attempt to impose a requirement the Ninth

5 Circuit has so clearly rejected is simply frivolous.

6        The Estate's assertion that it should be considered the "prevailing party" here

7 because Shloss dismissed her claims is equally silly. *See* Opp. at 7. Among other things, it

8 ignores the reason Shloss dismissed this action and the substance of what happened here. The

9 only reason Shloss dismissed this action is because the Estate capitulated in full. It gave up the

10 right to do the only thing Shloss sought to enjoin it from doing—suing her for copyright

11 infringement based on the publication of the Electronic Supplement. Moreover, Shloss did not

12 dismiss any affirmative "claims." She pled no affirmative claims for relief, only defenses to

13 infringement. Shloss dismissed her defenses to infringement only because they were no longer

14 necessary in light of the fact the Estate forever gave up its right to assert infringement claims

15 against her. The fact Shloss dismissed defenses to claims the Estate was foreclosed from

16 asserting does not make the Estate the prevailing party, it merely highlights the fact the Estate

17 capitulated in full. The cases the Estate cites on this issue (*see* Opp. at 7) do not suggest that a

18 declaratory relief defendant's full capitulation makes it a prevailing party. Indeed, none of these

19 cases involve any declaratory relief claims at all.

20        Remaining in denial of what really happened here, Defendants assert that they

21 have "***not given up any enforcement rights*** as to the copyrights" at issue and that they "have not

22 modified their conduct in any manner." Opp. at 11-12 (emphasis added). That is simply false.

23 Defendants expressly and unambiguously gave up "enforcement rights" here. They promised

24 not to enforce their copyrights against Shloss in connection with the publication of the Electronic

25 Supplement. *See* Settlement Agreement ¶ 2(a). Defendants' obligation to refrain from doing

26 something they would otherwise have the legal right to do is more than sufficient to establish the

27 "material alteration" of the rights of the parties sufficient to confer prevailing party status.

28 Again, this is clear in the controlling law. *Carbonell* explained the "material alteration" test was

1  satisfied because the INS agreed not to deport Carbonell and therefore "required [defendants] to

2  do something directly benefiting the plaintiff[] that they otherwise would not have had to do."

3  *Carbonell*, 429 F.3d at 900; *see also Richard S.*, 317 F.3d at 1087; *Fischer v. SJB-P.D. Inc.*, 214

4  F.3d 1115, 1118 (9th Cir.2000) ("[T]he legal relationship is altered because the plaintiff can

5  force the defendant to do something he otherwise would not have to do.")).

6          Straining again to ignore the substance of what happened here, Defendants go on

7  to suggest that they actually forced Shloss "to modify her behavior by foregoing her claims for a

8  declaratory judgment" and are therefore entitled to fees under *Florentine Art Studio, Inc. v. Vedet*

9  *K. Corp.*, 891 F.Supp. 532, 541 (C.D. Cal. 1995).  Opp. at 12.  But the Estate again confuses

10  legal claims with actual relief.  All of the "claims" Shloss alleged were defenses to liability for

11  publishing the Electronic Supplement, which liability she is now immune from courtesy of the

12  Settlement Agreement.  She only forewent those defenses because she obtained the actual

13  relief—immunity from liability—those defenses were intended to obtain.  Having obtained that

14  relief, she had no need for legal defenses and gave nothing up by "foregoing" them.

15   *Florentine* does not in any way suggest the Estate is the prevailing party because Shloss

16  forewent defenses she no longer needed.  That case simply awarded fees to a defendant who

17  successfully defended against seven of nine infringement claims.  *Florentine*, 891 F.Supp. at

18  541-42.  If anything, *Florentine* reinforces the fact that Shloss is entitled to fees, because she too

19  succeeded in defending herself against infringement liability.

20          Finally, Defendants suggest their agreement not to sue Shloss for infringement

21  provides no benefit to her because "Defendants have not sued Shloss."  Opp. at 13.  Defendants

22  apparently forget the point of declaratory relief, which is to allow a litigant to determine her

23  liability *before* a prospective plaintiff files suit against her.  *See, e.g.*, *Nat'l Basketball Ass'n v.*

24  *SDC Basketball Club, Inc.*, 815 F.2d 562, 566 n. 2 (9th Cir. 1987) ("all declaratory judgments

25  . . . are premised on the understanding that the prospective plaintiff has not yet filed suit and the

26  prospective defendant wishes to determine his or her liability").  There can be no dispute that the

27  legal relationship of the parties has been altered in a material and critical way.  Shloss is the

28  "prevailing party" and is therefore eligible for fees under the Copyright Act.  17 U.S.C. § 505.

**B.  An Award Of Attorney's Fees To Shloss Would Further the Purpose Of The Copyright Act**

Shloss's opening memo demonstrated that an award of attorney's fees to her would further the purposes of the Copyright Act. *See* Fee Motion at 12-20.  The Estate does not acknowledge, much less come to grips with, the very good reasons for awarding fees here

**1.  Shloss's Success Favors Awarding Attorney's Fees**

Shloss's success here was complete because her only claim for actual relief was an injunction barring the infringement suit Defendants are prohibited from bringing pursuant to the Settlement Agreement. *See* Fee Motion at 14.  Ignoring this, the Estate contends that the "results Shloss obtained [through] the Settlement Agreement were . . . *de minimis*, and at least ***equivalent to her situation had the suit never been filed*.*"  Opp. at 13 (emphasis added). Indeed, the Defendants assert that Shloss "***received none of the relief she sought*."  *Id.* at 14 (emphasis added).

This is nonsense.  Again, the only actual relief Shloss sought was to enjoin Defendants from asserting its copyrights against her should she publish the Electronic Supplement.  (P. 2, above.)  She got exactly that.  The Settlement Agreement gives Shloss precisely that protection and more because it also gives her the right to publish her Electronic Supplement in printed form, which she did not ask for in her complaint.  The suggestion that she is no better off than she was before filing suit is demonstrably false.  Prior to bringing suit, Shloss could not publish the Electronic Supplement without risking suit and liability for copyright infringement.  Under the Settlement Agreement, Shloss has the right to publish the Electronic Supplement free from that very threat of suit and infringement liability.

None of the cases Defendants cite suggest this full and complete relief was *de minimis*.  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989), held the relief plaintiffs obtained in that case was more than *de minimis* precisely because it limited the school district's right to restrict teacher communication concerning union activities.  *See id.* at 792.  *Parents of Student W v. Puyallup Sch. Dist.*, 31 F.3d 1489 (9th Cir. 1994), held that plaintiff did not prevail because the administrative officer "reject[ed] all of plaintiffs' demands

1   for relief." *Id.* at 1498.  In any event, both of these cases explain that it is the "material alteration

2   of the legal relationship of the parties" that matters for purposes of determining who prevailed.

3   *See Tex. State Teachers*, 489 U.S. at 792; *Parents of Student W*, 31 F.3d at 1498.  Here, that

4   alteration is undeniable.  (Pp. 2-4, above.)

5                   **2.      Defendants Have Taken Unreasonable And Frivolous**
                            **Positions From The Beginning And Continue To Do So**
6                           **Now**

7                   Fees are also warranted here because Defendants consistently took unreasonable

8   and frivolous positions before and during this lawsuit.  *See* Fee Motion at 14-16.  From the

9   beginning, Defendants have dismissed fair use as "wishful thinking" and a "joke" and have

10  purported to deny Shloss the right to use any quotation from any work they control, no matter

11  how *de minimis*, scholarly, or transformative.  *See id.*  Once Shloss sued to vindicate her rights,

12  Defendants tried to avoid the suit they provoked by simply ignoring the threats they made, and

13  by pretending that a covenant not to sue as to part of the Electronic Supplement somehow

14  mooted the controversy as to the entire Supplement.  *See id.*  Defendants either do not

15  acknowledge, or do not attempt to defend these positions, or explain why they make any sense.

16  Indeed, they still tout the supposedly "absolute right[s]" of copyright holders.  *See* Opp. at 18.

17                  While Defendants generally deny making any unreasonable or frivolous

18  arguments (*see* Opp. at 15-16), they continue to take unreasonable positions and assert frivolous

19  arguments by, among other things, ignoring the Ninth Circuit law that controls the "prevailing

20  party" determination.  (Pp. 2-4, above.)  In addition, they continue to make inaccurate factual

21  assertions.  Defendants suggest, for instance, that they did not know the extent of copyrighted

22  materials to be included in the Electronic Supplement until Shloss filed her opposition to their

23  motion to dismiss in December 2006.  *See* Opp. at 16-17.  This is simply untrue.  Defendants had

24  access to the revised Electronic Supplement since August of 2006 and were advised in

25  September of 2006 and on more than one occasion that no more copyrighted quotations were

26  going to be added to the Supplement.  *See* Olson Dec. ¶¶ 4-6 and Ex. A.  There is simply no

27  basis to suggest that the Supplement was in any way a moving target after September 2006.

28

1    Defendants likewise suggest that Shloss amended her complaint *after* the Estate

2  covenanted not to sue Shloss for the original version of the Electronic Supplement, and announce

3  that they "could not have covenanted . . . after the filing of the Amended Complaint." Opp. at 3.

4  The Defendants made this same assertion at the hearing on its motion to dismiss. *See* Falzone

5  Dec. Ex. E at 14 (transcript of January 31, 2007 hearing). It was false then, and remains false

6  now. As Shloss's counsel explained at that hearing, Shloss's Amended Complaint was filed on

7  October 25, 2006. *See* Falzone Dec. ¶¶ 2-4, Ex. E at 27-28. Defendants did not provide the

8  covenant not to sue until they moved to dismiss the Amended Complaint on November 17, 2006.

9  *See id*. While the declaration that contains the purported covenant is conveniently dated October

10 24, 1996, it was first provided to Shloss's counsel with the motion to dismiss it supports on

11 November 17. *See id.*

12    Other positions Defendants take are simply inconsistent. They claim, for

13 example, that Shloss did not achieve any significant relief, because the copyrighted quotations in

14 her Electronic Supplement are *de minimis*. *See* Opp. at 2, 11.[1] Yet they also claim that they

15 would have defeated Shloss's claimed right to use the material, including her claims of *de*

16 *minimis* and fair use. *See* Opp. at 17.

17    Defendants have likewise asserted frivolous threats against Shloss's counsel.

18 Days before their opposition was due Defendants' counsel sent a letter to counsel for Shloss

19 threatening to file a motion for ***personal sanctions*** against him under 28 U.S.C. § 1927 if Shloss

20 did not withdraw her fee motion. *See* Supp. Olson Dec. ¶ 14, Ex. H (May 7, 2007 letter from

21 Anna Raimer to David Olson). Shloss's counsel responded by explaining that Defendants'

22 complaints were groundless and that they had shown no basis for sanctions. *See* Falzone Dec. ¶

23 6, Ex. B (May 10, 2007 letter from Anthony Falzone to Anna Raimer). No sanctions motion was

24 filed.

25

26 _____

27 [1]  The printout of the Electronic Supplement runs exactly 158 pages. *See* Supplemental
   Declaration of David S. Olson in Support of Motion for Award of Attorney's Fees ("Supp. Olson
28 Dec.") ¶ 16.

1    **3.      Defendants' Motivation Was Improper**

2          Indeed, Defendants have a long history of staking out unreasonable positions

3    regarding the extent of their copyrights, and threatening suit to cow others into submitting to

4    their claims.  Defendants spent years calling Shloss's fair use defense "wishful thinking" and a

5    "bad joke," leveling personal, *ad hominem* attacks, and threatening lawsuits which were "never

6    lost."  Even if the Court were to credit Defendants' continuing assertion that they had no

7    intention of filing suit against Shloss (*see* Opp. at 1-2), this would simply raise another question:

8    Why did they make pointed and repeated threats against Shloss if they had no intention of

9    pursuing those threats?  Defendants sought to menace Shloss with the costs, distractions and

10   embarrassments of litigation as a means of deterring scholarly inquiry they could not control—

11   conduct repugnant to the basic values of free access and free expression that animate the

12   Copyright Act in general, and its fair use provision in particular.

13         Even now, Defendants admit they use their copyrights to protect the supposed

14   privacy of the deceased.  *See* Opp. at 18 n. 7.  In doing so they simply ignore the case law that

15   demonstrates protection of privacy is not a proper purpose of copyright law.  Instead, Defendants

16   merely argue, without support, that there is nothing wrong with protecting privacy via

17   (unreasonable) threats of copyright suit.  Opp. Br. at 19.

18         To this day, Defendants continue to make it clear that their campaign against

19   Shloss was based not on any rationale interpretation of copyright law, but on ill-will.  They

20   continue to make *ad hominem* attacks against Shloss, asserting at various times that Shloss's

21   book is not scholarship (*see* MTD at 4), that her lawsuit was not in good faith but was instead a

22   "pretext" (*see* MTD  at 3) and that she is "not worth" their "financial or mental expense."  Opp.

23   at 2.  Despite the clear nature of the injunctive relief Shloss requested, Defendants continue to

24   assert that Shloss's motive in filing suit was not to gain the right to publish her Electronic

25   Supplement, Opp. Br. at 19, and seem to premise such suggestions on bizarre and irrelevant

26   assertions.  *See* Opp. at 18 n.8 (reciting correspondence in which Stephen Joyce asserts that

27   because Shloss did not recall exactly where in France she had tea with Joyce and his wife years

28

1   earlier, "any book Ms. Shloss writes will be sprinkled wit [sic] this type as well as other

2   mistakes").

3               **4.      The Need For Deterrence And Compensation Favors**
4                        **An Award Of Fees To Shloss**

5               Defendants have tried to cut off inquiry into literary and historically significant

6   events and sought to vindicate privacy rights through the assertion of copyrights all through

7   improper threats of copyright enforcement.  *See* Fee Motion at 18-19.  And Shloss is not the only

8   author that has suffered this misconduct.  *See* Olson Dec. Exs. A, B, J; Shloss's Memorandum of

9   Points and Authorities in Opposition to Defendants' Motion to Dismiss ("MTD Opp.") at 4-5, 8-

10  9; Pierce Dec. ¶¶ 3-8 [Docket No. 36].  Defendants simply ignore this.  Instead, they assert that

11  they have not used Joyce copyrights to prevent Shloss from using factual works, or ever asserted

12  that Shloss could not use third-party letters that were dictated by Joyce. Opp. Br. at 19-20.  This

13  misses the very serious point:  Defendants have a habit of launching baseless threats and

14  accusations aimed at deterring scholarship and free speech.  It is also inaccurate.  The fact is

15  Defendants attempted to bar Shloss from using literally anything Joyce or anyone else in his

16  family ever "drew, wrote, or painted" — factual or not, regardless of whether they were dictated

17  to anyone.  *See* Mtd Opp. at 4-7.

18              Defendants do not dispute they used threats of copyright enforcement to force

19  Brenda Maddox cut an epilogue about Lucia from her book, promise not to criticize them, and

20  demanded this promise bind not only Ms. Maddox but her heirs for all time as well.  *See* Fee

21  Motion at 4; *compare* MTD Opp. at 4-5 (asserting that misconduct) *with* Defendants' Reply

22  Memorandum in Support of Motion to Dismiss at 3-5 (disputing other alleged misconduct, but

23  ignoring the Brenda Maddox issue).  Nor do Defendants deny they sought to use their control

24  over copyrights in works in the special collections department at the University of Buffalo to

25  make the department prohibit access and assistance to Shloss in relation to her book.  *See id.*

26              Defendants will repeat this misconduct if not deterred.  Assessing fees here would

27  be a good start toward that deterrence.

28

**5.      Awarding Fees To Shloss Will Further The Purpose Of
The Copyright Act**

The purpose of the Copyright Act is not simply to reward copyright holders, but
to "promote the Progress of Science and the useful Arts." Fee Motion at 19 (quoting *Feist Pub.,
Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 349-350 (1991). Accordingly, "a successful defense
of a copyright infringement action may further the policies of the Copyright Act every bit as
much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.*
(quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 527 (1994)).

Here, there can be no dispute that Shloss's work is precisely the type of work the
Copyright Act was designed to foster. Indeed, the Court has already found that to be so. *See* Fee
Motion at 19. A fee award here will not only encourage other Joyce scholars to stand up to
Defendants and vindicate the right to create other works of scholarship, it will encourage
scholars everywhere to litigate if necessary to determine their fair use rights to quote other others
in their own scholarly works.

Even now Defendants would like to be able to threaten without cost to itself. It
worries that the Supreme Court made declaratory judgment actions easier in *Medimmune*, and
that an award of fees here would encourage other scholars to litigate when the Defendants
threaten them with copyright infringement. Precisely. Fees are needed here to deter Defendants
from their specific conduct against Shloss, and also to encourage other scholars to determine
their fair use rights upon facing similar threats.

Defendants suggest the assessment of fees is not necessary here because
numerous Joyce-related works have been published in recent years. *See* Opp. at 20. But the
problem is in the number *not* published because of Defendants' attempts at censorship. The fact
Defendants have chosen to let certain works go unchallenged does not change the fact they have
raised improper challenges to Shloss's work, and others they dislike. Copyright cannot be used
as a tool to silence speech one dislikes.

Thus, this Court should grant fees for an even more important reason than any of
those analyzed in the individual "*Fogerty* factors" above. Fees should be awarded to encourage

REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW

1    scholars like Shloss—whose scholarly work depends on the ability to quote the copyrighted

2    work of others—to author and publish their work without the editorial control of copyright

3    holders. The Copyright Act, with its statutory right of fair use, exists just as much to encourage

4    work such as Shloss's as it does to encourage works of fiction.  Thus, to promote this purpose of

5    the Copyright Act, the Court should award fees so that, when necessary, scholars are encouraged

6    to determine their fair use rights by litigation, and then to publish their works in full.  There is no

7    reason that Shloss should have had to publish a chopped-down version of her work in print in

8    2003, and the rest of her work on the Internet in 2007 when the same fair use rights applied all

9    along.  While many authors (and publishers) will not be willing to litigate their fair use rights

10   even with the prospect of recovering their attorney's fees, holding out the possibility of

11   recovering fees will encourage at least a few more scholars to do so.

12       **C.    Shloss's Harmless Error In Failing To Meet And Confer Until
             Just After This Motion Was Filed Cannot Justify The Denial
13           Of Shloss's Motion for Attorney's Fees**

14           In an effort to avoid all of the very good reasons fees should be awarded here,

15   Defendants contend that Shloss's motion is procedurally defective on two grounds.  Neither has

16   any merit.  First, Defendants complain that Shloss's counsel did not meet and confer prior to

17   filing this motion, per Local Rule 54-6(a).  *See* Opp. at 5.  Although it is true that Shloss's

18   counsel failed to contact the Estate's counsel before filing this motion on April 10, Defendants

19   fail to mention that Shloss's counsel did contact Defendants' counsel the same day the motion

20   was filed.  Defendants also neglect to mention that the parties engaged in weeks of

21   communication during which Defendants never identified any specific issue they wished to

22   discuss, except for the hearing date on this motion, which Shloss agreed to extend by two weeks

23   at the request of Defendants' counsel.  *See* Supp. Olson Dec. ¶¶ 7-9 and Exs. B-D.

24           If anything, it was Defendants who failed to meet and confer promptly.  On April

25   19, Shloss's counsel expressly invited Defendants' counsel to explain a cryptic assertion she had

26   made that day suggesting Shloss's fee motion was "improperly filed."  Supp. Olson Dec. ¶ 10

27   and Ex. E.  In response, Defendants remained silent for ***eighteen days***.        *See* Supp. Olson Dec

28   ¶¶ 11-14.  Then, a week before their opposition papers were due, Defendants asserted for the first

1    time that Shloss's fee motion was improperly filed due to counsel's failure to meet and confer.

2    *See* Olson Dec. ¶¶ 14-15 and Ex. I.  During the exchange of letters that followed, they again

3    failed to identify any issue they wished to meet and confer about, except to complain about the

4    hearing date that was set by stipulation at Defendants' suggestion, which provided defendants

5    more than a month to prepare their opposition.  *See* Falzone Dec. Exs. A-D.

6         Shloss's failure to meet and confer before filing—which was cured the day of

7    filing—cannot be a basis to deny Shloss's fee motion.  Fed. R. Civ. Proc. 61 (court "must

8    disregard any error or defect in the proceeding which does not affect the substantial rights of the

9    parties"); *Altamont Summit Apartments LLC v. Wolff Props. LLC*, 2002 WL 31971832 at *3 (D.

10   Or.) (refusing to deny motion on ground party failed to meet and confer before filing motion

11   where "counsel did meet and confer shortly after the motion was filed" and provided opposing

12   party with an extension of time to respond).

13        Second, Defendants' complaint that Shloss's fee motion is improperly supported

14   because it does not include documentation specifying the services rendered, time spent and

15   qualifications of counsel, per Local Rule 54-6(b), is without merit.  *See* Opp. at 6.  As Shloss's

16   moving brief made plain, and as Shloss's counsel has already explained to Defendants, Shloss

17   intends to file such documentation once the Court determines she is entitled to fees.  *See* Falzone

18   Ex. B.  The Federal Rules of Civil Procedure 54(d)(2)(D) expressly permits this.  *Id.* ("The court

19   may determine issues of liability for fees before receiving submissions bearing on issues of

20   evaluation of services. . . .").  Nothing in the Local Rules prohibits it.  *See* Local Rule 54-6(b).

21   Nor does the one case Defendants cite suggest this approach is improper.  *See Jacobsen v. Katzer*

22   2006 WL 3000473 *8-9 (N.D. Cal) (awarding fees upon successful anti-SLAPP motion).  On the

23   contrary, this approach is sensible and efficient and avoids the expense of producing, reviewing

24   and arguing about time records unless and until the Court determines a fee award is warranted.

25        There is no basis to ignore the important issues this motion presents based on

26   either of the procedural complaints Defendants raise.

27

28

1      **D.      Defendants' Other Reasons For Denying Fees Have No Merit**

2              As a fall-back, Defendants suggest various reasons why the Court should not

3      award fees here.  First, Defendants protest that in settling this case, they did exactly what the

4      "Court suggested they do."  Opp. at 21.  Of course, the Court did not (and could not) provide

5      advice as to how any party should proceed in litigation.  And even if Defendants had followed

6      the Court's "suggestion," that would not change the fact that Shloss prevailed by vindicating her

7      right to publish the Electronic Supplement, or undermine any of the very good reasons for

8      awarding fees here under *Fogerty*.

9              Defendants then suggest that a fee award would "result in a second major

10     litigation."  *See* Opp. at 22.  But they do not explain how or why.  On the contrary, this issue is

11     ripe for decision.  If the Court grants fees, all that would be necessary is the production of time

12     records from Shloss's counsel, and the resolution of any disputes about the reasonableness of the

13     time spent and hourly rates.  That is routine in any fee award.

14             Defendants next suggest the Court has no jurisdiction to award fees here.  That is

15     simply wrong.  There is no question that federal district courts have ancillary jurisdiction "to

16     decide attorney's fees and costs after a case is settled."  *Gator.com Corp. v. L.L.Bean, Inc.*, 398

17     F.3d 1125, 1133 n.1 (9th Cir. 2005) (en banc) (Tashima, J., concurring).  Attorney's fees are "an

18     ancillary matter over which the district court retains equitable jurisdiction even when the

19     underlying case" is mooted or dismissed.  *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323

20     (9th Cir. 1999); *Federal Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004)

21     ("ancillary jurisdiction exists over attorney fee disputes collateral to the underlying litigation").

22     **E.      There is No Ground to Vacate the Dismissal of This Action**

23             As a last-ditch effort to avoid the fee issue, Defendants assert in a scant two

24     paragraphs that the Court should vacate the dismissal of this action under Federal Rule of Civil

25     Procedure 60(b)(6) based on the allegation that the parties did not agree on the material terms of

26     the Settlement Agreement.  *See* Opp. at 23.  But Defendants do not begin to meet the standard

27     for such extraordinary relief, provide no evidentiary support for their allegations.

28

1    Rule 60(b)(6) is "to be utilized only where extraordinary circumstances prevented

2    a party from taking timely action to prevent or correct an erroneous judgment. . . . [A] party . . .

3    must demonstrate both injury and circumstances beyond his control that prevented him from

4    proceeding with ... the action in a proper fashion." *Latshaw v. Trainer Wortham & Co., Inc.*, 452

5    F.3d 1097, 1103 (9th Cir. 2006).  Here, Defendants fail even to allege that there were any

6    circumstances that prevented them from taking action to prevent or correct the stipulated

7    dismissal of this suit.

8    Moreover, Rule 60(b)(6) does not provide relief in cases where a party makes a

9    mistake regarding the meaning of an agreement it entered into deliberately.  *See Latshaw*, 452

10   F.3d at 1103 (denying Rule 60(b)(6) motion where party who knowingly accepted an offer of

11   judgment under Rule 68 later claimed she misunderstood the extent to which attorney's fees

12   were included in the offer); *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572 (10th Cir. 1996)

13   (reversing order granting relief from judgment because unilateral mistake as to meaning of

14   stipulation does not support relief from judgment).

15   Even if any provision of Rule 60(b) could apply here, Defendants offer no

16   evidence to support their contentions—not even a conclusory declaration of counsel.  Not that it

17   would matter.  Under California law "[t]he existence of mutual assent is determined by objective

18   criteria, not by one party's subjective intent." *Marin Storage & Trucking, Inc. v. Benco*

19   *Contracting & Eng'g, Inc.*, Cal. App. 4th 1042, 1050 (2001).  Assertions regarding a party's

20   undisclosed contractual intent are therefore irrelevant to contractual interpretation.  *See Brant v.*

21   *California Dairies, Inc.*, 4 Cal. 2d 128, 133 (1935); *Founding Members of the Newport Beach*

22   *Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003);

23   *Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634, 657 (1996); *Winet v. Price*, 4 Cal. App. 4th

24   1159, 1166 n.3 (1992).  *Stewart v. Prof'l Computer Ctrs., Inc.*, 148 F.3d 937, 940 (8th Cir.

25   1998), does not suggest otherwise.  There the Court—applying Missouri law—held that it was

26   ambiguous as to whether a $4500 settlement included attorney's fees.  *Id.*  Here, there was no

27   monetary payment and no such ambiguity.

28

1        The Settlement Agreement is simply silent on attorney's fees, and is an integrated

2  document.  Accordingly, there is no basis for Defendants to suggest the Agreement covered,

3  much less foreclosed, any award of attorney's fees.

4  **III.**    **CONCLUSION**

5        Shloss is the prevailing party, and thus eligible for fees.  A fee award is

6  particularly appropriate here under the *Fogerty* factors, and this is exactly the sort of case in

7  which a fee award promotes the purpose of the Copyright Act.  Scholars such as Shloss already

8  face an uphill battle in determining their right to make fair use of copyrighted material in their

9  scholarly work.  Scholars and publishers alike often lack the stomach and the resources to

10  determine fair use through litigation.  For those few who are willing, they should be encouraged

11  to do so by the prospect of getting their fees once they have done the service of establishing their

12  fair use rights to conduct and publish their scholarship analyzing others' copyrighted work.  If

13  we want to encourage scholarship on modern literature, such encouragement is more crucial now

14  than ever, since much of what has been written in the last century is still locked up by copyright.

15  The Court should grant Shloss's motion for an award of costs and attorney's fees in an amount to

16  be determined according to proof.

17

18

19  DATED:  May 21, 2007

20                        STANFORD LAW SCHOOL
                        CENTER FOR INTERNET AND SOCIETY

21

22             By: _____/s/_____

23                    David S. Olson
                  Attorneys for Plaintiff

24                 CAROL LOEB SHLOSS

25

26

27

28

REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS – CV 06-3718 JW